IN THE CIRCUIT COURT OF OHIO COUNTY, WEST VIRGINIA

WEXLER TORISEVA WALLACE LLP :
:
:
Plaintiff, : CIVIL ACTION NO. _____
:
vs. :
:
PARKER WAICHMAN ALONSO LLP :
:
:
Defendant. :

## COMPLAINT FOR DECLARATORY RELIEF

COMES NOW Plaintiff, Wexler Toriseva Wallace LLP ("WTW" or "Plaintiff") pursuant to West Virginia Code §55-13-1, and hereby requests from the Court a declaration that: (1) WTW was lead counsel for the Plaintiffs in the matter styled Elizabeth and Donny Poole v. Bausch & Lomb Incorporated, which Plaintiff filed in West Virginia State Court, but which action was removed to the Federal Court for the Southern District of West Virginia (Huntington Division) Civil Action No. 3:06-0463, on or about April 26, 2006 (the "Poole Litigation"); and (2) the fee distribution to Defendant Parker Waichman Alonso (hereinafter "PWA" or "Defendant") should be no more than 10% of the fee, which far exceeds the value of the work performed by Defendant on the Poole Litigation. In support hereof, Plaintiff alleges as follows:

### PARTIES

1. At all times material to this action, WTW was a limited liability partnership licensed to conduct business in West Virginia at 1446 National Road, Wheeling, West Virginia.

2. At all times material to this action, PWA maintained its principal place of

1



business at 111 Great Neck Road, Great Neck, New York.

3. The acts complained of herein arise from the representation of Elizabeth and Donny Poole (the "Pooles"), residents of Mercer County, West Virginia, on whose behalf Plaintiff brought the Poole Litigation.

## JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court pursuant to the retainer agreement between Plaintiff and the Pooles, and Plaintiff and Defendant. The retainer agreement states that "[t]he law of the State of West Virginia will govern any dispute arising as to this contract." A copy of the retainer agreement is attached as Exhibit A. Defendant has availed itself of the West Virginia courts by signing this retainer agreement with the above stated clause and by making contractual arrangements with West Virginia residents.

5 Venue is proper wherein the cause of action arose. This action arose in Ohio County, West Virginia as a simple contract and/or *quantum meruit* issue.

## FACTS

6. A real, substantial and immediate controversy exists between Plaintiff and Defendant. The Pooles retained Plaintiff to represent them in the Poole Litigation. At best, Defendant was referring counsel. Defendant never met the Pooles or performed any work their behalf. Plaintiff negotiated and settled the Poole Litigation with the consent and participation of the clients. Now, according to a letter written to Teresa C. Toriseva, a named partner of Plaintiff, Defendant claims that the Poole Litigation was Defendant's claim to settle. Defendant is taking the position that Ms. Toriseva was to act as "local counsel." Plaintiff disagrees. The Pooles retained Plaintiff as their primary counsel; Plaintiff performed all of the work to be performed on

2

the Poole Litigation; the Pooles asked Plaintiff to conduct settlement negotiations on their behalf; and, at most, Defendant is referring counsel.

7. On or about mid-April, 2006, Mrs. Poole, who lives in Princeton, West Virginia, was suffering from an eye disease believed to be brought on by her use of a B & L product. Mrs. Poole made an inquiry over the internet to Defendant, then known as the Parker & Waichman law firm, located in New York, New York.

8. After receiving the internet contact from Mrs. Poole, Defendant contacted Ms. Toriseva, a West Virginia attorney residing in and practicing out of Wheeling, to seek her assistance in evaluating Mrs. Poole's potential claim. Ms. Toriseva was to establish an attorney-client relationship with the Pooles, gather their signatures on a contract and begin work on litigation against B & L on behalf of the Pooles.

9. On or about April 21, 2006, Ms. Toriseva drove from her home in Wheeling to Princeton (approximately four and one half hours/280 miles) to meet with the Pooles. Ms. Toriseva brought along a representative of Defendant, Mr. Jason Mark.

10. Ms. Toriseva thoroughly explained to the Pooles the nature of the litigation and the information that the Pooles and counsel needed to evaluate in determining whether to pursue litigation against B & L.

11. On that date, in Princeton, West Virginia, Mrs. Poole and her husband Donny Poole signed their names to a retainer agreement. At the same time, also in Princeton, West Virginia, Ms. Toriseva (for WTW) and Jason Mark (for PWA) also signed the agreement. *See* Exhibit A. At the time they signed the fee agreement with Mr. and Mrs. Poole, the amount of the

referral fee to be paid to Defendant, in the event of a successful outcome of the litigation, had not yet been negotiated between the parties or agreed upon.

12. On or about April 26, 2006, Plaintiff filed a Complaint for the Pooles in the Circuit Court of Mason County, West Virginia. The Complaint listed WTW and Defendant as counsel. Ms. Toriseva signed the Complaint.

13. Plaintiff drafted the Complaint pursuant to West Virginia law on product liability.

14. On or about June 13, 2006, B&L removed the Poole Litigation to Federal Court in the Southern District of West Virginia (Huntington Division).

15. Thereafter, on or about October 4, 2006, the Judicial Panel on Multidistrict Litigation transferred the Poole Litigation for pretrial proceedings to Judge David C. Norton in the United States District Court in the District of South Carolina, MDL Number 1785.

16. From the time the retainer agreement was signed, Plaintiff and only Plaintiff continued to have contact with the Pooles and otherwise represent their interests in the Poole Litigation. For example:

    a. Plaintiff gathered medical authorizations from Mrs. Poole and ordered all pertinent medical records.

    b. Plaintiff reviewed the medical records and prepared an analysis of the treatment and nuances affecting the underlying merits of the claim.

    c. Plaintiff gathered further information from the Pooles and timely provided Plaintiff Fact Sheets to the MDL.

    d. Plaintiff had regular contact with the Pooles to gather the evidence for their case and otherwise prepare for its eventual trial.

    e.    Plaintiff maintained constant contact with the Pooles, advising them of the status of the case.

    f.    Plaintiff worked with an expert witness to evaluate Mrs. Poole's lost wages.

    g.    Plaintiff evaluated the permanency of Mrs. Poole's injury and the impact it would have on her day to day life.

    h.    Plaintiff entered into extensive settlement discussions on the Poole litigation which lasted nearly two months.

    i.    Plaintiff discussed settlement options with the Pooles and the Pooles participated in the final settlement negotiations.

    j.    Plaintiff continues to work with the Pooles to finalize the settlement agreement including handling all subrogation issues.

17.   In all this time, Defendant had no contact with the Pooles, except for one which occurred by mistake. In that instance, Defendant inadvertently sent a Plaintiff Fact Sheet from a different venue to Mrs. Poole. Mrs. Poole immediately contacted Plaintiff as she was confused by the mailing. *See* e-mail from Elizabeth Poole, attached hereto as Exhibit B. When Plaintiff notified Defendant of the error, one of its attorneys responded that the communication had been a mistake and that PWA was "well aware that you guys (Plaintiff) are handling the Poole case in the MDL." *See* e-mail from Kathy A. Brown to Melanie Muhlstock, attached hereto as Exhibit C.

18.   The Pooles have always considered Plaintiff to be their attorney and stated so many times. They understood Defendant's presence on the retainer agreement as the required

5

disclosure of an attorney who might be sharing part of the fee in the event of a successful outcome.

19. When it came time to negotiate a settlement, the Pooles directed Plaintiff to conduct those negotiations and did not want Defendant's involvement. The Pooles participated fully in the negotiation process and agreed to the final settlement.

## CAUSE OF ACTION

### COUNT I – Declaratory Relief

20. The previous allegations contained in paragraphs 1 though 19 are incorporated herein as if repeated verbatim.

21. Plaintiff seeks relief under the laws of West Virginia governing contracts and/or *quantum meruit* to determine how attorneys are to be compensated.

22. The Pooles were represented by Plaintiff after the initial contact by Mrs. Poole to Defendant. PWA performed no services for the Pooles. All legal services were provided by WTW.

23. Plaintiff is entitled to all attorneys' fees resulting from the successful settlement of the Poole Litigation, subject to payment to Defendant of expenses relating to the Poole Litigation and a fee appropriate to the circumstances.

WHEREFORE, Plaintiff Wexler Toriseva Wallace LLP requests that the Court enter judgment declaring that Plaintiff was lead counsel for the Pooles in the Poole Litigation and that the fee distribution to Defendant should be no more than 10% of the net fee, which far exceeds the value of the work performed by Defendant on the Poole Litigation. Plaintiff further asks for its attorney fees and costs of bringing this action and such other relief as the Court may deem just

6

and proper.

      PLAINTIFF DEMANDS A TRIAL BY JURY OF ALL ISSUES SO TRIABLE.

                            WEXLER TORISEVA WALLACE LLP
                            By Counsel

                            Teresa C. Toriseva, (WV Bar # 6947)
                            WEXLER TORISEVA WALLACE LLP
                            1446 National Road
                            Wheeling, West Virginia 26003
                            (304) 238-0066
                            (304) 238-0149 Fax