IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

IN RE: DIGITEK PRODUCT LIABILITY
      LITIGATION

MDL NO. 1968

_____

THIS DOCUMENT RELATES TO ALL CASES

### PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION FOR AN ORDER PERMITTING EX-PARTE CONTACT WITH FORMER ACTAVIS EMPLOYEES

### FACTS

This is an action for, *inter alia*, products liability resulting from the manufacture, design, and sale of defective Digitek®. The Digitek® in question was made by Defendants Actavis including employees from Actavis Totowa LLC, a New Jersey company, its manufacturing facilities in Little Falls, New Jersey; Actavis, Inc., a Delaware company, its headquarters in Morristown, New Jersey; and Actavis Elizabeth LLC, a Delaware company. In April 2008, Actavis announced a Class I Recall of Digitek®, recalling all Digitek® that was currently in the marketplace. Following the recall, Actavis ceased manufacturing operations at the Little Falls facility and terminated many of its employees that were involved in the manufacturing and quality assurance and control processes, including management level employees.

The Plaintiffs desire to conduct ex-parte interviews with some of the former Actavis employees. At issue is Rule 4.2 of the Rules of Professional Conduct which forbids counsel from having communication with any person that counsel knows to be represented by a lawyer. Plaintiffs' contend that the West Virginia Rules of Professional Conduct govern counsel's conduct in these pre-trial proceedings. Defendants believe that the New Jersey's Rules of

2

Professional Conduct are controlling, apparently on the basis that Actavis is a New Jersey corporation and that the employees were employed in New Jersey. Due to this conflict of opinions with regard to ex-parte contact of former employees of the Defendants in this action, the Plaintiffs seek an order from this Court as a safe harbor on the controlling ethical guidelines so that Plaintiffs can strictly comply. Plaintiffs believe that the West Virginia Rules of Professional Conduct and the Supreme Court of Appeals of West Virginia's interpretation thereunder apply to any ex-parte contact conducted during these pre-trial proceedings and that pursuant to West Virginia law, ex-parte contact with former Actavis employees is permissible when conducted in accordance with the proposed safe harbor of compliance with the West Virginia Rules of Professional Conduct.

    **A. This Court should apply West Virginia law when determining whether or not ex-parte contact with Defendant's former employees is permissible under the Rules of Professional Conduct.**

When applying Rule 4.2 of the rules of professional conduct outside of the multidistrict litigation setting, it is well settled that a district court applies the rules of professional conduct as adopted and interpreted by the highest court of the jurisdiction in which the district court is sitting. See e.g. *Action Air Freight, Inc. v. Pilot Air Freight Corp.*, 769 F. Supp. 899 (E.D. Pa. 1991)(applying Pennsylvania Rules of Professional Conduct to California attorney); *Amarin Plastics v. Maryland Cup Corp.*, 116 F.R.D. 36 (D. Mass. 1987) (applying Massachusetts Rules of Professional conduct without discussion); *Dubois v. Gradco Systems, Inc.*, 136 F.R.D. 341 (D. Conn. 1991)(applying Connecticut Rules of Professional Conduct without discussion). In fact, this Court has applied the West Virginia Rules of Professional Conduct when determining whether or not ex-parte contact with current employees of an adverse corporate party was

3

appropriate. *See Cole v. Appalachian Power Co.*, 903 F. Supp. 975 (S.D.W.Va. 1995). (applying West Virginia Rules of Professional Conduct despite the fact that the defendant corporation was organized and existing under the laws of Virginia).

The issue becomes a little more difficult in multidistrict litigation since the pre-trial proceedings are consolidated for cases which ultimately may be tried in many different district courts. As a result, many different rules of professional conduct could apply to a single witness interview. Conflicts of law have also arisen in multidistrict litigation in discovery disputes where different jurisdictions have different discovery rules. In determining which rule the court should apply in multidistrict litigation, courts have first looked to the federal statute governing multidistrict litigation which provides that:

> "When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions."

28 U.S.C. § 1407.

Interpreting the language of section 1407, the courts have held that when ruling on pre-trial discovery disputes, the MDL transferee court applies the law of the circuit in which it is sitting. *See In re Methyl Tertiary Butyl Ether Products Liability Litigation*, 241 F.R.D. 185 (S.D.N.Y. 2007); *In re Automotive Refinishing Paint Antitrust Litigation*, 229 F.R.D. 482 (E.D.Pa. 2005). The courts have held so because "without limiting the sources of binding precedent, each motion in multi-district litigation could easily turn into a review of the interpretations of all or most of the circuits, a result at odds with the fundamental purpose of

4

section 1407." *Id*. at 486 *quoting In re Methyl Tertiary Butyl Ether Products Liability Litigation*. Under this analysis, courts have held that the transferee court applies the law of the jurisdiction in which it is sitting in determining the validity of subpoenas, subject matter jurisdiction, personal jurisdiction, remand to state courts, and motions to compel depositions. *See In re Methyl Tertiary Butyl Ether Products Liability Litigation*.

Almost all, if not all, district courts have expressly adopted the rules of professional conduct as interpreted by the highest court of the jurisdiction in which the district court is sitting. Therefore, conceivably, an MDL transferee court could be faced with the possibility of applying 50 different rules of professional conduct to any single interview conducted by counsel. It goes without saying that requiring the Court to apply 50 different rules would undermine Congress' stated purposed of judicial economy and would be highly impractical. Lead counsel and members of the plaintiffs' steering committee could be placed in a position of violating one court's rules of professional conduct while the exact same conduct is deemed acceptable under the rules of professional conduct of the presiding court as well as the district courts from which their cases were transferred. Because of this potential confusion, the Court must apply a single rule of professional conduct in examining the validity of ex-parte contact.

Further, this Court and the Circuit Court of Kanawha County, West Virginia have entered orders relating to coordination of this litigation and the West Virginia State Digitek Litigation. *See* ECF No. 69. If this Court rules that ex-parte contact with a company's former employees is not governed by the West Virginia Rules of Professional Conduct, then lawyers acting for both the MDL and the State Litigation will have to follow multiple state's rules. Before any interview is conducted that involves attorneys from both litigation groups, every applicable set of ethical

rules will have to be exhaustively reviewed to ensure that all counsel complies with all applicable rules of ethics.

When faced with circumstances very similar to the case at bar, the United States District Court for the District of New Jersey, pursuant to its local rule adopting the Rules of Professional Conduct as interpreted by the New Jersey Supreme Court and the 3rd Circuit Court of Appeals, held that the law of the State of New Jersey controlled whether or not a party could have ex-parte contact with a company's former employees. *In re The Prudential Insurance Company of America Sales Practices Litigation*, 911 F.Supp.148 (D.N.J.1995). In its reasoning the New Jersey Court was emphatic that subjecting an attorney to the rules of professional conduct for multiple jurisdictions is "highly impractical and virtually unenforceable in a litigation of national scope." *Id*. at FN3.

The United States District Court for the Northern District of Illinois likewise applied its own local ethical rules in *In re Air Crash Disaster Near Roselawn, Indiana on October 31, 1994*, 909 F.Supp. 1116 (N.D.Ill., 1995). After Plaintiffs' Attorneys had sent surveys to pilots employed by Defendants, Plaintiffs argued that the Illinois' State Professional Conduct Rules should apply as the cases were originally filed in an Illinois State Court. *Id.* at 1120.[1] Although, the Court did not address the relevance of the home state of the Defendants, it is worth noting that Defendants included foreign corporations and corporations from multiple states. Further, the 50 pilots that received the surveys in question were located throughout the country. *See Id.*; *In re Air Crash Disaster Near Roselawn, Indiana on October 31, 1994*, 909 F.Supp. 1083 (N.D.Ill., 1995). The Court ruled that "It is well-settled that this Court has the 'inherent authority to

---

[1] Unlike this Court, the Northern District of Illinois had not adopted the State rules of Professional Conduct. Instead, the district court was governed by an independent set of rules of professional conduct.

6

regulate the conduct of the members of the bar who have occasion to practice before it.' Therefore, since the alleged *ex parte* contacts occurred while the cases were before this Court, the Rules of this Court shall apply." *Id.* (internal citations omitted).

Just as in *In re The Prudential Insurance Company of America Sales Practices Litigation*, this Court has expressly adopted the West Virginia Rules of Professional Conduct and the interpretations thereunder by the Supreme Court of Appeals of West Virginia. *See* L.R. Civ. P. 83.7. As such, the Court must apply the West Virginia Rules of Professional Conduct and the Supreme Court of Appeals of West Virginia's interpretations. To hold otherwise would be to undermine the entire purpose of multidistrict litigation and would paralyze this court and other MDL courts when making almost any pre-trial rulings.

### B. The West Virginia Rules of Professional Conduct allow for ex-parte contact with a company's former employees.

As this Court itself has acknowledged, the West Virginia Supreme Court of Appeals has unequivocally held that Rule 4.2 of the West Virginia Rules of Professional Conduct does not prohibit ex-parte contact with a company's former employees. See *Cole v. Appalachian Power Co.* "Rule 4.2 of the West Virginia Rules of Professional Conduct is not designed to foreclose *ex parte* interviews of former employees of an organization by an attorney representing a party adverse to the organization unless the former employees are represented by their own attorney." Syl. Pt. 4, *State ex rel. Charleston Area Medical Ctr. v. Zakaib*, 190 W. Va. 186 (W. Va. 1993). As a result, the Plaintiffs should be permitted to conduct ex-parte interviews with former Actavis employees.

7

**CONCLUSION**

Based upon Federal case law, the Plaintiffs' motion should be granted and the Court should issue an order providing a safe harbor for the Plaintiffs to engage in ex-parte contact with former Actavis employees based upon strict compliance with the ethical rules of the situs of the supervisory court, in this case, the West Virginia Rules of Professional Conduct as adopted and interpreted by the Supreme Court of Appeals of West Virginia.

Dated: July 6, 2009                           Respectfully submitted,

On Behalf of the Plaintiffs' Steering Committee

s/Fred Thompson, III Esq._____
Fred Thompson, III, Esq.
Motley Rice, LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
*Co- Lead Counsel*

Carl N. Frankovitch, Esq.
Frankovitch, Anetakis, Colantonio & Simon
337 Penco Road
Weirton, WV 26062
*Co- Lead Counsel*

Harry F. Bell, Jr., Esq.
Bell & Bands PLLC
P. O. Box 1723
Charleston, WV 25326
*Co-Lead and Liaison Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 6, 2009, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                          s/Fred Thompson, III Esq._____
                                          Fred Thompson, III, Esq.
                                          Motley Rice, LLC
                                          28 Bridgeside Blvd.
                                          Mt. Pleasant, SC 29464
                                          ***Co- Lead Counsel***