IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

IN RE:  DIGITEK PRODUCT LIABILITY
       LITIGATION

MDL NO. 1968

THIS DOCUMENT RELATES TO ALL CASES

## ACTAVIS DEFENDANTS' BRIEF OPPOSING
## PLAINTIFFS' MOTION TO COMPEL

Plaintiffs' Motion to Compel should be denied in its entirety because Plaintiffs seek to obtain:  1) premature merits discovery without first establishing that class certification would be appropriate; and 2) documents protected by the attorney work-product doctrine reflecting counsels' beliefs and opinions regarding jurisdictional allegations in a notice of removal filed more than a year ago in an individual New Jersey case.  In the course of pursuing this information, Plaintiffs' motion demonstrates how their requests are untethered to any core principle of class discovery or federal removal jurisprudence.

## I.      FACTS PERTINENT TO PLAINTIFFS' MOTION TO COMPEL

Several Digitek® complaints containing class action allegations were transferred to MDL-1968 over the past year and a half; of the original 28 class action complaints, only 8 remain.  On March 5, 2009, PTO-16 issued, establishing deadlines for Plaintiffs to request class certification.  (Doc. 87.)  The Order also limited discovery regarding class certification.  Class representatives were permitted to serve written discovery or take depositions – "limited to class certification issues" – "in aid of their motion for class certification."  *Id*., at § VII(G).

On July 31, 2009, Plaintiffs served Interrogatories Regarding Class Actions and their Second Set of Requests for Production Regarding Class Actions.  Request for Production No. 3

sought all documents regarding "the cost/and or pricing of Recalled Digitek®." Interrogatory No. 12 and Request for Production No. 8 sought information regarding the Notice of Removal filed on August 8, 2008 in the Digitek®-related case of *Palladino v. Actavis Totowa LLC* in the United States District Court for the District of New Jersey (No. 08-CV-04034). On August 28, 2009, the Actavis Defendants responded to Plaintiffs' discovery requests and raised multiple objections to Interrogatory No. 12 and Requests for Production Nos. 3 and 8. (See Doc. 212, at 4-5, 6-7.)

On September 15, 2009, Plaintiffs filed their "request to seek class certification for the remaining class action suits filed in this MDL, excluding any wrongful death, personal injury or medical monitoring putative classes." Having dropped all personal injury and medical monitoring classes, Plaintiffs limited their certification request to an "economic loss" class. Plaintiffs stated that they intended to file a motion and supporting brief at an unspecified time based on the discovery produced to date and information "as yet unproduced." (Doc. 207, at 1.)

After Plaintiffs filed their request, Plaintiffs and Defendants agreed to set up a meet-and-confer regarding alleged deficiencies in Defendants' discovery responses – deficiencies that the Plaintiffs' Steering Committee (PSC) claimed would preclude the timely filing of their class certification brief under PTO #16. During that conference, on September 18, 2009, the PSC alleged generally that there were deficiencies in Defendants' production of documents and responses to class discovery, but was unable to identify any specific deficiency for Defendants to evaluate or cure. Defendants suggested that the PSC prepare a letter setting forth specific deficiencies. Thus, the September 18, 2009 meeting was not, and could not have been, a meet-and-confer because the PSC never identified any specific discovery response deficiencies for Defendants to address.

The PSC provided Defendants with a specific list of alleged deficiencies by letter at 5:55 p.m. on September 21, 2009.  This was the first time Defendants had any information about the alleged deficiencies in their discovery responses.  Nevertheless, three business days later (on September 24, 2009) the PSC unilaterally terminated the meet-and-confer process and filed its Motion to Compel without any further communication with Defendants.

Despite Defendants' subsequent request, the PSC declined to withdraw its Motion to Compel.  Despite the filing, Defendants nevertheless responded on October 1, 2009 in writing to the PSC's September 21, 2009 letter and offered to resume the meet-and-confer process to try to reduce the ultimate burden on the Court.  (*See* Tab A (Sept. 25, 2009 Response to Alleged Class Discovery Deficiencies), Tab B (Sept. 29, 2009 Response to Remaining Alleged Deficiencies).) Following an October 1, 2009 meet-and-confer, the parties were able to resolve all issues set forth in Plaintiffs' Motion to Compel except for one category: Defendants' responses to class discovery – Interrogatory No. 12 and Requests for Production Nos. 3 and 8.[1]  For the reasons set forth below, Plaintiffs' Motion to Compel these responses should be denied.

## II.  STANDARD OF REVIEW

Plaintiffs are entitled to limited pre-certification discovery as to whether a class action is maintainable.  *See Doctor v. Seaboard Coast Line Railroad Co*., 540 F.2d 699, 707 (4th Cir. 1976).  While "the discovery which is permitted should be sufficiently broad that the plaintiffs have a fair and realistic opportunity to obtain evidence which will meet the requirements of Rule 23, [it may not be] so broad that the discovery efforts present an undue burden to the defendant." *Tracy v. Dean Witter Reynolds*, 185 F.R.D. 303, 304-05 (D. Colo. 1998); *accord Gariety v. Grant Thornton LLP*, 368 F.3d 356, 366 (4th Cir. 2006) ("[I]t is appropriate to conduct

---

[1] A letter from all counsel to the Court reflecting this agreement will be submitted.

controlled discovery into the 'merits,' limited to those aspects relevant to making the certification decision on an informed basis.").  "Discovery is not to be used as a weapon, nor must discovery on the merits be completed precedent to class certification."  *Nat'l Org. for Women v. Sperry Rand Corp.*, 88 F.R.D. 272, 277 (D. Conn. 1980).  Indeed, it is "imperative that the district court be permitted to limit pre-certification discovery to evidence that, in its sound judgment, would be 'necessary or helpful' to the certification decision."  *Stewart v. Winter*, 669 F.2d 328, 331 (5th Cir. 1982) (citation omitted).  Accordingly, the Court has considerable discretion to deny improper discovery.  *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 929 (4th Cir. 1995) ("district court [has] substantial discretion in managing discovery"); *accord Stewart*, 669 F.2d at 331 ("Whether discovery will be permitted in connection with a motion for a class certification determination lies within the sound discretion of the trial court.") (quotations omitted).

## III.   ARGUMENT

Plaintiffs' motion suffers from two major flaws.  First, their perfunctory conclusions lack any developed argument as to why Digitek® cost and pricing information would support class certification.  Indeed, Plaintiffs cite no pertinent legal authority under Rule 23 to explain why this information could support the commonality or typicality prongs of a class certification analysis.  It does not.[2]  Second, Plaintiffs improperly seek the attorney work product of Actavis'

---

[2] Plaintiffs' conclusory statement that they are entitled to Digitek cost and pricing information, after abandoning all of their non-economic class claims, is inconsistent with the viability of their economic loss claims.  Defendants do not suggest that the Court should prejudge the merits of any certification decision here, but feel compelled to point out that by dropping any personal injury class allegations, Plaintiffs are left to pursue an untenable theory of economic loss in the absence of any manifestation of defect in the product.  Courts have repeatedly and routinely rejected the viability of such "no-injury" product liability claims seeking the benefit of a bargain already received.  *See, e.g., Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315 (5th Cir. 2002); *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171 (D.D.C. 2003).  Anyone who has ingested the subject tablets without harm has no claim for loss of benefit of the bargain.  Anyone who has

counsel, who alleged that the amount in controversy was satisfied in a particular Notice of Removal in an individual New Jersey case.  Counsel's allegations of estimated costs are not proper discovery or relevant to class certification.  These flaws are addressed below.

A.   **Plaintiffs' Request for Digitek® Cost and Pricing Information Constitutes Premature Merits Discovery on Damages and Seeks Information in Plaintiffs' Possession, Not Defendants'.**

Plaintiffs' Request for Production No. 3 seeks "all documents authored by, received by, and/or sent from any and all defendants which mention the cost and/or pricing of Recalled Digitek®."  (Doc. 212, at 6.)  Defendants objected that the request does not pertain to class-related issues and seeks damages-based financial information.  (*Id.*)  In their motion, Plaintiffs defend their requests with conclusory and unsupported assertions that documents and information "regarding cost and pricing . . . go[] to commonality and typicality [because] the cost and pricing may be very similar for every class member and may go to the adequacy of the class representatives."  *Id.*; *see also id.* at 5 ("similarity of costs and . . . averaging of costs goes to the issue of commonality and typicality.").

1.   **Digitek® pricing is not a common question for certification purposes.**

Under Rule 23, commonality requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  In this case, the cost or pricing of Digitek® is not a common question of fact or law supporting the certification of an economic class.  Certification does not involve classifying potential plaintiffs into groups of who paid too much, the same amount, or too little for their Digitek®.  This is not an antitrust class action involving the average wholesale price of Digitek®, or allegations that the Actavis Defendants price-discriminated by overcharging

---

unused tablets was entitled to a refund under the FDA-approved recall refund program.  No merits discovery related to damages topics like costs and price should be allowed under these circumstances at the class discovery stage.

particular consumers.  *E.g.*, *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 531-33 (3d Cir. 2004) (discussing interests of "third party payors," "fixed co-pay consumers" and "out-of-pocket consumers" in settlement of prescription drug antitrust class action).  Plaintiffs allege that "defective" Digitek® should not have been sold at all – not that it was too expensive.  Simply put, whether class members share the attribute of a particular retail price they paid for Digitek® is not at issue at this stage of the litigation.

### 2. Digitek® pricing information does not affect a typicality analysis.

Under Rule 23, "[t]ypicality requires that the claims of the named class representatives be typical of those of the class."  *Lienhart v. Dryvit Sys., Inc*., 255 F.3d 138, 146 (4th Cir. 2001). Specifically, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members."  *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982); *see also Deiter v. Microsoft Corp.,* 436 F.3d 461, 466 (4th Cir. 2006). "[T]ypicality refers to the nature of the claims of the class representative and not necessarily to the specific facts from which the case arose."  *Brown v. Cameron-Brown Co.,* 92 F.R.D. 32, 38 (E.D. Va. 1981); *accord In re Polyester Staple Antitrust Litig.*, 2007 WL 2111380, at *10 (W.D. N.C. July 19, 2007) ("In determining whether the claims of the class representatives are typical of the class, the Court looks to the nature of the claims asserted (*i.e*., the legal theory) rather than any specific factual differences amongst class members.").

Here, whether the named class representatives paid a similar or dissimilar price as other class members is not relevant to the claims or defenses in any of the class action Complaints. Plaintiffs are not pursuing antitrust or sales and marketing class actions where the prices the named representative paid for a product may be relevant to a typicality analysis.  *See, e.g., In re Terazosin Hydrochloride Antitrust Litig*., 220 F.R.D. 672, 686 (S.D. Fla. 2004) (considering

typicality of representatives in prescription drug case where class members paid for overcharge in different ways); *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 28 (D.D.C. 2001) (considering whether representatives' claims were typical where some class members bought prescription drugs directly while others bought from agents or wholesalers at various rates).

Plaintiffs contend universally that the Digitek® they ingested was "defective, dangerous, ineffective, and unsafe." (*See* Doc. 73, Master Compl., ¶¶ 148-52.)  They allege that they deserve recovery for their economic losses "because Plaintiffs did not receive a safe and effective drug." (*Id.*, ¶ 172.)  As to damages – which is not at issue at this point in the litigation – Plaintiffs allege that they "suffered economic losses including prescription costs, costs to obtain new prescriptions and other damages" (*Id.*, ¶¶ 150, 154).[3]  Plaintiffs do not contend that some consumers paid too much for their prescriptions or suffered from some unlawful price discrimination.  They do not seek partial refunds for different groupings of class members based on who paid what.  Digitek® prices, wholesale or retail, are in no way relevant to whether the claims of the class representatives are typical of the class.  Any Digitek® cost or pricing information is neither necessary nor helpful to a certification decision.  *Stewart*, 669 F.2d at 331.

---

[3] Likewise, the specific allegations in the individual class action complaints are not tied to the cost or pricing of recalled Digitek®.  E.g., *Konek* (Case No. 2:08-cv-01053) (seeking "economic" loss); *Pasken/Campbell* (Case No. 2:08-cv-01075) (same); *Lange* (Case No. 2:09-cv-00448) (seeking prescription costs, lost wages, and other damages); *Chambers* (Case No. 2:08-cv-01175) (seeking a refund for Digitek® purchased and cost of medical evaluation as a result of the recall); *Wilburn* (Case No. 2:08-cv-01017) (seeking refund for purchase price of Digitek® and replacement medicine, as well as medical expenses for post-recall medical exams); and *Milligan* (formerly Case No. 2:09-cv-00121) (seeking refund of purchase price).  Any Plaintiff who asks for a return of purchase price on unused tablets – the only time a benefit of the bargain claim might be available – should not be pursuing class discovery.  They should be filing a refund claim under the FDA-approved recall refund program.

### 3. Digitek® cost and pricing information is relevant only to damages.

Plaintiffs seek "disgorgement and restitution of Defendants' wrongful profits, revenues and benefits" based on *all* "defective" recalled Digitek® sold. (*Id.*, ¶ 173). Plaintiffs' only possible explanation for seeking wholesale cost and pricing information from Actavis is that it relates to profits they want Defendants to disgorge. And that is quintessentially impermissible merits discovery on damages. *See Skinner v. O'Mara*, 2000 WL 1507427, at *1-2 (D.N.H. July 25, 2000) (in civil rights case over jailhouse health care services, "plaintiffs' request for documents regarding the costs, expenses, and pricing of health care services" was premature "discovery aimed at evidence relevant to the merits of the plaintiffs' claims, . . . not specifically relevant to the questions pertaining to class certification"); *Rodriguez v. Banco Central*, 102 F.R.D. 897, 903-05 (D.P.R. 1984) (in fraudulent real estate sale class action, motion to compel discovery requests seeking "appraised value of the lots" and other financial information denied as premature merits discovery irrelevant to class certification decision). This Court should likewise exercise its discretion to deny Plaintiffs' motion to compel premature merits discovery.

### 4. Plaintiffs and others possess the only relevant Digitek® pricing information.

The flaw underlying Plaintiffs' misguided damages discovery is that the Actavis Defendants, as manufacturers that sell Digitek® wholesale exclusively to a distributor – not to any pharmacies or end-user consumers – do not have any information relevant to the pricing of Digitek® from any class member's perspective. Actavis' costs of manufacturing do not establish Digitek® pricing for a retail consumer. There is simply no connection between the two. Indeed, it is consumers, their pharmacies, and their insurance companies who possess the information

needed to calculate the amount of any economic loss any class members may have suffered.[4]  To the extent Plaintiffs want damages discovery, they should seek it from the putative class, not Actavis.  Indeed, they need look no further than the testimony of the class representatives, noted in footnote 4, to determine the variety of damages claimed, which has nothing to do with Digitek® pricing.

**B.**      **Counsels' Estimate of the Amount in Controversy in the Palladino Notice of Removal Is Irrelevant to Class Certification and Protected Work Product.**

In addition to seeking premature merits discovery regarding damages data, Plaintiffs' Interrogatory No. 12 and Request for Production No. 8 both seek information supporting a notice of removal where Actavis' counsel alleged how the $5,000,000 jurisdictional threshold for removal under the Class Action Fairness Act (CAFA) could be reached based on rough estimates of hypothetical costs to potential class members derived from the allegations of a state court complaint.  (Doc. 212, at 4-5, 6-7.)  Because this discovery on cost estimates constitutes belated jurisdictional discovery unrelated to whether the proposed cases are amenable to class certification, and because it violates the attorney work product doctrine, Plaintiffs' motion to compel should be denied.

---

[4] This is a highly individualized inquiry that will turn on facts unique to each Plaintiff, such as the existence of any applicable insurance plan, whether an insurance plan had a requisite co-pay or deductible, or whether individual Plaintiffs were already compensated through the FDA-approved recall refund program.  Indeed, Peter Konek said he only wanted $20 for co-pays. Dale Campbell said likewise.  Others want co-pays and other alleged incidentals.  For example, Michael Pasken wants his co-pays, gas and toll money to get to a pharmacy, and the cost of two enemas.  Michael Lange wants lost wages and gas money to the Kroger pharmacy.  Willie Mae Wilburn seeks costs of medical evaluations.  Bobby Milligan claims the cost of a new pair of glasses.

Specifically, Plaintiffs seek discovery regarding Defendants' Notice of Removal in the Digitek®-related case of *Palladino v. Actavis Totowa LLC,* initially filed in the United States District Court for the District of New Jersey (No. 08-CV-04034).   In Interrogatory No. 12, Plaintiffs request that Defendants state "every basis for, and identify every document consulted in support of" various allegations in paragraph 22 of Defendants' August 8, 2008 Notice of Removal describing hypothetical costs for doctor's visits, laboratory tests, and prescription purchases by theoretical class members.  (Doc. 212, at 4-5.)  Correspondingly, Plaintiffs also seek production of every document "consulted in support of Defendant's statements" in paragraph 22.  (*Id*., at 6-7.)

Plaintiffs purport to seek "the basis of defendants' formal representation to the federal court that the George Palladino class action . . . met the CAFA amount in controversy and was removable to federal court."  (Doc. 212, at 5.)  They contend that Defendants "asked the federal court in a formal pleading to rely upon, and to accept as true and accurate" certain "formal representations" about the cost of Digitek® prescriptions and medical evaluations.  (*Id.*)  As with the premature class discovery, Plaintiffs' arguments are again untethered to basic tenets of federal procedural law.

### 1.      Removal was based on the unchallenged allegations and estimates of counsel, not discoverable facts.

To remove under CAFA, a removing party must file a Notice of Removal containing "a short and plain statement of the grounds for removal."  28 U.S.C. § 1446(a).  "[A] defendant filing a notice of removal under 28 U.S.C. § 1446(a) need only *allege* federal jurisdiction with a short and plain statement – just as federal jurisdiction is pleaded in a complaint."  *Strawn v. AT&T Mobility*, 530 F.3d 293, 296, 299 (4th Cir. 2008) (emphasis in original) (finding defendant's removal-related statement regarding the amount in controversy, which plaintiffs

"offered nothing to suggest . . . [was] not an accurate number," justified removal to federal court under CAFA).

Consistent with this standard, defense counsel filed a notice of removal that estimated potential damages that a hypothetical class of Digitek® consumers could theoretically recover. First, Defendants identified nine different categories of equitable relief and monetary damages Plaintiffs alleged in their Complaint, and argued that those categories could be calculated to exceed the jurisdictional threshold based on applicable New Jersey federal precedent.  (Doc. 212-1, ¶¶ 20-21.)  Defendants then posited an "estimate" of what the amount in controversy "could reach" based on the cost at which a hypothetical doctor's visit and Digitek® prescription "could be estimated."  (*Id.*, ¶ 22.)  Defendants also alleged significant sums that class members "could recover" under New Jersey's consumer protection and punitive damages laws.  (*Id.*, ¶¶ 23-24.)  Finally, Defendants estimated that attorneys fees, litigation costs and an epidemiology study "could" add millions of dollars to the amount in controversy.  (*Id.*, ¶¶ 25-26.)

Based on the allegations and estimates of counsel, Defendants asserted that CAFA removal jurisdiction existed.  *See Chavis v. Fidelity Warranty Servs., Inc*., 415 F. Supp. 2d 620, 627 (D.S.C. 2006) (defendants can remove under CAFA based on estimates derived from plaintiffs' allegations at time of complaint).  It is hornbook law that "[i]f a plaintiff files suit in state court and the defendant seeks to adjudicate the matter in federal court through removal, it is the defendant who carries the burden of alleging in his notice of removal and, *if challenged*, demonstrating the court's jurisdiction over the matter."  *Strawn*, 530 F.3d at 297 (emphasis added).

The Plaintiff in *Palladino* could have promptly challenged Defendants' damages estimate as unsupported or "pure speculation." *Bartnikowski v. NVR, Inc*., 307 Fed. Appx. 730, 736 n.12 (4th Cir. 2009); *see Sayre v. Potts*, 32 F. Supp. 2d 881, 886 (S.D. W.Va. 1999).  But unlike other plaintiffs in other Digitek® matters, he did not.  *See In re Digitek Prod. Liab. Litig.,* 2009 WL 1939170, at *4 (S.D. W.Va. June 30, 2009) (denying motion to remand that was based on argument that amount in controversy was not met in *Larson* case).  Indeed, even now Plaintiffs do not challenge the figure.  This failure to challenge removal under CAFA ended any possible relevance of Defendants' Notice of Removal allegations.  "[E]vents occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached." *St. Paul Mercury Indem. Co. v. Red Cab Co*., 303 U.S. 283, 293 (1938); *accord, e.g., Davis v. Homecomings Fin.*, No. C05-1466RSL, 2007 WL 905939, * 1 (W.D. Wash. Mar. 22, 2007) (finding subsequent narrowing of a class action, which reduced amount in controversy below CAFA's $5 million threshold, did not oust the federal court of jurisdiction).

Now, Plaintiffs mischaracterize the *Palladino* Notice of Removal as "formal representations . . . relied upon . . . by this court."  (Doc. 212, at 5.)  To the contrary, this Court did not rely upon Defendants' removal allegations in *Palladino*.  They were never scrutinized by any court via motion practice.  Plaintiffs misleadingly use the allegations to argue that "the cost of medical examinations and the costs of Digitek® pills are apparently capable of being summarized and of being averaged out," as if Defendants had submitted affidavits from company witnesses calculating healthcare costs and consumer purchase prices.  (*Id.*)  They did not.  Counsel for Defendants estimated and summarized the value of nine different categories of equitable relief and monetary damages for purposes of alleging removal jurisdiction – any

number of which supported federal jurisdiction.  Plaintiffs' counsel are also free to estimate and average the costs that hypothetical class members "could recover."  But the time for disputing jurisdictional facts has well since passed.  And discovery of potential damages data must wait until after certification decisions.  The Court should stop this fishing expedition because jurisdictional allegations and estimates supporting a notice of removal are not relevant to certification decisions.

> ## 2. The attorney work product doctrine shields defense counsels' estimates from production in discovery.

Beyond relevance, to the extent that Plaintiffs' motion to compel seeks to discover how defense counsel formulated their estimates, this legal work and advice of counsel is not subject to discovery under Rule 26.  It was clearly prepared in the process of litigation by defense counsel and Plaintiffs cannot show a substantial need for it or an inability to do their own estimate calculations.  *See Collins v. Mullins*, 170 F.R.D. 132, 134-36 (W.D. Va. 1996); *Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co*., 771 F. Supp. 149, 150-51 (S.D. W.Va. 1991).  In addition, discovery about defense counsels' thoughts and estimations for filing a notice of removal will be neither "necessary" nor "helpful" to any certification decision.  *Stewart*, 669 F.2d at 331.  The Court should not condone transparent attempts to use pre-certification discovery as a weapon against Defendants in a quest to gain a litigation advantage.  *Nat'l Org. for Women*, 88 F.R.D. at 277.  Accordingly, the Court should use its discretion to deny the motion to compel with respect to requests targeting the *Palladino* notice of removal.  *See Lone Star Steakhouse & Saloon, Inc.*, 43 F.3d at 929.

## IV.   <u>CONCLUSION</u>

The Actavis Defendants respectfully request that the Court deny Plaintiffs' effort to secure premature cost- and pricing-related damages discovery, and removal discovery, that is (1)

unrelated to class certification considerations and (2) invasive of the attorney work product privilege.

Respectfully submitted,

TUCKER ELLIS & WEST LLP

By: s/*Richard A. Dean*

    Richard A. Dean, CO-LEAD COUNSEL
    Matthew P. Moriarty, CO-LEAD COUNSEL
    Kristen L. Mayer
    925 Euclid Avenue, Suite 1150
    Cleveland, Oh  44115-1414
    Tel:    (216) 592-5000
    Fax:    (216) 592-5009
    E-mail: richard.dean@tuckerellis.com
           matthew.moriarty@tuckerellis.com
           kristen.mayer@tuckerellis.com

    *Attorneys for Defendants Actavis Totowa LLC, Actavis Inc., and Actavis Elizabeth LLC*

14

## CERTIFICATE OF SERVICE

I hereby certify that, on October 8, 2009, a copy of the foregoing **Actavis Defendants'**

**Brief Opposing Plaintiffs' Motion to Compel** was filed electronically.  Notice of this filing

will be sent to all parties by operation of the Court's electronic filing system.  Parties may access

this filing through the Court's system.

TUCKER ELLIS & WEST LLP

By: s/*Richard A. Dean*
  Richard A. Dean, CO-LEAD COUNSEL
  Matthew P. Moriarty, CO-LEAD
  COUNSEL
  Kristen L. Mayer
  925 Euclid Avenue, Suite 1150
  Cleveland, Oh  44115-1414
  Tel: (216) 592-5000
  Fax: (216) 592-5009
  E-mail: richard.dean@tuckerellis.com
    matthew.moriarty@tuckerellis.com
    kristen.mayer@tuckerellis.com

  *Attorneys for Defendants Actavis Totowa*
  *LLC, Actavis Inc., and Actavis Elizabeth*
  *LLC*

073021.000031.1068380.1