# MOTION EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

IN RE: DIGITEK PRODUCT LIABILITY

LITIGATION

MDL NO. 1968

THIS DOCUMENT RELATES TO ALL CASES

## DECLARATION OF JOHN R. VALES

I, John R. Vales, of full age, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct:

1. I am an attorney-at-law of the State of New Jersey, and a partner with the law firm of Riker, Danzig, Scherer, Hyland & Perretti LLP, counsel for Non-Party Witness Jasmine Shah. I make this declaration in support of Mr. Shah's motion for a protective order requiring Plaintiffs' counsel to reschedule Mr. Shah's videotaped deposition by oral examination at a mutually convenient date.

### The Subpoena

2. On or about January 13, 2010, a subpoena and notice to take videotaped oral deposition of Jasmine Shah (hereinafter, "Subpoena") was filed with the Court. A copy of the subpoena is located on the Court's ECG filing system, at Document 274.

3. The Subpoena notices the videotaped deposition of Mr. Shah to occur on February 15, 2010, at the Ramada Wayne Hotel, 334 U.S. 46, Wayne, New Jersey 07470.

4. Mr. Shah is a former Actavis Vice President who left the company in 2008. Presently, Mr. Shah holds the position of Vice President for Research and Development with Alvogen, Inc. Alvogen, Inc. is unrelated to Actavis.

### Mr. Shah's Engagement Of This Firm As His Counsel

5. On or about January 19, 2010, Actavis' Director of Litigation and In-House Counsel, John Duff, contacted me to make a preliminary inquiry as to this firm's interest in serving as independent counsel to Mr. Shah in connection with the Subpoena.

6. Subsequently, on or about January 25, 2010, Mr. Duff advised me that Mr. Shah had confirmed his interest in having this firm serve as his independent counsel, and requested that I contact Mr. Shah.

7. Thereafter, on January 27, 2010, I had my first telephone call with Mr. Shah. During this telephone call, I requested that Mr. Shah agree to engage our firm as his independent counsel in connection with the Subpoena, and informed Mr. Shah that I planned to send him an engagement letter for his review and approval.

8. That same day, I emailed our firm's engagement letter to Mr. Shah. The engagement letter provides in part that this firm shall act as independent counsel to Mr. Shah and that Actavis shall pay this firm's bills, and seeks Mr. Shah's informed consent to this arrangement pursuant to Rule 1.8(f) of the New Jersey Rules of Professional Conduct.

9. On February 1, 2010, Mr. Shah notified me by email that he approved our firm's engagement as his independent counsel.

10. The following day, February 2, 2010, I first received a copy of the Subpoena from Mr. Shah.

### Mr. Shah's Travel Schedule

11. In his current position, Mr. Shah has a busy travel schedule.

12. Specifically, Mr. Shah has informed me that his travel schedule will take him away from the office on (i) February 2-5, 2010, (ii) February 8-9, 2010, (iii) February 11, 2010, (iv) March 1-12, 2010, and (v) April 8-18, 2010.

13. Due to Mr. Shah's travel schedule, I have not yet had an opportunity to have a substantive discussion with Mr. Shah regarding the Subpoena. In fact, I do not expect to have such an opportunity until the afternoon of February 10, 2010, when I meet Mr. Shah in person for the first time.

### This Firm's Lack Of Any Prior Involvement In This Matter

14. This Firm has had no prior involvement in the above captioned case. Until our receipt of the Subpoena on February 2, 2010, I had not seen any pleadings in this case nor had I discussed any of the substantive issues in the case with anyone.

15. Additionally, our firm does not have an existing attorney-client relationship with Actavis.

### Our Request For An Adjournment Of Mr. Shah's Deposition

16. Due to the complexity of the issues in the case, our firm's lack of any prior involvement in this matter, Mr. Shah's busy travel schedule, and our firm's professional obligation to thoroughly prepare Mr. Shah for his deposition, I determined that we would not have sufficient time to prepare Mr. Shah for a deposition to occur on February 15.

17. Accordingly, on February 1, 2010 – the same day as our engagement in this matter – I spoke with an attorney from the firm of Motley Rice, Meghan Johnson Carter, and

3

requested Ms. Carter's agreement to a reasonable adjournment of Mr. Shah's deposition to a later date.

18. In response, Ms. Carter informed that she did not have the authority to agree to our request, but would consult with her colleagues on the matter.

19. The following day, February 2, 2010, I received a telephone call from a Houston, Texas attorney, Edward Blizzard, who informed me that he intended to take Mr. Shah's deposition, and was calling in follow up to my telephone call with Ms. Carter.

20. Mr. Blizzard further informed that he was not inclined to grant our request for an adjournment of Mr. Shah's deposition, and demanded to know what involvement Actavis had in engaging our firm as counsel to Mr. Shah, paying Mr. Shah's legal bills and preparing for Mr. Shah's deposition.

21. In response, I advised Mr. Blizzard that (i) Actavis did indeed request that our firm act as independent counsel to Mr. Shah, (ii) Actavis did intend to pay our firm's bills issued in connection with our work for Mr. Shah, (iii) Actavis' attorneys would have some involvement in assisting me in my preparations for Mr. Shah's deposition, and (iv) I had a professional obligation as an attorney to properly prepare Mr. Shah for his deposition.

22. I further informed Mr. Blizzard that it was the custom and practice among attorneys in New Jersey to agree to reasonable requests for adjournments, and that, for the reasons noted above, I would respectfully request his agreement to an adjournment here, particularly since I understood the Court had agreed to extend the deposition discovery completion date to June 2010.

23. In response, Mr. Blizzard explained that it sounded as if Actavis' attorneys would have substantial involvement in preparing Mr. Shah for his deposition, and that, for this reason, he would not agree to an extension.

24. Baffled by Mr. Blizzard's position, I again reiterated my request for a reasonable adjournment, and informed Mr. Blizzard that we would file a motion if necessary to protect our client's interests. Mr. Blizzard, however, again denied our request.

### Additional Efforts Undertaken To Reach A Consensual Resolution

25. After my unfortunate telephone conversation with Mr. Blizzard, I consulted with Actavis' lawyers at Tucker Ellis & West, LLP to see if they could intervene on our behalf to secure an agreement from counsel to move back the date of Mr. Shah's deposition.

26. Thereafter, Matt Moriarty of the Tucker Ellis firm wrote to Fred Thompson at the Motley Rice firm by e-mail dated February 2, 2010 to seek his agreement to an adjournment. These efforts, however, also proved unsuccessful, as Mr. Thompson advised by e-mail dated February 3, 2010 that since it appeared Actavis would be "substantially involved" in the preparation of Mr. Shah for his deposition, the deposition must proceed "at the only legally enforceable date and time noticed."

### Counsel's Previously Scheduled Engagement on February 15, 2010

27. As of today's date, it has also come to my attention that I have a previously scheduled engagement on February 15, 2010 that will prevent me from defending Mr. Shah's deposition on that date. Specifically, my six-year old daughter has a medical appointment in Philadelphia, Pennsylvania for which my wife has requested that I attend.

**Conclusion**

28.   I am disheartened that counsel cannot reach a consensual agreement on a reasonable adjournment of Mr. Shah's deposition in this matter.  It is an article of faith among attorneys in New Jersey to agree to such reasonable requests where the adjournment will not cause any prejudice to the parties involved.

29.   Moreover, while it is true that Actavis' attorneys will assist me in getting up to speed in this case and preparing Mr. Shah for his deposition, I fail to see how this fact has any relevance to our request for a reasonable adjournment.

30.   Our firm has a professional obligation to represent Mr. Shah's interests to the best of our abilities, and this duty is not diminished in any way by any assistance we may receive from Actavis.

31.   Further, as noted above, our engagement in this matter did not occur until two weeks before the noticed date for Mr. Shah's deposition, and Mr. Shah's travel schedule is such that the first opportunity we will have to meet with Mr. Shah prior to February 15 is on the afternoon of February 10.

32.   Finally, as noted above, I must attend a previously scheduled medical appointment for my six-year old daughter on February 15, 2010 in Philadelphia, Pennsylvania that will prevent me from defending Mr. Shah's deposition on that date.

33.   Under the circumstances, therefore, we believe it is an eminently sensible and prudent position by our firm to request a reasonable adjournment of Mr. Shah's deposition, and we respectfully request that the Court issue a protective order requiring Plaintiffs' counsel to reschedule Mr. Shah's deposition at a mutually convenient date.

Dated: February 8, 2010
       Morristown, New Jersey

By: _____
John R. Vales

4016445.3