1              IN THE UNITED STATES DISTRICT COURT

2                    DISTRICT OF KANSAS

3                    CIVIL DEPARTMENT

4

5      PETER J. KONEK, individually

6      and on behalf of all others

7      similarly situated,

8                        Plaintiffs,

9      vs.                      No. 6:08-CV-1145-MLB-KMH

10     ACTAVIS, INC., et al.;

11                       Defendants.

12

13

14     DEPOSITION OF ███████████████ AKEN ON BEHALF OF

15     DEFENDANTS.

16

17                        JULY 27, 2009

18

19

20

21

22

23

24

25

Page 2

```
1                        INDEX

2        QUESTIONS BY:                      PAGE NO.

3        Ms. Smith                              5

4        Mr. Doheny                            90

5        Ms. McIlhenny                        104

6        Ms. Smith                            108

7

8                      EXHIBITS

9

10       EXHIBIT NO.          DESCRIPTION      PAGE MKD.

11       A - Plaintiff Fact Sheet                14

12       B - Class action complaint              17

13       C - Pharmacy records                    28

14       D - Humana records                      29

15       E - Amended Notice of deposition        58

16

17

18

19

20

21

22

23

24

25
```

1         IN THE UNITED STATES DISTRICT COURT

2             DISTRICT OF KANSAS

3             CIVIL DEPARTMENT

4

5     PETER J. KONEK, individually
      and on behalf of all others
6     similarly situated,
               Plaintiffs,
7
     vs.              No. 6:08-CV-1145-MLB-KMH
8
     ACTAVIS, INC., et al.
9               Defendants.

10

11

12

13

14

15         DEPOSITION OF ███████████
     produced, sworn and examined on JULY 27, 2009,
16    between the hours of eight o'clock in the
     forenoon and six o'clock in the afternoon of
17    that day, at the offices of Hutton & Hutton,
     8100 East 22nd Street North, Building 1200,
18    Wichita, Kansas 67226 before Kristi A. Bissell,
     a Certified Shorthand Reporter, Certified Court
19    Reporter within and for the States of Kansas and
     Missouri, in a certain cause now pending in the
20    United States District Court, District of
     Kansas, in re:  Konek v. Actavis, et al.

21

22

23

24

25

```
                                                              Page 4
 1                    APPEARANCES
          For the Plaintiffs:
 2
                  Ms. Deborah B. McIlhenny
 3                HUTTON & HUTTON
                  8100 E. 22nd Street North
 4                Building 1200
                  Wichita, Kansas 67226-2312
 5
          For the Defendant/Mylan:
 6
                  Ms. Holly Pauling Smith
 7                SHOOK HARDY & BACON
                  2555 Grand Boulevard
 8                Kansas City, Missouri 64108
 9
          For the Defendant/Actavis, Inc., Actavis Totowa:
10
                  Mr. John T. Doheny
11                TUCKER ELLIS & WEST
                  1150 Huntington Building
12                925 Euclid Avenue
                  Cleveland, Ohio 44115-1414
13
14        Reported By:
15                Kristi A. Bissell, CSR (KS), CCR (MO)
                  Midwest Litigation Services
16                711 North Eleventh Street
                  St. Louis, Missouri 63104
17                314/644-2191
18
19
20
21
22
23
24
25
```

1    Digitek off the market.  Now, they gave some

2    reasons, but there was nothing that, you know, a

3    person could do unless they had a complete

4    physical a couple weeks or three weeks before

5    that until after that, so -- where are we?

6            So after I got the word on that, the

7    first thing I did is I called my doctor and his

8    nurse answered like she normally does.  I gave

9    her the information.  She told me that she would

10   have another prescription for me within either

11   that evening or the next day.  So I got my other

12   prescription.  I was sitting around the house,

13   just, you know -- I read this thing two or three

14   times and it kind of made me hot that they would

15   have something like that on the market.

16           How something could get away like that.

17   It had a few things in there that possibly could

18   result like in any medicine you take.  There is

19   always some things that help you and there is

20   always some things that might not and I just

21   decided I was going to do something about it.

22   So I contacted a friend of mine and he turned me

23   over to Deb, and that's it.  We got to work.

24       Q.   You mentioned that like any medicine

25   some things can help you and some things cannot?

Page 24

1     misdosed?

2            A.    It wouldn't be on the market.

3            Q.    Do you believe there were ever misdosed

4     pills or tablets on the market; Digitek pills?

5            A.    I have no idea.  I know that they took

6     them off.  There had to have been a reason and

7     the reason that I read was that it would have

8     been an overdose.  That's not good.

9            Q.    And your understanding of the reason

10    they came off the market was that all pills or

11    some pills were inaccurately-dosed?

12           A.    That, I don't know.

13           Q.    Do you agree you need to look at the

14    specific pills to find out whether it was a

15    correct dose or not a correct dose?

16           A.    That would be the only way I know.

17           Q.    If you turn to paragraph 88 it says,

18    "Defendants' misleading and exploitive conduct

19    put Plaintiff and the proposed nationwide Class

20    members at risk for greater physical harm and

21    denied them the material facts as to the unsafe,

22    life-threatening characteristics of defective

23    Digitek in contrast to the medically-beneficial

24    Digitek with FDA-approved appropriate doses."

25    Are you asserting claims of anxiety by taking

Page 25

1      inappropriately-dosed Digitek?

2           A.   I need help.  I'm confused.

3           Q.   Sure.  How can I help?

4           A.   Not you.  Her (indicating).

5                     MS. MCILHENNY:   ██████████   I

6      can't help you with the questions and answers.

7                     THE WITNESS:  You told me that

8      before, haven't you, and I keep trying, don't I?

9                     MS. MCILHENNY:  Yes, you do.

10                    THE WITNESS:  And I will keep

11     trying.

12          A.   I don't understand what you're asking

13     me to tell you the honest truth.

14          Q.   (By Ms. Smith)  Let's step away from

15     this allegation and not worry about how it's

16     worded here and let me ask you, do you believe

17     that because you alleged some Digitek may have

18     been on the market that was misdosed, that

19     people became anxious about the Digitek they

20     took?

21          A.   Possibly, yes.

22          Q.   Did you personally experience any

23     anxiety based on the Digitek you took?

24          A.   No.

25          Q.   And in your lawsuit to the extent some

1      people did experience anxiety, are you seeking
2      to recover in this lawsuit for their anxiety for
3      them?
4          A.   True.
5          Q.   In your Plaintiff Fact Sheet, which
6      we've marked as Exhibit A, you stated that you
7      are not seeking to recover any sort of lost
8      wages?
9          A.   Right.
10         Q.   That means --
11         A.   Would be pretty hard to do.
12         Q.   Well, that will definitely probably cut
13     short my questions.
14         A.   Since I've been retired for about 25
15     years.  It's going to be difficulty.
16         Q.   That was going to be my next question.
17     What was your last job and what did you do
18     there?
19         A.   I was a real estate broker and how long
20     ago has it been since I retired?  I can't
21     remember.
22         Q.   Do you understand that some people who
23     took Digitek may allege that as a result of
24     taking Digitek, they had to miss work and
25     therefore have lost wage claims?

```
1            A.   Right.  I think so.

2            Q.   And in your lawsuit are you seeking on

3       their behalf to recover those claims?

4            A.   For them?

5            Q.   For them.

6            A.   And me, no.

7            Q.   For you you've already answered, I

8       believe, which is you don't currently work, so

9       for them?

10                     THE WITNESS:  I've got a question

11      for you John, I tell you.

12                     MS. MCILHENNY:  Let's save your

13      questions for later.

14                     THE WITNESS:  Okay.

15           Q.   (By Ms. Smith)  Are you seeking in your

16      lawsuit to recover lost wages on behalf of the

17      people in your proposed Class?

18           A.   No.

19           Q.   Do you agree that to the extent

20      somebody in your proposed Class experienced any

21      sort of medical injuries, that I would need to

22      talk to them to understand the specifics of

23      their injuries?

24           A.   Say again.  I think I know what you

25      mean.
```

Page 55

1        Q.    And in between the only other thing you
2    go to a doctor for would be a specific event
3    that would lead you to call him?
4        A.    True.
5        Q.    To your knowledge, did you ever have a
6    physical reaction to Digitek?
7        A.    No.
8        Q.    Do you believe your doctors would have
9    caught it if you had?
10       A.    They probably would.
11       Q.    As far as you're concerned with respect
12   to the Digitek that you took, did it do its job
13   in helping your heart stay in rhythm?
14       A.    I would say that it did.  Unless I took
15   one when they put the wrong one in the package.
16       Q.    Well, do you have any specific
17   recollection of taking --
18       A.    No, I don't.
19       Q.    And do you have any recollection of
20   having any adverse physical --
21       A.    Huh-uh.
22       Q.    -- effect?
23             MS. MCILHENNY:  Please let her
24   finish her questions before you answer.
25       Q.    (By Ms. Smith)  Do you have any

Page 56

1      specific recollection of an instance where you

2      thought you were experiencing physical symptoms

3      because of the Digitek you took?

4           A.   No.

5           Q.   Do you recall that Digitek, when

6      properly administered, serves an important

7      function in keeping your heart working properly?

8           A.   Yes.

9           Q.   Do you believe that you received that

10     benefit from taking Digitek?

11          A.   Yes.

12          Q.   So the pills that you took between

13     December, 2007, and May of 2008, or it may have

14     been late April, 2008, to the best of your

15     knowledge, those pills functioned properly for

16     you?

17          A.   Yeah.

18          Q.   And you didn't suffer any toxicity as a

19     result of taking those pills?

20          A.   No.

21          Q.   And based on a physical inspection of

22     the Digitek that you took as you were taking it,

23     did you ever notice any pills that were

24     noticeably different than other Digitek pills

25     that you had taken?

```
1          A.   Couldn't tell you.
2          Q.   Are you someone who pays close
3     attention to the pills as you take them?
4          A.   No.
5          Q.   Fair to say, then, that you never
6     weighed them?
7          A.   No.
8          Q.   In terms of papers that you might have
9     in possession we talked about the fact that
10    there were going to be some supplemented medical
11    records and entries from your wife's medical
12    journal about your health.  Do you cut out
13    newspaper articles or magazine articles on a
14    routine basis on any topic?
15         A.   No.
16         Q.   So not about Digitek or this
17    litigation?
18         A.   No.
19         Q.   And apart from your wife's journal, are
20    there any other sort of journals, diaries,
21    calendars that might affect your treatment with
22    Digitek?
23         A.   No.
24         Q.   I think now is probably a good time to
25    a short break if that's all right with you.
```

Page 77

```
 1          Q.   Did you take it with a meal?
 2          A.   No.
 3          Q.   And I believe I asked this earlier and
 4     forgive me if I did, but do you have any
 5     recollection of ever forgetting to take a dose?
 6          A.   No, but if I had I would just skip it.
 7          Q.   That was my next question.  Thank you.
 8               Was there ever a time that you recall
 9     accidentally taking or for any reason taking two
10     tablets in one day?
11          A.   No.
12          Q.   And are there any tablets other than
13     the 17 that are in your counsel's possession
14     that you have left over from Digitek?
15          A.   No.
16          Q.   And we've already talked about the fact
17     that you received a couple letters about the
18     recall of Digitek, correct?
19          A.   Correct.
20          Q.   Did you return or attempt to return
21     those remaining pills to anybody?
22          A.   No.
23          Q.   Were you aware through the recall
24     letters that you could have sent them to
25     Stericycle?  You may refer to the documents.
```

Page 78

1          A.   I didn't call them.

2          Q.   And you didn't -- the letter states

3     that -- well, let me just read it into the

4     record.  It states in bold in the second to last

5     paragraph or third to last paragraph, "If you're

6     currently taking Digitek 0.125 milligrams or

7     0.25 milligram tablets or have a supply on hand

8     you should contact Stericycle customer service

9     at 1-800-276-7177.  Representatives will be

10    available Monday through Friday 8 a.m. to 5 p.m.

11    Eastern Standard time.  Additional information

12    about the voluntarily recall can be found at

13    www.actavis.us."  Did I read that correctly?

14         A.   Uh-huh.

15         Q.   And you did not contact Stericycle?

16         A.   No.

17         Q.   Any reason why you didn't?

18         A.   No reason.

19         Q.   And did you visit www.actavis.us?

20         A.   No.

21         Q.   Any reason?

22         A.   No reason.

23         Q.   Were you aware that you could have

24    received a refund through this recall program?

25         A.   Yes.

1      Q.   Any reason why you didn't seek that

2   refund?

3      A.   That's what kind of pissed me off.

4   They want to make me a refund on this thing and

5   I just didn't like that.  You know, tell me to

6   go down where you get your things and we'll just

7   give you a few bucks back.  No.  Huh-uh.  No

8   thanks.

9      Q.   What is your understanding of that

10   you're suing for in this suit beyond your few

11   bucks?

12      A.   I just want this company to get

13   punished.  I don't care.  They shouldn't be

14   doing what they did.  They put a prescription on

15   the market -- just a second, I've got that

16   thing.  They put a prescription on the market

17   that had no business being there.

18      Q.   Is it your understanding that this

19   company, this laboratory is still operating

20   today?

21      A.   I guess they are.  I don't know.  I

22   have no idea.

23      Q.   Is it your understanding that the only

24   consequence of this -- the improper tablet

25   thickness issue is that they gave back money for

1    unused pills and there is nothing else?

2        A.   There was a little deal in here a

3    minute ago that you read.  I've got to find it.

4    That would save a lot of problems here.  I had

5    my finger on it and you kept talking and I took

6    it off.  Here it is.  Think about this.  You

7    read this to me a minute ago.  "Overdose,

8    poisoning may occur in children who accidentally

9    swallow this medicine who receive too much

10   medication.  If overdosed contact" -- I mean,

11   you know, if you can have an overdose of this,

12   my goodness gracious.  That's what would happen

13   if I took one of their pills.

14       Q.   And you took their pills, correct?

15       A.   Well, I don't know whether I took one

16   that they took off the shelf.  I have no idea.

17   You tell me.

18       Q.   Did you experience physical symptoms

19   that made you feel like you had an overdose?

20       A.   No.  I'm just explaining to you that if

21   in fact, I took one, what would happen, if I

22   took an overdose of that.  You just read a piece

23   to me a little a while ago stating that the

24   overdose could do this and it could do that.

25   Well, what would this be if I took a pill almost

Page 87

1    injuries but they are going to not be allowed to

2    recover damages for those because you've limited

3    your request for economic damages?  Would that

4    bother you to make that decision on behalf of

5    other people?

6        A.   I don't think I can answer that.

7        Q.   What do you hope to achieve for the

8    proposed Class?

9        A.   Well, they'll probably want some sort

10   of a reward for going through this.

11       Q.   Who is "they"?

12       A.   The Class.

13       Q.   Okay.

14       A.   Will probably be looking for some sort

15   of reward depending on what I can do and what I

16   can't do.  I feel as though I've got to help

17   them and I'm going to do the best I can for

18   them.

19       Q.   And tell me everything that you hope to

20   personally recover in your lawsuit.

21       A.   I've told you once and I'm telling you

22   again.  I don't care.  I just want to see this

23   company punished for doing what they did and

24   they deserve it.

25       Q.   Have you investigated to see what

1   as a whole?

2       A.   I think so.

3       Q.   Do you have any understanding of how

4   you achieve your duty to the Class?

5       A.   No, I don't.

6       Q.   Do you think that by hiring counsel you

7   do a duty to the Class?

8              MS. SMITH:  Objection.  Form.

9       Q.   (By Ms. McIlhenny)  Do you think that

10   it is your duty if you plan to do something on

11   behalf of an entire group of people who are in a

12   similar situation as you and you wish to bring

13   in the form of a lawsuit, that you have the duty

14   to hire counsel to help you with that job?

15             MS. SMITH:  Objection.  Leading.

16   You can answer after the objection.

17      A.   Yeah, I think.  Better read it again

18   because. . .

19             MS. MCILHENNY:  Can you read that

20   back.

21             (Whereupon, the requested portion

22   of the record was read by the reporter.)

23             MS. SMITH:  Objection.

24   Argumentative, too.  Go ahead.

25      A.   I feel like I should hire counsel.

Page 110

```
 1                    CERTIFICATE

 2          I, Kristi A. Bissell, CSR, CCR, a

 3     Certified Shorthand Reporter of the State of

 4     Kansas, do hereby certify that the witness whose

 5     testimony appears in the foregoing deposition

 6     was duly sworn by me; that the testimony of said

 7     witness was taken by me to the best of my

 8     ability and thereafter reduced to typewriting

 9     under my direction; that I am neither counsel

10     for, related to, nor employed by any of the

11     parties to the action in which this deposition

12     was taken, and further that I am not a relative

13     or employee of any attorney or counsel employed

14     by the parties thereto, nor financially or

15     otherwise interested in the outcome of the

16     action.

17

18

19          Kristi A. Bissell, CSR, CCR

20            Certified Court Reporter

21             For the State of Kansas

22

23

24

25
```

Page 111

```
1              Midwest Litigation Services
                 711 North Eleventh Street
2                St. Louis, Missouri 63101
          Phone (314) 644-2191 * Fax (314) 644-1334
3

4

5       July 28, 2009

6

        Hutton & Hutton
7       Attn:  Debs McIlhenny
        8100 East 22nd Street North
8       Building 1200
        Wichita, Kansas 67226-2312
9

10      RE:  Konek v. Actavis, et al.

11      Dear Ms. McIlhenny:

12      Please find enclosed your copy of the deposition
        of ███████████ taken on July 27, 2009, given in
13      the above-referenced case.  Also enclosed is the
        original signature page and errata sheets.
14
        Please have the witness read your copy of the
15      transcript, indicate any changes and/or
        corrections desired on the errata sheets, and
16      sign the signature page before a notary public.
        Please return the errata sheets and notarized
17      signature page to Ms. Holly Pauling Smith for
        filling prior to trial date.
18
        Thank you for your attention to this matter.
19
        Sincerely,
20

21      Kristi A. Bissell, CSR, CCR
        Enclosures
22      cc:  Ms. Holly Pauling Smith
             Mr. John Doheny
23

24

25
```

Page 112

1

            STATE OF            )
2                               )
            COUNTY OF           )
3

4       I, ▮▮▮▮▮▮▮▮  do hereby certify:
            That I have read the foregoing deposition;
5           That I have made such changes in form and/or
        substance to the within deposition as might be
6       necessary to render the same true and correct;
            That having made such changes thereon, I
7       hereby subscribe my name to the deposition.
            I declare under penalty of perjury that the
8       foregoing is true and correct.

9

10          _____

11  ▮▮▮▮▮▮▮▮▮▮▮

            Executed this ____day of _____,
12
        2009, at _____.
13

14

15

16      Notary Public: _____

17      My Commission Expires: _____

18

        Signature page to:
19
                Ms. Debs McIlhenny
20              Hutton & Hutton
                8100 East 22nd Street North
21              Building 1200
                Wichita, Kansas 67226-2312
22
        ▮▮▮▮▮▮▮▮  JULY 27, 2009
23
        PETER KONEK v. ACTAVIS, et al.
24

25

```
 1                        ERRATA SHEET
 2       RE:  PETER KONEK v. ACTAVIS, et al.
 3       DEPOSITION OF: ███████████████
 4       PG/LN NO.  CORRECTION        REASON FOR CHANGE
 5
            :_____:_____:_____
 6
            :_____:_____:_____
 7
            :_____:_____:_____
 8
            :_____:_____:_____
 9
            :_____:_____:_____
10
            :_____:_____:_____
11
            :_____:_____:_____
12
            :_____:_____:_____
13
            :_____:_____:_____
14
            :_____:_____:_____
15
            :_____:_____:_____
16
            :_____:_____:_____
17
            _____ I certify that I have read my deposition
18       in the above case and I request that no changes
         be made.
19          _____ I certify that I have read my deposition
         in the above case and I request that the above
20       changes be made.
21                        SIGNATURE OF DEPONENT:
22                        _____
         DATED: _____
23
24
25
```