Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

IN RE:   DIGITEK PRODUCT LIABILITY LITIGATION

WILLIAM E. LANGE, ET AL.,        )
      PLAINTIFFS,               )
V.                               ) MDL NO. 1968
ACTAVIS TOTOWA, LLC, ET AL.,     )
      DEFENDANTS.               )

    DEPOSITION OF WILLIAM E. LANGE, PRODUCED, SWORN AND EXAMINED ON THE 6TH DAY OF OCTOBER, 2009, BETWEEN THE HOURS OF 9:00 A.M. AND 10:20 A.M., AT THE OFFICES OF THOMPSON, MILLER & SIMPSON, 600 WEST MAIN STREET, LOUISVILLE, JEFFERSON COUNTY, KENTUCKY, BEFORE LISA MIGLIORE, CERTIFIED COURT REPORTER--KENTUCKY AND NOTARY PUBLIC WITHIN AND FOR THE STATE OF KENTUCKY.

Page 2

```
 1                    ***    ***    ***

 2                          APPEARANCES

 3

 4   FOR THE PLAINTIFFS:
     CARL FRANKOVITCH, ESQ.
 5   MEGHAN JOHNSON CARTER, ESQ.
     MOTLEY RICE
 6   28 BRIDGESIDE BOULEVARD
     MT. PLEASANT, SOUTH CAROLINA   29464
 7

 8   FOR THE DEFENDANTS:
     ERICKA DOWNIE, ESQ.
 9   SHOOK, HARDY & BACON
     2555 GRAND BOULEVARD
10   KANSAS CITY, MISSOURI   64108
     APPEARING ON BEHALF OF MYLAN PHARMACEUTICALS INC.,
11   MYLAN BERTEK PHARMACEUTICALS INC., AND UDL
     LABORATORIES
12
     JOHN A. SIMON, ESQ.
13   TUCKER, ELLIS & WEST
     1150 HUNTINGTON BOULEVARD
14   925 EUCLID AVENUE
     CLEVELAND, OHIO   44115
15   APPEARING ON BEHALF OF ACTAVIS TOTOWA LLC, ACTAVIS
     INC., AND ACTAVIS ELIZABETH LLC
16
     JAMES S. ARNOLD, ESQ.
17   ALLEN GUTHRIE & THOMAS
     P.O. BOX 3394
18   CHARLESTOWN, WEST VIRGINIA   25333
     APPEARING ON BEHALF OF THE WEST VIRGINIA
19   DEFENDANTS

20

21

22

23

24

25
```

William Lange

Page 3

1                    INDEX TO EXAMINATION

2                                                              PAGE

3    EXAMINATION BY MS. DOWNIE                                   4

4    EXAMINATION BY MR. SIMON                                   57

5    CERTIFICATE                                                68

6

7

8                     INDEX TO EXHIBITS

9                           NONE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

William Lange

Page 14

```
 1        Q.    Okay.
 2        A.    Yes.
 3        Q.    So everything else is correct in the
 4   fact sheet other than withdrawing your personal
 5   injury claim; is that correct?
 6        A.    Everything except on the last page, my
 7   cardiologist.
 8        Q.    Okay.
 9        A.    I have a new cardiologist.
10        Q.    Who is your new cardiologist?
11        A.    I seen him twice.  Dr....
12        Q.    He left quite an impression.
13        A.    Yeah, he stopped my a-fib.  I should
14   know his name.  Stidam.
15        Q.    Stidam?
16        A.    S-T-I-D-A-M.
17        Q.    And your previous cardiologist, that was
18   Dr. McMartin; is that correct?
19        A.    Yes, ma'am.
20        Q.    Okay.  All right.  Why is it that you
21   decided to file this lawsuit?
22        A.    Just -- everything that happened when
23   all this -- when all this happened, the trips back
24   and forth to the pharmacy, a trip to the doctor,
25   just everything that went along with it.
```

```
 1        Q.    When you say, "when all of this
 2   happened," can you be more specific with me?
 3        A.    When they -- they sent me a letter
 4   and -- Kroger did, and they said something about
 5   this product had been pulled off the market and I
 6   needed to come -- I went in -- I went to Kroger, and
 7   there was a young girl at the counter.  She didn't
 8   know anything about it.  She asked the pharmacist.
 9   He didn't know about it.  I went home.
10        Two or three days later, I get a phone call
11   from Kroger.  They said, "Bring your pills in, and
12   we'll trade them out for you.  Digitek has been
13   pulled off the market."
14        So I took the pills in.  They gave me some new
15   pills.  I made an appointment with my cardiologist.
16   I went down to him and talked it over, and just that
17   was about the extent of it.
18        Q.    Okay.  The letter that you received from
19   Kroger, do you still have that in your possession?
20        A.    No, I don't.
21        Q.    Do you have any records in your
22   possession regarding your prescription for Digitek?
23        A.    No.
24        Q.    Do you have any bottles that the
25   prescription came in for Digitek?
```

Page 19

```
 1        Q.    Okay.
 2        A.    I didn't think it was any more than
 3   that, and then something about it was about being
 4   taken off the market.
 5        Q.    Okay.  Now, in what manner do you
 6   believe that you've been injured?
 7        A.    I don't think I have any injury at all.
 8        Q.    Okay.  We talked about your personal
 9   injury.
10        Do you have any economic injury that you
11   believe you've suffered?
12        A.    Just -- just gasoline and going to and
13   from and...
14        Q.    So that would be the trip to the
15   pharmacy to return your Digitek and receive your new
16   pills and then the trip to your cardiologist?
17        A.    A couple of trips to the pharmacy and
18   then to the cardiologist.
19        Q.    How many trips to the pharmacy?
20        A.    Two.
21        Q.    Two?
22        A.    I went one time, and they weren't sure
23   and didn't know much about it, and then a couple of
24   days later, I went the second time.
25        Q.    Okay.  I may have misunderstood.  My
```

William Lange

Page 21

```
 1        Q.    What medication were you taking between
 2   the time that you received the letter and the time
 3   that you went back to the pharmacy the second time?
 4        A.    Concerning the Digitek?
 5        Q.    That's right.
 6        A.    One a day.
 7        Q.    Okay.  So you continued to take it until
 8   you went back to the pharmacy the second time?
 9        A.    Yes, ma'am.
10        Q.    Okay.  All right.  So we've talked about
11   the time spent going back and forth to the pharmacy
12   two times and the trip to the cardiologist.
13        A.    Yes.
14        Q.    Are there any other economic damages
15   that you believe you suffered?
16        A.    No.
17        Q.    So, for example, you don't have any lost
18   wage claim; is that correct?
19        A.    No.
20        Q.    And you don't have any claim for
21   out-of-pocket expenses other than the cost of
22   gasoline to and from the pharmacy?
23        A.    And the prescription.
24        Q.    Which prescription?
25        A.    The digoxin or the Digitek, whatever I
```

William Lange

Page 22

```
 1    was taking.
 2         Q.    Okay.
 3         A.    And I had a co-pay on that stuff.
 4         Q.    Okay.  How much was your co-pay?
 5         A.    I think it was a generic, like five
 6    bucks.
 7         Q.    And let's be clear.  Was that for the
 8    Digitek, or was that for the new prescription or
 9    both?
10         A.    I think both were generic.
11         Q.    So your co-pay for a 90-day supply was
12    $5?
13         A.    For 90 days, it was $10.
14         Q.    For 90 days, it was $10.
15               And you had already taken approximately 60
16    tablets out of the 90-day supply and had 30 tablets
17    left?
18         A.    Yes.
19         Q.    Do you recall, when you received the
20    letter from Kroger, if there was any information
21    regarding returning the product and receiving a
22    refund?
23         A.    I'm not sure.  I'm not sure about the
24    letter.  I thought -- I thought it possibly said the
25    same thing that -- that they told me on the phone,
```

Page 23

```
 1    "Bring it in and we will replace it with the new
 2    drug."
 3         Q.    If the letter did state that you were
 4    eligible for a refund, would you have taken
 5    advantage of that?
 6         A.    A refund or a replacement.
 7         Q.    Refund for the Digitek that you had not
 8    taken, your remaining prescription?
 9         A.    Sure, I would have taken a refund
10    because I would have had to apply it to the new
11    prescription.
12         Q.    Now, do you understand that you are a
13    class action representative in this litigation?
14         A.    Yes.
15         Q.    What does that mean?
16         A.    I feel like it means that I represent a
17    group of people who have the same feelings as I do.
18         Q.    And why was it you decided that you
19    would be a class representative rather than just a
20    member of the class?
21         A.    I sort of felt like somebody had to do
22    it, and I sort of volunteered.
23         Q.    Okay.  Have you spoken to any other
24    members of the class --
25         A.    No.
```

Page 42

```
 1        A.     I have no idea.
 2        Q.     You have no idea what their injuries
 3   are -- their alleged injuries?
 4        A.     No.
 5               MS. DOWNIE:  Why don't we take a break.
 6               (A BRIEF RECESS WAS TAKEN.)
 7   BY MS. DOWNIE:
 8        Q.     How far do you live from the pharmacy --
 9   Kroger pharmacy?  How far of a distance is that?
10        A.     About a mile.
11        Q.     Okay.  So what is your home -- you told
12   us what your home address was.
13        A.     Yes.
14        Q.     And is that the same address that you
15   were at at the time that the recall occurred?
16        A.     Yes.
17        Q.     So it was about a mile distance, two
18   miles round trip that you drove?
19        A.     Yes.
20        Q.     Okay.  We've talked about this a little
21   bit before, and I just want to make sure that I'm
22   clear on your testimony.
23               Earlier you testified that you had decided not
24   to pursue your personal injury claims.  I just want
25   to make sure that I'm understanding exactly why you
```

Page 45

```
 1      Q.     When you made that switch, did you have
 2   a -- did you notice anything different in your
 3   condition or how you were feeling?
 4      A.     No.
 5      Q.     Okay.  And the Digitek that you took for
 6   the seven to eight years, was that effective in
 7   treating your condition as far as you knew?
 8      A.     I really don't know.  I'm not a doctor,
 9   so I -- I did well, I guess.
10      Q.     Okay.  Bear with me here.
11      A.     Sure.
12      Q.     I'm going to be skipping around a little
13   bit.
14             What did the Digitek look like; do you recall?
15      A.     Just a very small, flat white pill.
16      Q.     Do you recall if it had any imprinting
17   on it, any letters on it?
18      A.     No.
19      Q.     Do you recall what the digoxin looked
20   like?
21      A.     Very similar.
22      Q.     And, again, do you recall if there was
23   any printing on that?
24      A.     No.
25      Q.     Do you recall if either one of those
```

Page 52

```
 1    resulted from your use of Digitek?"  And I guess I
 2    could have put "none" --
 3         Q.    Uh-huh.
 4         A.    -- which would maybe have been more
 5    appropriate, but I just wrote that down.
 6         Q.    Would "none" have been more appropriate
 7    in your case?
 8         A.    "None" would have been more appropriate,
 9    yes, ma'am.
10         Q.    Okay.  And you've subsequently talked to
11    your attorneys; is that correct?
12         A.    Yes.
13         Q.    So you talked to Dr. McMartin, and you
14    testified that you talked to Mr. Lange as well?
15         A.    Yes.
16               MR. FRANKOVITCH:  And to me.
17    BY MS. DOWNIE:
18         Q.    And to Mr. Frankovitch?
19         A.    Yeah.
20         Q.    And is it correct that you've never been
21    told that you had suffered from digoxin toxicity or
22    elevated digoxin levels?
23         A.    I have not.
24         Q.    What insurer did you have during the
25    time period that you were filling your prescriptions
```

Page 67

```
 1    STATE OF KENTUCKY       )
                              )SS:   ERRATA
 2    COUNTY OF JEFFERSON     )

 3

 4         I HAVE READ THE FOREGOING PAGES, AND THE

 5    STATEMENTS CONTAINED THEREIN (SUBJECT TO

 6    CORRECTIONS, ADDITIONS, AND DELETIONS CONTAINED IN

 7    THE ADDENDUM ANNEXED HERETO, IF ANY), AND THEY ARE

 8    TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

 9

10

11

12

13                         WILLIAM E. LANGE

14

15       SUBSCRIBED AND SWORN BEFORE ME THIS DAY BY

16                  , THIS      DAY OF            2009.

17    MY COMMISSION EXPIRES:

18

19

20                         NOTARY PUBLIC

21

22

23

24

25
```

Page 68

```
 1    COMMONWEALTH OF KENTUCKY )
                               )
 2    COUNTY OF JEFFERSON      )

 3       I, LISA M. MIGLIORE, CCR-KY, A NOTARY PUBLIC,

 4    WITHIN AND FOR THE STATE AT LARGE, DO HEREBY CERTIFY

 5    THAT THE FOREGOING DEPOSITION OF

 6                      WILLIAM E. LANGE

 7    WAS TAKEN BEFORE ME AT THE TIME AND PLACE AND FOR

 8    THE PURPOSE IN THE CAPTION STATED; THAT THE WITNESS

 9    WAS FIRST DULY SWORN TO TELL THE TRUTH, THE WHOLE

10    TRUTH, AND NOTHING BUT THE TRUTH; THAT THE

11    DEPOSITION WAS TAKEN BEFORE ME STENOGRAPHICALLY AND

12    AFTERWARDS TRANSCRIBED UNDER MY DIRECTION; THAT THE

13    FOREGOING IS A FULL, TRUE, AND CORRECT TRANSCRIPT OF

14    THE SAID DEPOSITION SO GIVEN; THAT THERE WAS A

15    REQUEST THAT THE WITNESS READ AND SIGN THE

16    DEPOSITION; THAT THE APPEARANCES WERE AS STATED IN

17    THE CAPTION.

18       I FURTHER CERTIFY THAT I AM NEITHER OF COUNSEL

19    NOR OF KIN TO ANY OF THE PARTIES TO THIS ACTION, AND

20    AM IN NO WAY INTERESTED IN THE OUTCOME OF SAID

21    ACTION.

22       WITNESS MY SIGNATURE THIS 11TH DAY OF OCTOBER,

23    2009.  MY COMMISSION EXPIRES NOVEMBER 10, 2009.

24

25                        NOTARY PUBLIC
                          STATE AT LARGE, KENTUCKY
```

Page 67

1   STATE OF KENTUCKY          )
                               )SS:  ERRATA
2   COUNTY OF JEFFERSON        )

3

4       I HAVE READ THE FOREGOING PAGES, AND THE
5   STATEMENTS CONTAINED THEREIN (SUBJECT TO
6   CORRECTIONS, ADDITIONS, AND DELETIONS CONTAINED IN
7   THE ADDENDUM ANNEXED HERETO, IF ANY), AND THEY ARE
8   TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

9

10

11

12
                                    _____
13                                  WILLIAM E. LANGE

14

15      SUBSCRIBED AND SWORN BEFORE ME THIS DAY BY
16  _William Lange 22nd_, THIS _22nd_ DAY OF _October_ 2009.
17  MY COMMISSION EXPIRES:
18  _8-9-2010_

19
                                    _____
20                                  NOTARY PUBLIC

21

22

23

24

25