# IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
## CIVIL COURT DEPARTMENT
## COURT NO. 14

CHARLES LOOSE, on behalf of )
himself and all others similarly )
situated, )
                Plaintiff )
  )
vs. )       Case No. 01 CV 7392
  )       Pursuant to Chapter 60
MITSUBISHI MOTOR )
MANUFACTURING OF )
AMERICA, INC., et al. )
  )
               Defendants )

## ORDER DENYING CLASS CERTIFICATION

Plaintiff Charles Loose has moved for certification of this action as a national class action pursuant to K.S.A. 60-223(b)(3). Defendants oppose certification. Following discovery on the class certification issue, the court conducted a hearing, at which the parties presented testimony and evidence and fully argued and briefed the issue. The court then took the matter under advisement. Having further considered the motion, the court concludes that this case may not be maintained as a class action as presently proposed by plaintiff.

## THE CLAIMS

Plaintiff's claims arise from his lease of a Mitsubishi Eclipse automobile. Plaintiff alleges that the 17-inch wheel rims supplied on Mitsubishi Eclipse and

CLERK OF DISTRICT COURT
JOHNSON COUNTY, KS

2003 JUL -9 PM 1:56

Eclipse Spider vehicles for model years 1997 through 2002 are defective because they bend or break during normal use. In Count I of the petition, plaintiff alleges that Mitsubishi breached "its express warranties (both written and oral)" because (1) the rims do not perform as represented and (2) Mitsubishi failed to replace bent and/or dented rims at no charge to consumers. In Count II, plaintiff alleges breach of the implied warranty of merchantability in that "the subject rims are defective and not fit for the ordinary purposes for which such rims are installed;" and breach of the implied warranty of fitness for a particular purpose in that (1) "the rims are defective and not fit for the purposes for which they are installed," (2) defendants were "aware of the particular purpose for which the rims are intended," and (3) "plaintiff and the class members relied upon defendants' skill and judgment." In Count III, plaintiff alleges breach of state consumer protection statutes. Plaintiff contends that defendants' misrepresentations and the failure to disclose material facts constitute unlawful, deceptive fraudulent business practices prohibited by state consumer protection statutes.

**FACTUAL BACKGROUND**

On December 14, 1999, Loose leased a Mitsubishi Eclipse from McCarthy Mitsubishi. At the time he leased the vehicle, Loose was told that McCarthy replaced the original wheels with two-piece, ten-spoke wheels. McCarthy

2

employees told Loose that the ten-spoke wheels would give him superior or outstanding handling. Loose was also influenced by "hypnotic" television commercials advertising the Eclipse.

About one year into his lease, Loose began to experience problems with the wheels or rims on the Eclipse. Loose experienced several bent rims.

### First wheel incident

Loose first became aware of a problem in January of 2001. After noticing shimmying at speeds above 60 miles per hour, Loose took the vehicle to a Goodyear dealer where a technician used heat to bend and straighten the wheel. Because he discovered the problem on a Sunday, Loose did not visit or contact the Mitsubishi dealership.

### Second wheel incident

Later that same month, Loose hit a pothole which flattened both of his passenger side tires, bent both passenger side rims and scraped the underbody of his car. Loose had the vehicle towed to the McCarthy dealership, where he was advised that the damage was not covered by his warranty. Loose filed a claim with the City of Kansas City, Missouri and made a claim under his State Farm automobile insurance policy. State Farm reimbursed Loose for the cost to replace the wheels and tires, less his deductible.

**Third wheel incident**

Loose again noticed wheel shimmying.  Loose visited the McCarthy dealership and was advised him that the front wheel on the driver's side was dented and that both driver's side wheels were pitted.  McCarthy advised Loose that the denting was not covered under his warranty, but agreed to replace the pitted wheels.  At that time, a technician discovered that Loose's front passenger's side wheel was also dented.  Because the dented wheel was not covered under his warranty, the technician switched the front and back passenger's side wheels, placing the dented wheel on the back of the vehicle.  Loose was advised that a manager (Colin) would contact him to advise him as to whether the dented back wheel would be replaced.

**Fourth wheel incident**

Shortly thereafter, Colin agreed to replace the back wheel.  However, before Loose could return to the dealership, he again noticed pronounced shimmying and discovered that his front passenger wheel was also dented.  Loose returned to the dealership and demanded that the front passenger wheel also be replaced.  When Colin refused to replace both wheels, Loose requested that McCarthy replace all four rims with the six-spoke rims.  Colin agreed, on condition that Mitsubishi, McCarthy and Loose split the cost of the six-spoke rims three ways.  Alternatively,

4

Colin offered to replace only the rear passenger's side wheel. Loose apparently refused both offers and later replaced the wheels with aftermarket rims.

## THE PROPOSED CLASS

Loose seeks court approval to pursue this action on behalf of "all persons and entities who own or lease or have owned or leased a Mitsubishi Eclipse, model years 1997-2002 (inclusive), and/or Mitsubishi Eclipse Spyder, model years 1997-2002 (inclusive), with 17- inch rims installed thereon as original manufacturer's equipment who have experienced damage to such rims by the date of trial, or anyone who incurred any costs or expenses to inspect, repair or replace the 17-inch rims installed on the subject vehicles by the date of trial." The amended complaint and certification motion set forth allegations in support of the prerequisites for a class action found at K.S.A. 60-223(a) and (b)(3).

## GENERAL CLASS ACTION LAW

A class action is a unique procedural device designed for those peculiar circumstances where factual and legal issues are common to a class. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 155, 72 L. Ed. 2d 7740, 102 S. Ct. 2364 (1982). The principal reason for a class action is the saving in resources that it offers for both the parties and the courts. *Id.*

Faced with a motion to certify, the court must discern what common legal

and factual issues lie at the heart of the dispute. *Sollenbarger v. Mountain States Tel. & Tel. Co.*, 121 F.R.D. 417, 422 (D.N.M. 1988). "The class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469, 57 L. Ed. 2d 351, 98 S. Ct. 2454 (1978) (*quoting Mercantile Nat. Bank v. Langdeau*, 371 U.S. 555, 558, 9 L. Ed. 2d 523, 83 S. Ct. 520 (1963)). At the same time, a court may not inquire into the merits of a suit or to permit any such inquiry to influence its decision on certification. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 40 L. Ed. 2d 723, 94 S. Ct. 2140 (1974). Instead, the court must be content to conduct a "rigorous analysis" of whether the proposed class action satisfies the prerequisites of K.S.A. 60-233. *Falcon* 457 U.S. at 161. See *Edgington v. Dickinson*, 139 F.R.D. 183, 188 (D. Kan. 1991).

**Standards for certification**

The certification of a class action rests in the trial court's sound discretion. *Anderson v. City of Albuquerque*, 690 F. 2d 796, 799 (10th Cir. 1982); *Olenhouse v. Commodity Credit Corp.*, 136 F.R.D. 672, 679 (D. Kan. 1991) *rev'd on other grounds,* 42 F.3d 1560 (1994). The decision necessarily entails weighing the practical and prudential considerations raised by the facts unique to each case. *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988). In making the decision,

6

courts should err in favor of certification since the decision is not set in stone, but is subject to later modification. *Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968), *cert. denied*, 394 U.S. 928, 22 L. Ed. 2d 459, 89 S. Ct. 1194 (1969).

**The statute**

Before an action may be certified as a class action, the representative party, on behalf of all members, must show under a strict burden of proof that all the requirements of K.S.A. 60-223(a) are clearly met. Those requirements are that: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. These prerequisites for maintenance of a class action are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. In addition, to qualify for class treatment under K.S.A. 60-223(b)(3), plaintiff must show that: "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The 60-223(b)(3) requirements are commonly referred to as predominance and superiority. Additionally, K.S.A. 60-223(c)(4) provides that a

7

class may be divided into subclasses, and each class treated as a class. In that case, plaintiff must meet the 60-223(a) and (b)(3) requirements for each subclass.

With the exception of numerosity, defendants challenge each of the 60-223(a) prerequisites, as well as the applicability of 60-223(b)(3). In the interest of efficiency, this discussion deals only with those matters that clearly stand in the way of class certification. The court will treat the commonality prerequisite as being subsumed within the (b)(3) requirement for predominance of common questions. *See Harding v. Tambrands Inc.*, 165 F.R.D. 623, 627 (D. Kan. 1996); 7A Charles A. Wright, et al., Federal Practice and Procedure § 1763 at 227 (1986).

**SUBCLASSES**

In recognition of the substantial hurdle to commonality created by the factual and applicable law variations relating to the putative class members, plaintiff invokes the court's ability to divide the class into subclasses. However, plaintiff has neither specifically defined, nor proposed representative plaintiffs for, any subclass. Although plaintiff proposes generally and repeatedly that this Court may address factual differences and differences in state law through the creation of numerous subclasses, plaintiff has not demonstrated that the vaguely proposed subclasses meet the 60-223 requirements. See plaintiff's Motion for Class Certification at 15, ("For the states whose laws are materially different, the

variations can easily be managed by the Court in a bench trial, by grouping the states by the varying features for the purposes of the Court's analysis of liability.)

In his Reply Brief at page 43, plaintiff argues that ". . .the simple fact that Alabama, Georgia, Mississippi, Montana and South Carolina do not permit class actions under their consumer protection statutes does not mean plaintiff's claim cannot be certified. Rather, . . . this Court can simply subclass the claim." The court is somewhat mystified as to how a subclass can be created of claimants who may not permitted by law to be members of a class. The only other option may be the segregation of the claimants from these states for whom no consumer protection claim may be made. Such an approach hardly protects the interest of these class members.

In his Reply Brief at page 44, plaintiff argues that ". . . this Court can easily manage the differences by simply grouping the two competing camps of 'scienter' requirements." This is not the task of the court. Plaintiff must come forward with the definition of each subclass, its representatives, and the reasons each subclass meets the prerequisites of K.S.A. 60-223(a) and (b). *Dean v. Boeing Co.*, 2003 U.S. Dist. LEXIS 8787, p.45 (D. Kan., April 24, 2003) ("Each subclass must meet all four prerequisites.").

9

Plaintiff bears the burden of establishing appropriate subclasses and demonstrating that each subclass meets the 60-223 requirements. So far, plaintiff has failed to do so. Further, it is difficult to see how clearly defined subclasses can be created and managed, given the multitude of issues and claims. For example, state laws differ on issues of oral and written warranties, privity requirements, scienter, detrimental reliance, and standards for consumer protection claims. A class member may be in one subclass of claimants for whom a claim can be made for oral warranties. But among those in that subclass may be members who come from states that require privity, and others who come from states that have no such requirement. So the members of that subclass must be further divided into a sub-subclass. And for every additional issue, and every permutation of issues, additional subclasses may be needed. At some point, and probably a rather early point, the subclass approach may become unmanageable and the use of a class action suit may no longer be superior to the litigation of individual claims.

**TYPICALITY**

The class representative's claims must be typical of the claims of the members of the putative class. Specifically, the class representative "must be a class member, must have no interest antagonistic to those of the class, and must have suffered the same injury as the other class members." *Edgington v. R.G.*

10

*Dickinson and Co.*, 139 F.R.D. 183, 189 (D. Kan. 1991). Claims do not have to be identical to be typical. *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988). A representative's claims may differ factually and still be typical if they arise from the same events or course of conduct and share the same remedial theories. *Commander Properties Corp. v. Beech Aircraft Corp.*, 164 F.R.D. 529, 535 (D. Kan. 1995).

Here, defendants argue that Loose's claims are not typical because he is subject to defenses that may not be available against the proposed class members. In the first bent-wheel incident, Loose did not notify Mitsubishi, but visited a technician who heated and reshaped the wheel. Defendants argue that this conduct supports a defense of waiver. In the second incident, Loose hit a pothole sufficient to cause scrapes to the underside of the vehicle and flatten two tires. Defendant argues that the fact that Loose filed claims with his insurer and against the city of Kansas City for failing to properly maintain the road is evidence that the damage arose from a road hazard. Defendants also contend that this incident is subject to defenses of accord and satisfaction and waiver. In response to plaintiff's third bent-wheel incident, Mitsubishi agreed to replace the bent wheel. However, plaintiff made replacement contingent upon replacement of an additional bent wheel (4th incident), and alternatively requested that the dealership provide four

11

new six-spoke wheels. Accordingly, in this third incident, defendants assert that they honored the warranty. And in the fourth incident, defendants may argue that plaintiff's counteroffer exceeded his rights under the written vehicle warranty.

Further, there may be an issue as to whether Loose is a member of the class, as currently defined in plaintiff's amended complaint. The class definition includes owners or lessees of the subject Mitsubishi models "with 17-inch rims *installed thereon as original manufacturer's equipment.*" In his deposition, Mr. Loose testified that at the time he leased his Mitsubishi, the wheels or rims on the vehicle had been replaced by the dealership, McCarthy Mitsubishi. Mr. Loose testified:

> "And I don't remember who it was that told me, but someone told me, and I don't recall who it was, that – that the ten spoke two-piece rims that were on the car were not the wheels that came with that car, that they ran out of the stock wheels and put those on. *I never saw the car with the original wheels. They put those on for me.*
>
> "Q.   And when you say 'they put those on there.'
>
> "A.   Mitsubishi, McCarthy.
>
> "Q.   Okay. McCarthy put them on?
>
> "A.   I assume so.
>
> "Q.   Do you know if the car, at the time it was manufactured, what wheels it had on it?

12

"A.    I have no idea."

(Loose Deposition at p.61, Vol 11).

Based upon this testimony, there may be an issue as to whether Loose's leased vehicle had the requisite 17- inch rims installed thereon as original manufacturer's equipment.

Plaintiff emphasizes, and the court agrees, that the mere existence of individualized questions will not defeat class certification.  Moreover, courts have held that factual differences will generally not defeat a finding of typicality. Despite factual variations, a class representative's claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members."  See *Commander v. Beech*, 164 F.R.D. at 537.   However, when the proposed class representative is subject to unique defenses that predictably will become a major focus of litigation, then class certification should be denied.  *Gary Plastic Packaging v. Merrill Lynch, et al.*, 903 F.2d 176, 180 (2nd Cir. 1990), *cert. denied*, 498 U.S. 1025, 112 L. Ed. 2d 667, 111 S. Ct. 675 (1991); *Koos v. First National Bank*, 496 F.2d 1162, 1164 (7th Cir. 1980).  The facts of the instant case raise the danger that plaintiff and counsel will be so preoccupied with the defenses that are unique to the claims of plaintiff Loose that representation of the class will suffer.  *Gary Plastic Packaging*, 903 F.2d at 180; *J.H. Cohn & Co. v. Am.*

13

*Appraisal Assoc., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980). Under these circumstances, if Mitsubishi prevails based on the facts and defenses unique to Loose, absent class members who are in a factually better position than Loose would be unfairly bound by an adverse judgment.

## PREDOMINANCE AND SUPERIORITY

Generally, impediments to certification lie in the more stringent 60-223(b)(3) predominance and superiority requirements. In determining whether the predominance standard is met, courts focus on the issue of liability. If the liability issue is common to the class, common questions are held to predominate over individual ones. *Commander v. Beech*, 164 F.R.D. at 538 (1995). However, predominance requires more than the existence of common questions. Essentially, the court must assess the relationship between common and individual questions to determine whether the central issues of the suit are common to the class. The Tenth Circuit's formulation of this inquiry looks for "a common nucleus of operative facts" and for material variations in the elements of the claims of the class representative and proposed class members. *Esplin v. Hirschi*, 402 F.2d at 99.

With regard to plaintiff's breach of express and implied warranty claims, defendants argue that individual questions of law and fact predominate. One key

14

factual allegation in plaintiff's amended complaint is that defendants breached

express warranties (including the written vehicle warranty), oral representations,

and representations made in advertisements. Under Kansas law, an express

warranty may generally be created by "a[n]y affirmation of fact or promise made

by the seller to the buyer which relates to the goods and becomes part of the basis

of the bargain," or "[a]ny description of the goods which is made part of the basis

of the bargain." K.S.A. 84-2-313; *Transamerica Oil Corp. v. Lynes, Inc.*, 723 F.2d

758, 762 (1983).

In the instant case, Loose testified that his leased Mitsubishi Eclipse was

covered by Mitsubishi's written warranty. (Loose deposition p. 58). Loose further

testified that McCarthy Mitsubishi representatives advised him that he would

receive outstanding or superior handling and performance from the 10-spoke, 17-

inch wheels. (Loose deposition p. 57, 61). This testimony, if believed, may be

sufficient to support a finding of an express warranty. See *Transamerica v. Lynes,*

723 F.2d at 762, *citing Boehm v. Fox*, 473 F.2d 445, 449 (10th Cir. 1973). Loose

also testified that he saw a Mitsubishi Eclipse television commercial which

"influenced" his decision to purchase the Eclipse because the commercial's music

and the vehicles spinning wheels appeared "hypnotic," and the vehicle appeared

fast and sleek. (Loose deposition p. 166-67, 169). Under Kansas law, advertising

may form part of an express warranty. *Scheuler v. Aamco Transmissions, Inc.*, 1 Kan. App. 2d 525, 528, 570 P.2d 48, 51 (1977). Therefore, the written vehicle warranty, oral statements, and advertisements may each be included in Loose's express warranty claim.

Plaintiff has not limited the proposed class to individuals covered by Mitsubishi's written automobile warranty. Nor has he alleged that oral representations were standardized or uniformly made to other proposed class members. Therefore, each proposed class member's express warranty may differ substantially.[1] Since an individual class member's express warranty may include any combination of (1) the written automobile warranty, (2) various advertisements, and (3) other oral representations, if a class is certified the court will be required to conduct a factual inquiry as to the basis of each individual warranty. Compare *McHan v. Grandbouche*, et al., 99 F.R.D. 260, 266-67 (D. Kan. 1983) (denying class action certification of fraud claim based upon oral misrepresentations, because: (1) claim would "require a separate finding of fact for each class member," (2) "oral representations made at different times by the

---

[1] In his reply brief, plaintiff argues that his "claim for breach of express warranty is **based solely upon a single written warranty . . . .**" (Plaintiff's Reply Brief at ___). However, it is unclear whether plaintiff has erroneously made inconsistent claims, or whether plaintiff intends to abandon his oral express warranty claim. Plaintiff has not moved this Court to further amend his petition or the motion for class certification. Obviously, briefs filed in support of a pending motion are not appropriate devices for amending petitions.

defendants raises issues which are personal to each separate plaintiff and are, therefore, uncommon to the class as a whole," and (3) where the initial critical inquiry is what oral representations were made to each member of the prospective class, individual inquiry is necessary).

Additionally, plaintiff acknowledges that privity is required to support an implied warranty claim in Kansas and several other states. See *Limestone Farms, Inc. v. Deere*, 29 Kan. App. 2d 609, 614, 29 P.3d 457 (2001) ("Kansas law is clear: the 'implied warranties of fitness and merchantability are not extended to a remote seller or manufacturer of an allegedly defective product, which is not inherently dangerous, for only economic loss suffered by a buyer who is not in contractual privity with the remote seller or manufacturer.'"). Therefore, class members from these states will have to prove that they are in privity with Mitsubishi in order to assert a breach of implied warranty claim.

**MANAGEABILITY**

The discussion of privity leads to concerns regarding the manageability of the proposed class. To determine whether plaintiff has satisfied K.S.A. 60-223(b)(3), this court must consider whether the proposed class is manageable. Because original and subsequent purchasers are potential class members, a chain-of-title search for each vehicle will be required to determine membership in the

17

class. This creates significant problems in managing this matter as a class action

and raises serious concerns about plaintiff's ability to adequately provide notice to

the class as required by K.S.A. 60-223(c)(2). See *Commander v. Beech*, 164

F.R.D. at 534 (denying certification of class of aircraft owners where class

definition included original as well as subsequent purchasers, and stating that

"[c]lass certification is definitely not appropriate for a class which includes all

owners in the chain of title").

In order to demonstrate the superiority of a national class, plaintiff must

show that this action is manageable in light of state law variations. *Castano v.*

*American Tobacco Company*, 84 F. 3d 734 (5th Cir. 1996) (decertifying class where

district court failed to consider how variations in state law affect predominance and

superiority, and conducted only a cursory review of variations in state law prior to

certifying the class). So far, plaintiff has failed to do so. Moreover, absent a more

specific proposed structure for trial of this case, the court cannot conduct a

thorough superiority analysis. In order to determine whether the sheer number of

cases outweighs manageability problems in this case, plaintiff must present the

court with a trial plan which deals with these issues with specificity.

Finally, the court notes the summary fashion in which plaintiff has addressed

the choice of law issues raised by the numerous jurisdictions represented in this

action. See Plaintiff's Certification Motion at 17 ("This Court may apply Kansas law to the forty states for which there is no reliance requirement and for the remaining ten states, may separately determine whether Plaintiff has presented evidence to establish reliance . . ."). This summary approach is insufficient. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed. 2d 628 (1985) (holding that, in a national class action, for a forum's substantive law to be applied, the forum must have significant contacts with the transaction giving rise to the controversy, so that using the law of the forum is not arbitrary or fundamentally unfair). In light of *Shutts*, plaintiff may not resolve the choice-of-law issues inherent in this case by summarily concluding that Kansas law should apply to most class members. While the forum state's laws may be the same as the laws of the home states of prospective class members so that due process issues are avoided, this cannot be determined in broad-brush fashion. The fact that black letter law in Alabama, Michigan, and Wyoming may appear consistent with Kansas on a particular issue may not withstand closer examination of the nuances of the statutes and case law of those jurisdictions.

**CONCLUSION**

Because plaintiff's express and implied warranty claims will require that the court undertake numerous individual inquiries, plaintiff has failed to demonstrate

19

that common issues predominate over the prospective class members' individual issues. Because plaintiff has not presented a trial plan under which this court may manage the numerous divergent factual and legal issues raised herein, plaintiff has not shown that a class action is superior to other forms of litigation. Plaintiff's failure to sufficiently define the subclasses and identify subclass representatives precludes a more meaningful evaluation of the certification motion. Because plaintiff has not met the K.S.A. 60-223(a) and (b)(3), typicality, predominance, and superiority tests, the court denies plaintiff's motion for certification. In any subsequent filing, at a minimum, plaintiff should meaningfully address choice of law issues including those involved in damage calculations, clarify the substantive claims, and provide a workable trial plan including defined subclasses and subclass representatives.

**IT IS SO ORDERED**


Dated this 9th day of July, 2003.


PATRICK D. McANANY
District Judge

## CERTIFICATE OF MAILING

I certify that a copy of the foregoing Order was placed in the U.S. Mail, postage prepaid, addressed to counsel for each party on this 9th day of July, 2003, the date of the filing of this Order.

Patricia McMillan
Administrative Assistant