# In Re:
*Digitek*

*Richard Dowling*

*December 16, 2009*

*Confidential – Subject to Further Confidentiality Review*

*GOLKOW TECHNOLOGIES, INC.*
*Excellence In Court Reporting For Over 20 Years*
*877.370.3377*
*deps@golkow.com*

Original File rd121609.txt
**Min-U-Script®**

**EXHIBIT D**

Richard Dowling
Confidential – Subject to Further Confidentiality Review

1

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

- - -

IN RE: DIGITEK® PRODUCTS  :  MDL NO.
LIABILITY LITIGATION      :  1968

(This document relates to all cases.)

- - -

CONFIDENTIAL - SUBJECT TO FURTHER

CONFIDENTIALITY REVIEW

- - -

New York, New York
Wednesday, December 16, 2009

- - -

Videotaped Deposition of RICHARD DOWLING, held at Harris Beach PLLC, 100 Wall Street, 24th Floor, on the above date, beginning at 9:46 a.m., before Kimberly A. Overwise, a Certified Realtime Reporter and Notary Public.

- - -

GOLKOW TECHNOLOGIES, INC.
877.370.3377 ph | 917.591.5672 fax
deps@golkow.com

```
 1      APPEARANCES:

 2
                MOTLEY RICE, LLC
 3              BY:  FRED THOMPSON III, ESQ.
                     MEGHAN JOHNSON CARTER, ESQ.
 4              28 Bridgeside Boulevard
                Mt. Pleasant, SC  29464
 5              843-216-9118
                fthompson@motleyrice.com
 6              mjohnson@motleyrice.com
                Counsel for MDL Plaintiffs' Steering
 7              Committee

 8

 9              BLIZZARD, McCARTHY & NABERS, LLP
                BY:  SOFIA BRUERA, ESQ.
10              Lyric Centre Building
                440 Louisiana, Suite 1710
11              Houston, TX  77002-1689
                713-844-3750
12              eblizzard@blizzardlaw.com
                sbruera@blizzardlaw.com
13              Counsel for Plaintiffs

14

15              SANFORD BARLOW, LLP
                BY:  SHELLY A. SANFORD, ESQ.
16              1500 McGowen, Suite 250
                Houston, TX  77004
17              877-441-6677
                ssanford@sanfordbarlow.com
18              Counsel for Plaintiffs and Plaintiffs'
                Steering Committee
19

20
                LOCKS LAW FIRM LLC
21              BY:  JAMES J. PETTIT, ESQ.
                457 Haddonfield Road, Suite 500
22              Cherry Hill, NJ  08002
                856-663-8200
23              jpettit@lockslaw.com
                Counsel for New Jersey Plaintiffs
24
```

Richard Dowling
Confidential – Subject to Further Confidentiality Review

3

```
 1     APPEARANCES:  (Continued)

 2
            TUCKER ELLIS & WEST LLP
 3          BY:  MICHAEL ANDERTON, ESQ.
                 JOHN A. SIMON, ESQ.
 4          1150 Huntington Building
            925 Euclid Avenue
 5          Cleveland, OH  44115-1414
            216-696-2276
 6          michael.anderton@tuckerellis.com
            john.simon@tuckerellis.com
 7          Counsel for Actavis Defendants

 8

 9          SHOOK, HARDY & BACON, LLP
            BY:  HUNTER K. AHERN, ESQ.
10          JPMorgan Chase Tower
            600 Travis Street, Suite 1600
11          Houston, TX  77002-2992
            713-227-8008
12          hahern@shb.com
            Counsel for Mylan Defendants
13

14
            ALLEN GUTHRIE & THOMAS, PLLC
15          BY:  ZACKARY B. MAZEY, ESQ.
            500 Lee Street, East, Suite 800
16          Charleston, WV  25301
            304-720-4226
17          zbmazey@agmtlaw.com
            Counsel for West Virginia Actavis
18          Defendants

19

20
       ALSO PRESENT:
21
       Catherine Smalfus, videographer
22     Golkow Technologies, Inc.

23

24
```

Richard Dowling
Confidential – Subject to Further Confidentiality Review

199

1    digoxin; isn't that right?
2                MR. ANDERTON: Objection.
3                You may answer.
4                THE WITNESS: We had lower
5        punches and dies as indicated in the
6        production batch record available to use
7        for digoxin.
8    BY MR. THOMPSON:
9        Q    Right. But the punches and dies
10   were not reserved solely to use for digoxin,
11   were they?
12       A    The lowers and dies were used
13   interchangeably.
14       Q    Okay. So when you say
15   "interchangeably," you're saying that the
16   lowers and the dies were used for digoxin and
17   for other products as well; isn't that right?
18       A    Yes, they could be used for other
19   products.
20       Q    And what other products were they
21   used for?
22       A    That I don't recall. They would be
23   products with the same die characteristic or
24   size or the same punch or tablet

Richard Dowling
Confidential – Subject to Further Confidentiality Review

201

1       press.  Each time Digitek is
2       manufactured, the Stokes BB2 45 station
3       press is customized using very unique
4       'tooling' - punches and dies - designed
5       solely and used exclusively for the
6       purpose of manufacturing Digitek on that
7       tablet press."
8   BY MR. THOMPSON:
9       Q    Okay.  Now, if I look at the e-mail
10  and I remember our testimony, this paragraph
11  that's in your affidavit is not quite correct,
12  is it?  I mean, didn't you just testify that
13  as of December 18, 2007, that you used the
14  punches and dies interchangeably to make
15  products other than Digitek?
16              MR. ANDERTON:  Objection;
17      mischaracterizes his testimony.
18              You may answer.
19              THE WITNESS:  No.  This
20      statement is correct.  We did use unique
21      tooling.
22  BY MR. THOMPSON:
23      Q    You used punches and dies designed
24  solely and used exclusively for the purpose of

Richard Dowling
Confidential – Subject to Further Confidentiality Review

202

1    manufacturing Digitek; you see what you said?
2        A   Yes.
3        Q   You used the punches and dies as of
4    December 18, 2007, to make tablets other than
5    Digitek; isn't that right?
6            MR. ANDERTON:  Objection;
7       mischaracterizes his testimony.
8            THE WITNESS:  Lowers and dies,
9       yes.
10   BY MR. THOMPSON:
11        Q   Well, now, the punches are the --
12   okay.  When you drafted this affidavit on 22
13   June 2009, did you include in your original
14   affidavit the fact that the punches and dies
15   were used to make multiple products?
16           MR. ANDERTON:  Objection;
17       mischaracterizes the document.
18           THE WITNESS:  I'm not sure what
19       you mean by my original affidavit.  This
20       is the only --
21   BY MR. THOMPSON:
22        Q   I'm saying that the draft -- did you
23   ever have included in this affidavit the fact
24   that the punches and dies were used for

Richard Dowling
Confidential – Subject to Further Confidentiality Review

204

```
 1    make multiple products?
 2               MR. ANDERTON:  And, again, I
 3         object on several bases.  The first is
 4         that question to the extent it
 5         characterizes Exhibit 97 mischaracterizes
 6         the information in Exhibit 97 and the
 7         witness' testimony.
 8               And I also instruct you with
 9         respect to his question about drafts of
10         the affidavit to answer the question only
11         to the extent you can do so without
12         revealing privileged communication.
13    BY MR. THOMPSON:
14         Q    Let's start over again.  Let's make
15    sure we understand each other.  Let's go to
16    the e-mail of December 18, 2007, and we'll
17    work our way back through that one more time.
18               As of December 18, 2007, the punches
19    and dies that were utilized for the making of
20    Digitek were utilized in making multiple
21    products; is that not correct?
22               MR. ANDERTON:  Objection;
23         again, mischaracterizes the document.
24               You may answer.
```

Richard Dowling
Confidential – Subject to Further Confidentiality Review

205

```
 1                 THE WITNESS:  The lower punches
 2        and dies were used for other products,
 3        yes.
 4   BY MR. THOMPSON:
 5        Q    On June 22, 2009, did you not say:
 6   "Each time Digitek is manufactured, the Stokes
 7   BB2 45 station press is customized using very
 8   unique 'tooling' - punches and dies - designed
 9   solely and used exclusively for the purpose of
10   manufacturing Digitek on that tablet press"?
11   Isn't that what your affidavit says?
12        A    Yes, that's what it says.
13        Q    And, in fact, the punches and dies
14   that were used to make Digitek were used to
15   make multiple products; isn't that right?
16                 MR. ANDERTON:  Objection.
17                 You may answer.
18                 THE WITNESS:  I need to define
19        here what I meant by "unique tooling."
20        That punch was a specific -- had a
21        specific description.  It was in a
22        container labeled with a specific number
23        that was referenced in the batch record,
24        the lower punch.  We would pull that
```

Case 2:08-md-01968   Document 318-7   Filed 03/12/10   Page 10 of 14 PageID #: 4262
Richard Dowling
Confidential – Subject to Further Confidentiality Review

206

1            particular container to set this press
2            up.  The same can be said for the die.
3            And they were unique because I defined
4            unique as what was required in that
5            Digitek batch record.
6    BY MR. THOMPSON:
7        Q    Here's what you said in this e-mail:
8    "In the long run, the lower punches and dies
9    will last longer if they are dedicated and not
10   used for multiple products, and we won't have
11   to delay set-ups because the lowers or dies
12   needed are in use and not available."
13            That's what you said on December 18,
14   2007, in your e-mail to Mr. Patel.  Now, the
15   fact is that you wrote Paragraph 14 telling
16   the Court under oath that the punch and the
17   die was unique and used solely to produce
18   Digitek.
19              MR. ANDERTON:  I object --
20   BY MR. THOMPSON:
21       Q    Did you not?
22              MR. ANDERTON:  Fred, I object
23       to your tone with the witness and the
24       fact that you're badgering him.  I also

Richard Dowling
Confidential – Subject to Further Confidentiality Review

207

```
 1          object to the fact that you interrupted
 2          his explanation.  He was trying to give
 3          you testimony about what the term
 4          "tooling" in the affidavit meant.  Now,
 5          if you'd let him explain his definition
 6          of tooling as he started to do --
 7                  MR. THOMPSON:  You can
 8          certainly redirect him because I think
 9          you probably will want to, but I have a
10          right to conduct my examination and I
11          intend to.
12                  MR. ANDERTON:  Well, you're
13          conducting yourself a bit
14          unprofessionally toward the witness when
15          you interrupted his answer.
16     BY MR. THOMPSON:
17          Q    Go ahead and finish your answer.
18          A    Again, my description of unique
19     tooling here is tooling that is designated in
20     the batch record for Digitek, either strength,
21     with a numbered designation of a container
22     which contains that tooling for both the upper
23     punch, lower punch, and the dies, and
24     instructs the operator to pull that tooling to
```

1    set that tablet press for Digitek.  And he
2    must use -- and my meaning of unique is he
3    must use those punches designated in that
4    batch record to set that press for digoxin.
5        Q    And that punch and that die that you
6    are saying are unique are, in fact, used for
7    multiple products?
8              MR. ANDERTON:  Objection.
9    BY MR. THOMPSON:
10       Q    Isn't that right?
11             MR. ANDERTON:  Objection;
12       mischaracterizes his testimony.
13             THE WITNESS:  I'm saying that
14       they use the tooling designated in that
15       batch record and had to assure they were
16       pulling the right descriptive containers
17       of tooling to set that press for Digitek
18       is my meaning here.
19   BY MR. THOMPSON:
20       Q    If there was another product that
21   used the same punch and the same die, you
22   would say that that other product has a unique
23   design because its batch record would call for
24   the same punch and the same die, I mean; isn't

Case 2:08-md-01968   Document 318-7   Filed 03/12/10   Page 13 of 14 PageID #: 4265
Richard Dowling
Confidential – Subject to Further Confidentiality Review

328

```
 1
 2                    CERTIFICATE
 3
 4            I HEREBY CERTIFY that the
 5   witness was duly sworn by me and that the
 6   deposition is a true record of the testimony
 7   given by the witness.
 8            It was requested before
 9   completion of the deposition that the witness,
10   RICHARD DOWLING, have the opportunity to read
11   and sign the deposition transcript.
12
13
14                  [signature: Kimberly A. Overwise]
15           _____
             KIMBERLY A. OVERWISE
16           Certified Realtime Reporter
             Notary Public
17           Dated:  January 4, 2010
18
19            (The foregoing certification of
20   this transcript does not apply to any
21   reproduction of the same by any means, unless
22   under the direct control and/or supervision of
23   the certifying reporter.)
24
```

Richard Dowling
Confidential – Subject to Further Confidentiality Review

329

1                INSTRUCTIONS TO WITNESS
2
3           Please read your deposition over
4     carefully and make any necessary corrections.
5     You should state the reason in the appropriate
6     space on the errata sheet for any corrections
7     that are made.
8           After doing so, please sign the
9     errata sheet and date it.
10          You are signing same subject to the
11    changes you have noted on the errata sheet,
12    which will be attached to your deposition.
13          It is imperative that you return the
14    original errata sheet to the deposing attorney
15    within thirty (30) days of receipt of the
16    deposition transcript by you.  If you fail to
17    do so, the deposition transcript may be deemed
18    to be accurate and may be used in court.
19
20
21
22
23
24