IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: DIGITEK
    PRODUCTS LIABILITY LITIGATION

MDL NO. 1968

--------------------------------------------------

THIS DOCUMENT RELATES TO ALL CASES

**PRETRIAL ORDER #66**
(Re: Motion for Reconsideration of Pretrial Order #60 Denying Class Certification)

Pending is the class representatives' motion for reconsideration of Pretrial Order #60 ("PTO #60")[1]. PTO #60 denied the representatives' request for class certification. I **DENY** the motion.

The representatives want me to reconsider certifying either a nationwide class or four individual state classes. Alternatively, they ask me to vacate PTO #60, "'kick the can down the road' a bit," and postpone a certification decision until the "MDL proceedings have progressed further . . . ."[2] (Memo. in Supp. of Reconsid. at 12).

First, they reassert that New Jersey law applies to a nationwide class of claims seeking economic loss. I cited in my analysis the case that the representatives reference, *In re*

---

[1] This motion is docketed in 2:08-md-1968 at docket 364; in 2:08-cv-01075 at docket 38; in 2:08-cv-01175 at docket 48, in 2:08-cv-1053 at docket 38; in 2:09-cv-00448 at docket 29; in 2:09-cv-01017 at docket 65 and in 2:09-cv-00544 at docket 38.

[2] Both sides are mistaken that *Federal Rule of Civil Procedure* 59(e) governs reconsideration here. *See Bragg v. Robertson*, 183 F.R.D. 494, 495-96 (S.D. W. Va. 1998) ("[T]he Court retains power to amend interlocutory orders to achieve complete justice. 'An interlocutory order is subject to reconsideration at any time prior to entry of a final judgment.' ") (quoting *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991)).

*Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 55, 75 (D.N.J. 2009). I explained at length why a nationwide class was unworkable under these circumstances and at odds with controlling authority. The decision in *Mercedes-Benz* involved far different circumstances. It is also non-binding.

Second, as a fallback, the representatives want me to certify individual state classes for New Jersey, Kentucky, Kansas, West Virginia. They suggest that approach would satisfy *Rule* 23 and not give rise to undue choice of law complexities. I considered this argument previously. The apparent choice-of-law quagmire aside, there are multiple other reasons why the certification of individual state actions will not work:

- *Absence of typicality* -- A "vast gulf . . . will materialize between the claims of the class members and those purporting to represent them." *In re Digitek Products Liability*, No. 2:08-1968, 2010 WL 2102330, at *15 (S.D. W. Va. May 25, 2010);

- *Absence of predomination* -- "These many considerations lead me to find predomination is lacking. That is so even if I confine certification to multiple, single-state class actions using only the law of the particular state certified."[3] *Id.* at *18; and

- *The lack of superiority* -- "Adding a complex certified class to these already complicated state and federal proceedings makes little sense. It might derail the good case management efforts already undertaken." *Id.*

Third, on the issue of damages, I considered the entirety of the record, including some of the unusual and diverse damage elements sought by some class members and representatives. *Rule* 23 requires as much. I understand the representatives concerns about the viability of some of those

---

[3]The representatives also assert that I "unjustifiably found that . . . [they] failed the predominance prong of *Rule* 23(b) . . . [because my concerns] were either hypothetical or could easily be dealt with through the claims administration process." (Mot. to Reconsid. at 2). I devoted over half of the *Rule* 23 analysis to the subject of predomination. I based that discussion on controlling precedent and the undisputed record. For these reasons, I must respectfully disagree with the representatives' characterization.

damage claims.  Those concerns do not warrant a different outcome on the certification question.

The remainder of the representatives' arguments for reconsideration of PTO #60 relate to the timing of the certification ruling and who is responsible for demonstrating the suitability of class treatment.  Their memorandum in support states as follows:

> [Following the damages phase of trial] . . . , *the parties* can . . . build into the claims administration process the procedures necessary to ensure class members recover only the types of damages the Court has found to be appropriate. If the Court is uncomfortable with the potential scope of the class as defined, the more sensible course of action is *for it* to explicitly limit the class to individuals who suffered specific kinds of economic damages rather than to deny class certification wholesale. (emphasis added)

(Memo. in Supp. of Reconsid. at 7).  On timing, certification cannot await the outcome of the trials in this case.  The certification decision should be made "[a]t an early practicable time after a person sues or is sued as a class representative . . . ."  Fed. R. Civ. P. 23(c)(1)(A); *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 365 (4th Cir. 2004).  Second, neither I nor the defendants are positioned to advocate for certification or construct a detailed plan to manage the collective litigation.  *See*, *e.g.*, *Monroe v. City of Charlottesville*, 579 F.3d 380, 384 (4th Cir. 2009); *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006).

Related to their timing concern, the representatives also assert that the class certification process is moving too quickly:

> [I]n ruling on Plaintiffs' motion now, as opposed to after bellwether trials, the Court has unnecessarily rushed the class certification decision-making process when better information will be available soon after the Court holds bellwether trials. By prematurely bringing class certification issues to fore, the Court has potentially imperiled the ability of thousands of class members to participate in any settlement due to the loss of *American Pipe* tolling.

(Memo. in Supp. of Reconsid. at 3).[4] The representatives do not explain why the potential class members have not had sufficient time to make informed judgments about their claims during the time this action has been pending. The schedule for class certification has been set for some time. I provided ample time for discovery. The mandate of *Rule* 23(c)(1)(A) is clear. While the plaintiffs propose I wait and see "what, *if any*, common issues arise during the bellwether trial process," there is no basis for further delay given the present settlement posture of the case. (Memo. in Suppt. at 10 (emphasis added)).

---

[4]The reference to *American Pipe* refers to the Supreme Court's decision in *American Pipe & Construction v. Utah*, 414 U.S. 538 (1974). Our court of appeals has summarized the rule in that case: "[T]he commencement of a class action equitably tolls the running of the statute of limitations for proposed class members' claims until the class action is denied." *Bridges v. Department of Maryland*, 441 F.3d 197, 210 (4th Cir. 2006). The representatives speculate as follows:

> Plaintiffs believe the Court has overlooked the *American Pipe* tolling issues that stem from the Court's denial of class certification at this point. As a practical matter, the Court's denial of class certification is the "death knell" for class members' claims. The dollar amounts at issue are simply too small to justify any individual class member's pursuit of relief from the Court in the absence of a class action. Nevertheless, the Court's denial of class certification will require class members in states recognizing *American Pipe* tolling to evaluate the merits of their individual claims immediately well before the underlying MDL proceedings have advanced enough to allow those class members to make an informed judgment regarding the value of his or her claim. To the extent there are individuals wanting to pursue their economic loss claims, the Court's entry of an order denying class certification now unfairly prejudices them.
>
> Indeed, at the end of Pretrial Order #60, the Court indicated in a footnote that it was denying the present motion for class certification without prejudice to reconsidering a motion brought in the context of settlement under Rule 23(e). The practical difficulty with that approach, however, is that if the litigation proceeds for a significant period of time before settlement negotiations bear fruit, the effect of the Court's present order could be to have unfairly excluded from the litigation potentially thousands of individuals whose claims have expired in the interim because they could no longer reap the benefits of *American Pipe* tolling.

(Memo. in Supp. at 10-11).

Based upon the foregoing discussion, reconsideration is inappropriate. I **DENY** the representatives motion.

The court **DIRECTS** the Clerk to file a copy of this order in 2-08-md-1968 which shall apply to each member Digitek-related case previously transferred to, removed to, or filed in the is district, which includes counsel in all member cases up to and including civil action number 2-10-cv-01205. The court further **DIRECTS** the Clerk to file a copy of this order in each underlying case listed in footnote 1 terminating the motions therein. In cases subsequently filed in this district, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action at the time of filing of the complaint. In cases subsequently removed or transferred to this court, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action upon removal or transfer. It shall be the responsibility of the parties to review and abide by all pretrial orders previously entered by the court. The orders may be accessed through the CM/ECF system or the court's website at www.wvsd.uscourts.gov.

ENTER: October 20, 2010

Joseph R. Goodwin, Chief Judge