IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

IN RE:  DIGITEK PRODUCT LIABILITY
        LITIGATION                                        MDL NO. 1968

THIS DOCUMENT RELATES TO ALL CASES

## DEFENDANTS' REPLY IN SUPPORT OF THEIR
## MOTION FOR ENTRY OF A SCHEDULING ORDER

In light of the dismissal and/or settlement of an overwhelming percentage of cases in this MDL, Defendants moved this Court under Pre-Trial Order No. 38 to enter the proposed Scheduling Order. The goal is to expedite the resolution of the remaining cases by moving forward with those cases that have already been partially worked up and those that have not.

Plaintiffs not only oppose that request but also seek an additional eleven months to conduct more discovery. Doc. 397. They apparently want another chance to name new experts (Doc. 398) and go so far as to ask for remand of cases to transferor courts, as though all pretrial proceedings are complete. Doc. 397.

Plaintiffs' inconsistent goals underscore the continuing need for consolidated proceedings to ensure that the litigation progresses in a just and efficient manner. Given the status of the remaining cases after months and years on the docket and the extensive discovery that has already been conducted, the proposed Scheduling Order is a reasonable means of accomplishing the purposes of this MDL. By opting out of the settlement, Plaintiffs have chosen to go to trial, and now the time has come to prepare for it.

## What Has Been Accomplished Already?

The first Digitek® cases were filed in May, 2008, the month after the product recall. Early case management orders from this MDL were issued in the fall of 2008. PTO 16 set the initial discovery schedule; it was subsequently amended by PTOs 38, 45, and 50. Before June, 2010, Defendants had produced 100,000 documents, totaling more than 1,944,000 pages. Defendants had answered approximately 46 interrogatories. The PSC had deposed 41 company witnesses, 36 from Actavis (three of whom were deposed twice), 4 from Mylan, and 1 from UDL.

In June, 2010, the PSC produced reports from two general causation experts and six general liability experts, pursuant to PTO 50.[1] Lawyers in the first five trial cases produced case-specific expert reports. Defense counsel deposed both general causation experts and four of the general liability experts.[2] From the summer of 2008 to the summer of 2010, the parties spent countless hours and tens of millions of dollars on discovery in this litigation. Plaintiffs now minimize the significant work already accomplished, seek to undo the work of the MDL, and get a second bite at the apple.

## Plaintiffs Cannot Produce New General Causation Experts

Plaintiffs hint, but do not come right out and say, that they want time to find new general liability experts.[3] Granting such a request - if they make it openly - would be unfair and

---

[1] One general liability expert report was subsequently withdrawn.

[2] The last remaining expert, Dr. Bliesner, has yet to be deposed.

[3] Plaintiffs request an additional eleven months for, "[i]n all fairness, ...an opportunity to conduct discovery and investigation..." Doc. 397. They have asked the Court to deny any request to conduct an expedited *Daubert* hearing. Doc. 397. Mr. Ernst wants to take "several depositions of defendants' employees" whose testimony "will be important to my expert before rendering [an] opinion about causation." Doc. 398. He also states that he must "locate and retain a qualified expert...[to] review the thousands of pages of documents generated in the MDL litigation, conduct necessary research, and review all case related depositions, discovery responses, and medical records." *Id.* Taken together with Mr. Ernst's previous statements that the decedent's cardiologist and coroner

inefficient, would undermine the existing pretrial orders, and would contradict the case law. It would further delay the scheduling of a joint *Daubert/Frye* hearing, the progress of case-specific discovery, and the trials of cases in Trial Group One. If not for the settlement, a joint *Daubert/Frye* hearing of Plaintiffs' five experts' evidence would have already taken place in mid-October. Plaintiffs should not unduly benefit from the delay caused by a settlement process in which they are not participating. And while the issue is not before this Court in the current motion, Defendants are compelled to address it now because it would so adversely impact scheduling.

Plaintiffs' opportunity to identify general causation and liability experts has long passed. In fact, Plaintiffs' general discovery ended in June, 2010. This Court's pretrial orders established specific deadlines for general discovery as follows:

| **Type of Discovery** | **Deadline** | **PTO** |
|---|---|---|
| Plaintiffs' general written discovery | June 1, 2009 | 16 |
| Depositions of Defendants' company witnesses | June 1, 2010 | 50 |
| Plaintiffs' general causation expert reports | June 5, 2010 | 50 |
| Plaintiffs' liability expert reports | June 15, 2010 | 50 |

Yet Plaintiffs assert that "the Plaintiffs' Steering Committee has not completed general discovery." Doc. 397. Mr. Ernst states that he "anticipate[s] having to make three or more trips to the east coast to take depositions and conduct investigations. [He] also expect[s] to propound discovery requests on Defendants." Doc. 398. Not only does this suggest that Plaintiffs hope to retain new general causation experts, it states explicitly that they intend to engage in general discovery well beyond the deadlines long established by the pretrial orders. Under the latter two

---

would serve as specific causation experts (*see* Exhibit A), Defendants surmise that Mr. Ernst and his colleagues are looking for new general liability experts.

3

deadlines, Plaintiffs were required to disclose "the identity of any witness [they] may use at trial..." with a written report "if the witness is one retained or specially employed to provide expert testimony..." Fed. R. Civ. Proc. 26(a)(2)(A)-(C); Doc. 286.  These deadlines applied to all Plaintiffs in the MDL and all expired months ago.

The experts identified by the PSC were not limited to the then-existing Trial Group One. Every pretrial order since the beginning of this litigation has made clear that the PSC's work applied to all cases in the MDL.  The deadlines in PTO 50 "relate[] to all cases," as did those in the order it amended.  *See id.;* Doc. 87 ("govern[ing] all cases ...originally filed in this Court or transferred or removed to this Court.  This Order applies to all Plaintiffs in federal actions..."). Under PTO 2, Plaintiffs' Co-Liaison Counsel were to "conduct all discovery in a coordinated and consolidated manner on behalf and for the benefit of all plaintiffs."  Doc. 6.  Likewise, under PTO 4, it was the duty of Plaintiffs' Steering Committee to "[i]nitiate, coordinate and conduct all pretrial discovery on behalf of all plaintiffs who file civil actions which are consolidated with the instant multidistrict litigation" and to coordinate discovery "on behalf of and for the benefit of all plaintiffs."  Doc. 51.

Not only is a request to identify new liability experts inconsistent with the pretrial orders in this MDL, it is inconsistent with Fourth Circuit precedent.  In the Fourth Circuit, parties may not "supplement" their expert discovery merely because it is insufficient to support their claims. *See* Fed. R. Civ. Proc. 26(e); *Sanders v. Laurel Highlands River Tours, Inc.*, 966 F.2d 1444 (Table), 1992 WL 144776 at *3 (4th Cir. 1992).  In a personal injury action, the district court granted summary judgment because the medical evidence failed to show that plaintiff's injury was caused by improper first aid, as he had claimed.  *Sanders*, 1992 WL 144776 at *2-3. *Id.* When plaintiff sought reconsideration with a supplemental expert affidavit, which specifically

4

opined that the lack of first aid was the cause of the injury, the district court refused to give plaintiff a "second bite at the apple" by supplementing the medical expert's affidavit. *Id.* at *3. To do so would substantially diminish the purpose and utility of summary judgment. *Id.* Likewise, allowing new general causation and liability deadlines here, long after they have expired, would diminish the purpose and utility of discovery deadlines in general, and prejudice Defendants, who incurred great expense deposing experts that Plaintiffs apparently no longer intend to produce at trial.

Plaintiffs cannot now produce new general liability experts simply because they are unhappy with the experts they chose or the outcome of their expert discovery. Parties cannot seek a "'second bite at the apple' simply because they desire a different outcome." *Remmey v. PaineWebber Inc.,* 32 F.3d 143, 146 (4th Cir. 1992) (defendant in a securities arbitration could not vacate an arbitral award based on mere disagreement with the result); *see also U.S. Cold Storage, Inc. v. City of Lumberton*, No. 01-2197, 2002 WL 832200, at *5 (4th Cir. May 2, 2002) (plaintiff in breach of contract action could not present evidence of adequate consideration on appeal when plaintiff failed to marshal any evidence in the trial court); *1 Foot 2 Foot Centre for Foot and Ankle Care, P.C. v. Daylong Bus. Solutions, LLC*, 631 F. Supp. 2d 754, 757-58 (E.D. Va. 2009) (defendant could not stay case "pending the outcome of arbitration"; it would give a "dissatisfied" party another opportunity to litigate, thereby rendering…arbitration duplicative and an additional expense of litigation…").

**Production of Case-Specific Expert Reports Is Appropriate At This Stage Of Litigation**

The proposed Scheduling Order seeks to move this litigation forward by establishing prompt dates for disclosure of case-specific testimony. In this regard, it is not very different from the discovery plan the Court authorized in PTO 38, which had its roots in PTO 16. PTO 38

states that each trial group will have its own scheduling order. Doc. 189, PTO 38 at 2. The scheduling orders require Plaintiffs to serve case-specific expert reports no later than 150 days after the discovery initiation date. *Id*. The 36 cases remaining on the docket are essentially the last trial groups. They could logically be divided based on their date of filing, distinguishing between pre- and post-September 1, 2010 filings.

The pre-September 1, 2010 cases have been pending in the MDL for anywhere from five to twenty-six months, during which time Plaintiffs have had access to their own medical records and the benefit of all of the completed general case discovery while their cases were stayed. These Plaintiffs have had sufficient time to investigate their case-specific causation issues. They have had notice of this motion for two months. It is reasonable that, by now, one could "expect that the remaining plaintiffs would have some concrete, factual basis to support their claims." *In re 1994 Exxon Chemical Plant Fire*, 2005 WL 6252312, at *2 (M.D. La. Apr. 7, 12 Case 2:08-md-01968 Document 269 Filed 01/08/10 Page 12 of 18 2005). Under PTO 38, the Plaintiffs in the first trial group served their case-specific expert reports on June 10, 2010. That has already been done in two of the remaining cases, *Klopping* and *Vega*. Two other remaining cases, *McCornack* and *Pane*, were Trial Cases Six and Seven, so almost all of their fact discovery is complete. Producing case-specific causation reports can and should be accomplished by the proposed deadline.[4]

The post-September 1, 2010 cases would have 120 days from the date of filing or transfer to provide case-specific expert reports. This is not substantially less time than Plaintiffs would

---

[4] Defendants have no objection to Mr. Ernst's request that the *McCornack* case not be tried until the fall of 2011. But there is no reason to prolong his expert deadlines beyond the reasonable dates being proposed here, especially in light of the need to coordinate a *Daubert* hearing that will apply to all MDL Plaintiffs on certain issues.

have under PTO 38 (and Defendants would indeed consider 150 days reasonable as well). Considering the extent of fact discovery that has already been completed, Defendants' proposed Scheduling Order does not impose an unreasonable obligation on Plaintiffs.

Rather, it is unreasonable for Plaintiffs to say that their cases should be litigated "as though they were just filed." Doc. 397. Plaintiffs' argument ignores the length of time that most of their cases have lain dormant, and it would permit them to linger on the docket indefinitely. This argument also ignores the extensive discovery that has already taken place and the resolution of the vast majority of cases. Plaintiffs' mischaracterization of the proposed Scheduling Order – as the same request Defendants made for a *Lone Pine* order – exemplifies their misunderstanding of the current posture of this litigation. Defendants are not asking the Court for an extraordinary measure that might preclude Plaintiffs' access to discovery at an early stage of litigation. Defendants request that the Court simply proceed with the procedure iterated in the existing pretrial orders, to which the PSC agreed. Case-specific expert reports are needed now "at the windup of litigation rather than as a threshold sorting tool." *See* Paul D. Rheingold & Laura Pitter, Lone Pine Orders: An Abused Remedy?, American Bar Association Section of Litigation, Mass Torts Litigation Committee, Mass Torts (Fall 2009) (referring to the decision in *In re Vioxx Prod. Liab. Litig.*, 557 F. Supp.2d 741, 744 (E.D. La. 2008) requiring plaintiffs to submit specific causation expert reports after considerable discovery had advanced the litigation). Nor would the Scheduling Order amount to a "merits determination" without the protection offered by mutual discovery. *See* Doc. 397. Plaintiffs have had adequate access to the discovery needed to produce case-specific expert reports identifying defective Digitek® as the cause of Plaintiffs' medical injuries.

Yet Plaintiffs ask the Court to extend the discovery cut-off date for an additional eleven months (Doc. 397), without clarifying what discovery could be conducted in that time or why their case-specific discovery would take so long. As discussed above, Mr. Ernst's declaration suggests that Plaintiffs intend to seek new general causation experts. *See* Doc. 398. This intention illuminates Plaintiffs' request to set the discovery cut-off in September 2011, which would represent a dramatic extension for Mr. Ernst and his colleagues who are responsible for cases in the first trial group. Despite their apparent intention to revisit the common issue of general liability, Plaintiffs also indicate their intention to "have their cases remanded to their home state" since "there are just 35 cases remaining." Doc. 397. This issue is not properly before the Court, having been first raised by Plaintiffs' Opposition. Although it requires full briefing, Defendants discuss it briefly below, without waiving any additional arguments, for the sole purpose of explaining why it is not an impediment to the entry of the proposed Scheduling Order.

### **Remand Of Any MDL Cases Would Be Inappropriate At This Time**

Plaintiffs improperly ask that the Court take "an opportunity to address [remand] motions before entering scheduling orders for the cases." This argument, designed to deny Defendants' motion and any request for an expedited *Daubert* hearing, is hollow. The Third Circuit has examined when remand is appropriate in an opinion that speaks to the posture of this litigation. *See In re Wilson*, 451 F.3d 161 (3d Cir. 2006). There, Plaintiffs argued that there was only "plaintiff-specific" discovery to be completed, but that a substantially increased caseload rendered the MDL court unable to suggest remand for cases that had purportedly completed common discovery. *Id.* at 166. The court rejected plaintiffs' request for a suggestion of remand, noting that, while generic liability discovery had ended, pretrial proceedings on common factual

8

questions had yet to be completed. The court also found that the nature of the ongoing discovery was generally similar from case to case, thereby making the MDL effective in providing consistency and reducing duplication of effort and expense. *Id.* The Judicial Panel on Multidistrict Litigation, placing "great weight" on the MDL court's decision not to suggest remand, also rejected plaintiffs' motion for remand. *Id.* at 167, 168-69. It held that centralization continued to promote the just and efficient conduct of the litigation, noting that the MDL court had "recently overseen the institution of a new settlement process..." *Id.* The Third Circuit denied plaintiffs' mandamus petition, rejecting the argument that MDL treatment is unnecessary when remaining discovery is case-specific. *Id.* at 169, 172. The court held that "the test is not whether proceedings on issues common to all cases have concluded; it is whether the issues overlap... Moreover, the overlapping issues do not necessarily need to touch the petitioners' particular cases." *Id.* at 170.

Overlapping issues persist in this litigation. This Court has already stated that "the scientific and technical issues presented in this litigation... are best addressed through coordinated proceedings..." Doc. 264. Plaintiffs would strip this Court of its jurisdiction before the pretrial proceedings are complete. Plaintiffs' opposition to an expedited *Daubert* hearing would result in piecemeal and potentially inconsistent determinations on Plaintiffs' expert evidence. As such, remand is inappropriate for any case, and Plaintiffs' suggestion that they might file motions at an unknown time in the future should not impede the Court from entering the proposed Scheduling Order to put the remaining cases on track for just and efficient resolution.

## Conclusion

For the foregoing reasons and to aid in the continued, efficient resolution of this litigation, Defendants request that this Court enter the proposed Scheduling Order.

Respectfully submitted,

ALLEN GUTHRIE & THOMAS, PLLC
Rebecca A. Betts, LIAISON COUNSEL
500 Lee Street East, Suite 800
Charleston, West Virginia 25301
Tel: (304) 345-7250
Fax: (304) 345-9941
E-mail: rabetts@agmtlaw.com

*Attorney for Defendants*

SHOOK, HARDY & BACON LLP
Harvey L. Kaplan, CO-LEAD COUNSEL
Madeleine M. McDonough, CO-LEAD COUNSEL
2555 Grand Blvd.
Kansas City, Missouri 64108-2613
Tel: (816) 559-2214
Fax: (816) 421-5547
E-mail: hkaplan@shb.com
E-mail: mmcdonough@shb.com

*Attorneys for Mylan, Inc., Mylan Pharmaceuticals Inc., Mylan Bertek Pharmaceuticals Inc., and UDL Laboratories, Inc.*

TUCKER ELLIS & WEST LLP

By: s/*Matthew P. Moriarty*
   Richard A. Dean (Ohio Bar #0013165),
   CO-LEAD COUNSEL
   Matthew P. Moriarty (WV Bar # 4571;
   Ohio Bar 0028389), CO-LEAD COUNSEL
   Kristen L. Mayer (Ohio Bar #0055505)
   925 Euclid Avenue, Suite 1150
   Cleveland, Ohio 44115-1414
   Tel: (216) 592-5000
   Fax: (216) 592-5009
   E-mail: richard.dean@tuckerellis.com
         matthew.moriarty@tuckerellis.com
         kristen.mayer@tuckerellis.com

*Attorneys for Defendants Actavis Totowa LLC, Actavis Inc., and Actavis Elizabeth LLC*

10

## **CERTIFICATE OF SERVICE**

I hereby certify that, on November 12, 2010, I electronically filed **Defendants Reply in Support of Their Motion for Entry of a Scheduling Order** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

    Respectfully submitted,

    TUCKER ELLIS & WEST LLP

    By: s/*Matthew P. Moriarty*
        Richard A. Dean (Ohio Bar #0013165), CO-LEAD COUNSEL
        Matthew P. Moriarty (WV Bar # 4571; Ohio Bar 0028389), CO-LEAD COUNSEL
        Kristen L. Mayer (Ohio Bar #0055505)
        925 Euclid Avenue, Suite 1150
        Cleveland, Oh 44115-1414
        Tel: (216) 592-5000
        Fax: (216) 592-5009
        E-mail: richard.dean@tuckerellis.com
            matthew.moriarty@tuckerellis.com
            kristen.mayer@tuckerellis.com

*Attorneys for Defendants Actavis Totowa LLC, Actavis Inc., and Actavis Elizabeth LLC*