IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

In Re: DIGITEK                                          MDL NO. 1968
       PRODUCTS LIABILITY LITIGATION

**JOINT PETITION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSE REIMBURSEMENTS RELATING TO COMMON BENEFIT WORK**

The Joint Fee Applicants, led by Co-lead Counsel, submit this, Plaintiffs' Steering Committee's Application for Award of Attorneys' Fees and Expenses, and in support thereof would respectfully show as follows:

                                            I.       BACKGROUND

A.    **Common Fund Work**

This fee petition is filed pursuant to that Settlement Agreement between Plaintiffs[1] and Defendants[2], dated and approved by Judge Goodwin on September 1, 2010. Pursuant to that Court's Order, Plaintiffs' Counsel are entitled to pursue their legal fees and reimbursement of expenses incurred prior to October 15, 2010[3] to be paid directly by Actavis, which will have no effect on the Plaintiffs' common fund[4]. Plaintiffs' Counsel requests this Court enter individual fee awards for each Petitioning firm within its discretion. Taking the sum of all Petitioning firms,

---

[1] As of September 1, 2010, "Plaintiffs" consisted of members of 867 multi-district cases, 2,198 tolled claims and 154 state cases, also referred to as "Program Participants" for those who Opt In to the Settlement Agreement

[2] "Defendants" are Actavis Totowa, LLC, Actavis Elizabeth, LLC and Actavis, Inc. (collectively manufactured Digitek®), Mylan Pharmaceuticals, Inc., Mylan Bertek Pharmaceuticals, Inc., Mylan, Inc. and UDL Laboratories, Inc. (collectively distributed Digitek®) and the thirty-seven pharmacies identified on Appendix A to the Settlement Agreement (collectively sold Digitek®)

[3] Pursuant to Section 11.02 of the Settlement Agreement, the PSC may submit a supplemental application to this Court for fees and expenses resulting from work processing Claims Packages and administration of this Agreement incurred after October 15, 2010. We have included the time up to this point.

[4] See Article XI, Section 11.01 of the September 1, 2010 Settlement Agreement between the parties.

the total number of hours for all petitioners, multiplied by a lodestar within the range of those previously awarded by this Court would result in a total fee award of approximately $4,400,041.75 in attorney's fees[5]. It is contemplated by the settlement agreement that this Court shall award its fees and reimbursable expenses and that such award shall be final as to the Parties and the Petitioning firm. Plaintiffs' Counsel now request attorney's fees and $1,338,260.91 in out-of-pocket expenses[6] as compensation for the resolution of complex, time-consuming and expensive litigation and the establishment of a private settlement program providing substantial benefit[7] to the Program Participants.

This case arises out of the recall concerning the drug Digitek® (Digoxin). Actavis Totowa, LLC, one of the world's largest manufacturers of generic drugs, manufactured the drug Digitek® at its manufacturing plant in Little Falls, New Jersey. On April 25, 2008, Actavis initiated a recall of all Digitek® tablets, noting that "tablets with double the appropriate thickness may have been commercially released." After the recall, plaintiffs began filing lawsuits in state and federal courts throughout the country. These lawsuits claimed, *inter alia*, serious adverse health consequences suffered as a result of the allegedly defective drugs, including instances of death. On August 13, 2008, pursuant to an MDL TRANSFER ORDER from the Judicial Panel on Multidistrict Litigation, all of the federal cases were coordinated and centralized before the MDL Court. Shortly thereafter, this Plaintiffs' Steering Committee was appointed by this

---

[5] The actual expenses incurred by the firms representing the Plaintiffs are contained in individual firm affidavits, attached here to as Exhibit "A" and summarized in a chart which is attached hereto as Exhibit "B" and incorporated herein by reference for all purposes. Neither the attorneys' hours nor expenses contained in the affidavits attached hereto were critiqued or reviewed by co-lead counsel. PSC was relied upon to keep record of and submit their own hours and expenses.

[6] This includes held expenses that were paid by the individual firms and MDL expenses that were paid by the PSC treasury from the $25,000 assessment. The funds disbursed by the PSC treasury are attached hereto as Exhibit "C". There is a small amount of money left in the account which is being used to keep the document platform up for the remaining cases. A detailed accounting will be submitted to the Court upon request. Some MDL expenses were paid by co-lead counsel as the treasury did not have sufficient funds.

[7] Minimum fund of $10,000,000.00 with the potential for an increase in funds of up to $13,000,000.00 based on the number of cases that Opt In as provided on the schedule included in Section 2.02 of the Settlement Agreement.

Honorable Court pursuant to Pretrial Orders #2 and #4.

Pursuant to Pretrial Order #4, dated November 5, 2008, The Honorable Joseph Goodwin appointed Harry F. Bell, Jr., Carl N. Frankovitch, and Fred Thompson, III as co-lead counsel for the plaintiffs, as well as members of the Plaintiffs' Steering Committee ("PSC"). He also appointed the following attorneys as Plaintiffs' Steering Committee members: Andres F. Alonso, Esq.; K. Camp Bailey, Esq.; Robert J. Binstock, Esq.,; Robert Blanchard, Esq.; Lester L. Levy, Esq.; Peter A. Miller, Esq.; Ashley L. Ownby, Esq.; David M. Peterson, Esq.; Frank Mario Pitre, Esq.; Ed Blizzard, Esq.; John R. Climaco, Esq.; C. Brooks Cutter, Esq.; Daniel N. Gallucci, Esq.; G. Erick Rosemond, Esq.; Shelly A. Sanford, Esq.; J. Paul Sizemore, Esq.; Teresa Toriseva, Esq.; Stacy K Hauer, Esq. Scott Wm. Weinstein, Esq.

On May 29, 2009, the Court entered a supplemental Order (PTO#39), adding W. Mark Lanier, Esq., John O'Quinn[8] and James J. Pettit, Esq. as members of the Plaintiffs' Steering Committee, replacing Erick Rosemond with Shamus Mulderig, and removing Teresa Toriseva as a Steering Committee member.

The participation among steering committee members varied but overall the committee members worked tirelessly for the litigation. Members participated on various sub-committees including the Discovery sub-committee, the Science and Expert sub-committee, the Law and Pleading sub-committee, and the Class Action sub-committee. The Co-leads had leadership positions on all of the sub-committees. Other leadership roles on the sub-committees included Ed Blizzard for discovery (depositions) and law and pleading; Pete Miller for discovery (document review and depositions), Science and Experts; Jim Pettit for Discovery (depositions and discovery); and Pat Avery and Scott Weinstein for Class Action.

---

[8] Mr. O'Quinn has since passed away.

After more than two years of intense, complicated and expensive litigation, which raised novel issues of law and involved aggressively contested issues of fact, the PSC successfully negotiated a settlement with the Defendants. While the Defendants have denied any liability in this case, they have agreed to pay a total of $10,000,000.00 to $13,000,000.00 to fund a settlement program ("common fund") which will be used solely to compensate the Program Participants. The settlement represents a successful and efficient resolution of the claims against the Defendants and provides for compensation of all Program Participants. The Defendants have also agreed to pay the expenses for administering the settlement and potentially settling groups of cases that were not filed or tolled at the time of the settlement, further increasing the value of the settlement.

Furthermore, the settlement achieved for the benefit of the Program Participants is due to the skill, perseverance and hard work of Counsel over more than two years and is a great result. The extensive efforts of Counsel[9] in achieving this result include exhaustive factual investigation and discovery, including taking and defending numerous depositions; reviewing and analyzing millions of pages of documents; propounding discovery; researching, drafting and responding to motions; appearing and arguing at numerous hearings; working with, and paying for, numerous experts and consultants on liability, causation and damage issues. In addition to discovery, the PSC drafted the master complaint, negotiated the Plaintiff's fact sheet, housed the document repository and review platform through Crivella West and facilitated communication with all of the plaintiff's counsel through a plaintiff's listserv. Counsel also successfully negotiated the terms of this settlement with defense counsel over the course of an extended period of time.

---

[9] Summary of MDL Counsel's Total Lodestar and Expenses, attached as Exhibit B; Individual PSC and MDL Counsel Affidavits, attached as Exhibit A.

Counsel's efforts have been without compensation of any kind for the past two and one half years. Counsel have expended tens of thousands of hours and nearly a million dollars in expenses on behalf of the Plaintiffs during this period, compensation for which has been wholly contingent upon the result achieved hereunder. The Co-leads have also covered costs of the MDL including expert witness fees when the PSC treasury was unable to cover these expenses. Counsel have traveled around the country attending meetings, depositions, and conferences and have invested a great deal of time briefing the issues, drafting pleadings, motions and agreements and litigating the case before this Court.

Throughout the prosecution of this suit, Counsel has been mindful of their fiduciary duty to the Plaintiffs, working hard to achieve a settlement with substantial benefits to their clients and keeping the Plaintiffs and Program Participants notified on the status of the litigation. As part of the settlement, Actavis has agreed not to appeal an award by this Court of reasonable attorneys' fees and expenses to be paid to Plaintiffs' counsel. As such, counsel for the Plaintiffs now request an award of attorneys' fees in the aggregate amount of $4,400,041.75, representing the value of the time expended by counsel on behalf of, and in pursuit of, this litigation. Counsel for Plaintiff further request reimbursement of their actual, out-of-pocket litigation expenses in the aggregate sum of $1,338,260.91. These fees and expenses are reasonable and proper under the circumstances of the litigation, as well as under the law and the facts of this case and, if granted by this Court, would be paid to Plaintiff's counsel directly by the Actavis defendants rather than being taken from the settlement fund in the form of an assessment.

In view of the risks assumed by Plaintiffs' counsel, the substantial time counsel invested to prosecute this action, the quality of counsel's work, and the substantial benefits bestowed

upon the Program Participants as a result of that effort, Plaintiff's counsel submit that a reasonable attorneys' fees and expenses award in this case is $5,738,302.66.[10]

## B. Crivella West

In May of 2009, Crivella West[11] was retained as a document repository by the Plaintiff Steering Committee for the MDL. Its services included a gigabyte charge for analytic/document hosting services, and a labor hour charged for specialized expert reports. Crivella West ultimately received 99 submissions containing 161,399 documents/3,320,693 pages, which were processed, organized and published into online collaborative kiosks. The original contract assumed 2 million produced pages for a cost of $117,600.00, which if paid over the course of twenty-four (24) months would be $4,900 per month, however, due to the uncertainty of production, the initial fee was set at $3,000.00 per month. The PSC respectfully requests that an amount to be determined by the Court's discretion be awarded to Crivella West for their work.

## C. Class Action Certification

In early 2009, members of the PSC and MDL began pursuing a putative class action suit based only on economic loss claims. This effort continued through late October, 2010, when Plaintiffs' Motion for Reconsideration of Pretrial Order #60 Denying Class Certification was denied.

During the time class certification was being sought, a class committee was formed, the motion for class certification was researched, briefed and drafted, discovery and depositions of class representatives were conducted. While efforts to achieve class certification were ultimately unsuccessful, the work performed by class counsel and the time and money spent pursuing these

---

[10] This amount represents the cumulative hours converted into attorneys' fees and $1,338,260.91 in reimbursed litigation expenses from all PSC firms. Some of the firms did not submit affidavits, however, Harry Bell's office kept records of time and assessments during the course of the litigation. We have included those amounts in Exhibit B.

[11] A detailed listing of Crivella West's contributions are attached as Exhibit "D".

claims did further the litigation as a whole and fair compensation, to be decided by this Court, is sought hereunder.[12] These claims have been submitted separate and apart from the successful common fund work due to the ultimate denial of class certification and the resulting inability to proceed and recover on the class action suit. The amount requested for the class is $340,073.50 in reasonable attorneys' fees and $7,848.39 in expenses.

## II.  DISCUSSION

### A.  **Attorneys' Fees and Costs**

When an attorney creates a fund through his or her services to the benefit of his or her client, the attorney is entitled to a reasonable fee for the value of such services, and the court determines such a fee. Weigand v. Alliance Supply Co., 44 W. Va. 133, 28 S.E. 803 (1897); Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980). The Fourth Circuit has also recognized the right of an attorney who recovers a common fund to be paid for his services from the recovery. In Brzonkala v. Morrison, 272 F.3d 688 (4th Cir. 2001) the Court stated, "[U]nder the 'common-benefit' doctrine, at common law . . . fees may be imposed on a class of individuals not participating in the litigation, that received 'a substantial benefit' from that litigation and would have had to pay the fees had the members of the class themselves brought the suit." *Id.* at 690 – 91 (citing Mills v. Electric Auto-Lite Co., 396 U.S. 375, 393-94 (1970)).

The common fund doctrine "rests on the perception that persons who obtained the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." Van Gemart, *supra,* 444 U.S. at 478. Even in the absence of a specific monetary fund, where the litigation has conferred a substantial benefit on the members of an ascertainable class, an award of fees will be made to spread the cost of counsel proportionally among such

---

[12] See individual PSC and MDL Counsel Affidavits which include fees and expenses incurred pursuing class certification. The hours and expenses are included in the individual affidavits, attached as Exhibit A, and noted in Exhibit B.

members.  Mills*, supra, at* 392.  The common fund doctrine "provides an incentive for private attorneys to vindicate the rights of those people who would not otherwise be able to independently pursue a claim on their own behalf." In re Public Serv. Co. of New Mexico, 1992 WL 278452 (S.D. Cal. 1992).

When deciding on appropriate fee levels in common-fund cases, courts "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." In re Synthroid Marketing Litig.*,* 264 F.3d 712, 718 (7th Cir. 2001) (listing cases). "The market rate for legal fees depends in part on the risk of nonpayment a firm agrees to bear, in part on the quality of performance, in part on the amount of work necessary to resolve the litigation, and in part on the stakes of the case." *Id.* at 721. The reasonableness of attorneys' fees must be assessed *ex ante; i.e.,* at the beginning of the litigation. *See id.* at 718 (District courts must "estimate the terms of the contract that private plaintiffs would have negotiated with their lawyers, had bargaining occurred *at the outset* of the case.") (emphasis added).

Given this logic, if counsel in the typical class action suit are entitled to a reasonable share of the common fund, then in the present matter, it is axiomatical that Plaintiffs' counsel should be entitled to reasonable fees and expenses where the common fund will not be disturbed by their award.  Plaintiffs' counsel, hereunder, have bestowed a substantial common benefit upon the Program Participants; through the efforts of Plaintiffs' counsel, participants will share substantial monetary relief.  These monetary benefits produced by the efforts of Plaintiffs' counsel satisfy the requirements of the "common fund" or "common benefit" doctrines and in the normal case, would entitle Plaintiffs' counsel to an award of attorneys' fees from the settlement. In fact, in the typical case, every dollar the Court awards in attorneys' fees reduces the money

available to benefit those injured and the monetary interests of counsel are in conflict with those they have helped to benefit from the settlement. In the present matter, this conflict does not exist. As such, we respectfully urge this Court to approve an award of reasonable attorneys' fees and expenses[13], to be paid directly by Actavis to Plaintiffs' counsel, which Actavis has agreed not to appeal pursuant to the Settlement Agreement.

### B. Applicable Method for Calculating Fees

In calculating attorneys' fees, courts have generally employed two different methods: the "lodestar" method and the percentage of fund" method. Under the "lodestar" method, a district court identifies a lodestar figure by multiplying the number of hours expended by class counsel by a reasonable hourly rate. The court may then adjust the lodestar figure using a "multiplier" derived from a number of factors, such as the benefit achieved for the class and the complexity of the case. See Jones v. Dominion Resources Serv., Inc. 601 F. Supp. 2d 756, 758 (S.D. WV 2009) (quoting In re Microstrategy, Inc. Sec. Litig, 172 F. Supp. 2d 778, 786 (E.D. Va. 2001)). Under the "percentage of fund" method, the court awards the fee as a percentage of the common fund. Id. The percentage of fund method operates similarly to a contingency fee arrangement in that the attorneys receive a percentage of the final monetary value obtained for their clients.

While an analysis under both the lodestar and percentage of fund methods would consider similar factors, in application, the lodestar approach has "achieved dominance in the federal courts." Citing Syl Pt 1(a), Perdue v. Kenny A., et al., 130 S. Ct. 1662 (2010). "Although imperfect, it has several important virtues: It produces an award that approximates the fee the prevailing attorney would have received for representing a paying client who was billed by the

---

[13]Of the various expenses documented for this Court's review and attached in the Affidavits hereto, the PSC Treasury includes all remaining money from the PSC fund and is being spent on maintaining the document repository for the outstanding cases and covering any outstanding bills. A full accounting is available, but the summary expense chart is attached to Exhibit C hereto.

hour in a comparable case; and it is readily administrable, see, e.g., Burlington v. Dague, 505 U.S. 557, 566, 112 S. Ct. 2638, 120 L. Ed. 2d 449, and "objective," Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40, thereby cabining trial judges' discretion, permitting meaningful judicial review, and producing reasonably predictable results." Id.

The percentage method is often used for calculating attorneys' fees in cases where counsel and the class share a common fund because it better aligns the interests of class counsel and class members by tying the attorneys' award to the overall result achieved rather than the hours expended by the attorneys. Id at 759 (*citing* Task Force on Contingent Fees, 25 REV. LITIG. at 469 ("Like percentage fees for individual plaintiffs, the percentage fee for class actions ties the lawyer's fee directly to the success of the litigation."). Stated differently, the percentage method approaches the attorneys' fee award in a manner that rewards success and penalizes failure. Muhammad v. National City Mortgage, Inc.*,* 2008 WL 5377783 at 7 (S.D.W. Va. December 19, 2008)(slip op.)(*citing* In re Prudential Ins. Co. Am. Sales Litig.*,* 148 F.3d 283, 333 (3d Cir. 1998)).

In the present matter, Plaintiffs' counsel worked efficiently and with skill and dedication with no promise of compensation or knowledge of how such eventual compensation might be paid. In the end, the Defendants agreement not to appeal an award of fees and expenses to Plaintiffs' counsel, and to pay these fees outright, without reducing the amount of the common fund available to the Plaintiffs, makes the *method* by which fees are awarded less important than insuring that a *reasonable* amount of attorneys' fees, as determined by an assessment of the "reasonableness factors," *supra*, is awarded and paid.

As oft applied by this Court in other similar matters, the lodestar method is the proper method to be used in awarding attorneys' fees and expenses in this case. Plaintiffs' counsel have

worked diligently to litigate this matter to a successful resolution for the thousands of Program Participants. In addition, counsel have spent incredible amounts of time accumulating, organizing, and analyzing records from the Defendants regarding manufacturing, testing and quality control, and have further spent many hours working with expert witnesses in order to evaluate the evidence of liability and damages.  Counsel have participated in protracted negotiations in an effort to maximize the recovery for the Program Participants. The result obtained represents a substantial benefit to the Program Participants and counsel deserve to be fairly compensated for their efforts.

C.    **Calculation of Fees under the Lodestar Method**

Based on the current market rate for counsel with like experience and a review of other similar awards before this Court, Plaintiffs' Counsel assert that the hourly rates to be applied to the work performed and documented on Exhibits A and B hereto are as follows:

| | |
|---|---|
| Partner | $325 per hour |
| Associate | $200 per hour |
| Paralegal | $100 per hour |
| Law Clerk | $100 per hour |

When these rates are applied to the hours submitted hereunder, the lodestar value of the work performed by Plaintiffs' counsel comes to a total of $4,400,041.75.[14]

D.    **Reasonableness Determination**

In determining the reasonableness of attorneys' fees under either the percentage or lodestar methods, there are seven factors that are commonly considered by this Court and others, including: (1) the results obtained for the class, (2) the quality, skill and efficiency of the attorneys involved, (3) the complexity and duration of the case, (4) the risk of nonpayment, (5)

---

[14] As previously stated, the PSC requests this Court enter individual fee awards for each Petitioning firm within its discretion. The PSC also reiterates that neither the attorneys' hours nor expenses contained in the affidavits attached hereto were critiqued, scrutinized or reviewed by co-lead counsel.

awards in similar cases, (6) objections, and (7) public policy. Jones at 760. The court must consider these factors, as well as any other factors that are "useful and relevant with respect to the particular facts of the case." In re: Diet Drugs Products Liability Litigation, 2010 U.S. Dist. LEXIS 85551, 41 (2010) (*internal citations omitted*). However, as each case is different, the Court will not apply these factors in a "formulaic way" as one factor may outweigh others. Id at 42. "What is important is that the district court evaluate what class counsel actually did and how it benefitted the class." Id.

In the present matter, a review of the reasonableness factors along with an analysis of the detailed billing records and affidavits that support the lodestar figure being requested, will surely satisfy this Court's inquiry and support approval. The following is a review of the more pertinent factors to be considered in the Court's determination:

**(1)    Results Obtained for the Class**

In the Fourth Circuit, 'the most critical factor in calculating a reasonable fee award is the degree of success obtained.' Jones at 761 (*quoting* McKnight v. Circuit City Stores, Inc., 14 Fed. App'x 147, 149 (4th Cir. 2001)); *see also* In re Cardinal Health, 528 F. Supp. 2d at 764; Fed. R. Civ. P. 23(h) advisory committee notes to 2003 amendments (explaining that the "fundamental focus" in determining a common fund attorneys' fee award "is the result actually achieved for class members."). In this case, the efforts of Plaintiffs' counsel have led to the creation of an estimated $10-13 million common fund that will be used to compensate Program Participants based on the criteria set forth in the Settlement Agreement. This fund is further enhanced by the administration costs of the settlement and the additional settlements that are still being negotiated. Counsel have obtained a significant and valuable benefit for the class and should be

compensated for it. This case has unique and difficult issues that made resolution of all cases through a bellwether trial schedule difficult and potentially unsuccessful.

### (2) Quality, Skill and Efficiency of the Attorneys Involved

Plaintiffs' counsel are experienced and successful trial lawyers, many of whom have been heavily involved in prior or contemporaneous multi district litigation, particularly in the area of defective prescription medications and medical devices. In the present matter, not only did Plaintiffs' counsel bring significant experience to their clients, but their participation in countless negotiations, including settlement conferences, indicates that they thoroughly advocated on behalf of their clients and the Plaintiffs at large. Furthermore, the achievement of a settlement within a few years of commencing the litigation demonstrates both efficiency and skill of counsel. The individual qualifications of counsel are included in their attached affidavits. The PSC boasts qualified lawyers that have leadership positions in numerous MDL's and extensive mass tort experience. Plaintiffs' counsel were highly qualified, skilled and efficient and should therefore be awarded reasonable attorneys' fees.

### (3) Complexity and Duration of the Case

In evaluating the complexity and duration of the litigation, courts consider not only the time between filing the complaint and reaching settlement, but also the amount of motions practice prior to settlement and the amount and nature of discovery. Jones at 761 (*citing* In re Cendant, 243 F.3d 722, 735-736 (3d Cir. 2001). The duration of this litigation was extremely fast paced. It was on a more condensed schedule than typical of other large multidistrict litigation and was equally complex. Unlike typical pharmaceutical cases that focus on failure to warn claims, this litigation also involved complex and scientific manufacturing issues. This required the retention and preparation of experts that have not been involved in litigation before. The

discovery in this case was intense and at times, overwhelming. The Defendants produced millions of pages of documents in a short period of time and withheld or redacted many documents that Plaintiffs considered critical. This included information related to other products manufactured at Actavis' facilities using the same personnel and equipment, and the overlapping departments. Plaintiffs' counsel reviewed the numerous documents in this case and had to fight for access to much of that information including information related to the quality department at the plant. Motions practice in this case was also extensive as was the fight for class certification. The motions included responses to motions to dismiss, and motions to compel. Many issues that would have necessitated motions practice were painstakingly negotiated with Defense counsel to excessive court filings. Moreover, negotiations in this case were time-intensive and required extensive time, skill and attention to detail and the settlement in this case is a testament to the professional efforts of counsel. While this case certainly could have been more complex or drawn out, Plaintiffs' counsel were tireless and zealous in their efforts and the outcome reflects that effort.

**(4)     Risk of Nonpayment**

It goes without saying that attorneys participating in multi district litigation bear substantial risks that the litigation will not result in any financial gain for either counsel or their clients. In determining the reasonableness of an attorneys' fee award, courts consider the relative risk involved in litigating the specific matter compared to the general risks incurred by attorneys taking on class actions on a contingency basis. Kay Co. et al. v. Equitable Production Co., 2010 U.S. Dist. LEXIS 118256, 21 (*citing* In re Cardinal Health, *supra*, at 766). In the present matter, substantial risks were taken by Plaintiffs' counsel in making a financial investment in this matter while facing an uphill factual battle. Counsel had to prove that Actavis manufactured the

Digitek® tablets, which tablets reached the public and thereafter injured the Plaintiffs. Additionally, counsel had to prove that Defendant departed from the FDA's Good Manufacturing Practice in the manufacture of the tablets, and determine whether Defendant attempted to conceal from consumers, physicians and regulators information regarding manufacturing deficiencies. In the present matter, it was not until the parties entered into settlement negotiations that the risk of nonpayment began to dissipate. During the two years of litigation prior to talks of settlement, Plaintiffs' counsel valiantly represented their clients and invested substantial time and money with no promise of payment, and in light of the high risk involved with pursuing this case.

**(5)     Public Policy**

In an effort to avoid the public perception that Plaintiffs' counsel are requesting excessive fees, Plaintiffs' counsel remain sensitive and vigilant to ensuring the fees requested herein are in fact reasonable and fair. As evidenced by the record in this matter, Plaintiffs' counsel have invested a great amount of time and money in prosecuting this action and have done so efficiently and with a great amount of skill and experience. They have committed the human and financial resources necessary to obtain a successful result for the Plaintiffs, and have done so at the cost of working on other billable matters.

Without negating the public policy concerns involved with awarding excessive attorney fees, this Court must also consider the policy concerns of continuing to encourage worthy counsel to accept these types of engagements. "Attorneys' fees must be sufficient to ensure that competent, experienced counsel will be encouraged to undertake the often risky and arduous task of representing a class . . . ." <u>Kay Co.</u> at 31, *supra*. In the present matter, this Court must delicately balance pleasing the public with a non-excessive award of attorneys' fees, with fairly

compensating Plaintiffs' counsel for the hard work and risky investment involved in this matter. Plaintiffs' counsel contends that the requested award hereunder meets this balance and is both fair and well-earned.

### III.    CONCLUSION

Plaintiffs' counsel undertook representation in this case on a strict contingency basis, with no guarantee of payment whatsoever. They have expended substantial costs in prosecuting this matter, also with no guarantee of reimbursement. They have used decades worth of skill and experience to bring an efficient and commendable result to those they represented in a reasonable amount of time. Additionally, substantial effort was committed to prosecuting the claims of the class members, involving many hours of lawyer time which could have been devoted to other matters. These factors all dictate in favor of a reasonable fee being awarded. Counsel for Plaintiffs deserve to be compensated for their expertise, diligence, and perseverance at an hourly rate commensurate with their experience.

As set out by the affidavits of individual counsel, and applying the criteria set out above, Plaintiffs pray that this Court enter its order setting out individual fee awards for each petitioning firm, granting cost reimbursement to those firms for amounts incurred in common benefit work. All of the above evidence demonstrates that attorneys' fees and reimbursed litigation expenses is both warranted and reasonable. It further demonstrates that a fee award is reasonably necessary to encourage experienced lawyers to take on such risky litigation to the benefit of the community whose rights are being vindicated.

For the foregoing reasons, Plaintiffs' Counsel respectfully urge the Court to award the MDL lawyers attorneys' fees and expenses, as well as an award to Crivella West and the Class Action group to be paid by the Actavis defendants.

On Behalf of the Plaintiffs' Steering Committee

s/Fred Thompson, III Esq._____
Fred Thompson, III, Esq.
Motley Rice, LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
*Co- Lead Counsel*

Carl N. Frankovitch, Esq.
Frankovitch, Anetakis, Colantonio & Simon
337 Penco Road
Weirton, WV 26062
*Co- Lead Counsel*

Harry F. Bell, Jr., Esq.
Bell Law Firm, PLLC
P. O. Box 1723
Charleston, WV 25326
*Co-Lead and Liaison Counsel*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**In Re: DIGITEK PRODUCTS LIABILITY LITIGATION** **MDL NO. 1968**

## CERTIFICATE OF SERVICE

I, Fred Thompson, hereby certify that on February 15, 2011, I electronically filed the foregoing Joint Petition for an Award of Attorneys' Fees and Expense Reimbursements Relating to Common Benefit Work with the Clerk of the Court using the CM/ECF system which will send notification of such filing to following CM/ECF participants. A paper copy was also served on the Court by Harry F. Bell, Jr.

s/Fred Thompson, III Esq.________
Fred Thompson, III, Esq.
Motley Rice, LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
***Co- Lead Counsel***