```
 1                IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
 2                          AT CHARLESTON

 3                    TRANSCRIPT OF PROCEEDINGS

 4


 5
       ----------------------------x
 6                                  :
       IN RE:  DIGITEK PRODUCT      :      CIVIL ACTION
 7     LIABILITY LITIGATION         :      NO. 2:08-MD-01968
                                    :
 8                                  :      November 17, 2010
       ----------------------------x
 9


10
                    MANDATORY DOCKET CONFERENCE
11


12
             BEFORE THE HONORABLE JOSEPH R. GOODWIN
13              CHIEF UNITED STATES DISTRICT JUDGE

14


15


16
       APPEARANCES:
17
       For the Plaintiffs:        MR. FRED THOMPSON, III
18                                MS. MEGHAN JOHNSON CARTER
                                  Motley Rice, LLC
19                                P.O. Box 1792
                                  Mt. Pleasant, SC  29464
20
                                  MR. CARL N. FRANKOVITCH
21                                Frankovitch, Anetakis,
                                  Colantonio & Simon
22                                337 Penco Road
                                  Weirton, WV  26062
23
                                  MR. HARRY F. BELL, JR.
24                                Bell & Bands PLLC
                                  P.O. Box 1723
25                                Charleston, WV  25326
```

```
 1    APPEARANCES (Continued):

 2

 3    For the Plaintiffs:          MR. MICHAEL W. KERENSKY
                                   Williamson & Rusnak
 4                                 4310 Yoakum Boulevard
                                   Houston, TX  77006
 5

 6                                 MR. BARRY M. HILL
                                   Anapol, Schwartz, Weiss, Cohan,
 7                                 Feldman & Smalley
                                   89 12th Street
 8                                 Wheeling, WV  26003

 9

10                                 MR. BILL COATS
                                   Brett & Coats
11                                 1310 10th Street, Suite 104
                                   P.O. Box 4196
12                                 Bellingham, WA  98225-4447

13

14                                 MR. TERRY J. KILPATRICK
                                   Ernst & Mattison
15                                 1020 Palm Street
                                   San Luis Obispo, CA  93401-3221
16

17

18    For the Defendants:         MR. MATTHEW P. MORIARTY
                                   Tucker, Ellis & West LLP
19                                 1150 Huntington Building
                                   925 Euclid Avenue
20                                 Cleveland, Ohio  44115

21

22                                 MS. REBECCA A. BETTS
                                   Allen, Guthrie & Thomas
23                                 P.O. Box 3394
                                   Charleston, WV  25333-3394
24

25
```

```
 1    APPEARANCES (Continued):

 2

 3    For the Defendants:          MS. MADELEINE M. MCDONOUGH
                                   Shook, Hardy & Bacon
 4                                 2555 Grand Boulevard
                                   Kansas City, MO  64108
 5

 6

 7    Present Telephonically:      MS. HADLEY HUCHTON
                                   Hicks & Lucky
 8                                 2 Civic Center Plaza, 9th Floor
                                   El Paso, TX  79912
 9

10

11                                 MR. RICHARD DEAN
                                   Tucker, Ellis & West
12                                 1150 Huntington Building
                                   925 Euclid Avenue
13                                 Cleveland, OH  44115

14

15

16

17

18

19

20

21

22    Court Reporter:             Lisa A. Cook, RPR-RMR-CRR-FCRR

23

      Proceedings recorded by mechanical stenography; transcript
24    produced by computer.

25
```

1              P R O C E E D I N G S

2              JUDGE GOODWIN:  Good morning.

3              THE CLERK:  The matter before the Court is *In Re:*

4    *Digitek Product Liability Litigation*, MDL Number 1968.

5              CHIEF JUDGE GOODWIN:  Since this is a mandatory

6    docket hearing for counsel remaining in MDL 1968, I would

7    like for each attorney present to note their appearance for

8    the record, and also if you would state your name and the

9    party you represent.  We'll start with those on the phone

10   and then continue to the defense table and then to the

11   plaintiffs.

12      After those of you on the phone note your appearance,

13   please hit the mute button so we cannot hear what's going on

14   on your end.  As I say, everybody should identify themselves

15   to the court reporter, especially for the benefit of those

16   on the phone.

17      Let's start right now with whomever is on the phone.

18              MR. DEAN:  Good morning, Your Honor.  This is

19   Richard Dean from Tucker, Ellis & West representing the

20   Actavis defendants.

21              CHIEF JUDGE GOODWIN:  Thank you, sir.

22              MS. HUCHTON:  Hadley Huchton and I represent

23   plaintiff Edward Elias individually as a wrongful death

24   beneficiary.

25              CHIEF JUDGE GOODWIN:  All right.  Is -- you also

```
 1    have a motion to withdraw pending?  Is that right?

 2              MS. HUCHTON:  Yes, sir, I do.

 3              CHIEF JUDGE GOODWIN:  All right.  We'll take that

 4    up later.

 5              MS. HUCHTON:  Thank you.

 6              CHIEF JUDGE GOODWIN:  Who else is on the phone?

 7              THE CLERK:  That's it, Your Honor.

 8              CHIEF JUDGE GOODWIN:  Is that it?  All right.

 9        Let's start at defense table.

10              MS. BETTS:  Rebecca Betts on behalf of the Actavis

11    defendants, Your Honor.

12              MS. MCDONOUGH:  Madeleine McDonough on behalf of

13    the Mylan defendants.

14              MR. MORIARTY:  Matthew Moriarty on behalf of the

15    Actavis defendants.

16              MR. FRANKOVITCH:  Carl Frankovitch with the PSC.

17              MR. BELL:  Harry Bell with the PSC.

18              MS. CARTER:  Meghan Carter with the PSC and also

19    on behalf of the Watts firm.

20              MR. KERENSKY:  Your Honor, I'm Mike Kerensky.  I'm

21    here for Scottie Vega individually as the next friend of

22    Christopher Vega, beneficiaries of Mimi Rivera-Vega out of

23    Houston.

24              MR. KILPATRICK:  Terry Kilpatrick, Your Honor, on

25    behalf of the McCornacks.
```

1          MR. COATS:  Bill Coats, Your Honor, on behalf of

2    the estate of Frances Lambert.

3          MR. HILL:  Barry Hill for Edmond Kazzi.

4          CHIEF JUDGE GOODWIN:  All right.  Thank you very

5    much.

6      We're here today to address matters concerning the

7    continuing prosecution of the cases remaining in the MDL

8    after the overwhelming bulk of the cases have been settled.

9      It's my goal to bring all of these cases to a speedy

10   and final resolution.  This Court's entry of a stay to

11   permit finalization of a settlement agreement which, as I

12   said, resolved the bulk of the MDL cases and many state

13   cases was not intended, nor will it be permitted, to be an

14   excuse to delay the pre-trial proceedings previously

15   contemplated by the parties and ordered by the Court.

16     The train has simply paused for this settlement, this

17   settlement station as it were.  For those still on the

18   train, the route and destination has not changed.  And

19   absent any good reason, the personnel will not change.

20     The defendant submitted a proposed agenda for today to

21   the Court.  Plaintiffs' counsel offered no further

22   suggestions.  So, I'll address the matters in the order that

23   they were submitted, and I'll certainly provide adequate

24   time at the end of the hearing for any counsel to bring up

25   further matters that should be addressed.

1          The first matter listed was case counts.  Someone is

2    going to tell me the number of cases we have remaining in

3    this MDL, as well as the various states.

4          And, Mr. Moriarty, I would nominate you as a likely

5    candidate for that.

6               MR. MORIARTY:  Thank you, Your Honor.

7          As of today, there should be 35 cases actually in the

8    MDL.  There were two recently filed Florida cases that will

9    be on a conditional transfer order in the very near future.

10   So, the top would be 37.

11         And then as we mentioned in chambers, there have been

12   some discussions about the, the cases that mostly affect the

13   Watts firm that fell sort of in a procedural morass between

14   September 1st and October 15th.  We believe we have a

15   resolution of that.

16         So, most likely, when the dust settles we'll have 16

17   cases.  And that's going to account for the probable

18   dismissals of the *Elias*, I believe is how it's pronounced,

19   and *Kazzi* cases.  So, we'll probably be down to about 16

20   cases.  If you want to know what's happening in the states,

21   I'm happy to talk about that as well.

22              CHIEF JUDGE GOODWIN:  Just give me a brief rundown

23   on that.  I'm cognizant of what's going on pretty much in

24   Pennsylvania.  Tell me about New Jersey and Texas in

25   particular, and I think there's a case in Florida and one

1   out west somewhere.

2          MR. MORIARTY:  Well, there are a total of 38 cases

3   in the states.  We think once dismissals and certain opt-ins

4   that have been negotiated are done, there will be about 18.

5   There are seven in the State of West Virginia before Judge

6   Moats.  There is likely to be one left in New Jersey on

7   which Judge Martinotti has invited a motion to dismiss.

8   There is likely to be one left in Philadelphia.  And there

9   are likely to be three in Texas.

10          CHIEF JUDGE GOODWIN:  Well, based on those numbers

11   and knowing we were whatever, a thousand cases, I'm very

12   pleased with the efforts of the PSC and the defense counsel

13   to this point.  I hope my further orders today don't create

14   the bad feeling to replace all the good things that have

15   gone before, but I do intend to move things forward.

16       The second matter on the list was the disputed opt-ins.

17   I understand from your statement just now that most of those

18   have been resolved.

19          MR. MORIARTY:  We believe so, Your Honor.

20          CHIEF JUDGE GOODWIN:  The third item was lifting

21   the stay currently in place in the MDL litigation.  As

22   stated in my Pre-Trial Order Number 67, the stay imposed by

23   Pre-Trial Order 62 which stayed all discovery, motion

24   practice, and hearings should continue until the further

25   order of the Court.

1         When we get to the discussion of the remaining cases, I

2    think we can deal with that.  Lifting the stay will

3    obviously be covered in the order setting the new case

4    management order.

5         Do counsel feel like we need to talk any further about

6    that, the lifting of the stay, before we discuss it again

7    when we talk about the case management order?

8              MR. MORIARTY:  Not from our side, Your Honor.

9              CHIEF JUDGE GOODWIN:  The fourth item on the

10   agenda, the organization, composition, and duties of the PSC

11   with regard to the implementation of the settlement program

12   and opt-out litigation cases going forward.

13        At our last conference, that was discussed and I made

14   note then that I wanted to maintain a degree of continuity.

15   I'm sure that the lawyers who have individual cases that

16   have opted out would recognize that it's necessary to keep

17   the PSC on board for the purpose of providing you the kind

18   of information that they have gathered.

19        And although I know all of you have kept closely

20   abreast of all of the developments, it will be good to have

21   the PSC still involved.  Nevertheless, I would ask current

22   members of the PSC if they have any suggestions about the

23   continuing role or composition of the PSC.

24             MR. FRANKOVITCH:  Nothing specific, Your Honor,

25   except that it probably would -- obviously, we would have to

1   remain involved as far as the settlement structure is

2   concerned and in providing the assistance that we develop as

3   far as the general discovery.  The case specific discovery

4   is, is going to be something I guess you'll address

5   separately in the scheduling order.  And it may be,

6   depending on how, how extensive the number of cases are,

7   that they would want to participate in some fashion with

8   PSC.

9           CHIEF JUDGE GOODWIN:  All right.  I think it looks

10   to me like we're down to a very manageable number of cases

11   and I'm not so sure that I won't be able to deal with

12   matters by having all the, all the lawyers come in.  It's

13   going to be relatively easy at this point.  I'm not going to

14   have a stadium full.  We'll talk about that.

15       Now, the key point of this hearing is to address the

16   fifth agenda, a case management order.  Before I get to

17   that, I want to say that there are a few lawyers who have

18   not contacted the Court who have cases and have failed to

19   appear today.  At the end of the hearing I'll note their

20   names and the cases.  I can do it now.

21       Isaac Braddock and Neil Newson in the *Spargifiore* case;

22   Christine Lustgarten and Hugh Lambert in the *Sheahan* case;

23   Pete Miller in the *Sheahan* case and the *Mosely* case;

24   Christopher Kirchmer in the *Atkinson* case; Karen Menzies,

25   Kevin Calgnie, and Mark Robinson in the *Platzner* case.

1      Anybody appear on behalf of any of those lawyers or

2  their cases?

3      (No Response)

4      CHIEF JUDGE GOODWIN:  At the conclusion of today's

5  hearing, the Court will enter an order to show cause why

6  each of those lawyers should not be sanctioned $500 for

7  failure to appear at a mandatory hearing.  Sanctions will go

8  up in the future.

9      All right, let's get back to the management order.  I,

10  I know that discovery is a little further along in a couple

11  of the remaining cases because they were on the list of the

12  trial pool cases previously established.

13      I further understand there's a need to finish the PSC's

14  general liability expert depositions and a need to produce

15  defense general liability expert reports; a need to produce

16  plaintiffs' specific cause experts; a need to reset the

17  *Daubert*/*Frye* hearing and determine a place; and, finally,

18  reschedule the motion practice and the trials.

19      I am aware of the pending defense motion on the subject

20  of entry of a scheduling order.  Briefing on that matter was

21  just completed a couple days ago, and I will consider it

22  along with any input or argument today in determining a

23  proposed case management order.

24      I would note for your purposes that I am not opposed to

25  entering individual scheduling orders for the remaining

1   cases, but I would be surprised if most of those would not

2   be identical and would not all be based on the same fairly

3   short time frame given the very small number of cases that

4   we have left.

5        Nothing has, nothing has and nothing will reopen the

6   deadlines for any remaining MDL plaintiff or the PSC to

7   submit general causation and general liability expert

8   reports.

9        General expert reports previously produced in June,

10  2010, pursuant to PTO 50 were applicable to all cases

11  pending in the MDL now or in the future, and the opportunity

12  to identify any further general experts passed with the

13  June, 2010, deadlines.

14       Further, plaintiffs' general discovery ended in June,

15  2010, with plaintiffs, with depositions of company witnesses

16  no later than June 1 as I recall.

17       Let me ask plaintiffs' counsel -- and I'll stick with

18  the PSC for the time being, and it may well be that some of

19  the lawyers who are here on the individual cases will want

20  to address this as well.  What specific discovery is needed

21  in order for plaintiffs to produce case specific causation

22  expert reports, case specific?  What discovery is needed

23  before we do that?

24       MR. FRANKOVITCH:  Your Honor, I think that's more

25  appropriately discussed with the individual cases.

```
1              CHIEF JUDGE GOODWIN:  All right.

2         Mr. Hill, how about I give you a shot at that.

3              MR. HILL:  I have no idea.

4              CHIEF JUDGE GOODWIN:  Okay.

5         Yes, sir.  Your name?

6              MR. COATS:  Bill Coats, Your Honor.

7              CHIEF JUDGE GOODWIN:  Yes.

8              MR. COATS:  We -- the personal representative in

9    our case was only appointed in May of 2010.

10             CHIEF JUDGE GOODWIN:  Uh-huh.

11             MR. COATS:  We brought suit shortly thereafter and

12   are kind of just catching up.  We would need, I think, a

13   significant amount of time to identify expert witnesses,

14   have them review our client's medical records, the

15   literature, some of the materials that have been prepared by

16   the experts already for the general case.

17        So, given our late start, I would think we would need

18   six months to, to get that put together.

19             CHIEF JUDGE GOODWIN:  All right.  You've already

20   had six months since you got the case.  Right?

21             MR. COATS:  Well, yes, Your Honor, but a good

22   chunk of that time was spent ferreting out what was going to

23   be happening with the MDL.

24             CHIEF JUDGE GOODWIN:  There will be some time.

25   I'm just suggesting to you it's going to be not a lot of
```

1    time.

2         Anybody else want to give me --

3              MR. KILPATRICK:  Terry Kilpatrick, Your Honor.

4              CHIEF JUDGE GOODWIN:  Yes.

5              MR. KILPATRICK:  I've reviewed the discovery in

6    the depositions in the case, and in my mind I think there

7    still needs to be a little additional discovery about some

8    of the timing of the recall especially.  And there was some,

9    some dead ends in depositions about who made that final

10   decision, what the timing was about.

11        And, in particular, there was some conversations

12   apparently with people from Actavis and FDA.  I don't think

13   those people have been deposed.  They converted it from a

14   single batch recall into a product-wide recall, and we'd

15   like to follow up with those.

16             CHIEF JUDGE GOODWIN:  When did you have -- did you

17   have an opportunity to deal with the PSC during the time of

18   the taking of those depositions?

19             MR. KILPATRICK:  Well, Your Honor, we actually --

20   we had sent some -- we were trying to set and take our own

21   depositions.

22             CHIEF JUDGE GOODWIN:  Uh-huh.

23             MR. KILPATRICK:  And --

24             CHIEF JUDGE GOODWIN:  Even though you're a member

25   of the MDL?  Even though your case was transferred to the

1    MDL?

2            MR. KILPATRICK:  I'm sorry?

3            CHIEF JUDGE GOODWIN:  Even though your case was

4    transferred to the MDL.  Am I right?

5            MR. KILPATRICK:  That's right.  We were in the

6    MDL.  So, we sort of sought some discovery depositions and

7    basically were told, you know, as you're aware, there's

8    going to be the PSC doing the general discovery.

9        So, we weren't really able to do anything but stand on

10   the sidelines and watch.  They've done a terrific job, but

11   it stopped at a certain point and there needs to be some

12   more follow-up with those people.

13           CHIEF JUDGE GOODWIN:  It was my understanding that

14   there was always the opportunity for each individual

15   plaintiff's lawyer to suggest questions, to contact members

16   of the PSC with regard to discovery they thought necessary.

17   Am I wrong about that?

18           MR. KILPATRICK:  I don't think it was precluded.

19   But, as a practical matter, it -- sort of knowing in advance

20   what some of those questions were going to be in the general

21   categories I guess were discussed, and we weren't really

22   kept in the loop very carefully about that.  And our

23   specific issues were sent out to defense counsel and copied

24   to plaintiffs' counsel.  So, you know, we did make that

25   effort to try to get our issues addressed.

1          CHIEF JUDGE GOODWIN:  Okay.  Thank you.  I

2     appreciate your position on that.  I'll just have to tell

3     you that you're dealing with a judge that really liked trial

4     by ambush.  So, as far as I'm concerned, billable hours and

5     Rules of Civil Procedure and lawyer advertising are the

6     three things that have hurt the profession the most.  So,

7     you can see where I'm coming from.

8          MR. MORIARTY:  And, Your Honor, I know a little

9     bit more, if you'll excuse me, about the specifics on the

10    *McCornack* case because Mr. Ernst wrote to me in the fall of

11    2009 asking about specific inquiry that he wanted to make

12    about why all lots and why the .25-milligram as opposed to

13    just the .125.  And I wrote back to him at the time and I

14    said this is, this is general discovery which is about to

15    kick off.

16         And between the fall of 2009 -- and that letter is

17    appended to Mr. Ernst's declaration.  The PSC has taken 31

18    company witness depositions, including 26 or so of my

19    client, and we've answered interrogatories about that

20    subject.

21         So -- and Your Honor's correct that the case management

22    orders gave any plaintiff's lawyer the right to appear and

23    inquire or, if need be, send PSC a note and say, "Please ask

24    this witness these questions."  And we are -- so, they had

25    full opportunity to ask those questions.

1          CHIEF JUDGE GOODWIN:  All right.  Did you have

2     anything?  I'm sorry.  Give me your name.

3          MR. KERENSKY:  My name is Mike Kerensky.  I'm from

4     Houston, Your Honor.  Our case specific expert is our

5     treating physician.  But if that wasn't true, it would take

6     six months to get up to speed.

7          CHIEF JUDGE GOODWIN:  But in your case, you've

8     got, got the guy ready to go.

9          MR. KERENSKY:  We're okay on that particular

10    subject.

11         CHIEF JUDGE GOODWIN:  Is there anyone here who

12    would volunteer to try their case first?

13         MR. KERENSKY:  Sure, Judge, we'll go first.

14         CHIEF JUDGE GOODWIN:  All right.  And the name of

15    your case?

16         MR. KERENSKY:  *Vega*, V-e-g-a.

17         CHIEF JUDGE GOODWIN:  All right.

18        The last agenda item suggested was reaching out to

19    State Court judges.  I think it's well-known to counsel in

20    these cases that I have worked closely and have a good

21    working relationship with a number of state judges who have

22    *Digitek* litigation in their courts.  I've been quite willing

23    to work with them.  I have the deepest respect for them.

24        And I think it's readily apparent that we've been able

25    to keep your litigation on an even keel, fully respecting at

1    all times the role of each jurisdiction to deal with their

2    own matters.  And we've been very careful about that.

3         I, I'll come back to the motion to withdraw and if you

4    would remind me of that.

5              THE CLERK:  Okay.

6              CHIEF JUDGE GOODWIN:  I'm passing out what is --

7    this will be difficult for those of you on the phone, but

8    you can get it from your colleagues on whichever side of the

9    case you appear.  This is entitled "Proposed Schedule of

10   Case Events."  The last column is a column prepared by me

11   which is the dates which I would say are my dates.

12        If parties can arrive at agreeable dates that are

13   different than those in any individual case or in all the

14   cases, I mean total agreement, then I'll consider it.  And

15   I'll certainly consider any argument that you have about how

16   these dates are unfair or unjust, but that's just what my

17   thinking is right now.

18        So, if you want to take a few minutes and look at this,

19   if you want to, we'll just be at ease and you can talk among

20   yourselves.  The top three items probably don't apply since

21   those cases are now in the settlement.

22             MS. HUCHTON:  Judge, Hadley Huchton on the phone.

23   May I ask how many dates are listed on that document?

24             CHIEF JUDGE GOODWIN:  How many dates?

25             MS. HUCHTON:  Yes, sir.  I'm just wondering, is

1   there any way you could just let me know?  If there are too

2   many, I wouldn't ask that.  If there are a few that I could

3   just contemplate while they're looking at it, if that's

4   possible, sir.

5          CHIEF JUDGE GOODWIN:  Sure.  What I'll do is we

6   could -- anybody that wants it, give me your, just give me

7   your e-mail address and my law clerk will e-mail it to you

8   right now.

9          MS. HUCHTON:  Thank you, sir.  My e-mail is

10  hadleyhuchton@yahoo.com.

11         CHIEF JUDGE GOODWIN:  Anybody else?

12         MR. DEAN:  Your Honor, Richard Dean.  It's just

13  richard.dean@tuckerellis.com.

14         CHIEF JUDGE GOODWIN:  Anybody else?

15     (No Response)

16         CHIEF JUDGE GOODWIN:  Counsel, where is the *Vega*

17  case filed?

18         MR. KERENSKY:  It was filed here in -- it was

19  filed here in the MDL, but it's out of Houston.  That's

20  where everybody is.  That's where the doctors are.  That's

21  where the clients are.

22         CHIEF JUDGE GOODWIN:  Houston?  All right.

23         MR. KERENSKY:  Been to Houston lately?

24         CHIEF JUDGE GOODWIN:  Yeah.  We've got a direct

25  flight.  That's one of the few places you can get to from

1    here.

2            MR. KERENSKY:  I noticed that coming up here, Your

3    Honor.  It's a little smaller jet, but it's a jet.

4            CHIEF JUDGE GOODWIN:  I had a hearing in Houston

5    in the last big MDL we had.

6        Let me just take a 10-, 15-minute recess and let you

7    talk about this.

8        (Recess taken from 9:50 a.m. until 10:35 a.m.)

9            CHIEF JUDGE GOODWIN:  It looks like Mr. Moriarty

10   is ready to report for the conference committee.

11           MR. MORIARTY:  We are almost completely agreed.

12       First of all, going on your calendar --

13           CHIEF JUDGE GOODWIN:  Uh-huh.

14           MR. MORIARTY:  -- the first line was fine as far

15   as we can tell.

16           CHIEF JUDGE GOODWIN:  Okay.

17           MR. MORIARTY:  But the remaining general liability

18   expert depositions of the plaintiff, there's only one

19   witness but -- one full witness, but there are two partials.

20           CHIEF JUDGE GOODWIN:  Where is this?

21           MR. MORIARTY:  Second line, remaining general

22   liability expert deposition.  And this is of the plaintiffs.

23           CHIEF JUDGE GOODWIN:  All right.

24           MR. MORIARTY:  So, because of holidays and the

25   fact that there are two partials, we agreed that

1    January 31st is a far more reasonable date.

2            CHIEF JUDGE GOODWIN:  January 31st?

3            MR. MORIARTY:  Yes, sir.

4            CHIEF JUDGE GOODWIN:  All right.

5            MR. MORIARTY:  Then there is a category, with all

6    due respect, Your Honor, which you forgot which is a time

7    consuming thing.  So, we -- the defense would, would produce

8    our general liability expert reports December 15, and they

9    would depose those experts between January 15 and March 15.

10           CHIEF JUDGE GOODWIN:  All right.

11           MR. MORIARTY:  Because everybody would be so busy

12   attending to that, the dates following slide a little bit.

13   So, getting back to your schedule, the third category, fact

14   depositions for cases filed after 9-1, would be March 1st.

15           CHIEF JUDGE GOODWIN:  Which is what I've got.

16   Right?

17           MR. MORIARTY:  You have February 1st.

18           CHIEF JUDGE GOODWIN:  Oh, I see.  All right.

19           MR. MORIARTY:  Then the next category, case

20   specific causation disclosures for the plaintiffs, most of

21   us have agreed to April 15th which is, of course, six months

22   from now I think, close to it.  Yeah, just six months.  But

23   I think Mr. Kilpatrick wants to talk about the *McCornack*

24   case.

25           CHIEF JUDGE GOODWIN:  All right, Mr. Kilpatrick.

1          MR. KILPATRICK:  Your Honor, the *McCornack* case,

2     it's just really a function of our schedule.  We're going to

3     be in trial all of November, and then I've got seven trials

4     scheduled in January and February.  So, I was trying to push

5     that back to June 1st for our --

6          CHIEF JUDGE GOODWIN:  Could you step up to the

7     microphone a little bit.  Nobody can hear you.

8          MR. KILPATRICK:  So, I was proposing just for our

9     case specific experts pushing that back to June 1st.

10         MR. MORIARTY:  I think it's too long.  But since

11    the *Vega* case volunteered to be tried first, at the end of

12    the day it probably doesn't make a difference because --

13         CHIEF JUDGE GOODWIN:  If I push that one back to

14    June 1st, why not push them all to June 1st except the *Vega*

15    case?  Just tell me.  I'm, I'm going to work with you on

16    this.

17         MR. MORIARTY:  You know me.  I'm trying to push

18    this faster all the time.  So, you're asking me to change

19    gears and that's easier said than done.  That's my only

20    response to that.

21         CHIEF JUDGE GOODWIN:  All right.  Well, everybody

22    basically is comfortable with 4-15 except --

23         MR. KILPATRICK:  Terry Kilpatrick for the

24    *McCornack* case.

25         CHIEF JUDGE GOODWIN:  Mr. Kilpatrick, all right.

1    Everybody else is 4-15.

2         Mr. Kilpatrick, June what?  June 1st?  Is that right?

3              MR. KILPATRICK:  Thank you, Your Honor.

4              MR. MORIARTY:  And with all due respect, we know

5    what happened in the spring of 2010 when this actually hit

6    the ground and we had to live with it.  There were motions

7    to extend and it was all accommodated.  So, it didn't work

8    out.

9         So, for example, if some of the newer cases who haven't

10   been involved, you know, wind up filing a motion in

11   February, that gives us that flexibility.

12             CHIEF JUDGE GOODWIN:  All right.

13             MR. MORIARTY:  Yes, sir.

14             MR. COATS:  If I may, Your Honor, Bill Coats.

15   I've tried to work with counsel and just say, hey, counsel

16   made some accommodations, so I just said, well, fine, we'll

17   make some accommodations as well.

18        I had earlier suggested we would like six months.  I

19   think it's only five months till the 4-15.  But, in any

20   event, we'll do our very best to get up to speed.

21             CHIEF JUDGE GOODWIN:  If you run into problems, I

22   direct you meet with the defense counsel and try to work

23   them out before you come here in person to talk to me again.

24             MR. COATS:  That's a very good idea, Your Honor.

25             CHIEF JUDGE GOODWIN:  All right.

1          MR. MORIARTY:  So, then, the next category would

2    be case specific causation expert disclosures for

3    defendants.  That would move it to May 15.  The next line is

4    the rebuttal reports.  That would be moved to May 30.

5          MR. KILPATRICK:  Your Honor, if I may, Terry

6    Kilpatrick again.

7          CHIEF JUDGE GOODWIN:  Yeah.

8          MR. KILPATRICK:  I think we'll need to move ours

9    back on rebuttal a little bit.

10         MR. MORIARTY:  Well, we're going to have to

11   produce our case specific experts in *McCornack* after,

12   sometime after June 1.  I'm not going to produce mine in

13   *McCornack* before he does.

14         CHIEF JUDGE GOODWIN:  Work out an independent

15   schedule with counsel.

16         MR. KILPATRICK:  Okay.

17         CHIEF JUDGE GOODWIN:  Just don't add any

18   categories.

19         MR. MORIARTY:  Case specific expert depositions,

20   Your Honor, we broke that down into two dates --

21         CHIEF JUDGE GOODWIN:  All right.

22         MR. MORIARTY:  -- because they should be

23   staggered.  So, the plaintiffs' expert depositions need to

24   be completed by June 1, and our case specific expert

25   depositions need to be completed by July 1.

1          Then there were extensive discussions about how to do

2     this *Daubert* briefing, and we looked at all those dates.

3     And to be fair and give the plaintiffs enough time to brief,

4     we think September 1st as the "conclude by" date for all

5     briefing.  What we didn't agree to, granted we didn't

6     discuss it very much, was staggering dates between July 1st

7     and September 1st.

8          CHIEF JUDGE GOODWIN:  I'll just put them in there.

9          MR. MORIARTY:  Okay.  Well, Your Honor, the one

10    thing we did discuss was I believe technically under the

11    case law, the plaintiffs would have the burden of filing a

12    brief saying why their experts pass muster.  And then we

13    would reply to that, and then we would say why ours pass

14    muster.  There are some people who think that we should

15    challenge theirs and then they should challenge ours.  So --

16         CHIEF JUDGE GOODWIN:  Let's do the whole -- let's

17    wrap it all up.

18         MR. MORIARTY:  Okay.  And then we thought the

19    *Daubert/Frye* hearing should be moved to September 14th and

20    15th, so Wednesday and Thursday.

21         CHIEF JUDGE GOODWIN:  Now, I certainly will try to

22    accommodate those two dates, but I am going to still try to

23    coordinate with my state colleagues who have anything

24    remaining.  And, so, before I firm up those dates, I will be

25    consulting with them.  There's really no point in having the

1   dog and pony show on the road.  Doing it once makes the most

2   sense.

3          MR. MORIARTY:  And then we didn't attach dates to

4   the final three categories.  We believe that in your

5   discretion you should pick dates probably after you have

6   decided the *Daubert* motions to make the final pre-trial and

7   final settlement conference the most meaningful.

8          CHIEF JUDGE GOODWIN:  All right.  I anticipate,

9   perhaps based on ignorance of fact discovery in this case

10  which I have almost zero knowledge of -- Judge Stanley has

11  been working with you on that, so I don't really know what

12  the facts of the cases are.  But I would anticipate, based

13  on the conversations that have gone on in the conference

14  attended by the PSC and the defense lawyers and individual

15  lawyers who have attended by phone, that there will be some

16  substantive summary judgment motions.  Am I correct?

17         MR. MORIARTY:  Yes, Your Honor.

18         CHIEF JUDGE GOODWIN:  Is there any reason they

19  can't track the *Daubert* dates?

20         MR. MORIARTY:  There is no reason that the MSJs

21  couldn't track the *Daubert* dates.  And it is possible some

22  might come before.

23         CHIEF JUDGE GOODWIN:  All right.

24         MR. MORIARTY:  In other words, they will have

25  deposed -- all the general liability experts on both sides

1    will have been concluded by March 15th.  So, if there is a

2    motion to be made on a general liability or general

3    causation issue, we would like to make it sometime, to make

4    our lives easier, the lives easier of the people who write

5    these things, before the summer so that we could --

6              CHIEF JUDGE GOODWIN:  Well, if that's the basis,

7    sole basis for the motion, I have no problem with that.  But

8    then I may be put in a position of deciding two summary

9    judgment motions in the same case, denying one on general

10   liability and then dealing with one on the case specific.

11   That seems unlikely.  I'm just saying that it's possible,

12   isn't it?

13             MR. MORIARTY:  Yes.

14             CHIEF JUDGE GOODWIN:  Yes, sir.

15             MR. KERENSKY:  Judge, I think what we're going to

16   find in these cases is there's going to be case specific

17   experts that are going to fill gaps that the general experts

18   can't fill for the, for the specific case.

19        So, to try and do a dispositive motion on liability

20   just on the general experts before we get past the specific

21   experts is, I think, going to be problematic.  It could

22   actually force me to accelerate my case specific experts to

23   respond to a summary judgment that's filed even before my

24   case specific experts are due.

25             CHIEF JUDGE GOODWIN:  Since you've got the first

1    dunk in the barrel, I'm sure we'll work it out.

2         MR. KERENSKY:  Thank you, Your Honor.  I just

3    wanted to make that point.

4         CHIEF JUDGE GOODWIN:  It is likely, because of

5    your volunteering, that lots of things will happen with you.

6    But that's not -- happen with you first.  And it is my hope

7    and expectation that it will be done amicably and in a way

8    that we can all be comfortable and -- I don't like the

9    situation that we were faced with today where I had to just

10   order everybody in no matter where you live and what you

11   have to do.  No matter what your plans are, you know, drop

12   everything and come in.

13        While it's been 16 years, I had spent the previous 25

14   practicing law and I haven't forgotten what it's like to

15   practice law.  So, I want to try to accommodate lawyers.  At

16   the same time, MDLs present their own special issues.  And

17   I'm not going to be looking at your case except as a part of

18   the MDL.  It just happens to be the benchmark case, or

19   whatever you want to call it, that's going to go first.

20        MR. KERENSKY:  Very well, Your Honor.

21        CHIEF JUDGE GOODWIN:  I think we'll be able to

22   hook it up.

23        MR. MORIARTY:  And just so Don Ernst, who is not

24   here, and Mr. Kilpatrick aren't taken by surprise, when we

25   start to negotiate this separate schedule for them, I'm

1  still going to try to see if the experts in that case can't

2  be ready for a *Daubert* challenge, you know, sometime in the

3  middle of September.

4       CHIEF JUDGE GOODWIN:  It makes no sense to have

5  more than one *Daubert* hearing.  And all lawyers on either

6  side of the case should want to have one *Daubert* hearing.

7  And I will be loathe to have more than one.  It doesn't make

8  a bit of sense.  It might require lawyers to juggle, but

9  that's what you all do well.  I mean, if you can't keep

10  three balls in the air at once, you can't practice the kind

11  of law you all are practicing.  So, we'll figure it out.

12       MR. MORIARTY:  That was it.

13       CHIEF JUDGE GOODWIN:  That's it?  I appreciate it.

14       MR. KERENSKY:  I have a couple more matters.

15       CHIEF JUDGE GOODWIN:  Yes, sir.

16       MR. KERENSKY:  Thank you, Judge.  I want to say

17  two things.  We did talk about this.

18     We all think that any global final settlement

19  conference should come far enough in advance of when our

20  Pre-Trial Order is due because it's easier to talk about

21  settling a case before you have absolutely teed everybody up

22  and done all your work and you're ready to go to trial the

23  next day.

24       CHIEF JUDGE GOODWIN:  And I agree with you, but

25  there are all kinds of -- I'm trying to find the most

1    tactful word I can.  There are all kinds of reasons why some

2    people -- and I don't suppose it would be the case with your

3    firm -- like to take two or three bites at the apple and

4    waste a lot of time until we get to the trial date.

5        My idea of the final settlement negotiations is that's

6    your last chance, not your first chance.  There's no reason

7    that if, if you need the Court's help to try to settle

8    something in this case which is up first beforehand and the

9    parties want me to be helpful, I will.

10       If you want me to appoint a really expensive special

11   master or something, I'll do that.  If you want Judge

12   Stanley to help you settle it, I'll do that.  Whatever you

13   agree to, I'll do.

14       But the final settlement conference is meant to be

15   that.  It's meant to be the final time we're going to do it

16   because -- all right, you invited this.  Now you're going to

17   hear it.

18       It seems to be the case that lawyers have determined

19   that the era of trying lawsuits is over.  And more and more

20   lawyers spend all of their time in pre-trial and very little

21   of their time trying cases.

22       I mourn the passing of that era because I enjoy both as

23   a judge and I enjoyed as a lawyer the trial much more than I

24   did all of the hoorah and the depositions and the phony

25   threats and mean phone calls and all the stuff that went on

1   prior to that.  But I remain available to you at any time to

2   sit down with you or to appoint somebody to sit down with

3   you to help do it.

4       Now, my guess is -- I know a bit about your firm and I

5   know a bit about the defense lawyers.  You don't really need

6   me.  If you're going to settle this case, you-all can settle

7   it.  But, you know, --

8       MR. DEAN:  Your Honor, this is Richard Dean.  I

9   had an item I wanted to raise with you.

10      CHIEF JUDGE GOODWIN:  All right.

11      MR. DEAN:  And I don't even have a volunteer, and

12  I guess volunteers in the world are wonderful.  I simply

13  wanted to remind the Court that in this prior, in our prior

14  hearings we had actually selected the order of the cases for

15  trial, and some of them were certainly settled.

16      But I believe that the *Sheahan* case was set for case

17  number four, and the *Vega* case for case number five, and

18  McCornack and *Pane* were set for, as cases six and seven.  I

19  can't remember the order of those two cases.

20      So, I simply wanted to remind the Court of its prior

21  selection of these cases for the order of trial as a factual

22  matter and for you to do whatever you wanted to do.  And I

23  realize you've had a volunteer, but I just wanted to remind

24  the Court that it had previously placed an order on the

25  cases.

1          CHIEF JUDGE GOODWIN:  I recall that.  And I recall

2    there was a lot of input that went into that selection.  But

3    the playing field has changed dramatically since then.  When

4    we were looking at what I call benchmark cases -- I can't

5    remember what everybody else calls them.  What are they

6    called?

7          MR. BELL:  Bellwether trials.

8          CHIEF JUDGE GOODWIN:  Yeah, it's about the lambs

9    and the bells and all that.  At that time, we were looking

10   for information that would be useful to defense counsel and

11   plaintiffs' steering committee and plaintiffs' counsel

12   generally to evaluate the efficacy of their claim and

13   defenses.

14       That's no longer the case.  Almost all of these cases

15   are settled.  The ones remaining are, for whatever reason,

16   considered by counsel to be exceptional.  I'm simply glad to

17   have a volunteer.  And I'll stand and wait in line for

18   whoever wants to volunteer to be next after that because we

19   don't have that many to try.  I'll set them all one after

20   the other wherever we decide to go.

21       I understand that while Mr. Williamson on the record

22   agreed to come here and try it, you might be wanting to

23   revisit that thought.  I can assure you that if we need to

24   go to Houston, I can get there.  And I think that the chief

25   judge of the Fourth Circuit and the chief judge of your

1   circuit will allow me to attend.  You might want to think

2   about, on both sides, the jury pool in Houston versus the

3   jury pool in Charleston.  And the Fourth Circuit Court of

4   Appeals will nevertheless be the court that hears any

5   appellate matters.  So --

6         MR. KERENSKY:  I think you just answered my last

7   question.  Am I interrupting you?  I'm sorry.

8         CHIEF JUDGE GOODWIN:  That's all right.  I really

9   think we're on track with maybe two exceptions.  If I had to

10  guess, we're probably on track to have two cases that are

11  going down to the wire.  There may be more than that, but

12  I'm thinking two, but we'll see.

13        MR. DEAN:  Your Honor, this is Richard Dean again.

14  Again, I recognize the value of volunteers in the world, but

15  I realize we only have a few cases that are left.  But I

16  think everyone would agree that the *Macon* (phonetic) case

17  presents a unique fact situation with a heart transplant or

18  a valve transplant.  None of the other cases have that

19  feature.

20     So, it is -- it stands out as a unique case.  And if

21  the Court wants to go ahead and try that first, that's fine.

22  I just wanted to remind the Court of that fact.

23        CHIEF JUDGE GOODWIN:  That's probably right.  And,

24  as I say, the need for bellwether, benchmarking, whatever,

25  has evaporated.  We've just got a handful of cases and we've

1  got to get rid of them with the due application of

2  even-handed justice wherever it goes.  So, that's what we're

3  going to do.

4      You're right, Mr. Dean.  We, we picked those for a

5  different reason.  Now I'm just trying to move everything

6  across the goal line.

7          MR. DEAN:  Fair enough, Your Honor.

8          CHIEF JUDGE GOODWIN:  Anything else we need to do

9  today?

10         MR. KERENSKY:  May it please, Your Honor, one more

11  thing.  Thank you.

12         CHIEF JUDGE GOODWIN:  All right.

13         MR. KERENSKY:  I think I heard the answer in your

14  last bit, but I understand Mr. Williamson at one time said

15  that he was willing to try the case here in West Virginia.

16  I think, as you say, the playing field has changed.

17         CHIEF JUDGE GOODWIN:  Jimmy Williamson.

18         MR. KERENSKY:  Jimmy Williamson is the firm that

19  I'm with, Your Honor.

20         CHIEF JUDGE GOODWIN:  Right.

21         MR. KERENSKY:  And I just wanted to make sure the

22  Court is willing to entertain a motion to try this case in

23  Houston.

24         CHIEF JUDGE GOODWIN:  I entertain every motion,

25  and I'm often entertained by them.  So, --

1          MR. KERENSKY:  That's good enough for me, Judge.

2          CHIEF JUDGE GOODWIN:  I'll certainly consider it.

3    What I don't consider is the calls to the law clerk saying,

4    "What would the Judge do if I did that?"

5        I appreciate all your help.  I appreciate the conduct

6    of counsel throughout the trial, or throughout the pre-trial

7    proceedings in this MDL case.  I would have to tell you that

8    because of the speedy resolution, relatively speedy

9    resolution of *Serzone* and of this case, there's likely to be

10   more cases in this district.  So, I may get to see all of

11   you again.

12         MR. FRANKOVITCH:  I hope so.

13         CHIEF JUDGE GOODWIN:  Thanks a lot.

14       (Proceedings concluded at 11:00 a.m.)

15

16

17

18

19

20

21

22

23

24

25

1          I, Lisa A. Cook, Official Reporter of the United

2     States District Court for the Southern District of West

3     Virginia, do hereby certify that the foregoing is a true and

4     correct transcript, to the best of my ability, from the

5     record of proceedings in the above-entitled matter.

6

7

8          s\Lisa A. Cook                    March 11, 2011

9               Reporter                          Date

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25