IN RE:  DIGITEK PRODUCTS LIABILITY LITIGATION

Civil Action No. 2:08-md-1968

THIS DOCUMENT RELATES TO ALL CASES

# EXHIBIT A

# SETTLEMENT AGREEMENT

*In re: Digitek® Products Liability Litigation*
**MDL No. 1968**
**United States District Court,**
**Southern District of West Virginia**

**and**

**Coordinated State Proceedings**

**Dated September 1, 2010**

## TABLE OF CONTENTS

**RECITALS** ........................................................................................................ 1

**Article I.**    Program Enrollment ......................................................................... 2

    **Section 1.01**   Notice Deadline ........................................................... 2

    **Section 1.02**   MDL Notice Procedure ................................................ 3

    **Section 1.03**   State Case Opt In ......................................................... 4

**Article II.**    Funding Obligations ........................................................................ 4

    **Section 2.01**   Settlement Funds ......................................................... 4

    **Section 2.02**   Optional Additions to Settlement Funds ...................... 5

    **Section 2.03**   Qualified Settlement Fund ........................................... 6

    **Section 2.04**   Tax Treatment of the Qualified Settlement Fund ......... 7

    **Section 2.05**   Administrative Fund .................................................... 8

**Article III.**    Program Enrollment, Review, and Payment .................................. 9

    **Section 3.01**   Program Enrollment .................................................... 9

    **Section 3.02**   Supporting Documentation......................................... 11

    **Section 3.03**   Medical Records ....................................................... 11

    **Section 3.04**   Entry Criteria ........................................................... 12

    **Section 3.05**   Settlement Grid......................................................... 13

    **Section 3.06**   Request for Reconsideration of Final Point Award................. 17

    **Section 3.07**   Award Payment ........................................................ 19

**Article IV.**    Special Master................................................................................ 21

    **Section 4.01**   Special Master Liaisons ............................................ 21

    **Section 4.02**   Responsibilities......................................................... 21

i

Section 4.03    Selection ................................................................. 22

Article V.    Medical Consultants ............................................................ 23

Section 5.01    Responsibilities ........................................................... 23

Section 5.02    Selection ................................................................. 23

Section 5.03    Payment of Medical Consultants .............................................. 24

Article VI.    Dismissals, Waivers, and Releases .............................................. 24

Section 6.01    Dismissals ................................................................ 24

Section 6.02    Waivers ................................................................... 27

Section 6.03    Releases .................................................................. 27

Article VII.    Court Approval and Other Documentation ....................................... 27

Section 7.01    Survival and Wrongful Death Claims ......................................... 27

Section 7.02    Claims Involving Minors ................................................... 28

Section 7.03    Other Documents .......................................................... 28

Article VIII.    Repayment and Liens .......................................................... 28

Section 8.01    Medicare ................................................................. 28

Section 8.02    Medicaid ................................................................. 30

Section 8.03    Other Liens .............................................................. 30

Article IX.    Termination Right .............................................................. 31

Article X.    Warranty of Capacity to Enter into the Agreement ................................ 31

Article XI.    Attorneys' Fees and Expenses .................................................. 32

Article XII.    Miscellaneous ................................................................ 32

Article XIII.    Definitions .................................................................. 33

Appendix A:  Pharmacy Defendants

**Appendix B:**  Notice of Intent to Opt Out Form

**Appendix C:**  State Case Notice of Intent to Opt In Form

**Appendix D:**  Claim Form

**Appendix E:**  Executed Stipulation of Dismissal

**Appendix F:**  Medications List

**Appendix G:**  Release

## SETTLEMENT AGREEMENT

The SETTLEMENT AGREEMENT (this "Agreement"), dated September 1, 2010 (the "Execution Date"), is entered into between (i) Actavis Totowa LLC, Actavis Elizabeth LLC, and Actavis Inc. (collectively "Actavis"), (ii) Mylan Pharmaceuticals Inc., Mylan Bertek Pharmaceuticals Inc., Mylan Inc., and UDL Laboratories, Inc. (collectively "Mylan"), (iii) the pharmacies identified in Appendix A (collectively "Pharmacy Defendants"), and (iv) the plaintiffs' counsel listed in the signature pages hereto under the heading "Negotiating Plaintiffs' Counsel" ("NPC").

Unless set off in parentheses and quotations following the defined phrase or term, defined terms are underscored and in quotes when first used in the Agreement with the first letter of the defined term capitalized thereafter. Definitions are contained in Article XIII.

## RECITALS

A.     This is a settlement agreement between the "Defendants" and NPC in *In re: Digitek® Products Liability Litigation*, MDL No. 1968 (the "MDL"), a federal multi-district litigation venued in the United States District Court for the Southern District of West Virginia (the "MDL Court"). This Agreement establishes a program to resolve the actions, disputes, and claims asserted against Defendants regarding Digitek®.

B.     Actavis Totowa LLC manufactured Digitek®; Mylan Pharmaceuticals, Inc. and UDL Laboratories, Inc. distributed Digitek®; and Pharmacy Defendants sold Digitek®. On April 25, 2008, Actavis issued a nationwide recall of all strengths of Digitek® due to the possibility that tablets with double the appropriate thickness may have been commercially released. Shortly after the recall, plaintiffs filed lawsuits in state and federal courts throughout the country claiming injuries from alleged exposure to "Out-of-Specification Digitek® Tablets."

C.     On August 13, 2008, the Judicial Panel on Multidistrict Litigation issued an order coordinating and centralizing the federal cases before the MDL Court.

D.     As of the signing of this Agreement on September 1, 2010, there were 867 "MDL Cases," 2,198 "Tolled Claims," and 154 "State Cases."

E.     NPC and Defendants have agreed to establish a private settlement program (the "Program"), as set forth herein, to resolve MDL Cases and Tolled Claims. State Cases may opt into the Program pursuant to the terms set forth in this Agreement.

F.     The Program is intended to resolve, in lieu of further litigation, MDL Cases and Tolled Claims. The Program is also intended to resolve, in lieu of further litigation, State Cases that elect to opt into the Program.

G.    After extensive investigation of the facts and law applicable to the claims brought against Defendants, and after carefully considering the circumstances of the actions and the substantial benefits that settlement will provide, NPC have concluded that it is in the best interests of "MDL Plaintiffs" to enter into this Agreement to avoid the uncertainties of litigation and to provide a benefit to MDL Plaintiffs. NPC considers the settlement set forth herein to be fair, reasonable, adequate, and in the best interest of MDL Plaintiffs.

H.    The "Parties" are entering into this Agreement for economic reasons in an effort to conserve resources on both sides of the litigation. All sums awarded under this Agreement, however, constitute damages on account of personal physical injuries or sickness, within the meaning of §104(a)(2) of the Internal Revenue Code. There is, however, no guarantee that every person who has made a claim or filed a lawsuit will be compensated under the terms of this Agreement.

I.    Defendants deny any liability or wrongdoing and further deny that MDL Plaintiffs and "State Plaintiffs" have any justifiable claim for relief. Defendants assert that they have meritorious affirmative defenses to these lawsuits and Tolled Claims. This Agreement, accordingly, will not be construed as evidence of, or as an admission by, Defendants of any fault, liability, wrongdoing, or damages whatsoever.

Defendants and NPC hereby agree as follows:

### Article I.    Program Enrollment

**Section 1.01**  Notice Deadline

(A)  NPC and Defendants shall petition the MDL Court for a pre-trial order ("PTO") providing notice of this Agreement. The PTO shall set forth 11:59 p.m. on October 15, 2010 as the time and date by which MDL Plaintiffs who elect to opt out of the Program must submit the "Notice of Intent to Opt Out Form" contained in Appendix B. The PTO shall also set forth 11:59 p.m. on October 15, 2010 as the time and date by which State Plaintiffs who elect to participate in the Program must submit the "State Case Notice of Intent to Opt In Form" contained in Appendix C. 11:59 p.m. on October 15, 2010 shall be known as the "Notice Deadline."

(B)  As further set forth in Article IX, Defendants shall have the option, in their sole discretion, to terminate this Agreement if 15% or more of MDL Cases and 10% or more of Tolled Claims elect to opt out of the Program. The percentages, for the purpose of determining Defendants' termination right only, shall be based on the number of MDL Cases and Tolled Claims pending as of 11:59 p.m. on September 1, 2010 - the Execution Date. Defendants

2

may exercise their termination right, if applicable, on or before 11:59 p.m. on December 1, 2010.

**Section 1.02**   MDL Notice Procedure

    **(A) All MDL Plaintiffs are automatically enrolled in the Program unless they submit the "Notice of Intent to Opt Out Form" on or before 11:59 p.m. on the Notice Deadline.** MDL Plaintiffs who do not timely opt out must submit a "<u>Claim Package</u>" as set forth in Article III to be eligible for an award under the Program.

    **(B)** The "Notice of Intent to Opt Out Form" must be submitted before 11:59 p.m. on October 15, 2010, the Notice Deadline, in one of the following ways:

        **(1)** By email, delivery and read receipt requested, to <u>Specialmaster@digitekclaims.net</u> (Special Master), <u>Digitekclaims@tuckerellis.com</u> (Actavis Defendants' Counsel), and <u>Digitekclaims@motleyrice.com</u> (NPC); or,

        **(2)** By United States Mail or other carrier, post-marked on or before the Notice Deadline, return receipt requested, to the following:

            **i)** Special Master:

                Special Master Digitek Claims
                Smith, Cochran & Hicks, P.L.L.C.
                Post Office Box 2553
                Charleston, West Virginia 25329

                and

            **ii)** Actavis Defendants' Counsel:

                Jaclyn A. Bryk, Esq.
                Tucker Ellis & West, LLP
                925 Euclid Avenue
                1150 Huntington Building
                Cleveland, Ohio 44115

                and

            **iii)** NPC:

                Meghan Johnson Carter, Esq.

Motley Rice LLC
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464

**Section 1.03**   State Case Opt In

(A) State Cases filed on or before 11:59 p.m. on the Execution Date are eligible to participate in the Program. State Plaintiffs or their counsel must submit the "State Case Notice of Intent to Opt In Form" on or before the Notice Deadline to be eligible to participate in the Program. The "State Case Notice of Intent to Opt In Form" must be submitted in the manner as set forth in Section 1.02(B).

(B) State Cases are not automatically enrolled in the Program. Failure to timely submit a "State Case Notice of Intent to Opt In Form" will bar a State Case from potential recovery of an award under the Program. Failure to submit a Claim Package following the timely submission of the "State Case Notice of Intent to Opt In Form" will subject the State Case to dismissal with prejudice upon motion by Defendants pursuant to Section 6.01(C)(1).

(C) "State Participants" are subject to all terms and conditions of the Agreement and affirmatively accept the jurisdiction of the MDL Court for all matters and decisions relative to the Agreement.

<h3 style="text-align:center">Article II.    Funding Obligations</h3>

**Section 2.01**   Settlement Funds

(A) The total settlement amount for MDL Cases and Tolled Claims that participate in the Program is Ten Million Dollars ($10,000,000.00) (the "Settlement Funds"). NPC agree the Settlement Funds are fair and reasonable under the circumstances. The Settlement Funds shall be paid by Actavis or its insurers.

(B) Actavis will deposit the Settlement Funds in four (4) equal quarter-yearly installments into the "Qualified Settlement Fund" established in Section 2.03. The first installment will be due fourteen (14) days after the "Claim Deadline" with the remaining three (3) installments due in equal amounts every ninety (90) days thereafter. In the event the Special Master determines the final settlement amounts prior to the submission of the last installment into the Qualified Settlement Fund, the remaining balance shall immediately become due with ten (10) business days following notice from the Special Master to the Special Master Liaisons, identified in Section 4.01, that final settlement amounts have been determined.

4

(C) The Settlement Funds represent the total amount Defendants shall be obligated to pay under this Agreement, with the exception of any applicable increase as set forth in Section 2.02, attorneys' fees or costs that may be ordered by the MDL Court pursuant to Article XI, and "Administrative Costs" set forth in a separate agreement.

**Section 2.02**   Optional Additions to Settlement Funds

(A) Actavis or its insurers will increase the Settlement Funds pursuant to the following schedule:

| Minimum Qualifications | Amount of Settlement Fund Increase |
|---|---|
| 85% or more State Cases Opt In<br><br>and<br><br>"2008 Philadelphia Cases" | $550,000 |
| 95% aggregate of (1) MDL Cases that do not Opt Out and (2) State Cases that Opt In<br><br>and<br><br>2008 Philadelphia Cases | $2,000,000 |
| 98% aggregate of (1) MDL Cases that do not Opt Out and (2) State Cases that Opt In<br><br>and<br><br>2008 Philadelphia Cases | $3,000,000 |

(B) For purposes of this schedule, the percentage of MDL and State Cases as well as the aggregate of MDL and State Cases will be determined as follows:

(1) MDL Cases

5

i)  % MDL Cases = (number of MDL Cases that do NOT opt out)/(number of MDL Cases filed as of 11:59 p.m. on the Execution Date)

**(2)** State Cases

i)  % State Cases = (number of State Cases that opt in)/(number of State Cases filed as of 11:59 p.m. on the Execution Date)

**(3)** Aggregate MDL and State Cases

i)  % Aggregate MDL and State Cases = ([number of MDL Cases that do NOT opt out] + [number of State Cases that opt in])/([number of MDL Cases filed as of 11:59 p.m. on the Execution Date] + [number of State Cases filed as of 11:59 p.m. on the Execution Date])

**(C)** Actavis's total contribution in Settlement Funds will not in any event exceed Thirteen Million Dollars ($13,000,000.00). This does not include Actavis's obligation to fund the "Administrative Fund" as set forth in Section 2.05.

**Section 2.03**   Qualified Settlement Fund

**(A)** In accordance with the terms of this Agreement, the Settlement Funds shall be deposited into the Qualified Settlement Fund and shall remain the property of the Qualified Settlement Fund. The Settlement Funds within the Qualified Settlement Fund will be held in a fiduciary capacity. The Qualified Settlement Fund shall comply with the Treasury Regulations Section 1.498B-1 *et seq.* regarding taxation and tax reporting obligations. The Qualified Settlement Fund shall be deemed to be in the custody of the MDL Court. The Qualified Settlement Fund shall remain subject to the jurisdiction of the MDL Court until such Settlement Funds are distributed in their entirety or upon further order of the MDL Court.

**(B)** Actavis and NPC wish to have the Qualified Settlement Fund maintained in as secure a manner as possible so that the Settlement Funds will be available to be paid to those who qualify for an award under the Program. Actavis and NPC will consult as to the bank depository or other prudential financial institution which will be chosen to hold those funds and also consult as to the form of prudent investment vehicles to be used for investment of the funds. Actavis shall designate the institution subject to NPC's agreement. Once a tentative decision as to the institution and the form of investment has been made, Actavis and NPC shall apply to the MDL Court for approval. The institution so chosen shall thereupon consent to the jurisdiction of the MDL

6

Court, acknowledging that the institution and "Escrow Agent" alone have the obligation to manage the Settlement Funds. Periodic reports shall be made to the MDL Court of the interest earned, distributions made, and other matters involving the status of administration. Its management shall thereafter be subject to review by the MDL Court.

(C) Interest earned on the Qualified Settlement Fund will be deposited in the Administrative Fund by the Escrow Agent.

(D) Expenses incurred by the Escrow Agent in managing and administering the Qualified Settlement Fund shall be charged to the Administrative Fund.

**Section 2.04**   Tax Treatment of the Qualified Settlement Fund

(A) To the fullest extent allowable under applicable law, the Qualified Settlement Fund shall be treated as being at all times a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1. The Escrow Agent and, as required, the Parties, shall timely make such elections as are necessary or advisable to carry out the provisions of this Section, including the "relation-back election" (as defined in Treasury Regulation § 1.468B-1), back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulation. It shall be the sole responsibility of the Escrow Agent to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(B) Tax Returns. For the purpose of Section 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Qualified Settlement Fund and the amounts held in the Qualified Settlement Fund (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)&(l)). Such returns (as well as the election described in Section 468B) shall be consistent with Section 468B and in all events shall reflect that all taxes (including any estimated taxes, interest or penalties, or tax detriments) on the income earned by the Qualified Settlement Fund shall be paid exclusively out of the Qualified Settlement Fund, in accordance with Section 468B.

(C) Taxes and Tax Expenses. All (i) federal, state, or local taxes (including any estimated taxes, interest or penalties, or tax detriments) arising with respect to the income earned on or by the Qualified Settlement Fund, including any taxes, interest or penalties, or tax detriments, that may be imposed upon Defendants with respect to any income earned on or by the Qualified

7

Settlement Fund for any period during which the Qualified Settlement Fund (or any portion thereof) does not qualify as a "qualified settlement fund" for federal or state income tax purposes (hereinafter referred to as "Taxes"), and (ii) expenses and costs incurred in connection with the administration of tax matters for the Qualified Settlement Fund and the operation and implementation of this Section (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Section) (hereinafter referred to as "Tax Expenses"), shall be paid exclusively out of the Qualified Settlement Fund. The Escrow Agent shall notify the Parties in writing of the fact and amount of any such payment of Taxes and/or Tax Expenses out of the Qualified Settlement Fund (and any withholding pursuant to this Section).

**(D)** Cooperation. The Parties hereto agree to cooperate with the Escrow Agent, claims administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section.

**Section 2.05**    Administrative Fund

**(A)** Actavis will fund the Administrative Fund separate and apart from the Qualified Settlement Fund. The maximum amount included in the Administrative Fund will be decided in a separate agreement. The Administrative Fund shall be established as a sub-account of the Qualified Settlement Fund. In the event it appears during the administration of the Program that the Administrative Costs of the Program may exceed the predetermined maximum amount, Actavis shall bring the matter to the attention of NPC to determine if cost saving measures can be instituted. If an agreement cannot be reached, Actavis shall bring the matter to the attention of the MDL Court, which shall have the authority to modify the Program to ensure that the Administrative Costs are reasonable. If the MDL Court determines the Administrative Costs are reasonable, Actavis shall contribute an additional amount to be determined by Actavis and NPC. Any unused portion of the Administrative Fund shall be returned to Actavis.

**(B)** Actavis will fund the Administrative Fund in four (4) equal quarter-yearly installments. The first installment will be due twenty (20) days following the Notice Deadline.

8

**Article III.**   Program Enrollment, Review, and Payment

**Section 3.01**   Program Enrollment

(A) "<u>Program Participants</u>" must submit a Claim Package between December 1, 2010 and 11:59 p.m. on February 1, 2011 to be considered for an award under the Program.  11:59 p.m. on February 1, 2011 shall be known as the "Claim Deadline."

(B) A Claim Package must contain the following to be considered for an award under the Program:

   (1) "<u>Claim Form</u>" contained in Appendix D;

   (2) "Supporting Documentation" as set forth in Section 3.02;

   (3) "<u>Medical Records</u>" as set forth in Section 3.03; and,

   (4) Dismissal documentation.

       i)   MDL Plaintiffs must submit the "Executed Stipulation of Dismissal" contained in Appendix E.

       ii)  State Participants must submit an executed stipulation of dismissal for state court that abides by all applicable state and local rules for effectuating the dismissal, with prejudice, of the State Case.

(C) Persons who did not ingest Digitek® may not submit a separate Claim Package under the Program.  All derivative claims must be included as a part of the Claim Package submitted by or on behalf of the Digitek® user.

(D) Claim Packages must be submitted to the Special Master on or before the Claim Deadline in one of the following ways:

   (1) By email, delivery and read receipt requested, to Specialmaster@digitekclaims.net; or,

   (2) By United States Mail or other carrier, post-marked on or before the Claim Deadline, return receipt requested, to the following:

       Special Master Digitek Claims
       Smith, Cochran & Hicks, P.L.L.C.
       Post Office Box 2553
       Charleston, West Virginia 25329

9

(E) A copy of the Claim Form only must be submitted to Actavis and NPC on or before the Claim Deadline in one of the ways set forth below.  Actavis or NPC may request copies of any other documentation submitted with the Claim Package from the Special Master.

    (1) By email, delivery and read receipt requested, to Digitekclaims@tuckerellis.com (Actavis Defendants' Counsel) and Digitekclaims@motleyrice.com (NPC); or,

    (2) By United States Mail or other carrier, post-marked on or before the Claim Deadline, return receipt requested, to the following:

        i)    Actavis Defendants' Counsel:

                Jaclyn A. Bryk, Esq.
                Tucker Ellis & West, LLP
                925 Euclid Avenue
                1150 Huntington Building
                Cleveland, Ohio 44115

                and

        ii)    NPC:

                Meghan Johnson Carter, Esq.
                Motley Rice LLC
                28 Bridgeside Boulevard
                Mount Pleasant, South Carolina 29464

(F) The Special Master will review each Claim Package and shall inform that Program Participant's counsel within a reasonable period of time after submission of the Claim Package by email, delivery and read receipt requested, whether (1) the Claim Form is incomplete and/or (2) Supporting Documentation, Medical Records, or Executed Stipulation of Dismissal is inadequate or incomplete.  The decision as to the completeness and adequacy of the Claim Package is in the sole discretion of the Special Master.  Failure to correct the deficiencies within ten (10) business days of receipt of the notice will result in automatic rejection of the Claim Package with no right of appeal.  The Special Master may extend the time in which a Program Participant may correct deficiencies upon a showing of good cause.  If the Special Master fails to identify any element of the Claim Package that is incomplete, said Claim Package will be deemed complete.

**Section 3.02**   Supporting Documentation

    **(A)** Program Participants must submit documentation supporting the existence of digoxin toxicity. Program Participants must do so by submitting one or more of the following documents to the Special Master as a part of their Claim Package in order to qualify for an award under the Program:

        **(1)** "<u>Clinical Diagnosis of Digoxin Toxicity</u>";

        **(2)** "<u>Elevated Serum/Blood Digoxin Concentration Level</u>"; or,

        **(3)** "<u>Qualified Physician's Affidavit</u>."

    **(B)** Qualified Physician's Affidavits

        **(1)** A Qualified Physician's Affidavit must be from a "<u>Qualified Physician</u>."

        **(2)** A Qualified Physician's Affidavit must include the following:

            **i)** A statement from the Qualified Physician confirming the Digitek® user's digoxin toxicity related illness or injury and the basis for the confirmation;

            **ii)** Identification by author and date of records relied upon to confirm the Digitek® user's digoxin toxicity related illness or injury;

            **iii)** A statement from the Qualified Physician confirming that he or she is a physician licensed in any state who is also board-certified in cardiology or board certified in internal medicine or family medicine with substantial training and experience treating cardiac problems; and,

            **iv)** The Qualified Physician's current curriculum vitae attached.

**Section 3.03**   Medical Records

    **(A)** Program Participants must submit Medical Records as a part of the Claim Package in order to be eligible for an award under the Program. Medical Records consist of the following:

        **(1)** all records from the "<u>Medically-Definable Incident</u>" ("MDI") which, in the case of hospitalization in conjunction with or as a result of the MDI, must include available admission histories, physical notes, discharge summaries, progress notes, and lab results;

**(2)** all records from a Program Participant's primary care physician and cardiologist including, but not limited to, progress notes and lab results, from twenty-four (24) months prior to the Medically-Definable Incident; and,

**(3)** a Program Participant's pharmacy records beginning January 1, 2006 to the date of the last refill of Digitek®.

**(B)** Program Participants are responsible for obtaining and submitting the Medical Records required for a Claim Package. Program Participants reserve the right to submit additional records to the Special Master, beyond those that are required, if reasonably related to the Program Participant's Digitek®-injury. Program Participants consent to review of their Medical Records and any additional records by the claims center personnel, Special Master, NPC, Actavis's counsel, Medical Consultants, lien resolution personnel, and the MDL Court. Such records shall otherwise remain confidential in conformity with The Health Insurance Portability and Accountability Act of 1996 (HIPAA), Public Law 104-191.

**(C)** Defendants reserve the right to submit additional records that they have gathered on individual Program Participants that are reasonably related to the Program Participant's Digitek®-related injury and to examine Medical Records submitted by Program Participants. Each Program Participant's counsel has the right to examine their client's records submitted by Defendants.

**Section 3.04**   Entry Criteria

**(A)** A Claim Package must possess each of the three following entry criteria, in addition to either Tier I or Tier II criteria as set forth in this Section to qualify for inclusion in the "Settlement Grid":

**(1)** MDL Case, State Case, or Tolled Claim is "Timely Filed":

**i)** MDL Cases and State Cases filed in a court of law on or before June 1, 2010 will be deemed Timely Filed within the applicable statutes of limitations.

**ii)** MDL Cases and State Cases filed in a court of law June 2, 2010 through 11:59 p.m. on the Execution Date must submit a statement with the Claim Package from the Program Participant or counsel stating why the lawsuit was filed within the applicable statute of limitations.

12

        **iii)** Tolled Claims will be deemed Timely Filed.

    **(2)** proven purchase or ingestion of "Recalled Digitek®"; and,

    **(3)** a Medically-Definable Incident.

**(B)** "Tier I Claims"

    **(1)** Claim Packages submitted with one of the following Supporting Documentation qualify as Tier I Claims:

        **i)** Clinical Diagnosis of Digoxin Toxicity; or,

        **ii)** Elevated Serum/Blood Digoxin Concentration Level.

    **(2)** Tier I Claims qualify for inclusion in the Settlement Grid, per the discretion of the Special Master, without review by a Medical Consultant unless requested by the Special Master.

**(C)** "Tier II Claims"

    **(1)** Claim Packages submitted with a Qualified Physician's Affidavit as Supporting Documentation qualify as Tier II Claims.

    **(2)** The Special Master will refer Tier II Claims to a Medical Consultant to evaluate whether the Qualified Physician's Affidavit establishes the following:

        **i)** digoxin toxicity;

        **ii)** that such digoxin toxicity occurred within a reasonable timeframe of the Medically-Definable Incident; and,

        **iii)** that the Qualified Physician's Affidavit is reliable.

    **(3)** The Medical Consultant will report his or her findings to the Special Master, who will determine whether to include the Tier II Claim in the Settlement Grid.

**Section 3.05**  Settlement Grid

    **(A)** "Eligible Claimants" will be assigned points that correspond to the amount of the award they will receive under the Program.

**(B)** Eligible Claimants initially receive 100 points (the "Initial Award") upon entry into the Settlement Grid. Points may be added or deducted by the Special Master based on factors set forth in this Section. Additional point awards and deductions will be applied once per factor unless otherwise indicated. The total point award is not to exceed 400 points unless the Eligible Claimant provides "Proof of Defect" or "Death." The total point award shall not be less than 30 points for any Eligible Claimant.

**(C)** The following factors will result in additions to the Initial Award by the Special Master:

| Factor | Points Added to Initial Award |
|---|---|
| "Death" | +200 |
| Under fifty (50) years old at the time of MDI | +10 |
| Hospitalization for one (1) to three (3) days that is in conjunction with or a result of the MDI | +20 |
| Hospitalization for four (4) to six (6) days that is in conjunction with or a result of the MDI | +35 |
| Hospitalization for seven (7) to nine (9) days that is in conjunction with or a result of the MDI | +50 |
| Hospitalization for ten (10) to thirteen (13) days that is in conjunction with or a result of the MDI | +75 |
| Hospitalization for fourteen (14) or more days that is in conjunction with or a result of the MDI | +100 |
| If above hospitalization included stay in a type of intensive care unit or critical care unit | +50 |
| Serum/Blood Digoxin Concentration Level 3.5 ng/mL or higher | +25 |
| In "Death" cases: Surviving Spouse/Minor Children/Dependants | +30 per person |
| Lost wages | +10-50 |
| "Proof of Defect" | +100 |
| Pacemaker placed as a result of, in conjunction with, or related to the MDI | +75 |
| Mechanical ventilation, cardioversion, dialysis or defibrillation (including firing of an implanted defibrillator) as a result of, in conjunction with, or related to the MDI | +75 |
| CPR as a result of, in conjunction with, or related to the MDI | + 100 |

14

| | |
|---|---|
| Received digoxin-binding antibody therapy (such as Digibind®, DigiFab®, or equivalent) | + 100 |
| Mild Arrhythmia or heart block as a result of, in conjunction with, or related to the MDI:<br>  ▪ Asymptomatic Slow heart rate from sinus-exit or AV block or sinus<br>  ▪ Asymptomatic Slow heart rate from sinus bradycardia<br>  ▪ Premature atrial beats<br>  ▪ Premature ventribular contractions (unifocal <5/min)<br>  ▪ Sino atrial node conduction disturbances not included under Serious arrhythmia or heart block<br>  ▪ Asymptomatic atrio-ventricular node conduction disturbances not included under Serious arrhythmia or heart block other than specified below<br>  ▪ Nonspecific EKG manifestations | +50 |
| Serious Arrhythmia or advanced heart block as a result of, in conjunction with, or related to the MDI:<br>  ▪ Atrial ectopic arrhythmias<br>  ▪ Ventricular ectopic arrhythmias<br>  ▪ Symptomatic Brady arrhythmias<br>  ▪ Symptomatic Tachyarrhythmias<br>  ▪ ventricular fibrillation<br>  ▪ Atrioventricular junctional escape rhythms<br>  ▪ Ventricular bigeminy or trigeminy<br>  ▪ Nonparoxysmal atrioventricular junctional tachycardia with high degrees of block (4:1, 6:1)<br>  ▪ Ectopic ventricular beats (usually >5/min)<br>  ▪ Multifocal ectopic ventricular beats (can be ≤ 5/min)<br>  ▪ Ventricular tachycardia<br>  ▪ Ventricular fibrillation<br>  ▪ Paroxysmal atrial tachycardia with atrioventricular block (high degree)<br>  ▪ Sinus arrest or sinoatrial exit block<br>  ▪ Mobitz I second degree atrioventricular | +100 |

15

| | |
|---|---|
| block<br>▪ Third degree (complete) heart block<br>▪ Asystole | |
| Special Circumstances to be determined on a case-by-case basis by the Special Master | +10-50 |

**(D)** The following factors will result in deductions to the Initial Award per the discretion of the Special Master:

| Factor | Points Deducted from Initial Award |
|---|---|
| 50-59 years old at time of MDI | 0 |
| 60-69 years old at time of MDI | -5 |
| 70-75 years old at time of MDI | -10 |
| 76+ years old at time of MDI | -15 |
| Medical record showing that the Elevated Serum/Blood Digoxin Concentration Level was drawn sooner than six (6) hours of last dose. When the record is silent as to timing, no points will be deducted. | -20 |
| Elevated Serum/Blood Digoxin Concentration Level was drawn post-mortem | -20 |
| Elevated Serum/Blood Digoxin Concentration level between 2.0 ng/mL and 2.49 ng/mL | -15 |
| "Electrolyte Disorders"<br>▪ Including:<br>   • hypomagnesemia<br>   • hypercalcemia<br>   • hypokalemia | -15 |
| Underlying heart problems or disease<br><br>▪ Excluding:<br>   • conditions treated with Digitek®<br>   • congestive heart failure<br>   • atrial fibrillation<br><br>▪ Including:<br>   • myocardial ischemia<br>   • ischemic heart disease<br>   • acute coronary syndrome | -15 |
| Co-morbidities and/or contributing medical | -10 |

16

| | |
|---|---|
| history including the following:<br>   • diabetes<br>   • hypertension<br>   • pulmonary disease<br>   • vascular disease<br>   • thyroid disease | |
| "Pre-Existing Mild Impaired Renal Status (CKD II)" | -5 |
| "Pre-Existing Moderate Impaired Renal Status (CKD III)" | -10 |
| "Pre-Existing Severe Impaired Renal Status (CKD IV)" | -15 |
| "Pre-Existing Established Kidney Failure (CKD V)" | -20 |
| Acute kidney injury manifesting within the two weeks prior to the MDI including:<br>   • an absolute increase in serum creatinine of more than or equal to 0.3 mg/dl ($\geq$ 26.4 µmol/l)<br>   • A percentage increase in serum creatinine of more than or equal to 50% (1.5-fold from baseline)<br>   • A reduction in urine output (documented oliguria of less than 0.5 ml/kg per hour for more than six hours) | -10 |
| Medications identified in Appendix F that may contribute to digoxin toxicity or increase serum/blood digoxin concentration | -10 |
| Other special circumstances as determined by the Special Master | -10-50 |

**Section 3.06**   Request for Reconsideration of Final Point Award

(A) The Special Master shall notify Actavis, NPC, and Eligible Claimants of each Eligible Claimant's point award within ten (10) days after the point totals have been determined for all Eligible Claimants. The Special Master shall also notify Program Participants who were not included in the Settlement Grid that they were issued no points. The Special Master's decision whether to include a Program Participant in the Settlement Grid or the number of points issued to an Eligible Claimant shall be subject to reconsideration by the Special Master, as set forth in this Section, but otherwise shall be final, binding, and non-appealable.

17

**(B)** A Program Participant may request that the Special Master reconsider the decision not to include the Program Participant in the Settlement Grid. Eligible Claimants may request the Special Master reconsider the number of points awarded.   The requests for reconsideration shall be limited to the following:

    **(1)** Information that a Program Participant believes the Special Master failed to consider resulting in improper exclusion from the Settlement Grid or, for Eligible Claimants, additional information that may affect the number of points awarded.  The Program Participant or Eligible Claimant must direct the Special Master to documentation including, but not limited to Medical Records, in support of the Program Participant or Eligible Claimant's belief that the Special Master failed to consider certain information.

    **(2)** To point out clerical errors in the Special Master's point award (i.e. incorrect age at time of Medically-Definable Incident, incorrect number of days hospitalized as a result of Medically-Definable Incident, incorrect Serum/Blood Digoxin Level noted, etc.)

**(C)** The reconsideration process shall not be used as an appeal or to place new information before the Special Master, but merely to correct oversight and clerical errors in failing to include a Program Participant in the Settlement Grid or awarding points to an Eligible Claimant.

**(D)** A request for reconsideration must be made with ten (10) business days following the receipt of the final point award notice from the Special Master. Requests by Actavis must be copied to the Program Participant or Eligible Claimant or their counsel and NPC.  Requests by Program Participants and Eligible Claimants must be made to the following, in writing, with copies to Actavis and NPC in one of the following ways:

    **(1)** By email, delivery and read receipt requested, to the Program Participant and/or counsel, Specialmaster@digitekclaims.net (Special Master), Digitekclaims@tuckerellis.com (Actavis Defendants' Counsel), and Digitekclaims@motleyrice.com (NPC); or,

    **(2)** By United States Mail or other carrier, post-marked on or before the Claim Deadline, return receipt requested, to the following:

        **i)**    Special Master:

            Special Master Digitek Claims
            Smith, Cochran & Hicks, P.L.L.C.

Post Office Box 2553
Charleston, West Virginia 25329

and

ii)   Actavis Defendants' Counsel:

Jaclyn A. Bryk, Esq.
Tucker Ellis & West, LLP
925 Euclid Avenue
1150 Huntington Building
Cleveland, Ohio 44115

and

iii)   NPC:

Meghan Johnson Carter, Esq.
Motley Rice LLC
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464

**(E)** Opposing parties may respond to the request for reconsideration within ten (10) business days following receipt of the request.  Responses must be submitted as set forth in Section 3.06(D).  The Special Master's final decision will be due within ten (10) business days thereafter with notice going to Actavis, NPC, and each Program Participant or Eligible Claimant or counsel. The Special Master's decision on reconsideration is final and non-appealable.

**Section 3.07**   Award Payment

**(A)** The dollar amount of a point will be determined after points have been awarded to all Eligible Claimants following the reconsideration period set forth in Section 3.06.   The number of points awarded to all Eligible Claimants will be totaled and divided into the Settlement Funds number to determine the value of each point.   An Eligible Claimant's total points multiplied by the designated dollar value of one point will be the Eligible Claimant's award under the Program (the "Final Award").

**(B)** After determining the Final Awards, the Special Master will send notice containing the amount of the Final Awards (the "Final Award Notice") to Actavis's counsel and the individual Program Participants or their counsel, if any.

19

(1) The Final Award Notice sent to Eligible Claimants or their counsel, if any, will be accompanied by the Release, contained in Appendix G, and, if applicable, a form requesting additional information needed for Actavis to fulfill its Medicare reporting requirements as set forth in Section 8.01 (the "Medicare Reporting Form").

(2) Within ten (10) days of receipt of the Final Award Notice, Eligible Claimants must return the executed Release and, if applicable, the Medicare Reporting Form to the Special Master and Actavis's counsel in one of the following ways:

    i) By email, delivery and read receipt requested, to Specialmaster@digitekclaims.net (Special Master) and Digitekclaims@tuckerellis.com (Actavis Defendants' Counsel); or,

    ii) By United States Mail or other carrier, return receipt requested, to the following:

        Special Master:

            Special Master Digitek Claims
            Smith, Cochran & Hicks, P.L.L.C.
            Post Office Box 2553
            Charleston, West Virginia 25329

        Actavis Defendants' Counsel:

            Jaclyn A. Bryk, Esq.
            Tucker Ellis & West, LLP
            925 Euclid Avenue
            1150 Huntington Building
            Cleveland, Ohio 44115

(3) Failure to return the executed Release and, if applicable, the Medicare Reporting Form to the Special Master and Actavis's counsel will result in delay in the issuance of the Eligible Claimant's Final Award check.

(C) Final Award checks will be issued from the Qualified Settlement Fund following the reimbursement of Medicare, if applicable, as set forth in Section 8.01. Medicare reimbursement will be deducted from the Final Award and submitted directly to The Centers for Medicare and Medicaid Services (CMS) as set forth in Section 8.01. Final Award checks with the

20

Medicare reimbursement deducted, if applicable, will be written jointly to the Eligible Claimant and Eligible Claimants' counsel, if any, and sent to Eligible Claimant or Eligible Claimants' counsel, if any.

**(D)** The Final Award is final and non-appealable.

### Article IV.    Special Master

**Section 4.01**  Special Master Liaisons

**(A)** NPC and Defendants each designate the following liaisons for communicating with the Special Master regarding the implementation of the Program ("Special Master Liaisons"):

**(1)** Defendants:

> Matthew P. Moriarty, Esq.
> Tucker Ellis & West, LLP
> 925 Euclid Avenue
> 1150 Huntington Building
> Cleveland, Ohio 44115
> Phone:    (216) 592-5000
> Email:    matthew.moriarty@tuckerellis.com

**(2)** NPC:

> Fred Thompson III, Esq.
> Motley Rice LLC
> 28 Bridgeside Boulevard
> Mount Pleasant, South Carolina 29464
> Phone:    (843) 216-9000
> Email:    fthompson@motleyrice.com

**(B)** Special Master Liaisons' communications with the Special Master will be subject to the limitations and conditions set forth in a separate joint protocol.

**Section 4.02**  Responsibilities

**(A)** The Special Master must uphold the responsibilities for claim administration, review, and adjustment set forth in this Agreement as well as any additional responsibilities, if any, set forth in any subsequent amendments to this Agreement. The Special Master must also uphold the responsibilities discussed in the joint training sessions conducted by the Special Master Liaisons and as set forth in a separate joint protocol.

21

(B) The Special Master may select Registered Nurses to assist in evaluating Claim Packages. The Registered Nurses' roles will be subject to the limitations set forth in the separate joint protocol. The Special Master will inform the Special Master Liaisons of any desire to retain Registered Nurses and provide current curriculum vitaes of the Registered Nurses sought to be retained. Special Master Liaisons will confer and jointly within a reasonable period of time whether they approve or disapprove of the selection. The Registered Nurses will be compensated from the Administrative Fund.

(C) The Special Master's decisions set forth in this Agreement are final and non-appealable except as indicated in Section 3.06.

**Section 4.03**    Selection

(A) Actavis's counsel and NPC will jointly select the Special Master and an alternate Special Master in the event the first Special Master is unable or unwilling to perform the duties established by this Agreement. In the event Actavis's counsel and NPC are unable to agree upon the appointment of a mutually agreeable Special Master, Actavis's counsel and NPC will each present two (2) candidates to the MDL Court. The MDL Court will interview the candidates *in camera* to determine who will serve as the Special Master and alternate Special Master. No counsel may be present at the hearing, unless otherwise directed by the MDL Court, and the order will be final and non-appealable.

(B) The Parties shall have no *ex parte* contact with the Special Master or alternate Special Master once they are selected by Actavis's counsel and NPC to serve. Any communication with the Special Master as allowed by this Agreement or the separate joint protocol must be in writing with copies to all parties to the particular claim except as otherwise indicated. Conference calls may be requested at the Special Master's discretion, but all relevant parties to the particular claim must participate.

(C) Actavis's counsel and NPC shall prepare a separate joint protocol for the Special Master to follow in the performance of his or her responsibilities. The protocol shall cover the administrative issues regarding implementation of the Special Master's duties under this Agreement.

(D) If Defendants or NPC believe the Special Master is consistently disregarding the Program's provisions, Actavis's counsel and NPC shall meet and confer to address the issue. In the absence of a resolution, either Defendants or NPC may bring the matter to the attention of the MDL Court. The MDL Court will interview the Special Master *in camera* and, if necessary, remove the Special Master. No counsel may be present at such hearing and order of the

22

Court will be final, non-appealable, and sealed in the record. If removed, the Special Master will be replaced by the alternate Special Master and a new alternate Special Master selected in accordance with this Article. This provision is not intended to create an appeal system for decisions made by the Special Master to which a Party disagrees.

### Article V.    Medical Consultants

**Section 5.01**    Responsibilities

    **(A)** Medical Consultants shall evaluate Qualified Physician's Affidavits submitted with Tier II Claims. Medical Consultants may also act as consultants for Tier I Claims at the discretion of the Special Master. Medical Consultants will review only Claim Packages submitted for review by the Special Master.

    **(B)** Only one (1) Medical Consultant shall review an individual Claim Package. The Special Master will assign Claim Packages to the Medical Consultants for review on a rotating basis.

**Section 5.02**    Selection

    **(A)** Actavis's counsel and NPC will jointly select three (3) Qualified Physicians to serve as Medical Consultants. Actavis's counsel and NPC shall use reasonable efforts to select Medical Consultants that have no relation to Digitek®-related litigation as experts or otherwise and have not previously provided medical treatment to any Digitek® user in an MDL Case, Tolled Claim, or State Case. In the event a Medical Consultant provided medical treatment to a Program Participant whose Claim Package is subject to review by a Medical Consultant that Medical Consultant shall decline the review and the Special Master shall assign the Claim Package to another Medical Consultant.

    **(B)** The Parties shall have no *ex parte* contact with the Medical Consultants once they are selected to serve under the Program. Any communication between the Medical Consultants and the Parties with regard to Claim Packages being reviewed by the Medical Consultants must be in writing with copies to all relevant parties to the particular Claim Package except as otherwise specified in a separate joint protocol. Training, if necessary, of the Medical Consultants will be performed jointly.

    **(C)** Actavis's counsel and NPC shall prepare a separate joint protocol for the Medical Consultants to follow in the performance of their responsibilities.

The protocol shall cover the administrative issues regarding implementation of the Medical Consultants' duties under this Agreement.

**(D)** If Defendants or NPC believe that a Medical Consultant is consistently disregarding the Program's provisions, Actavis's counsel and NPC shall meet and confer to address the issue. In the absence of a resolution, either Defendants or NPC may bring the matter to the attention of the MDL Court, which shall have the authority to remove the Medical Consultant. The MDL Court will interview the challenged Medical Consultant *in camera* and, if necessary, remove him or her. No counsel may be present at such hearing, unless otherwise directed by the MDL Court, and the order will be final, non-appealable, and sealed in the record. Actavis's counsel and NPC will select a replacement per the procedure set forth in this Article. This provision is not intended to create an appeal system for decisions made by a Medical Consultant to which a Party disagrees.

**Section 5.03**  Payment of Medical Consultants

**(A)** Medical Consultants shall be compensated on an hourly basis for the time spent reviewing Claim Packages.

**(B)** Tier I Claims

   **(1)** Review of a Tier I Claim by a Medical Consultant will be paid by Defendants out of the Administrative Fund.

**(C)** Tier II Claims

   **(1)** If the Medical Consultant concludes that the Qualified Physician's Affidavit is fraudulent, lacking any merit, or submitted in bad faith, the Program Participant submitting the Qualified Physician's Affidavit will be responsible for the Medical Consultant's entire fee for reviewing the Claim Package.

   **Article VI.**    Dismissals, Waivers, and Releases

**Section 6.01**  Dismissals

**(A)** MDL Cases

   **(1)** All MDL Cases are automatically enrolled in the Program absent the timely submission of a "Notice of Intent to Opt Out Form" as set forth in Section 1.02. Defendants are entitled to dismissal with prejudice of all MDL Cases that do not opt out of the Program in accordance with the following schedule:

24

| Circumstance | Timing of Dismissal |
|---|---|
| Timely submits "Notice of Intent to Opt Out Form" | No dismissal |
| Does not submit or untimely submits "Notice of Intent to Opt Out Form," but then does not submit or untimely submits a Claim Package | Subject to MDL Court dismissal with prejudice upon motion by Defendants within a reasonable time following the submission of the Claim Package |
| Submits Claim Package, but Program Participant is excluded from Settlement Grid<br><br>or<br><br>Submits Claim Package and recovers Final Award | Actavis will file with the MDL Court the Executed Stipulation of Dismissal submitted with a Claim Package within a reasonable time following submission of the Claim Package |

**(B)** Tolled Claims

**(1)** All Tolled Claims are automatically enrolled in the Program absent the timely submission of a "Notice of Intent to Opt Out Form" as set forth in Section 1.02.  The Program affects the continued tolling of Tolled Claims as follows:

| Circumstance | Effect on Tolling |
|---|---|
| Timely submits "Notice of Intent to Opt Out Form" | Tolling will no longer apply pursuant to the terms of the tolling agreement upon submission of "Notice of Intent to Opt Out Form" |

25

| | |
|---|---|
| Does not submit or untimely submits "Notice of Intent to Opt Out Form," but does not submit or untimely submits a Claim Package<br><br>or<br><br>Submits Claim Package, but then Program Participant is excluded from Settlement Grid<br><br>or<br><br>Submits Claim Package and recovers Final Award | Tolling will no longer apply pursuant to the terms of the tolling agreement after notice by Defendants.  If the Tolled Claims are filed, Defendants will immediately move for dismissal with prejudice. |

    **(C)** State Cases

        **(1)** Defendants are entitled to dismissal with prejudice of State Cases in accordance with the following schedule:

| Circumstance | Timing of Dismissal |
|---|---|
| Timely submits "State Case Notice of Intent to Opt In Form," but does not submit a Claim Package | Subject to state court dismissal with prejudice upon motion by Defendants following the Claim Deadline |
| Submits Claim Package, but Program Participant is excluded from Settlement Grid<br><br>or<br><br>Submits Claim Package and recovers Final Award | Actavis will file with the applicable state court the executed stipulation of dismissal submitted with the Claim Package within a reasonable time following submission of the Claim Package |

26

**Section 6.02**   Waivers

    **(A)** Defendants waive all defenses in law and equity which they have or may have to Program Participants with regard to Digitek®-related claims. Any waiver will be null and void in the event Defendants elect to terminate the Program pursuant to Article IX.

    **(B)** Program Participants and Defendants acknowledge that decisions made by the Special Master and/or Medical Consultant may be ones with which they disagree. They further acknowledge that this eventuality is part of the Program and they accept it.

    **(C)** Program Participants waive the right to receive any punitive damages and understand and agree that no payment made hereunder is or shall be deemed to be attributable to punitive damages.

**Section 6.03**   Releases

    **(A)** As a condition of and prior to receiving payment of a Final Award, Eligible Claimants must execute the Release contained in Appendix G and return the executed Release to the Special Master and Actavis's counsel as set forth in Section 3.07(B).

    **(B)** In summary and as fully reflected in the Release, as consideration for Defendants entering into this Agreement and waiving the defenses they have in law and equity, Eligible Claimants unconditionally release whatever rights they have or may have against Defendants, their agents, servants, employees, officers and directors, and all health care professionals, health care providers, health care facilities, pharmacies and other distributors of Digitek®, and all of these individuals and entities, parents and subsidiaries, affiliates, agents, attorneys, servants, employees, officers and directors, and those who acted in concert with them together with their respective insurers.

        **Article VII.**   Court Approval and Other Documentation.

**Section 7.01**   Survival and Wrongful Death Claims

    **(A)** If required by applicable state law, a Program Participant's counsel or a party authorized by a Program Participant's counsel will seek court approval of the settlement of the case brought on behalf of a decedent or others authorized under applicable state law to advance survival or wrongful death claims. Program Participants' counsel will assume responsibility for all necessary filings relating to notice and approval of the settlement.

27

**Section 7.02**   Claims Involving Minors

(A) If required by applicable state law, a Program Participant's counsel or a party authorized by a Program Participant's counsel will seek court approval of the settlement of a case brought on behalf of a minor. Program Participant's counsel will assume responsibility for all necessary probate and guardianship filings, all filings related to court approval of settlement, and all issues or rulings arising there from or related thereto.

**Section 7.03**   Other Documents

(A) Defendants and Program Participants agree to cooperate in acquiring and/or executing any other documents necessary to finalize an individual Eligible Claimant's settlement. Defendants and Eligible Claimants further agree that any application, petition, or filing in any court related to obtaining the necessary court approval or any other documents necessary to finalize a settlement shall be filed or submitted under seal. Defendants and Eligible Claimants agree to request that any and all such documents, records, files, hearings, and hearing transcripts remain confidential and, if filed under seal, remain under seal. Defendants and Eligible Claimants specifically agree to work together to obtain and maintain the confidentiality or sealing of any such documents and to oppose any motion to intervene or other effort to unseal or make public such documents.

**Article VIII.**   Repayment and Liens

**Section 8.01**   Medicare

(A) An Eligible Claimant's Medicare reimbursement obligation will be satisfied from that Eligible Claimant's Final Award prior to issuance of the settlement proceeds by the Special Master. Actavis, through the Special Master, with the Eligible Claimant's assistance, will discharge the obligation to assure reimbursement of Medicare under the "Medicare Secondary Payer Act," 42 U.S.C. § 1395y, as set forth in this Section.

(B) Reporting Obligations

(1) All Program Participants who submit Claim Packages shall fully complete the "Medicare Query" section of the Claim Form thereby enabling Actavis to obtain by query to The Centers for Medicare and Medicaid Services (CMS) a determination as to whether the Digitek® user or any other person making a claim for bodily injury resulting from

28

the Digitek® user's Digitek®-related illness or injury is or was a Medicare beneficiary.

    **(2)** Eligible Claimants will be notified as to the result of the Medicare query in the Final Award Notice. Eligible Claimants may be requested in the Final Award Notice to submit the Medicare Reporting Form as set forth in Section 3.07.

**(C)** Prior to the issuance of settlement proceeds, Eligible Claimants subject to Medicare must submit a "Final Demand Letter" from The Centers for Medicare and Medicaid Services (CMS) or the Medicare Secondary Payer Recovery Contractor (MSPRC) to the Special Master, copied to Actavis, containing the reimbursement amount owed Medicare. No other document will be accepted to determine the amount of Medicare reimbursement owed. If no amount it owed, documentation must be submitted to the Special Master noting the same. The Special Master will remit payment to Medicare from the Eligible Claimant's settlement proceeds and issue the remaining proceeds to Eligible Claimants and their counsel as set forth in Article III, Section 3.08. The Final Demand Letter must be submitted to the Special Master and Actavis in one of the following ways:

    **(1)** By email, delivery and read receipt requested, to Specialmaster@digitekclaims.net (Special Master) and Digitekclaims@tuckerellis.com (Actavis Defendants' Counsel); or,

    **(2)** By United States Mail or other carrier, return receipt requested, to the following:

        **i)** Special Master:

            Special Master Digitek Claims
            Smith, Cochran & Hicks, P.L.L.C.
            Post Office Box 2553
            Charleston, West Virginia 25329

        **ii)** Actavis Defendants' Counsel:

            Jaclyn A. Bryk, Esq.
            Tucker Ellis & West, LLP
            925 Euclid Avenue
            1150 Huntington Building
            Cleveland, Ohio 44115

(D) Program Participants and their counsel agree to cooperate fully with Actavis and the Special Master by executing any and all documents and providing such additional information as may be required by or on behalf of the Program Participant for Actavis to comply with the mandatory Medicare reporting requirements of Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007.

(E) Program Participants may exercise the option of participating in a universal lien resolution program.  In the event Program Participants elect to utilize a universal lien resolution program, the Special Master Liaison for NPC must confer and agree prior to implementation with the Special Master Liaison for Defendants that the universal lien resolution program does not interfere with Actavis's obligations under applicable law as set forth in this Section.

(F) Section 8.01 is subject to amendment in order to ensure timely compliance with applicable law set forth in this Section.

**Section 8.02**  Medicaid

(A) As to asserted or unasserted liens from Medicaid or any other entity operating under contract with Medicaid, Eligible Claimants shall satisfy, indemnify, repay, and hold Defendants harmless from any and all such liens as a condition precedent to the payment of the Final Award.

**Section 8.03**  Other Liens

(A) With regard to all other liens – including, without limitation, all liens by third parties, all subrogation claims, liens, or other rights to payment relating to medical treatment or lost wages, or any liens based on any legal expenses, bills, or costs that have been or may be asserted by any health care provider, insurer, governmental entity, employer, any other entity operating under contract with any of the previously mentioned entities, or any other person or – Eligible Claimants will satisfy, indemnify, repay, and hold Defendants harmless from any and all such claims, liens, and rights to payment, including attorneys' fees.

(B) Certification Regarding Other Liens.  Prior to the disbursement of the Final Award to any Eligible Claimant, that Eligible Claimant and counsel shall certify that they have conducted a good-faith investigation into the existence of, and have identified the amount of, any such other liens and shall certify that all such other liens will be satisfied and repaid by the Eligible Claimant from the Final Award.

### Article IX.    Termination Right

**Section 9.01**   NPC will use their best efforts to achieve sufficient participation to meet the participation benchmarks necessary to effectuate the Program.

**Section 9.02**   Defendants shall have the option, in their sole discretion, to terminate the Program and this Agreement if 15% or more of MDL Filed Cases or 10% or more of Tolled Claims elect to opt out of the Program pursuant to Article I.  Defendants may exercise their termination right at any time within forty-five (45) days after the Notice Deadline.

**Section 9.03**   Defendants shall exercise their termination right by filing notice through the MDL Court's Electronic Case Filing System (ECF).

**Section 9.04**   Upon exercising the termination right, the Program shall immediately terminate and this Agreement becomes null and void.  Any amount deposited in the Qualified Settlement Fund shall be returned to Actavis.    Actavis shall be responsible for payment of any administrative expenses incurred through the termination date.    The balance of the Administrative Fund shall be returned to Actavis following payment of the Administrative Costs.

### Article X.    Warranty of Capacity to Enter into the Agreement

**Section 10.01** NPC represents and warrants that they have the authority to negotiate and execute the Agreement.  Program Participants and their counsel are subject to the Agreement.

**Section 10.02** Actavis and Mylan represent and warrant that they have all requisite corporate power and authority to execute, deliver, and perform this Agreement and to consummate the transactions contemplated hereby.  The execution, delivery, and performance of this Agreement and the consummation by it of the actions contemplated hereby have been duly and validly executed and delivered by Actavis and Mylan and constitute their legal, valid, and binding obligation.   Actavis and Mylan authorize their counsel to execute this Agreement on the Execution Date.  Once the participation threshold has been met and/or termination right closed, this Agreement shall further be executed by Actavis and Mylan.

**Section 10.03** Settlement Authority.  Program Participants, on their own behalf and on behalf of their heirs, beneficiaries, agents, estates, executors, administrators, personal representatives, successors and assigns, have each agreed to resolve their claims with Defendants and have granted their counsel the authority to resolve their claims with Defendants.  Each Program Participant represents and warrants that no other person or entity has, or has had, any interest in the claims, demands, obligations, or causes of action referred to in this Agreement, that he or she has the sole right and exclusive authority to enter into this Agreement and to submit a Claim Package under it; and, also, that none of the claims, demands or obligations referred to in this document have been sold, assigned, subrogated, transferred, or otherwise disposed of by him or her. Each Program Participant further warrants that he or she is the sole entity which may have a potential cause of action against Defendants relative to his or her claim.  Each Program

31

Participant also warrants that no bankruptcy action is presently pending in which he or she is seeking bankruptcy.

**Section 10.04** No Transfer of Claims.  Program Participants and counsel have not sold, assigned, transferred, conveyed, or otherwise disposed of any of the claims, demands, obligations, and causes of action referred to in this Agreement.

### Article XI.    Attorneys' Fees and Expenses

**Section 11.01** The Plaintiffs' Steering Committee ("PSC") and anyone who believes they have prepared work that was approved by PSC and is eligible for common fund work may make an application to the MDL Court using the procedure set forth in FED. R. CIV. P. 23(h) for an award of attorneys' fees and expenses.  Any motion shall be filed no later than January 1, 2011 for common fund fees and expenses incurred prior to 11:59 p.m. on October 15, 2010.  Any objection to the motion may be filed thirty (30) calendar days after the filing of the motion and any response to objections may be filed ten (10) calendar days thereafter.  Either PSC or Defendants may request the MDL Court convene a hearing on the motion for attorneys' fees and expenses prior to making a decision on the motion.  The MDL Court's decision is final and non-appealable.

**Section 11.02** PSC may submit a supplemental application to the MDL Court for fees and expenses resulting from work processing Claim Packages and administration of this Agreement after October 15, 2010.  PSC must use the procedures set forth in FED. R. CIV. P. 23(h) for an award of attorneys' fees and expenses.  Any objections to the motion may be filed thirty (30) calendar days after the filing of the motion and any response to objections may be filed ten (10) calendar days thereafter.  Either PSC or Defendants may request the MDL Court convene a hearing on any motion for attorneys' fees and expenses prior to making a decision on the motion. The MDL Court's decision is final and non-appealable.

**Section 11.03** All fee agreements between Program Participants and their counsel remain in full force and effect and are not affected by this Agreement.

### Article XII.    Miscellaneous

**Section 12.01** Actavis, NPC, and the Special Master shall have the right to petition the MDL Court for appropriate review and relief in the event of the detection of any indicia of deception, dishonesty, or fraud relating to any Claim Package or in any way to the Program.

**Section 12.02** The Parties agree that the MDL Court shall have continuing jurisdiction over all aspects of the settlement contemplated in this Agreement including, but not limited to, the implementation, execution, and enforcement of the Program and interpretation of this Agreement and all other agreements relating to the Program as set forth herein.  The MDL Court in its discretion may extend deadlines or provide relief to individual plaintiffs upon a petition or motion showing good cause.

32

**Section 12.03** The provisions of this Agreement, appendices, and the individual Releases shall be interpreted in accordance with, and governed by, the laws of the State of West Virginia without regard to its conflict of laws principles. The Parties irrevocably submit to the exclusive jurisdiction of the MDL Court for any suit, action, proceeding, or dispute arising out of or relating to the Program, the applicability or enforceability of the Program, or any document relating to the Program, including, but not limited to, the Agreement, any of its Appendices, and/or the individual Releases.

**Section 12.04** This Agreement and the appendices hereto contain the entire agreement and understanding of the Parties. There are no additional promises, understanding or terms of this Agreement other than those contained herein. This Agreement and the attachments hereto supersede and render of no effect all other oral or written communications and agreements between the Defendants and NPC concerning the subject matter thereof.

**Section 12.05** This Agreement shall be deemed to have been mutually prepared by the Parties hereto and shall not be construed against any of them solely by reason of authorship.

**Section 12.06** The headings used in this Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Agreement in any manner.

**Section 12.07** The Parties agree to undertake best efforts, including all steps and efforts detailed in this Agreement and any other efforts that may be necessary or appropriate, by order of the MDL Court or otherwise, to expeditiously carry out the terms of this Agreement.

**Section 12.08** This Agreement may be executed in counterparts and taken together shall constitute one and the same Agreement.

**Article XIII.**  Definitions

**"2008 Philadelphia Cases"** – cases filed in the Philadelphia mass action, *In re Digitek® Product Liability Litigation*, No. 5166, in 2008.

**"Administrative Fund"** – the fund established in Section 2.05, to cover administrative costs, which will be funded by Actavis in an amount to be determined by separate agreement.

**"Administrative Costs"** – the costs associated with running the Program, including, but not limited to, payment of the Escrow Agent, Special Master, Medical Consultants, and other administrative fees set forth in this Agreement.

**"Claim Deadline"** – 11:59 p.m. on February 1, 2011; the deadline set by pre-trial order for "Program Participants" to submit "Claim Packages" to be considered for an award under the Program.

**"Claim Form"** – Form contained in Appendix D that must be submitted as part of the "Claim Package."

"**Claim Package**" – a "Program Participant's" request for an award, which includes the following documentation submitted to the Special Master for award consideration under the Program: (1) a completed "Claim Form," contained in Appendix D; (2) "Supporting Documentation" as set forth in Section 3.02; (3) "Medical Records" as set forth in Section 3.03; and, (4) dismissal documentation as set forth in Section 3.01(B)(4).

"**Clinical Diagnosis of Digoxin Toxicity**" – a finding of digoxin toxicity by a physician recorded contemporaneously in a "Medical Record" or death certificate.

"**Death**" – Death as a result of, in conjunction with, or related to the "Medically-Definable Incident."

"**Defendants**" – Actavis, Mylan, Pharmacy Defendants, and all retailers, wholesalers, marketers, or other entities that distributed, sold, or otherwise provided Digitek® to any Digitek® user in an "MDL Case," "Tolled Claim," or "State Case," including all parents, subsidiaries, successors, predecessors, and affiliated companies, and the respective employees, agents, assigns, shareholders, officers, directors, servants, other representatives, underwriters, attorneys, and insurers of such entities.

"**Electrolyte Disorders**" – an imbalance of certain ionized salts in the blood, including and limited to hypomagnesemia, hypercalcemia, and hypokalemia.

"**Elevated Serum/Blood Digoxin Concentration Level**" – a serum/blood or plasma/blood digoxin concentration level higher than 2.0 ng/mL as established by lab work and included in a contemporaneous "Medical Record."

"**Eligible Claimant(s)**" – "Program Participant(s)" included in the Settlement Grid.

"**Escrow Agent**" – person jointly selected by Actavis's counsel and NPC who is responsible for managing the "Qualified Settlement Fund."

"**Final Demand Letter**" – an official letter from The Centers for Medicare and Medicaid Services (CMS) or the Medicare Secondary Payer Recovery Contractor (MSPRC) containing the reimbursement amount owed Medicare.

"**MDL Case(s)**" – case(s) filed in the MDL as of the Execution Date.

"**MDL Plaintiff(s)**" – a person or persons who have an "MDL Case" or "Tolled Claim."

"**Medical Records**" – Admission history and physical notes, discharge summaries, progress notes and lab results from the "Medically-Definable Incident." All records from a "Program Participant's" primary care physician and cardiologist including, but not limited to, progress notes and lab results, from twenty-four (24) months prior to the "Medically-Definable Incident." A "Program Participant's" pharmacy records beginning with the first purchase of Digitek® to the date of the last refill.

34

**"Medically-Definable Incident"** or **"MDI"** – A "Program Participant's" digoxin toxicity as reflected by an "Elevated Serum/Blood Digoxin Concentration Level," "Clinical Diagnosis of Digoxin Toxicity," or "Qualified Physician's Affidavit." Must include emergency room visit, doctor's office visit, hospital stay, autopsy, lab work, or other documented healthcare intervention reflecting the diagnosis or treatment of the condition(s) associated with the digoxin toxicity.

**"Out-of-Specification Digitek® Tablet(s)"** – Digitek® tablets containing active pharmaceutical ingredient in excess of the content parameters approved by the United States Food and Drug Administration.

**"Parties"** – the collective group of NPC, Defendants, and "Program Participants" and their counsel.

**"Pre-Existing Established Kidney Failure (CKD V)"** – Glomerular filtration rate less than 15 mL/min/1.72m$^2$, as specified by the *Modification of Diet in Renal Disease Study Group* equation and definitions of Chronic kidney disease Stage V.

**"Pre-Existing Mild Impaired Renal Status (CKD II)"** – Glomerular filtration rate between 60 and 89 mL/min/1.72m$^2$, as specified by the *Modification of Diet in Renal Disease Study Group* equation and definitions of Chronic kidney disease Stage II.

**"Pre-Existing Moderate Impaired Renal Status (CKD III)"** – Glomerular filtration rate between 30 and 59 mL/min/1.72m$^2$, as specified by the *Modification of Diet in Renal Disease Study Group* equation and definitions of Chronic kidney disease Stage III.

**"Pre-Existing Severe Impaired Renal Status (CKD IV)"** – Glomerular filtration rate between 15 and 29 mL/min/1.72m$^2$, as specified by the *Modification of Diet in Renal Disease Study Group* equation and definitions of Chronic kidney disease Stage IV.

**"Program Participant(s)"** – The collective group of "MDL Plaintiffs" that do not opt out of the Program by timely submitting the "Notice of Intent to Opt Out Form" and "State Participants."

**"Proof of Defect"** – evidence by certified measurements or reliable laboratory testing using high performance liquid chromatography (HPLC), or a comparable US Pharmacopeia (USP) approved method, that a Digitek® tablet from a prescription filled by a "Program Participant" or their decedent was defective in that it contained active pharmaceutical ingredient in excess of or less than the United States Food and Drug Administration's approved content parameters.

**"Qualified Physician"** – a physician licensed in any state who is also board certified in cardiology or board certified in internal medicine or family medicine with substantial training and experience treating cardiac problems.

**"Qualified Physician's Affidavit"** – an affidavit submitted by a "Qualified Physician" supported by contemporaneous "Medical Records" confirming the existence of a "Program Participant's" digoxin-related illness or injury, including the basis for the "Qualified Physician's" opinion and the "Qualified Physician's" credentials.

**"Qualified Settlement Fund"** – the settlement fund established pursuant to Section 2.03 in which Actavis will deposit the Settlement Funds.

**"Recalled Digitek®"** – Digitek® tablets subject to the April 25, 2008 recall, including all batches of Digitek® tablets on the market and within their expiration date as of April 25, 2008.  This includes prescriptions of Digitek® filled after March 15, 2006.

**"Settlement Grid"** – grid maintained by the Special Master that includes all "Eligible Claimants" and point awards.

**"State Cases"** – lawsuits filed in state courts on or before the Execution Date that are not included in the MDL. This definition includes individual lawsuits included in coordinated proceedings in Pennsylvania, New Jersey, Texas, and West Virginia, as well as non-coordinated proceedings in state courts.

**"State Participants"** – "State Plaintiffs" who elect to participate in the Program by submitting a "Notice of State Case to Opt In Form" on or before the Notice Deadline.

**"State Plaintiffs"** – persons who filed "State Cases."

**"Tier I Claims"** – "Claim Packages" submitted with one of the following Supporting Documentation: (1) "Clinical Diagnosis of Digoxin Toxicity" or (2) "Elevated Serum/Blood Digoxin Concentration Level."

**"Tier II Claims"** – "Claim Packages" submitted with a "Qualified Physician's Affidavit" As Supporting Documentation.

**"Timely Filed"** – "MDL Cases" and "State Cases" filed in a court of law on or before June 1, 2010 are presumed timely filed within the applicable statutes of limitations.  "MDL Cases" and "State Cases" filed in a court of law June 2, 2010 through 11:59 p.m. on the Execution Date must submit a statement with the "Claim Package" from the "Program Participant" or counsel stating why the lawsuit was filed within the applicable statute of limitations.  "Tolled Claims" will be deemed Timely Filed for purposes of the Program.

**"Tolled Claim(s)"** – any claims, demands, actions, suits, damages, equitable remedies, statutory remedies, both in law and equity, against any entity within the Digitek® chain of manufacture and distribution, arising out of the purchase or ingestion of Digitek®, on behalf of any claimant who is a party to a Digitek® tolling agreement pending as of the Execution Date.

**\*\*THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK\*\***

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the date first set forth above.

FOR Actavis Totowa LLC, Actavis Elizabeth LLC, and Actavis Inc.:

BY: _____

Richard A. Dean, Esq.
Matthew P. Moriarty, Esq.
Tucker Ellis & West, LLP
925 Euclid Avenue
1150 Huntington Building
Cleveland, Ohio 44115


FOR Mylan Pharmaceuticals Inc., Mylan Bertek Pharmaceuticals Inc., Mylan Inc., and UDL Laboratories, Inc.:

BY: _____

Harvey Kaplan, Esq.
Shook, Hardy & Bacon L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108

37

NEGOTIATING PLAINTIFFS' COUNSEL:

Fred Thompson III, Esq.
Motley Rice LLC
28 Bridgeside Boulevard
Mount Pleasant, South Carolina 29464
E-mail: fthompson@motleyrice.com


Carl Frankovitch, Esq.
Frankovitch, Anetakis, Colantonio & Simon
337 Penco Road
Weirton, West Virginia 26062
E-mail: carln@facslaw.com


Harry Bell Jr., Esq.
The Bell Law Firm, PLLC
30 Capitol Street
Charleston, West Virginia 25301
E-mail: hfbell@belllaw.com

38

# **Appendix A**

# PHARMACY DEFENDANTS

ADSI Delaware, LLC
A-S Medication Solutions, LLS
Buckingham South, Inc.
Clark Holdings, Inc.
CVS
CVS Caremark Corp.
CVS Pharmacy, Inc.
Davita RX LLC
Guardian Pharmacies, LLC
Guardian Pharmacy of Southeast Georgia, LLC
Kaiser Foundation Health Plan, Inc.
Kaiser Foundation Hospitals
Kingston Hospital
Loma Linda University Health Care
McBride Clinic Orthopedic Hospital, Inc.
Medco Health Solutions, Inc.
Medtronic International Technology, Inc.
Medtronic Puerto Rico Operations Co.
Medtronic, Inc.
Osco Drug Stores
Park Prescriptions, Inc.
Pathmark Corp.
Pathmark Pharmacy
Rite Aid Corporation
Rite Aid Store No. 5555, Inc.
Rite-Aid
Savon
Senior Care Pharmacy Consultants, LLC
Senior Care Pharmacy of Statesboro
Target Pharmacy
Walgreens
Walgreens, Inc.
Wal-Mart Pharmacy
Wal-Mart Stores Inc
Wal-Mart Stores Texas, LLC
Wal-Mart Stores, Inc.
Wal-Mart, Inc.

# **Appendix B**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

IN RE: DIGITEK®                                          MDL NO. 1968
PRODUCT LIABILITY LITIGATION

# NOTICE OF INTENT TO OPT OUT FORM

**THIS FORM APPLIES TO ALL PLAINTIFFS WHO HAVE SUITS PENDING IN MDL 1968 OR
PERSONS HOLDING TOLLED CLAIMS.**

IF YOU DO **NOT** WISH TO PARTICIPATE IN THE *IN RE DIGITEK® PRODUCT LIABILITY
LITIGATION* SETTLEMENT PROGRAM (the "Program"), YOU **MUST** SUBMIT THIS FORM TO THE
FOLLOWING PERSONS VIA EMAIL, DELIVERY AND READ RECEIPT REQUESTED, ON OR
BEFORE <u>11:59 p.m. on OCTOBER 15, 2010</u>, OR BY UNITED STATES MAIL OR OTHER CARRIER,
RETURN RECEIPT REQUESTED, POSTMARKED ON OR BEFORE <u>OCTOBER 15, 2010</u>:

| Special Master: | Actavis Defendants' Counsel: | Negotiating Plaintiffs' Counsel: |
|---|---|---|
| Special Master Digitek Claims<br>Smith, Cochran & Hicks, P.L.L.C.<br>Post Office Box 2553<br>Charleston, West Virginia 25329 | Jaclyn A. Bryk, Esq.<br>Tucker Ellis & West, LLP<br>925 Euclid Avenue<br>1150 Huntington Building<br>Cleveland, Ohio 44115 | Meghan Johnson Carter, Esq.<br>Motley Rice LLC<br>28 Bridgeside Boulevard<br>Mt. Pleasant, South Carolina 29464 |
| Email:<br>Specialmaster@digitekclaims.net | Email:<br>Digitekclaims@tuckerellis.com | Email:<br>Digitekclaims@motleyrice.com |

By timely submitting this form, you acknowledge and agree that you will not be entitled to seek an award under the
Program. Failure to timely submit this form means that you will automatically be enrolled in the Program, although
you will not be eligible for an award unless you timely submit a Claim Package pursuant to the Program. By
checking the box below and executing this form, you acknowledge that you have been fully advised of your rights
under the Settlement Agreement and elect to opt-out of the Program.

■ **I elect to opt-out of the In Re Digitek® Product Liability Litigation Settlement Program.**

_____        _____
Print Name                                                              Date

_____        _____
Signature                                                               Case No. (if applicable)

_____
Attorney's Name

_____
Firm Name

_____
Attorney's Address

_____
Attorney's Email and Telephone Number

# **Appendix C**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

IN RE: DIGITEK®                                              MDL NO. 1968
PRODUCT LIABILITY LITIGATION

PLAINTIFF(S):                               STATE CASE INFORMATION:

_____       Court: _____

_____       Case No.: _____

# STATE CASE NOTICE OF INTENT TO OPT IN FORM

**THIS FORM APPLIES TO ALL PLAINTIFFS WHO HAVE SUITS RELATING TO DIGITEK® USE PENDING IN STATE COURTS.**

IF YOU WISH TO PARTICIPATE IN THE *IN RE DIGITEK® PRODUCT LIABILITY LITIGATION* SETTLEMENT PROGRAM (the "Program") YOU <u>MUST</u> SUBMIT THIS FORM TO THE FOLLOWING PERSONS VIA EMAIL, DELIVERY AND READ RECEIPT REQUESTED, ON OR BEFORE <u>11:59 p.m. on OCTOBER 15, 2010</u>, OR BY UNITED STATES MAIL OR OTHER CARRIER, RETURN RECEIPT REQUESTED, POSTMARKED ON OR BEFORE <u>OCTOBER 15, 2010</u>:

| Special Master: | Actavis Defendants' Counsel: | Negotiating Plaintiffs' Counsel: |
|---|---|---|
| Special Master Digitek Claims | Jaclyn A. Bryk, Esq. | Meghan Johnson Carter, Esq. |
| Smith, Cochran & Hicks, P.L.L.C. | Tucker Ellis & West, LLP | Motley Rice LLC |
| Post Office Box 2553 | 925 Euclid Avenue | 28 Bridgeside Boulevard |
| Charleston, West Virginia 25329 | 1150 Huntington Building | Mt. Pleasant, South Carolina 29464 |
| | Cleveland, Ohio 44115 | |
| Email: | Email: | Email: |
| specialmaster@digitekclaims.net | Digitekclaims@tuckerellis.com | Digitekclaims@motleyrice.com |

By timely submitting this form, you agree to be bound by the terms of the Settlement Agreement and the jurisdiction of the United States District Court for the Southern District of West Virginia with regard to all matters pertaining to the Settlement Agreement and the Program contained therein. You acknowledge that you will not be eligible for an award unless you timely submit a Claim Package pursuant to the Program. The Settlement Agreement, however, makes no guarantee that every person who submits a Claim Package will receive an award. By checking the box below and executing this form, you acknowledge that you have been fully advised of your rights under the Settlement Agreement and elect to participate in the Program.

■ **I elect to participate in the In Re Digitek® Product Liability Litigation Settlement Program.**

_____          _____
Print Name                                           Date

_____
Signature

_____
Attorney's Name

_____
Firm Name

_____
Attorney's Address

_____
Attorney's Email and Telephone Number

# **Appendix D**

In re: Digitek® Product Liability Litigation                                      Page 1 of 18
Digitek® User: _____

---

### IN RE DIGITEK® PRODUCT LIABILITY LITIGATION
### United States District Court for the Southern District of West Virginia
### MDL No. 1968

## CLAIM FORM

---

### INSTRUCTIONS

Defined terms will be distinguished by underscore. The defined terms are defined in Article XIV of the Settlement Agreement (the "Agreement"). For purposes of the Claim Form, the Digitek® user is referred to, at times, as "You".

The Claim Form and documentation requested herein (the "Claim Package") **MUST be submitted BY 11:59 P.M. ON February 1, 2011 (the "Claim Deadline")**.

Failure to submit the Claim Package completed fully and in its entirety by the Claim Deadline may result in disqualification for an award under the Program. All medical conditions and claims must be by medical records or other relevant documentation.

The Claim Package is applicable to MDL Cases, Tolled Claims, and State Cases.

A complete Claim Package must be submitted regardless of whether a Plaintiff's Fact Sheet and medical records were previously provided. References to the Plaintiff's Fact Sheet will not suffice as a response to any question in the Claim Form. References to documentation previously submitted will not fulfill the obligation to submit a complete Claim Package.

The Claim Form may be completed by the Program Participant or counsel for the Program Participant, but must be signed by the Program Participant as set forth in Section 14.

The questions and requests for documents contained in the Claim Form are non-objectionable and shall be answered without objection.

To the extent that the Claim Form does not provide enough space to complete your responses or answers, please attach additional sheets as necessary.

The Claim Package must be delivered to the Special Master, with a copy of the Claim Form only to Actavis Defendants' Counsel and NPC, by email, delivery and read receipt requested, or United States Mail or other carrier, post-marked on or before the Claim Deadline, return receipt requested.

| Special Master: | Actavis Defendants' Counsel: | Negotiating Plaintiffs' Counsel: |
|---|---|---|
| Special Master Digitek Claims | Jaclyn A. Bryk, Esq. | Meghan Johnson Carter, Esq. |
| Smith, Cochran & Hicks, P.L.L.C. | Tucker Ellis & West, LLP | Motley Rice LLC |
| Post Office Box 2553 | 925 Euclid Avenue | 28 Bridgeside Boulevard |
| Charleston, West Virginia 25329 | 1150 Huntington Building | Mt. Pleasant, South Carolina 29464 |
|  | Cleveland, Ohio 44115 |  |
| Email: | Email: | E:mail: |
| Specialmaster@digitekclaims.net | Digitekclaims@tuckerellis.com | Digitekclaims@motleyrice.com |

In re: Digitek® Product Liability Litigation Claim Form                    Page 2 of 18
Digitek® User: _____

| SECTION 1: DIGITEK® USER INFORMATION | | | |
|---|---|---|---|
| 1. **Full Legal Name** | Last | First | Middle Initial |
| 2. **Current Address** | Street | | |
| | City | State | Zip | County |
| 3. **Telephone** | Home | Work | Mobile |
| 4. **Date of Birth** | ___/___/___ (Month/Day/Year) | 5. **Social Security No.** | ⎵⎵⎵ - ⎵⎵ - ⎵⎵⎵⎵ |
| 5. Any other names used or by which Digitek® user has been known, including, but not limited to maiden name: | | | |

| SECTION 2: PROGRAM PARTICIPANT INFORMATION (IF DIFFERENT THAN SECTION 1) | | | |
|---|---|---|---|
| 1. **Full Legal Name** | Last | First | Middle Initial |
| 2. **Current Address** | Street | | |
| | City | State | Zip | County |
| 3. **Telephone** | Home | Work | Mobile |
| 4. **Date of Birth** | ___/___/___ (Month/Day/Year) | 5. **Social Security No.** | ⎵⎵⎵ - ⎵⎵ - ⎵⎵⎵⎵ |
| 5. Relationship to Digitek® user: | | | |

| SECTION 3: CASE INFORMATION |
|---|
| Status of Claim (Filed in MDL, Filed in State Court, or Previously Tolled) |
| Caption of Case if Filed |
| State of filing if filed in State Court |
| Attorney of Record |
| Date lawsuit filed |
| *If filed after 11:59 p.m. on June 1, 2010, you MUST provide an attached statement stating why the lawsuit was filed within the applicable statute of limitations. Failure to attach this statement may result in the exclusion of your Claim Package for award consideration under the Program.* |

In re: Digitek® Product Liability Litigation Claim Form                      Page 3 of 18
Digitek® User: _____

| SECTION 4: PREFERRED CONTACT INFORMATION | | |
|---|---|---|
| *The purpose of this section is to identify who will be receiving communication from the Special Master, NPC, Defendants, or any other person relative to the Program.  If you are represented by counsel, the contact person MUST be your counsel.  If you are not represented by counsel, please complete this section with your most current contact information.* | | |

| 1. **Name** | Last | First | Firm Name (if applicable) |
|---|---|---|---|
| 2. **Current Address** | Street | | |
| | City | State | Zip | County |
| 3. **Telephone** | Home (if not represented by counsel) | Work | Mobile |
| 4. **Email** | | | |

| SECTION 5: DEPENDENTS |
|---|
| *This section is applicable only to death cases.* |

☐ **Surviving Spouse**        Name: _____

Marriage Date: ____/____/____

☐ **Minor Children**         Name: _____

Birth Date: ____/____/____

Name: _____

Birth Date: ____/____/____

Name: _____

Birth Date: ____/____/____

In re: Digitek® Product Liability Litigation Claim Form

Page 4 of 18

Digitek® User: _____

Name: _____

Relationship to Digitek® User:

_____

_____

☐ **Other Dependants**

Name: _____

Relationship to Digitek® User:

_____

_____

In re: Digitek® Product Liability Litigation Claim Form                                        Page 5 of 18
Digitek® User: _____

## SECTION 6: PROOF OF USE AND MEDICALLY-DEFINABLE INCIDENT

*Check the boxes next to the Digitek® use and the Digitek® user's relevant <u>Medically-Definable Incident</u>. Please complete the additional information required in the sections that apply.*

☐ **Digitek® Use**

Dates *Digitek®* prescription filled:

_____/_____/_____ - _____/_____/_____

Date(s) of Medically-Definable Incident:

_____/_____/_____ - _____/_____/_____

Explanation if Dates of prescription do not correspond with Medically Definable Incident:

_____

_____

_____

_____

_____

☐ **<u>Clinical Diagnosis of Digoxin Toxicity</u>**

Diagnosis Date: _____/_____/_____

Diagnosing Physician:

_____

Diagnosis noted in medical records:

_____

_____

_____

_____

_____

_____

☐ **<u>Elevated Blood/Serum Digoxin Concentration Level</u>**

Date: _____/_____/_____

SDC Level: _____ ng/mL

*You must check all that apply:*

☐ Serum sample for level was drawn less than 6 hours before last dose of Digitek®

☐ Blood sample for level was drawn post-mortem

☐ **<u>Clinical Symptoms</u> without <u>Clinical Diagnosis of Digoxin Toxicity</u>** (if you check this box you must attach <u>Qualified Physician's Affidavit</u>).

Date: _____/_____/_____

Physician:

_____

Symptoms as noted in medical records:

_____

_____

_____

_____

_____

In re: Digitek® Product Liability Litigation Claim Form                                    Page 6 of 18
Digitek® User: _____

| SECTION 7: CONDITIONS RELATIVE TO MEDICALLY-DEFINABLE INCIDENT |
|---|

*Check the boxes next to conditions that the Digitek® user experienced at the time of or related to the Medically-Definable Incident and, when requested, provide additional information.  Medical Records MUST be provided in support of the affirmation that the Digitek® user experienced any of these conditions at the time of or related to the Medically-Definable Incident.  If the death or other condition occurred after the Medically-Definable Incident, you must attach medical records establishing the death or condition is related to or caused by the Medically-Definable Incident. Failure to provide supporting Medical Records will result in your disqualification for an award for these conditions.*

| | |
|---|---|
| ☐  **Death**<br>    ☐  Death Certificate identifies "digoxin toxicity" as cause of death<br>    ☐  Death as a result of, in conjunction with, or related to the MDI | Date of Death:  ____/____/____<br><br>Date of Medically-Definable Incident:  ____/____/____<br><br>If Death occurred after the Medically Definable Incident,  please describe circumstances and  attach relevant medical records:<br><br>_____<br>_____<br>_____ |
| ☐  **Pacemaker placed as a result of, in conjunction with, or related to the MDI** | Date:  ____/____/____<br><br>Diagnosing Physician:  _____ |
| ☐  **Mild Arrhythmia or heart as a result of, in conjunction with, or related to the MDI including the following:**<br>   ▪ Asymptomatic slow heart rate from sinus-exit or AV block or sinus<br>   ▪ Asymptomatic slow heart rate from sinus bradycardia<br>   ▪ Premature atrial beats<br>   ▪ Premature ventribular contractions (unifocal < 5/minute)<br>   ▪ Sino atrial node conduction disturbances not included under serious arrhythmia or heart block<br>   ▪ Asymptomatic atrio-ventricular node conduction disturbances not included under serious arrhythmia or heart block other than specified below<br>   ▪ Nonspecific EKG manifestations | Date:  ____/____/____<br><br>Diagnosing Physician:  _____<br><br>Diagnosis:  _____<br><br>Date:  ____/____/____<br><br>Diagnosing Physician:  _____<br><br>Diagnosis:  _____<br><br>Date:  ____/____/____<br><br>Diagnosing Physician:  _____<br><br>Diagnosis:  _____ |

In re: Digitek® Product Liability Litigation Claim Form

Page 7 of 18

Digitek® User: _____

| | |
|---|---|
| ☐ **Serious Arrhythmia or advanced heart block as a result of, in conjunction with, or related to the MDI including the following:**<br>- Atrial ectopic arrhythmias<br>- Ventricular ectopic arrhythmias<br>- Symptomatic Brady arrhythmias<br>- Symptomatic Tachyarrhythmias<br>- ventricular fibrillation<br>- Atrioventricular junctional escape rhythms<br>- Ventricular bigeminy or trigeminy<br>- Nonparoxysmal atrioventricular junctional tachycardia with high degrees of block (4:1, 6:1)<br>- Ectopic ventricular beats (usually >5/min)<br>- Multifocal ectopic ventricular beats (can be ≤ 5/min)<br>- Ventricular tachycardia<br>- Ventricular fibrillation<br>- Paroxysmal atrial tachycardia with atrioventricular block (high degree)<br>- Sinus arrest or sinoatrial exit block<br>- Mobitz I second degree atrioventricular block<br>- Third degree (complete) heart block<br>- Asystole | Date: ____/____/____<br><br>Diagnosing Physician: _____<br><br>Diagnosis: _____<br><br><br>Date: ____/____/____<br><br>Diagnosing Physician: _____<br><br>Diagnosis: _____<br><br><br>Date: ____/____/____<br><br>Diagnosing Physician: _____<br><br>Diagnosis: _____<br><br><br>Date: ____/____/____<br><br>Diagnosing Physician: _____<br><br>Diagnosis: _____ |
| ☐ **Mechanical ventilation, cardioversion, dialysis or defibrillation (including firing of an implanted defibrillator) as a result of, in conjunction with, or related to the MDI including the following:** | Date: ____/____/____<br><br>Physician: _____<br><br>Occurrence: _____ |
| ☐ **CPR  as a result of, in conjunction with, or related to the MDI** | Date: ____/____/____<br><br>Physician: _____<br><br>Occurrence: _____ |
| ☐ **Received digoxin-binding antibody therapy (such as Digibind®, DigiFab®, or equivalent)** | Date(s): ____/____/____ - ____/____/____<br><br>Prescribing Physician: _____ |

In re: Digitek® Product Liability Litigation Claim Form                          Page 8 of 18
Digitek® User: _____

| SECTION 8: PRE-EXISTING CONDITIONS |
|---|

*Check the boxes next to conditions that the Digitek® user experienced before the <u>Medically-Definable Incident</u> and, when applicable, provide additional information.*

☐ **Underlying heart problems or disease**

    ▪ Excluding:
        • conditions treated with Digitek®
        • congestive heart failure
        • atrial fibrillation

    ▪ Including
        • myocardial ischemia
        • ischemic heart disease
        • acute coronary syndrome

Date: _____/_____/_____

Diagnosis: _____

Diagnosing Physician: _____

Date: _____/_____/_____

Diagnosis: _____

Diagnosing Physician: _____

Date: _____/_____/_____

Diagnosis: _____

Diagnosing Physician: _____

☐ <u>**Electrolyte Disorders:**</u>
    ▪ hypomagnesemia
    ▪ hypercalcemia
    ▪ hypokalemia

Date: _____/_____/_____

Diagnosis: _____

Diagnosing Physician: _____

Date: _____/_____/_____

Diagnosis: _____

Diagnosing Physician: _____

☐ **Diabetes**

Date: _____/_____/_____

Diagnosing Physician: _____

☐ **Hypertension**

Date: _____/_____/_____

Diagnosing Physician: _____

In re: Digitek® Product Liability Litigation Claim Form                                      Page 9 of 18
Digitek® User: _____

| | |
|---|---|
| ☐ **Pulmonary Disease** | Date: _____/_____/_____  <br><br> Diagnosis: _____  <br><br> Diagnosing Physician: _____ |
| ☐ **Vascular Disease** | Date: _____/_____/_____  <br><br> Diagnosis: _____  <br><br> Diagnosing Physician: _____ |
| ☐ **Thyroid Disease** | Date: _____/_____/_____  <br><br> Diagnosis: _____  <br><br> Diagnosing Physician: _____ |
| ☐ **Pre-Existing Mild Impaired Renal Status (CKD II)** (Glomerular filtration rate between 60 and 89 mL/min/1.72m$^2$, as specified by the *Modification of Diet in Renal Disease Study Group* equation and definitions of Chronic kidney disease Stage II) | Date: _____/_____/_____  <br><br> Diagnosis: _____ |
| ☐ **Pre-Existing Moderate Impaired Renal Status (CKD III)** (Glomerular filtration rate between 30 and 59 mL/min/1.72m$^2$, as specified by the *Modification of Diet in Renal Disease Study Group* equation and definitions of Chronic kidney disease Stage III) | Date: _____/_____/_____  <br><br> Diagnosis: _____ |
| ☐ **Pre-Existing Severe Impaired Renal Status (CKD IV)** (Glomerular filtration rate between 15 and 29 mL/min/1.72m$^2$, as specified by the *Modification of Diet in Renal Disease Study Group* equation and definitions of Chronic kidney disease Stage IV) | Date: _____/_____/_____  <br><br> Diagnosis: _____ |

In re: Digitek® Product Liability Litigation Claim Form                                    Page 10 of 18
Digitek® User: _____

| | |
|---|---|
| ☐ **Pre-Existing Established Kidney Failure (CKD V)** (Glomerular filtration rate less than 15 mL/min/1.72m$^2$, as specified by the *Modification of Diet in Renal Disease Study Group* equation and definitions of Chronic kidney disease Stage V) | Date: ____/____/____<br><br>Diagnosis: _____ |
| ☐ **Acute kidney injury manifesting within the two weeks prior to the <u>Medically-Definable Incident</u> including:**<br>  ▪ an absolute increase in serum creatinine of more than or equal to 0.3 mg/dl (≥ 26.4 µmol/l)<br>  ▪ A percentage increase in serum creatinine of more than or equal to 50% (1.5-fold from baseline)<br>  ▪ A reduction in urine output (documented oliguria of less than 0.5 ml/kg per hour for more than six hours) | Date: ____/____/____<br><br>Diagnosis: _____<br><br>Diagnosing Physician: _____<br>Date: ____/____/____<br><br>Diagnosis: _____<br><br>Diagnosing Physician: _____<br>Date: ____/____/____<br><br>Diagnosis: _____<br><br>Diagnosing Physician: _____ |

In re: Digitek® Product Liability Litigation Claim Form                    Page 11 of 18
Digitek® User: _____

## SECTION 9: OTHER MEDICATIONS

*Check the boxes next to medications that the Digitek® user ingested within one (1) month prior to the <u>Medically-Definable Incident</u> and, when applicable, provide the last prescription fill date prior to the <u>Medically-Definable Incident</u>.*

| | |
|---|---|
| ☐ **Amiodarone** (Cordarone) | Prescription fill date:  ____/____/____ |
| ☐ **Amiloride** (Midamor, Moduretic) | Prescription fill date:  ____/____/____ |
| ☐ **Alprazolam** (Xanax, Reclam and Niravam) | Prescription fill date:  ____/____/____ |
| ☐ **Carvedilol** (Coreg, Dilatrend, Eucardic, Carloc) | Prescription fill date:  ____/____/____ |
| ☐ **Catopril** (Capoten) | Prescription fill date:  ____/____/____ |
| ☐ **Cholestyramine** (Questran, Questran Light, Cholybar) | Prescription fill date:  ____/____/____ |
| ☐ **Cyclosporine** (Sandimmune) | Prescription fill date:  ____/____/____ |
| ☐ **Diltiazem** (Cardizem) | Prescription fill date:  ____/____/____ |
| ☐ **Indomethacin** (Indocin, Indocid, Indochron E-R, Indocin-SR.) | Prescription fill date:  ____/____/____ |
| ☐ **Itraconazole** (Sporanox) | Prescription fill date:  ____/____/____ |
| ☐ **Macrolide Antibiotics** (Erythromycin, Clarithromycin) (Biaxin) | Prescription fill date:  ____/____/____ |
| ☐ **Nifedipine** (Adalat, Nifedical, Procardia) | Prescription fill date:  ____/____/____ |
| ☐ **Propafenone** (Rythmol SR, Rytmonorm) | Prescription fill date:  ____/____/____ |
| ☐ **Quinidine** (Quinaglute, Quinidex, Quinora) | Prescription fill date:  ____/____/____ |
| ☐ **Rifampin** (Rifadin, Rifaldazine, R/AMP, Rofact) | Prescription fill date:  ____/____/____ |

In re: Digitek® Product Liability Litigation Claim Form                              Page 12 of 18
Digitek® User: _____

| | |
|---|---|
| ☐ **Salbutamol** (Albuterol) | Prescription fill date:   ____/____/____ |
| ☐ **Spironolactone** (Aldactone, Novo-Spiroton, Spiractin, Spirotone, Verospiron, Berlactone) | Prescription fill date:   ____/____/____ |
| ☐ **Sucralfate** (Sucramal, Carafate, Sucral, Pepsigard, Sutra, Sulcrate, Antepsin) | Prescription fill date:   ____/____/____ |
| ☐ **St. John's Wort** (Tipton's Weed, Klamath weed)) | Prescription fill date:   ____/____/____ |
| ☐ **Tetracycline** (Achromycin, Brodspec, Emtet-500, Tetracap, Sumycin, Terramycin, Tetracyn, Panmycin) | Prescription fill date:   ____/____/____ |
| ☐ **Triamterene** (Dyrenium) | Prescription fill date:   ____/____/____ |
| ☐ **Verapamil** (Isoptin, Verelan, Calan, Bosoptin, Covera-HS) | Prescription fill date:   ____/____/____ |

In re: Digitek® Product Liability Litigation Claim Form                                              Page 13 of 18
Digitek® User: _____

| SECTION 10: OTHER FACTORS |
|---|

1.  **Age at time of <u>Medically-Definable Incident</u>:**

     ☐   49 or less

     ☐   50 – 59

     ☐   60 – 69

     ☐   70 – 75

     ☐   76 or greater

2.  **How many days was the Digitek® user hospitalized in connection with or as a result of the <u>Medically-Definable Incident</u>?**

     ☐   1 to 3 days (including outpatient and emergency room visit)

     ☐   4 to 6 days

     ☐   7 to 9 days

     ☐   10 to 13 days

     ☐   14 or more days

     ☐   Hospitalization of any length included stay in a type of intensive care unit or critical care unit

     ☐   Digitek® user was not hospitalized

In re: Digitek® Product Liability Litigation Claim Form                     Page 14 of 18
Digitek® User: _____

3. **Do you claim any lost wages resulting from your use of Digitek®?**

☐   Yes

Amount  and circumstances of lost wages claimed:

_____

_____

If you responded "yes", you MUST include
- Tax returns for the two years prior to the <u>Medically-Definable Incident,</u>
- Tax return for the year of the <u>Medically-Definable Incident,</u> and
- Tax return for the year after the <u>Medically-Definable Incident.</u>
  Failure to provide tax returns will result in your disqualification for an award for lost wages.

☐   No

---

4. **Do you possess <u>Proof of Defect</u>?**

☐   Yes

Date of measurements/lab testing: _____

Values obtained from measurements/lab testing: _____

If you responded "yes", you MUST provide copies of certified measurements or reliable laboratory testing using high performance liquid chromatography (HPLC), or a comparable US Pharmacopeia (USP) approved method, proving that a Digitek® tablet from a prescription filled for you was defective in that it contained active pharmaceutical ingredient in excess of or less than the United States Food and Drug Administration's approved content parameters.  Failure to provide these copies will result in your disqualification for an award for <u>Proof of Defect</u>.

☐   No

---

5. **Use this section to identify any other information that you feel should affect the amount of the award you may be eligible for under the Program and attach any additional supporting documentation.**

_____

_____

_____

_____

_____

_____

_____

_____

In re: Digitek® Product Liability Litigation Claim Form
Digitek® User: _____

## SECTION 11: MEDICARE QUERY

*This section must be completed for the Digitek® user. This section must also be completed for any other Medicare eligible person (i.e. spouse) claiming physical injury or illness directly attributable to the Digitek® user's Digitek®-related illness or injury. This section MUST be completed in its entirety in order for Actavis to comply with the mandatory Medicare reporting requirements of Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007.*

| | |
|---|---|
| **Digitek® User's Medicare Information** | *Attach a copy of the front and back of the Digitek® User's Medicare card to the Claim Form.*<br><br>Exact Name on Medicare Card: _____<br><br>Full Medicare Number: _____<br><br>Social Security Number: \|__\|__\|__\| - \|__\|__\| - \|__\|__\|__\|__\|<br><br>Date of Birth: _____/_____/_____<br><br>Gender: ☐ Male     ☐ Female |
| **Medicare eligible person (i.e. spouse) claiming physical injury or illness directly attributable to the Digitek® user's Digitek®-related illness or injury** | *Attach a copy of the front and back of the dependant's Medicare card to the Claim Form.*<br><br>Exact Name on Medicare Card: _____<br><br>Full Medicare Number: _____<br><br>Social Security Number: \|__\|__\|__\| - \|__\|__\| - \|__\|__\|__\|__\|<br><br>Date of Birth: _____/_____/_____<br><br>Gender: ☐ Male     ☐ Female |

## SECTION 12: OTHER INSURANCE INFORMATION

*Please list all insurance policies that cover the Digitek® user not listed in Medicare section above*

| | |
|---|---|
| **Digitek® User's Primary Insurance Information** | Insurance Company: _____<br><br>Exact Name on Insurance Card: _____<br><br>Insurance Policy Number: _____ |

In re: Digitek® Product Liability Litigation Claim Form                    Page 16 of 18
Digitek® User: _____

| Digitek® User's Secondary Insurance Information | Insurance Company: _____ |
| | Exact Name on Insurance Card: _____ |
| | Insurance Policy Number: _____ |

## SECTION 13: REQUIRED DOCUMENTATION AND CHECKLIST

***The following documentation must be submitted in order to be eligible for an award under the Program.*** *Failure to provide this information and documentation may result in your disqualification for an award. Please check the boxes indicating that you have provided all of the required information and identify what information has been provided to ensure that your entire Claim Package has been received for review by the Special Master.*

☐   **Completed Claim Form**

☐   **Medical Records**

    ☐   Records from the <u>Medically-Definable Incident</u> (If <u>Medically-Definable Incident</u> is a hospitalization records must include available admission history, physical notes, discharge summaries, progress notes, lab results.)

        Date: _____/_____/_____ - (if applicable) _____/_____/_____

        Physician/Hospital/Facility:

        _____

        Records Submitted:

        _____

        _____

        _____

    ☐   Records from your primary care physician(s) for 24 months prior to the <u>Medically-Definable Incident</u>

        Date: _____/_____/_____ - (if applicable) _____/_____/_____

        Physician/Hospital:

        _____

        Records Submitted:

        _____

        _____

        _____

    ☐   Records from your cardiologist(s) for 24 months prior to the <u>Medically-Definable Incident</u>

        Date: _____/_____/_____ - (if applicable) _____/_____/_____

        Physician:

        _____

Records Submitted:

_____

_____

_____

☐   (if applicable) Records establishing any injury that occurred after the <u>Medically-Definable Incident</u>, is
      related to or caused by the <u>Medically-Definable Incident</u>

Date:   ____/____/____ - (if applicable) ____/____/____

Physician/Hospital/Facility:

_____

Records Submitted:

_____

_____

_____

☐   All pharmacy records from January 1, 2006 to the date of last Digitek® refill

Date:   ____/____/____ - ____/____/____

Pharmacy or Pharmacies:

_____

☐   **<u>Supporting Documentation</u> (select all that apply)**

☐   <u>Clinical Diagnosis of Digoxin Toxicity</u>

☐   <u>Elevated Serum/Blood Digoxin Concentration Level</u>

☐   <u>Qualified Physician's Affidavit</u>

☐   **<u>Executed Stipulation of Dismissal</u>**

In re: Digitek® Product Liability Litigation Claim Form                    Page 18 of 18
Digitek® User: _____

| SECTION 14: VERIFICATION |
|---|

I agree that I am subject to all terms and conditions contained in the Settlement Agreement.

*I declare under penalty of perjury* that all of the information provided in this Claim Form is true and correct to the best of my knowledge. I have supplied all the documents requested in Section 12 of this Claim Form, to the extent that such documents are in my possession, custody, or control, or in the possession, custody, or control of my lawyers. Further, I acknowledge that the information contain herein is supported by medical records and other relevant documentation.

I am aware that the Special Master has the sole, exclusive, and final authority to determine whether my Claim Package qualifies for an award under the Program. I acknowledge that there is no guarantee that I will be compensated under the Program and that my case will be subject to dismissal, with prejudice, regardless of whether I recover an award under the Program.

Program Participant Signature: _____ Date: ____/____/____

Program Participant Print Name: _____

# **<u>Appendix E</u>**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

| | | |
|---|---|---|
| IN RE: DIGITEK® PRODUCTS LIABILITY LITIGATION | ) ) ) | MDL No. 1968 |
| THIS DOCUMENT APPLIES TO: | ) ) | Case No. _____ |
| _____ | ) | |
| _____ | ) | |
| _____ | ) | |
| | ) | |
| Plaintiff(s), | ) ) | |
| v. | ) ) | |
| _____ | ) | |
| _____ | ) | |
| _____ | ) | |
| _____ | ) | |
| | ) | |
| Defendants. | | |

**STIPULATION OF DISMISSAL**

The Parties in this action hereby stipulate to the dismissal of this action *with prejudice* pursuant to Rule 41(a)(ii) of the Federal Rules of Civil Procedure.  It is further stipulated by and among the parties to this action that each party will bear its own attorneys' fees and costs unless otherwise determined by the Settlement Agreement executed on August 30, 2010.

Dated this _____ day of _____, _____.

Respectfully submitted,

Counsel for the Plaintiff(s):                Counsel for the Defendants:

/s/_____    /s/_____
_____        _____
_____        _____
_____        _____

# **Appendix F**

| Generic Name | Brand Name(s) |
|---|---|
| **AMIODARONE** | Cordarone |
| **VERAPAMIL** | Isoptin, Verelan, Calan, Bosoptin, Covera-HS |
| **NIFEDIPINE** | Adalat, Nifedical, Procardia |
| **DILTIAZEM:** | Cardizem |
| **QUINIDINE:** | Quinaglute, Quinidex, Quinora |
| **PROPAFENONE** | Rythmol SR, Rytmonorm |
| **CATOPRIL** | Capoten |
| **CARVEDILOL** | Coreg, Dilatrend, Eucardic, Carloc |
| **SPIRONOLACTONE** | Aldactone, Novo-Spiroton, Spiractin, Spirotone, Verospiron, Berlactone |
| **AMILORIDE** | Midamor, Moduretic |
| **TRIAMTERENE** | Dyrenium |
| **SALBUTAMOL** | Albuterol |
| **MACROLIDE ANTIBIOTICS (ERYTHROMYCIN, CLARITHROMYCIN)** | Biaxin |
| **TETRACYCLINE** | Achromycin, Brodspec, Emtet-500, Tetracap, Sumycin, Terramycin, Tetracyn, Panmycin |
| **INDOMETHACIN** | Indocin, Indocid, Indochron E-R, Indocin-SR. |
| **ALPRAZOLAM** | Xanax, Reclam and Niravam |
| **ITRACONAZOLE** | Sporanox |
| **RIFAMPIN** | Rifadin, Rifaldazine, R/AMP, Rofact |
| **SUCRALFATE** | Sucramal, Carafate, Sucral, Pepsigard, Sutra, Sulcrate, Antepsin |
| **CHOLESTYRAMINE** | Questran, Questran Light, Cholybar |
| **CYCLOSPORINE** | Sandimmune |
| **ST JOHN'S WORT** | Tipton's Weed, Klamath weed |

# **Appendix G**

# **RELEASE**

This Release is entered into on this ___ day of _____, 2011 by and between:

"Plaintiff(s):"*

_____

_____

_____

_____

--and--

"Defendants:"*   **ACTAVIS INC. and ACTAVIS TOTOWA, LLC,** (and all associated entities as set forth below) **and MYLAN, INC., MYLAN PHARMACEUTICALS, INC., MYLAN BERTEK PHARMACEUTICALS, INC. and UDL LABORATORIES, INC.,** (and all associated entities as set forth below) **and**

(additional defendants)

_____

_____

_____

_____

*Whenever any reference is made anywhere in this document to Plaintiff or Defendants, such reference shall be construed, and is agreed to include all past, present and future heirs, spouses, children, natural and adopted parents, natural and adopted children, siblings, next-of-kin, beneficiaries, executors and administrators, guardians, related trusts, corporate affiliates (including parent companies, subsidiaries, joint ventures, divisions, predecessors and successors), affiliates by contract, fictitious or trade names, employees, employers, members  (whether by estoppel/vicarious liability or otherwise), agents, assigns, partners, partnerships, owners, shareholders, officers, trustees, directors and insurers/reinsurers.

## I.      SETTLEMENT AGREEMENT

1.01     By executing this Release, the Plaintiff acknowledges that Plaintiff  is bound by the terms and conditions contained in the _In re: Digitek_® _Products Liability Litigation_ Settlement Agreement (the "Agreement").  The Agreement is reasserted and incorporated herein by reference.

1

## II.    PAYMENT AND RELEASE

2.01    In consideration of the sum of _____
($_____) paid entirely by Actavis Inc., Actavis Totowa, LLC, Actavis Elizabeth LLC, and the agreement of Mylan, Inc., Mylan Pharmaceuticals, Inc., Mylan Bertek Pharmaceuticals, Inc., and UDL Laboratories, Inc. to forego any claims for fees and costs, the receipt and sufficiency of which consideration is hereby acknowledged, Plaintiff hereby releases, settles, cancels, discharges and acknowledges to be fully satisfied any and all claims, demands, rights, actions, and causes of action, of every kind or description whatsoever, whether known or unknown, knowable or unknowable, past, present or future, including but not limited to any claim for negligence, negligence *per se*, strict products liability (failure to warn, design defect and manufacturing defect), breach of warranty (express and implied), misrepresentation and fraud/fraudulent concealment, intentional infliction of emotional distress, statutory or regulatory violations, injuries to third parties, wrongful death and/or future wrongful death, duress, improper conduct of any type, physical or bodily injuries, mental anguish or injury of any type, emotional distress, pain and suffering, loss of enjoyment of life, loss of services, consortium or companionship, economic loss claims of any type, claims for return or refund of product purchase costs, consumer relief claims, medical bills and expenses, attorney claims for rights to all or part of the proceeds of this settlement, punitive or exemplary damages, interest of any type, any other related damages and all other tangible or intangible losses, without exception, whether based on a tort, intentional tort, contract, statute, regulation or any other theory of recovery, which Plaintiff now has, previously had, or may hereafter have or assert against Defendants or any other person, firm, association, corporation or entity, arising out of or by reason of or in any manner connected with the incidents and alleged events set forth in the pleadings in Civil Action No. _____ pending in _____.

2.02    Plaintiff hereby acknowledges and agrees that this Release is a general release and Plaintiff further expressly assumes the risk of any and all claims for damages which exist as of this date or which may exist in the future, but of which the Plaintiff may or may not know to exist, whether through ignorance, oversight, error, negligence, or otherwise and which, if known, would materially affect Plaintiff's decision to enter into the Agreement and this Release.

2.03    Plaintiff further agrees that Plaintiff has accepted payment of the sums specified herein as a complete compromise of matters involving disputed issues of law and fact against Defendants and Plaintiff assumes the risk that the facts or law may be otherwise than Plaintiff and Plaintiff's counsel believe now or in the future.

2.04    The consideration recited herein is the sole and only consideration, and there have been no promises or representations made except as herein contained.

2.05    All sums set forth herein constitute damages on account of personal physical injuries or sickness within the meaning of §104(a)(2) of the Internal Revenue Code.

2.06    Plaintiff understands and agrees that this settlement is a compromise of a doubtful and disputed claim and the payments made hereunder are not intended to be and are not to be deemed to be any evidence of or an admission of liability on the part of Defendants, by whom liability is expressly denied.

2

### III.   INDEMNIFICATION

3.01    As to asserted or unasserted liens from Medicaid or any other entity operating under contract with Medicaid, Plaintiff agrees to satisfy, indemnify, repay, and hold Defendants harmless from any and all such liens.

3.02    With regard to all other liens – including, without limitation, all liens by third parties, all subrogation claims, liens, or other rights to payment relating to medical treatment or lost wages, or any liens based on any legal expenses, bills, or costs that have been or may be asserted by any health care provider, insurer, governmental entity, employer, any other entity operating under contract with any of the previously mentioned entities, or any other person or entity – Plaintiff will satisfy, indemnify, repay, and hold Defendants harmless from any and all such claims, liens, and rights to payment, including attorneys' fees.

3.03    By signing the Release, Plaintiff and their counsel certify that they have conducted a good-faith investigation into the existence of, and have identified the amount of, any such other liens and hereby certify that all such other liens will be satisfied and repaid by the Plaintiff from the settlement funds.

### IV.   AUTHORITY TO EXECUTE RELEASE

4.01    Plaintiff represents and warrants that no other person or entity has, or has had, any interest in the claims, demands, obligations, or causes of action referred to in this Release, that Plaintiff has the sole right and exclusive authority to execute this Release and to receive, or direct payment of, the sums specified in it; and, also, that none of the claims, demands or obligations referred to in this document have been sold, assigned, subrogated, transferred or otherwise disposed of by Plaintiff.

### V.   BANKRUPTCY

5.01    Plaintiff warrants that Plaintiff has no bankruptcy action that was or is pending in which this lawsuit or settlement, in whole or in part, would or should have been part of the bankruptcy estate.

By signing below, I fully and voluntarily agree to all of the foregoing provisions.

**THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK**

**PLAINTIFF(S):**

Signature: _____

Printed Name: _____

Dated: _____

STATE OF _____      )
                              )      SS:
COUNTY OF _____        )

BEFORE ME, a Notary Public in and for said County and State, personally appeared the above-named _____, who acknowledged to me that he did sign the foregoing Release and that the same is his own free act and deed.

IN TESTIMONY WHEREOF, I have hereunto set my hand and seal this _____ day of _____, 2011, at _____, _____.

_____
NOTARY PUBLIC

**COUNSEL FOR PLAINTIFF(S):**

**I attest that I have discussed the contents of this Release with my client, Plaintiff, and answered all questions to my client's satisfaction. I further acknowledge the indemnification provisions contained herein and will assure payment to third-parties as required by this Release if any.**

Signature: _____

Printed Name: _____

Dated: _____

4