IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

In Re: DIGITEK                                        MDL NO. 1968
       PRODUCTS LIABILITY LITIGATION

REPLY TO DEFENDANTS' BRIEF IN OPPOSITION TO
PSC'S APPLICATION FOR FEES AND EXPENSES

     The Plaintiffs' Steering Committee (hereinafter "PSC") worked diligently and skillfully to uncover the facts and circumstances that moved this litigation towards settlement. We need not reiterate all the facts underlying this lawsuit to the Court. This case arose out of a massive recall which entailed defective tablets and gross lack of good manufacturing practices at the Actavis Totowa facilities as documented by repeated FDA inspections, and between recalls, **every single pill** manufactured for almost three years at the Actavis Little Falls manufacturing facility was recalled because of quality system difficulties and failure to use current good manufacturing practices. These recalls were not limited to only Digitek, but included every product line manufactured at the facility.

     We do not need to revisit those areas because after extended, painstaking and meticulous discovery, the PSC ferreted out the departures from good manufacturing practices that brought the defendants to settlement. The Master Settlement Agreement ("MSA") is clearly a success and will resolve all but a handful of cases. This result would not have been achievable without the tireless effort and work put into the litigation prior to the settlement by Counsel for the plaintiffs. Defendants would still be litigating and expending enormous amounts of money had the PSC not agreed to support the settlement process.

Defendants open their Opposition Brief with a misplaced quote taken from a 7th Circuit prisoner's rights case. (Brief in Opposition at p. 1, citing *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988)). This case is otherwise unsupportive of Defendants' position, in that the Court ultimately did award Plaintiff the attorneys' fees sought, while discounting application and support of the 'American Rule' upon which defendants hereunder so heavily rely, and touting the 'social value' in litigating claims and awarding fees in cases with more far-reaching effect. Defendants' Opposition includes a twenty-one page brief with nine exhibits, totaling an additional 423 pages, including self-created charts, multiple additional drafted pages of fee petition criticisms, and commentary replete with seemingly cathartic, but irrelevant, metaphors. These metaphors include its reference to the PSC's request for fees and costs as "'Exhibit A' too much of what is wrong with the tort system"? (Opposition, p. 16.). Given this hyperbole in the face of this Court's admonishment against florid overstatements, it is not overreaching to suggest that the audience for such language is not the Court, but the media.

**Argument**

The discussion over the "American Rule" whereby parties bear their own expenses in the absence of a fee shifting statute is irrelevant in the present matter. The parties hereunder were free to contract for the payment of fees in any legal way. Here, the parties agreed contractually to submit potential fees and expenses to the court, whereafter the Defendant would pay whatever sums were granted without any appeal. [1]While this is certainly indicative of the high regard both parties have for this supervisory Court, it is also a strong statement of the parties' desire to obtain full, efficient and timely closure. Each of those elements is a separate and sufficient element of consideration to make this MSA enforceable according to its terms.

---

[1] Settlement Agreement, Section 11.01.

Defendants have suggested that the provision in the MSA which allows the Plaintiffs to apply to the Court for fees and expenses which would then be paid outside of the principal settlement pool is without legal effect because the Court must have a statutory basis, in addition to having the agreement of the Parties, to address the accrued fees and expenses as set out in the MSA. Even if, as stated in Mr. Moriority's affidavit, there is not a legal basis to require the Court to award anything, it is within its authority under the MSA to set the entitlement and amount of these fees and expenses. It is not, under the MSA, beyond the Court's legal authority to do so; it is, in fact, within its discretion. Defense chooses to ignore and forget multiple face to face meetings and understandings relating to the submission of fees and expenses. Their position is belied by the events that have preceded and followed the execution of the MSA. First, early in the litigation, the PSC sought an assessment order, but in working with the Court's wishes deferred the request until it was handled by the provisions of the MSA. Second, the PSC has continued to perform detailed services in setting up the claims process, working with the special master, answering numerous questions of MDL participants and working frequently with defense counsel on issues concerning the settlement participants, none of which has been conditional upon a future agreement for compensation. Again, that is because the compensation is fixed and decided by the MSA.

Defendants are attempting to engage in a "bait and switch" in regard to the PSC's fee petition. It was certainly understood between the parties that the intent was that the PSC would petition the Court to have its fees paid by the Defendants. To argue otherwise now is disingenuous. A release is construed from standpoint of the parties at time of its execution. *See Murphy v. North American River Runners, Inc.*, 412 S.E.2d 504 (W.Va. 1991). It cannot reasonably be argued that at the time of execution of the Master Settlement the PSC and the

Defendants anticipated that the PSC would obtain no fees for the years of work put forth exposing the Defendants' haphazard manufacturing processes. "The judicial system of this State is not designed to promote 'footloose' tactics by litigants that lead to 'gotcha' justice." *W. Va. DOT, Div. of Highways v. Robertson*, 618 S.E.2d 506 (W.Va. 2005).

It is well within the authority of the court to approve fees for MDL Counsel. In every MDL, the court views and sets certain fees based upon objective standards such as those outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The source of funds can be an assessment upon the settlement fund or the shifting of fees to a losing party. In this case the parties agreed that the source of funds would not be the settlement fund, and thus the remaining option is that it would be paid by Defendants outside of the settlement amount. To prevent further litigation, both sides agreed that the attorney's fees and expenses would be paid separately and this is freely admitted by Defendants. Should this Court determine that an assessment is called for, it is within its discretion to so order.

Because this Court has enormous experience in considering and awarding attorneys' fees in cases that traditionally permit fee awards such as class actions and MDL common fund awards, the PSC has submitted arguments that may assist the court in affixing an appropriate award. In so doing, the PSC was not asserting "a misguided version of the 'common fund' theory."

Thus, the very recent effort by Defendants to cast doubt upon the clear and binding contractual provision need not derail nor even delay this process. The provision clearly calls for payment of fees and costs after submission to the court.

What the MSA did not do was to appoint a committee with powers to audit potential hours or to vet and disallow certain expenses. Instead, according to the MSA, any plaintiff

believing him or herself to be entitled to compensation for common fund work was to submit such request to the Court. In its fee petition filing, the PSC compiled the various requests, but lacked the authority to approve, modify or disapprove hours or expenses. The Defendants relish the chance to critique the submissions of counsel concerning fees and expenses; however, much of Defendants' musing is speculation[2]. Should the Court believe that it should obtain a report on submissions, it is certainly within the power of the Court to order a master to review and to prepare a report. This would simply be an exercise of the discretion granted to the Court by the MSA. Likewise, should the Court desire to minimize judicial resources and go forward with a ruling that, too, falls within the broad discretion permitted to it by the MSA.

### The PSC's hard work and discovery efforts led to settlement

The PSC exhaustively reviewed records which demonstrate innumerable departures from good manufacturing practices by the defendants. The PSC undertook to understand the manufacturing processes of this company; and much of its discovery has been reasonably calculated to determine and to put into admissible form innumerable and indefensible departures from good manufacturing practices.[3] Examples of testimony have been previously brought to the court's attention and include manufacturing equipment held together with duct tape, total failures of quality assurance, and production of products not approved by the FDA. The litany of

---

[2] When the submissions of plaintiffs are compared to the Defense Counsel, the contrast is stark. Defendants admit that they have spent over thirty million dollars in defense costs. (Opposition, p. 16). If the Court believes plaintiffs and defendants' fees and expenses should bear some relationship the Court could order the disclosure of defendants' billing.

[3] This was in the face of stonewalling by Defendants. Actavis offered a misleading affidavit by a corporate representative to unduly narrow and block discovery into its manufacturing practices. Magistrate Judge Stanley ruled that "the Actavis Defendants' overly aggressive approach in depositions of instructing deponents to answer relevant questions only as to Digitek®, prevented Plaintiffs from obtaining discovery about cGMP of reasonably related products." (PTO 59, p. 10). The court agreed that "if the quality department's performance was not in compliance with applicable standards, the court cannot reasonably differentiate between quality control of other products and quality control of Digitek®". *Id.*

departures of cGMP ('current good manufacturing practice'), which were the subject of FDA action and others which escaped FDA action, all were pursued vigorously.

Defendants ignore much of the PSC's expert testimony which taken individually, and as a whole, create a stinging indictment of this company's practice. The company was "in a substantial state of discompliance" and Digitek tablets were "manufactured under the quality systems of lack of quality systems therein and therefore were at risk." (Bliesner, Vol. 2, January 25, 2011, 200: 17-20). At their depositions, each expert stood by their opinions and their reports. The reports clearly show the dangerous lack of standards at Actavis.

Defendants' focus on the deposition of Dr. Frank is, of course, a cheap shot. She was tendered on a single issue that was not essential to the plaintiffs' case. Her obvious personal difficulties at her first expert deposition were tactlessly exploited by counsel. However, even through their endless needling of Dr. Frank, interestingly, she did not repudiate her report and it withstood the examination intact. The extent of her concessions was to admit that she would desire to see additional documents. Her conclusions regarding quality assurance at Actavis were telling.

**The result achieved is desirable and the settlement was successful**

The PSC worked diligently to prove the transmission of defective pills to the public. One of the most telling facts about the defendant in this case was that it never tested the recalled tablets to determine their content and percentage of active ingredient. Despite having over 40,000,000 pills under Defendants' exclusive custody, Defendants never tested the pills. Given the ringing criticism of its cGMP, Actavis showed a remarkable incuriosity about its pills, instead daring the plaintiffs to embark on a campaign of testing that it argued could never be conclusive. The inescapable dilemma with proving defect led to the PSC's decision to develop

testimony using circumstantial evidence and expert testimony to meet the essential elements of product defect. Each case is unique in causation, and the individual case's facts regarding the individual's access to the pills and their impact on the claimant predominates. Each case would need to be litigated to finality. The proof of departures from cGMP was an essential building block for the experts' opinions that the tablets were defective, and the discovery completed by the PSC was essential to this litigation.

Nonetheless, because the element of product defect presented a difficult issue, when the opportunity to resolve these cases on behalf of persons injured by the recalled drug without referencing defect arose, the PSC deemed it in the interest of the many claimants injured by Digitek to offer an opportunity to settle. This is hardly a nuisance settlement. Instead, this settlement is proactively assisting the Court (and the defendants despite their criticism) in completely resolving a mass tort that arose from a national recall within two years of the recall date, and achieving access to a remedy for injured persons without requiring exhaustive time and energy in court trials. This is, in fact, the way a mass tort should work: diligent effort to uncover the facts, efforts at collegiality and an early eye toward settlement and not endless litigation. Further, the number of claims filed indicate, preliminarily, that the per case settlement will be compensatory.

### Class Counsel furthered the litigation

The United States Supreme Court has made clear that "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (citation omitted); *See also O'Neal v. City of*

*Seattle*, 66 F.3d 1064, 1068-69 (9th Cir. 1995), *citing Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986) (*quoting Hensley*, 461 U.S. at 435). "Claims are related where they involve 'a common core of facts' or are 'based on related legal theories.'" *O'Neal* at 1069*, citing Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995), *See also Trs. of the Iron Workers Local 25 Pension Fund v. Crawford Door Sales, Inc.*, No. 09-cv-12370-DT, 2010 U.S. Dist. LEXIS 91707, at *10-11 (E.D. Mich. Sept. 3, 2010), *citing Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005). ("Both successful and unsuccessful claims are deemed related to litigation for the purposes of attorney fee calculation when they 'involve a common core of facts' or are 'based on related legal theories.'")  "The test is whether relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury upon which the relief granted is premised." *O'Neal v. City of Seattle*, 66 F.3d 1064, 1069 (9th Cir. Wash. 1995), *quoting Odima*, 53 F.3d at 1499 (citation omitted).

In the instant action it is clear that the relief sought by the claims represented in the motion for class certification involved the very same core facts as the claims resolved by the Settlement Agreement. All claims arise out of the April 25, 2008, Class I nationwide recall of all strengths of Digitek® tablets.  Plaintiffs are all persons who suffered from having been prescribed Digitek®.  The class is those persons who suffered economic losses (as opposed to personal injury).  The class certification was a procedural motion, albeit unsuccessful here, to recover economic losses arising out of the very same Digitek Class I recall.

In *O'Neal*, the U.S. Court of Appeals affirmed an award of attorney's fees including work on an unsuccessful motion for class certification, finding that "[t]he class certification motion was not unrelated to O'Neal's claims," where "[s]he sought to certify the class to prevent

the City from refusing water service again in similar situations." *Id*. at 1069. The Court observed that, "[t]he motion itself was not a separate claim, but rather a method of pursuing her ultimately successful claims." *Id*. The same is true in the present action, where the motion for class certification was a method of pursuing some of the claims against Defendants that were ultimately resolved by the Settlement Agreement. The motion for class certification is a procedural device, and certainly not a "claim" unrelated to those asserted in the Master MDL.

Defendants cite *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 244 (4th Cir. 2009), encouraging subtraction of "'fees for hours spent on unsuccessful claims **unrelated to successful ones**.'" *quoting Grissom v. Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008) (*quoting Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002) (emphasis added.) Defendants' citation actually proves Plaintiffs' point. The class' claims were integrally related to the overall claims in the MDL and thus were related to the claims successfully resolved by the Settlement Agreement.[4]

Notably, although Defendants justify their opposition by arguing that the Settlement Agreement was reached after the motion for class certification was denied, they fail to mention that the Settlement Agreement was reached while Plaintiffs' Motion for Reconsideration of the Memorandum Opinion and Order regarding the Motion for Class Certification (Docket No. 364) was pending (let alone the possibility of an appeal of the denial of class certification). Thus, there still was a risk to Defendants at the time of settlement, that a class could be certified.[5]

**Conclusion**

The Defendants' memo in opposition unintentionally proves the point that any well funded party, no matter how culpable its conduct, will always be able to engage capable and

---

[4] Defendants' encourages reduction of a fee to Plaintiffs' Counsel for work on "unsuccessful" claims, when Defendants' Counsel undoubtedly receives compensation irrespective of Defendants' success or failure on interim motions.

[5] Please see the attached exhibits submitted by Lester Levy, as Exhibit 1 and John Malkinson, as Exhibit 2, in support of their fee petition.

energetic counsel who will cry crocodile tears at the injustice of efforts to hold their client to a modicum of due care. Those Defendants now ask this Court to avoid its own settlement. When settling a case, the parties are able to negotiate for any division of charges or labor they desire. Under the Master Settlement Agreement herein, which was approved by this Court, the PSC was entitled to submit all requested fees and expenses to the court, and all parties, including defendants, agreed to abide by its decision. Thus, the right to seek attorneys fees and expenses was permitted for by the settlement, and it is no offense to the parties that both defer to the wisdom of the Court in assessing fees and expenses without appeal.

For the foregoing reasons, Plaintiffs' Counsel respectfully urge this Court to award the MDL lawyers attorneys' fees and expenses, as well as an award to Crivella West and the Class Action group to be paid by the Actavis defendants.

On Behalf of the Plaintiffs' Steering Committee

s/Fred Thompson, III Esq._____
Fred Thompson, III, Esq.
Motley Rice, LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
**Co- Lead Counsel**

Carl N. Frankovitch, Esq.
Frankovitch, Anetakis, Colantonio & Simon
337 Penco Road
Weirton, WV 26062
**Co- Lead Counsel**

Harry F. Bell, Jr., Esq.
Bell Law Firm, PLLC
P. O. Box 1723
Charleston, WV 25326
**Co-Lead and Liaison Counsel**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

In Re: DIGITEK           MDL NO. 1968
  PRODUCTS LIABILITY LITIGATION

**CERTIFICATE OF SERVICE**

I, Fred Thompson, hereby certify that on March 25, 2011, I electronically filed the foregoing Reply To Defendants' Brief In Opposition to PSC's Application for Fees and Expenses with the Clerk of the Court using the CM/ECF system which will send notification of such filing to following CM/ECF participants.

                s/Fred Thompson, III Esq._____
                Fred Thompson, III, Esq.
                Motley Rice, LLC
                28 Bridgeside Blvd.
                Mt. Pleasant, SC 29464
                ***Co- Lead Counsel***