# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

IN RE: DIGITEK PRODUCT LIABILITY
LITIGATION                 MDL NO. 1968

THIS DOCUMENT RELATES TO ALL CASES

### AFFIDAVIT OF RICHARD A. DEAN

1. I am a lawyer licensed to practice in Ohio and a number of different states. I am a partner with the firm of Tucker Ellis & West, LLP. I am one of the attorneys representing Actavis in the Digitek litigation.

2. There were a number of discussions about settlement commencing in the late summer of 2009 and continuing through the first six months of 2010. During these discussions Plaintiffs' counsel made specific demands in three separate categories – (1) a settlement fund for Plaintiffs; (2) a provision for an administrative fund; and (3) for attorneys' fees and expenses. Defendants made no money offers in response to these demands during the first six months of 2010. The discussion of fees and expenses through June was based on <u>a mutual intention that they be paid out of a common fund</u>. A meeting was held on May 5, 2010. My memo to the file on the May 5 meeting notes:

> There was a good deal of discussion about fee levels and Fred said that he would be flexible here but there needed to be a reasonable relationship to the overall settlement amount and that usually the attorneys fees were within 12-24% of the class settlement.

(Ex. H.) Matthew Moriarty did a memo to the file on the following day:

> Fred thinks that the PSC should have substantial discretion in distributing the common fee fund. Class action cases have a typical percentage in relationship to the ultimate settlement, and they would try to stay within those relationship numbers. (Ex. G.)

3. Settlement discussions changed dramatically after the completion of the depositions of Plaintiffs' liability experts in June 2010. After it became clear that the depositions of Plaintiffs' liability experts had confirmed the Defendants' earlier position about the weaknesses in the Plaintiffs' case, Fred Thompson approached me and Matthew Moriarty once again regarding the possibility of settlement. This happened in early July 2010. Plaintiffs' demands, which had been quite high (anywhere from $30 million to policy limits), dropped precipitously after the conclusion of these depositions. Initially, Plaintiffs demanded $24 million. On July 7, 2010, Defendants countered with their very first offer. By the end of the day on July 7, 2010, Plaintiffs were at $20 million and Defendants were at $7.5 million. But there was no agreement at all regarding attorneys' fees and expenses. (See Ex. L.) Discussions continued on July 8-9, 2010, and agreement was reached on a $10 million figure for all cases if 85% participation could be achieved. (See Ex. M.) .A report to Actavis of the agreement resulted in an inquiry from one of Actavis' insurers as to whether there was a discussion about attorneys' fees and expenses. (Ex. Q.) I responded to that email three minutes later saying that we had made no offer on attorneys' fees. So the litigation was settled at that point on those key terms. The attorneys' fees and expenses issue was left open for the Court to decide or for possible settlement by the parties.

4. While there had been a basic agreement on the $10 million figure for an 85% participation rate, discussions continued regarding the details of the settlement, specifically in regard to trying to increase participation by certain Plaintiffs' lawyers who controlled a high number of cases in various state courts. In that regard, there was a meeting at the offices of Tucker Ellis & West on July 21, 2010. I wrote a memo to the file reflecting that meeting. (Ex. X.) As the Court can see from reviewing that memo, there were a number of detailed discussions

about issues relating to the settlement, but no discussion is reflected regarding the issue of attorneys' fees and expenses.

5. A meeting was held on July 29, 2010 to further discuss settlement issues. In attendance of that meeting was Jaclyn Bryk, from the law firm of Tucker Ellis & West, who took detailed handwritten notes that are attached. (Ex. BB.) Ms. Bryk attended the meeting because she was assisting in the drafting of the Settlement Agreement. At the meeting, we discussed a Settlement Terms sheet prepared by Fred Thompson. (Ex. T.) This draft and changes made to it are discussed in detail in Ms. Bryk's affidavit. At the bottom of the second page of the Settlement Terms sheet, there is a handwritten note by Ms. Bryk about attorneys' fees and expenses reflecting that "lawyers for successful claims get contract." (*Id.*) And in the second line, she wrote, "fees and expenses for PSC apply to Court." (*Id.*) These changes were implemeneted in a subsequent Settlement Terms sheet that was sent to the Court attached to the August 4, 2010 letter to the Court. The letter itself stated:

> The PSC can apply to Court for recovery of reasonable fees and expenses for the prosecution of this MDL. Defendants reserve the right to contest the award in its entirety. The parties will live with your decision in that regard with no right of appeal.

(Ex. V.) The sheet of Settlement Terms and conditions attached is consistent with that language in the letter. The terms and conditions state that:

> It is agreed by the parties that the Plaintiffs' Steering Committee shall have the right to submit to the Court time and expenses expended in the pursuit of this action. The Defendants have the right to contest any or all of such requests. The Honorable Judge Joseph G. Goodwin shall award such fees and costs as he deems appropriate, which amount shall be not appealable by either party.
> (Ex. V.)

A conference was held with the Court on August 5, 2010 and a copy of my notes reflecting the events of that conference is attached. (Ex. W.) As reflected in those notes, Fred

3

Thompson agreed that the August 4, 2010 letter outlining the settlement was accurate. And that letter specifically said that Defendants reserved the right to contest any such award "in its entirety."

6. A conference call was held with the Court on August 11, 2010, and Ms. Bryk's notes of the call are attached. (Ex. Y.) They reflect no discussion of the issue of attorneys' fees and expenses.

7. On August 12, 2010, a letter was sent to the Court confirming the discussions held on August 11, 2010 outlining the settlement terms in further detail. On the last page of the letter it states:

> It is agreed by the parties that the MDL Plaintiffs' Steering Committee shall have the right to submit to this Court time and expenses expended in the pursuit of this action. The Defendants have the right to contest any or all of such requests. The Honorable Judge Joseph G. Goodwin shall award such fees and costs as he deems appropriate, which amount shall be not appealable by either party. (Ex. Z.)

8. Thereafter, Matthew Moriarty sought a "second set of eyes" to look at the draft agreement and laid out his understanding of the basics of the agreement in his email of August 17, 2010. (Ex. AA.) There is no reference to attorneys' fees and expenses in this summary of the agreement.

9. As one intimately involved in the negotiating process, I state without reservation that there was never any agreement on the attorneys' fees and expenses issue – as to any issues at all including either entitlement or the amount. That is why the agreement was drafted the way it was – to make the attorneys' fees and expenses issue one to be decided by the Court. The underlying motivation here was that the lawyers knew this would be a disputed issue and would probably preclude a quick resolution. Counsel for the parties desired to get the underlying cases

settled and to deal with the attorneys' fees and expenses issue as a separate matter. The way the parties decided to deal with it was by letting the Court decide the issue – "in its entirety." Before the July 2010 discussions and the "devastating" depositions of Plaintiffs' experts in June 2010 (See Ex. K), there was some discussion about the PSC taking some percentage of the settlement under the common fund doctrine. But when the agreement was reached on July 8, 2010, it called for payment of $10 million if 85% participation was reached with payment of that entire sum to claimants. Any payment of attorneys' fees and expenses from the common fund was disavowed by the PSC at that time as can be seen from the final Settlement Agreement.

_____
RICHARD A. DEAN

SWORN TO AND SUBSCRIBED in my presence this 22nd day of April, 2011.

_____
NOTARY PUBLIC

**CAROL QUILLIN**
Notary Public, State of Ohio
My Commission Expires
March 12, 2014

5

073021.000031.1246618