# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

IN RE: **DIGITEK PRODUCT LIABILITY**
**LITIGATION**                                               **MDL NO. 1968**

THIS DOCUMENT RELATES TO ALL CASES

### AFFIDAVIT OF MATTHEW P. MORIARTY

1.      My name is Matthew P. Moriarty.   I am co-lead counsel for the Actavis

Defendants in this litigation.  I am licensed to practice law in Ohio, West Virginia, and Florida.

2.      I have reviewed all of the memoranda, emails, and letters from 2009 to 2010

regarding the settlement of Digitek® cases.  I have already made several observations about this

process in the Affidavit I submitted in opposition to the Plaintiffs' Steering Committee's Petition

for fees and expenses.

3.      In the negotiations prior to July 2010, the PSC consistently made settlement

demands that included separate numbers for Plaintiffs' indemnity, administration of a settlement

fund, and the PSC's fees and expenses.  For example, the first detailed written proposal sent to us

on March 24, 2010 asked for $12 million in "common fund fees" and $3 million for "common

expenses."   They demanded a minimum of $30 million and a maximum of $55 million for

Plaintiffs' indemnity.  (Ex. B.)

4.      On March 30, 2010, I sent a response, saying that the dollar figures are "far too

high."  (Ex. D.)  I sent a more detailed response on April 14, 2010.  In the letter, I said, "This is

not about substantial rewards to the PSC…just because our client had regulatory difficulties."

(Ex. E.)

5.      We had a face-to-face session with the PSC on May 5, 2010.  Dollars were only discussed in the abstract because we had no authority.  According to my notes, their demand still exceeded $50 million, with at least $10 million being for the PSC's fees.  My handwritten notes in a memo dated May 6, 2010 (summarizing the May 5 session) say, "Maybe keep negotiating and beat up some of their experts, with the serious negotiations occurring in July." (Ex. G.)  As it turns out, I believe that is exactly what happened.

6.      Despite several in-person negotiating sessions between March and May 2010 and many phone discussions, the Defendants never made a dollar offer on any of the PSC's demands prior to July 7, 2010.

7.      I returned from the PSC's experts' depositions late on Thursday, July 1, 2010.  I sent the PSC an email the next morning with our view of the week's depositions.  (Ex. J.)  We had some discussions with the PSC on July 2, 2010, which I mentioned in my first affidavit.  But since it was a Friday heading into a holiday, we scheduled negotiations for the following week. We believed that the deposition results substantially strengthened our negotiating position.

8.      We had negotiating sessions planned for July 7, 2010.  At 9:45 a.m. that day, I sent my partner, Richard Dean, an email with our "talking points" for the telephone call with the PSC.  (Ex. N.)  There are ten points in the email.  Point 9 talks about the dollar amounts we would offer to the Plaintiffs for indemnity, makes reference to a reasonable estimate of administrative costs, and says nothing about a dollar offer for the PSC's fees and expenses.

9.      Point 10 of my talking points email to Mr. Dean addresses the PSC's lack of entitlement to fees and expenses.  It says: "Under law we owe no obligation to pay fees and expenses.  However, we recognize that ignoring the PSC's time and effort, and compensation for same, could be a stumbling block to settlement.  Therefore, PSC may apply to the Court for an

2

award of fees and expenses. After a hearing, we would pay what the Court ordered. We will entertain demands to negotiate the amount, but you would have to make disclosures to us of data about time and expenses." (Ex. N.)

10.     Based on SoundPath conference call receipts I have reviewed, we had two telephone conferences that day with PSC members (Fred Thompson, Carl Frankovitch, and possibly Meghan Johnson Carter). (Ex. O.) The first financial offers were made in those telephone calls. We still never offered any dollar figure for the PSC's fees and expenses throughout either call that day. At the end of the day on July 7, 2010, the settlement demand was $20 million and the offer $7.5 million, none of which was earmarked for the PSC's fees and expenses. My memory is that we asserted the position set forth in point 10 of my talking points email.

11.     On July 8, 2010, the PSC accepted an offer of $10 million for the Plaintiffs' indemnity and a separate amount for the administrative fund. We never offered any money for fees and expenses. After that date, all of the discussions about settlement focused on topics other than the dollar amounts. Our intention was to remove the fees and expenses issue as a complete stumbling block to concluding a settlement. In return for concluding the settlement, we gave the PSC a procedural vehicle to apply for fees and expenses under Rule 23, which was otherwise inapplicable because this was not a class action case. We also agreed not to appeal any award the Court might make. Furthermore, any lawyers who actually had a client who recovered in the settlement grid would obtain some compensation under a fee contract. We obviously knew the PSC had performed work had incurred expenses, but we did not intend to contest only the amount of an award. Our subsequent writings confirm that position.

3

12. We had a number of negotiation sessions in person and by phone throughout July 2010. Even though there were some discussions about it, we did not change our position on the fees and expenses issue.

13. At the meeting, I believe on July 29, 2010, the PSC gave us a draft Settlement Terms sheet. (Ex. T.) On August 3, 2010, we replied. (Ex. U.) The redlined version adds the provision about Defendants' right to "contest any or all" requests for fees. We struck a provision that appeared to entitle the PSC to an award in the first instance. That is ultimately the version the PSC agreed we could submit to the Court.

14. On August 4, 2010, we sent a letter to the Court. (Ex. V.) In referring to the fees and expenses issue, the letter says, "The fee contracts of the Plaintiffs' lawyers apply to any awards made by the Special Master." It also says, "The PSC can apply to the Court for recovery of reasonable fees and expenses for the prosecution of this MDL. **Defendants reserve the right to contest the award in its entirety.** The parties will live with your decision in that regard with no right of appeal." (Ex. V (emphasis added here).) The Settlement Terms sheet that accompanied that letter indicates that "The Defendants have the **right to contest any or all of such requests.**" (*Id.* (emphasis added here).) Consistent with my talking point 10 of July 7, 2010, our intent was to contest their fees and expenses request "in its entirety." If the Defendants had agreed that the PSC was entitled to some award and were only contesting the amount, we would not have written the letter or the Settlement Terms sheet in that manner.

15. On August 5, 2010, we appeared before the Court in Charleston to discuss the status of the settlement and the litigation going forward. During that meeting, the PSC acknowledged that our August 4, 2010 submissions accurately represented the terms of the agreement.

4

16.     I sent a letter to the Court on August 12, 2010 following up on the points discussed at the August 5 Case Management Conference. (Ex. _Z_ ) That letter repeats that "The Defendants have the right to contest any or all of such requests." Our position and intent on their fees and expenses had not changed.

17.     We never agreed in any negotiating session that the PSC was entitled to an award of fees and expenses. If we wanted to guarantee them some money, and contest only the amount, the ultimate agreement and the letters and term sheets to which I have referred would have been drafted differently. It was not our intent to guarantee that we make some fee and expense payment to the PSC.

18.     It would have made no sense for us to offer no dollars on the PSC's fees and expenses at any time, and then restrict ourselves in the agreement to only contesting the amount of an award, and not the PSC's underlying entitlement. That would leave us with no control over that liability without at least testing the bounds of this demand.

19.     Paragraph (C) of the Settlement Agreement uses the word "may" in reference to the PSC attorney fee and cost issue. That is a contingent payment, not an obligation to pay, such as we had agreed to with the indemnity payment ($10 million) and the administrative costs ($2 million).

MATTHEW P. MORIARTY

SWORN TO AND SUBSCRIBED in my presence this 28th day of April, 2011.

NOTARY PUBLIC
HUGH M. STANLEY, JR., Attorney
NOTARY PUBLIC - STATE OF OHIO
My commission has no expiration date.
Section 147.03 R.C.

5

073021.000031.1242908