# EXHIBIT E

# TUCKER ELLIS & WEST LLP
ATTORNEYS AT LAW

1150 Huntington Bldg. 925 Euclid Avenue Cleveland, Ohio 44115-1414
phone 216.592.5000 facsimile 216.592.5009 tuckerellis.com

CLEVELAND   COLUMBUS   DENVER   LOS ANGELES   SAN FRANCISCO

Direct Dial: 216.696.2276
Email: mmoriarty@tuckerellis.com

April 14, 2010

**PRIVILEGED AND CONFIDENTIAL**

Fred Thompson
Motley Rice
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
(fthompson@motleyrice.com)

Re: *Digitek® Product Liability Litigation, MDL # 1968*

Dear Fred:

    We are still talking to people involved in the decision making process on our side. But we thought it might be useful to give you these additional thoughts supplementing those sent in our March 30, 2010 letter so you can consider them before we have a face to face meeting.

    First, as we noted in that letter, we did not necessarily agree to a *Serzone* structure, and upon reflection we believe that it would be better and simpler to use a Propulsid type structure with a medical panel determining initially whether there is evidence of digoxin toxicity, and if so, a special master would award damages within a range from a category of injuries (simpler than yours and more like Propulsid). He would also make that determination taking into account proof of product defect and medical causation in individual cases. .

    Next, we think that the discussions about the medical panel are critical. A medical panel is reflected in your proposal and it is also something that the Defendants would need. Given the importance of this panel, our talks should specifically address how it will be assembled. For example, should we each appoint a member and have the court appoint a chairperson? Or is this something we can let the court establish from a list jointly provided by the parties?

    Finally, the dollar figures mentioned on page 3 of your proposal are far too high. We mentioned this in our prior letter but offer more detail now. There is no evidence that the plaintiffs actually received defective Digitek®. All plaintiffs have been able to prove thus far is that there was a recall, and that Actavis received 483s and warning letters about general cGMP violations. The few 483s and warning letters regarding Digitek® are on very technical issues,



## TUCKER ELLIS & WEST LLP
ATTORNEYS AT LAW

Fred Thompson
April 14, 2010
Page 2

and do not pertain to out-of-specification Digitek® being either mass produced, or shipped to market. There is a substantial body of case law which we will use in motions in limine and dispositive motions in an effort exclude the vast majority of your "where there is smoke, there is fire" theory. You cannot trumpet the recall in one breath, and with the next breath call the double thick tablet issue a "red herring." Your obsession with language issues at Little Falls and Riverview is a telling reflection of the fact there is little of substance to support your claims.

Actavis tested each and every batch which it shipped to market, and they all passed. The FDA never "cited" Actavis with some continuous sequence of lab failures which call those results into question. That favorable evidence will be corroborated by the Quantic batch record review (which FDA accepted), the FDA's own Digitek® testing over the years, the Mylan and UDL testing, as well as the fact that every sample that the Plaintiffs have sent to NMS Laboratories has been within the specifications. The Plaintiffs have an affirmative duty to show us testing if they have performed it, and no one has come forward with reliable testing of defective Digitek®. If you get to use the FDA statements about general manufacturing issues, then we will be able to use the FDA's statement in July, 2009 that the harm to consumers from Digitek® was very unlikely. What all of this means is simply that this is an economic settlement to spare both sides further losses. This is not about substantial rewards to the PSC or any claimants just because our clients had regulatory difficulties.

Beyond these liability issues, there are obviously significant causation issues in individual cases that you are well aware of.

We would like to have a face to face meeting during the first week of May where we can begin negotiations in earnest.

Sincerely,

Matthew Moriarty

MOR/kl