# EXHIBIT R

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

IN RE: DIGITEK PRODUCT LIABILITY
LITIGATION

MDL NO. 1968

THIS DOCUMENT RELATES TO ALL CASES

### AFFIDAVIT OF JACLYN A. BRYK

1. I am a lawyer licensed to practice in Ohio and West Virginia. I am an associate with the firm of Tucker Ellis & West LLP. I am one of the attorneys representing Actavis in this litigation.

2. I attended settlement negotiation sessions between counsel for Actavis and representatives of the Plaintiffs' Steering Committee ["PSC"] at the Cleveland, Ohio office of TEW from July 2010 through August 2010. I also attended telephonic negotiation sessions with the PSC during that time. I further attended a meeting with the PSC and Judge Joseph Goodwin on August 5, 2010 in Charleston, West Virginia.

3. I reviewed all of my notes, memoranda, emails and drafts of the Settlement Agreement from July 2010 through August 2010 regarding the settlement of Digitek® cases.

4. My primary function was to draft the Settlement Agreement and perform necessary legal research. I took copious notes of negotiation sessions in order to ensure that all agreed upon changes were included in drafts of the Settlement Agreement. I regularly circulated for comment drafts of the settlement agreement to counsel for Actavis and representatives of the PSC, notably Fred Thompson, Megan Johnson Carter, Carl Frankovich, and, at times, Harry Bell.

5. Prior to drafting the Settlement Agreement, I researched settlement agreements entered in three separate pharmaceutical products liability litigations. The purpose of my

research was to determine whether any of these other settlement agreements could be used in whole or in part as a model for the Settlement Agreement to be drafted for this litigation. I included research from these other settlement agreements regarding payment of attorneys' fees and expenses in the memorandum discussed in Paragraph 6.

6. I drafted a memorandum to Matthew Moriarty dated July 16, 2010, titled "Pertinent Settlement Agreement Provisions from Serzone, Vioxx, and Propulsid Settlement Agreements." (Ex. S.) The memorandum identifies provisions in three other settlement agreements that I believed could be useful in drafting the Settlement Agreement for this litigation. I specifically identified the attorneys' fees and expenses provision included in the settlement agreements entered in *In re: Serzone Products Liability Litigation*, MDL No. 1477 (S.D.W.Va) and *In re VIOXX Products Liability Litigation*, MDL No. 1657 (E.D.La.).

7. I met with Matthew Moriarty regarding the memorandum (Ex. S) for purposes of drafting the Settlement Agreement for this litigation. As a result of that meeting, I placed a star next to the attorneys' fees and expenses provision from the *In re: Serzone Products Liability Litigation* settlement agreement as a reminder to include an attorneys' fees and expenses provision in the draft of the Settlement Agreement for this litigation. I also included the following instruction, in red, for purposes of drafting the attorneys' fees and expenses provision in the draft:

> PSC can apply to Judge for award of PSC fees + expenses + we reserve right to contest on all legal + factual grounds available →
> all fee agreements remain in tact + are not [a]ffected by agreement

(Ex. S at p. 2.)

2

8. On or about July 29, 2010, I received a draft Settlement Terms sheet prepared by Fred Thompson. (Ex. T.) Mr. Thompson included the following provision on the draft Settlement Terms sheet:

> All administrative costs and expenses attendant to the administration of the claims facility shall be born by the defendants. It is agreed by the parties that the Plaintiffs' Steering Committee shall have the right to submit to the Court time and expenses expended in the pursuit of this action and by agreement of the parties. The Honorable Judge Joseph Goodwin shall award such fees and costs as he deems appropriate which amount shall be non-appealable by either party.

(Ex. T at p. 4.) I made notes on the draft Settlement Terms sheet in red and blue ink. With red ink, I crossed out the phrase "and by agreement of the parties." The line is a cross out, as opposed to an underscore, as evidenced by the loop at the end of the line, which I include when I intend the language to be taken out. I drafted an arrow from the crossed out phrase directing the reader to the following statement: "Δ has right to contest -- put a hearing." "Δ" is my own shorthand for "defendant." The option of a hearing on PSC's motion was subsequently included in the final Settlement Agreement. The excluded phrase, "and by agreement of the parties," was not included in the final Settlement Agreement.

9. The final draft of the Settlement Terms sheet, dated August 4, 2010, contained the following provision with revisions consistent with my notes:

> It is agreed by the parties that the Plaintiffs' Steering Committee shall have the right to submit to the Court time and expenses expended in the pursuit of this action. The Defendants have the right to contest any or all of such requests. The Honorable Judge Joseph Goodwin shall award such fees and costs as he deems appropriate, which amount shall be non-appealable by either party.

(Ex. V.)

10. To the best of my knowledge, the PSC and counsel for Actavis made no agreement regarding an entitlement to payment of attorneys' fees and expenses. If such an agreement was made, I am confident that I would have included this information in my notes because it is my habit to take copious handwritten notes of meetings I attend and save the notes in personal files I maintain. I am also confident that I would have included any agreement in one of the several drafts of the Settlement Agreement. I, however, have no notes or drafts of the Settlement Agreement reflecting any such agreement being made. I recall discussions regarding motion practice for the PSC to seek common fund attorneys' fees and expenses, which included discussions as to who should decide the amount (if any), the briefing schedule, obtaining attorneys' fees and expenses for work administering the settlement, conformance of such a plan with the Local Rules, and the Federal Rule of Civil Procedure under which any motion would be filed. I also recall discussions regarding contracts between individual plaintiffs' attorneys and their clients remaining in tact.

_____
JACLYN A. BRYK

SWORN TO AND SUBSCRIBED in my presence this 22nd day of April, 2011.

_____
NOTARY PUBLIC

CAROL QUILLIN
Notary Public, State of Ohio
My Commission Expires
March 12, 2014

4