IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

In Re: DIGITEK                                           MDL NO. 1968
         PRODUCTS LIABILITY LITIGATION

**PLAINTIFFS' BRIEF CONCERNING PAROL EVIDENCE**

The Plaintiffs' Steering Committee files this brief at the request of the Court. The Master Settlement Agreement ("MSA") is not ambiguous and clearly shows that the agreement between the parties is that the defendants agreed to pay any fees that the Court deemed appropriate. If the court finds the MSA is ambiguous, the attached emails and background information will show that the parties contracted that the defendants would pay the PSC's fees and expenses. The parties did not attempt to agree on a particular amount and wisely left the amount to the discretion of the Court.

**I.   ARGUMENT**

**A.  The Master Settlement Agreement is Not Ambiguous**

The question as to whether the MSA is ambiguous is a question of law for the Court. *See id.*; *Jessee v. Aycoth*, 503 S.E.2d 528, 531-32 (W.Va. 1998). However, the mere fact that the PSC and the defendants do not agree as to the construction of the Master Settlement Agreement does not render the agreement ambiguous. *See* Syl. Pt. 1 *Berkeley County Pub. Serv. Dist. v. Vitro Corp. of Am.,* 162 S.E.2d 189 (W.Va. 1968).

Contract language is considered ambiguous only where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable differences of opinion as to the meaning of words employed and obligations undertaken. *See* Syl. Pt. 6 *State ex rel.*

1

*Frazier & Oxley, L.C. v. Cummings*, 569 S.E.2d 796 (W.Va. 2002). "The term 'ambiguity' is defined as language reasonably susceptible of two different meanings or language of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning." Syl. Pt. 4 *Estate of Tawney v. Columbia Natural Res., L.L.C.*, 633 S.E.2d 22 (W.Va. 2006); *Payne v. Weston,* 466 S.E.2d 161, 166 (W.Va. 1995).  Where the language of a contract is clear, the language cannot be construed and must be given effect and no interpretation thereof is permissible. *See* Syl. Pt. 9 *Poling v. Pre-Paid Legal Servs.*, 575 S.E.2d 199 (W.Va. 2002).  As such, the Court may consider extrinsic evidence only to the extent it determines the MSA is ambiguous, and that its language cannot be given a certain and definite legal meaning. *See id.*; *See also Blake v. State Farm Mut. Auto. Ins. Co.*, 685 S.E.2d 895, 901-902 (W.Va. 2009).

In this case, the language of the MSA is not ambiguous.  Section 11.01 of the MSA states that the PSC "and anyone who believes they have prepared work that was approved by PSC and is eligible for common fund work may make an application to the MDL Court using the procedure set forth in FED. R. CIV. P. 23(h) for an award of attorneys' fees and expenses…incurred prior to 11:59 p.m. on October 15, 2010."  Section 11.01 goes on to give filing deadlines for the motion and any objection to the motion, and indicates that this Court's decision on the motion is final and non-appealable.  Even more telling is Section 11.02, which contemplates a "supplemental application" for fees and expenses resulting from work performed by the PSC subsequent to October 15, 2010. The work performed by the PSC subsequent to October 15, 2010 is limited to administration of the Settlement. This additional work mutually benefits all parties, and there is no expectation that this work would go unpaid.  In short, Article XI of the MSA contemplates an application by the PSC to the Court for payment of fees and expenses incurred in resolving this case, and finality as to the Court's decision.

Moreover, the language of Article II of the MSA does not render Article XI ambiguous. In fact, it reinforces that the agreement between the parties was that the defendants would pay the PSC's attorneys' fees and costs in addition to the settlement fund created. Section 2.01(C) states:

> The Settlement Funds represent the total amount Defendants shall be obligated to pay under this Agreement, **with the exception of** any applicable increase as set forth in Section 2.02, **attorneys' fees or costs that may be ordered by the MDL Court pursuant to Article XI,** and "Administrative Costs" set forth in a separate agreement.

(emphasis added.)

Under the MSA, defendants assume these financial liabilities: 1) the settlement pool of ten million dollars (and potentially higher if percentages are met); 2) attorneys fees and costs that may be ordered under Article XI (this includes both pre-settlement submissions and post settlement administrative work); 3) administrative expenses and costs.

These financial liabilities are clearly assumed by defendants. The Court is, by contract, authorized to make a fair award of fees and cost reimbursement. Thus, the only reasonable interpretation of 2.01(C) is that the settlement amount would be augmented by whatever fee award this Court made in regard to the PSC's petition for fees and costs. In interpreting the MSA, the Court must endeavor to construe it to enforce the intent of the parties and to give meaning to the entire contract, not simply specific sections to the exclusion of others as defendants urge. *See* Syl. pt. 2, *Columbia Gas Transmission Corp. v. E. I. du Pont de Nemours & Co.*, 217 S.E.2d 919 (W.Va. 1975); *Henderson Dev. Co. v. United Fuel Gas Co.*, 3 S.E.2d 217, 219 (W.Va. 1939) ("Force and effect must be given to every word, phrase and clause employed, if possible").

There is no doubt that the settlement agreement granted benefits to both sides that constitute binding consideration. Having obtained settlement in exchange for the assumption of clearly spelled out financial liabilities, and having induced reliance, defendants should not be heard now in an effort to avoid their financial obligations.

### B. The Parol Evidence Supports Plaintiffs Position that Defendants Agreed to Pay the PSC's Fees and Expenses

On August 4, 2010 the parties were not confused about the terms of the MSA. Defendants in transmitting the terms of the settlement to the Court said: "The PSC can apply to the Court for recovery of reasonable fees and expenses for the prosecution of this MDL. Defendants reserve the right to contest the award in its entirety. The parties will live with your decision in that regard with no right of appeal." *See* letter from Matthew Moriarty to Judge Joseph Goodwin, August 4, 2010, attached hereto as Exhibit A.  He also includes the settlement terms which stated:

> All administrative costs and expenses attendant to the administration of the claims facility shall be born by the defendants, up to a maximum of $2,000,000. It is agreed by the parties that the Plaintiffs' Steering Committee shall have the right to submit to the Court time and expenses expended in the pursuit of this action. The Defendants have the right to contest any or all of such requests. The Honorable Judge Joseph Goodwin shall award such fees and costs as he deems appropriate, which amount shall be non-appealable by either party.

*See*  August 5, transmittal of letter that included the term sheet, attached hereto as Exhibit B.

And again on August 12, 2010, the parties had no confusion about the meaning of the settlement and how it would be implemented.

> All administrative costs and expenses attendant to the administration of the claims facility shall be born by the defendants, up to a maximum to be agreed upon. It is agreed by the parties that the MDL Plaintiffs' Steering Committee shall have the right to submit to this Court time and expenses expended in the pursuit of this

> action. The Defendants have the right to contest any or all of such requests. This Court shall award such fees and costs as it deems appropriate, which amount shall be non-appealable by either party.

*See* letter from Matthew Moriarty to Judge Joseph Goodwin, August 12, 2010 attached hereto as Exhibit C.

Only now do defendants contrive an interpretation of the language agreed to to argue that the Court lacks authority to make a fee and expense finding. The court's authority derives from the MSA and its underlying inherent equitable power. The entire parol record supports the plaintiffs' position.

A release is construed from standpoint of the parties at time of its execution. *See Murphy v. North American River Runners, Inc.*, 412 S.E.2d 504, 512 (W.Va. 1991). The general rule is that the construction of a writing is for the court, but where the meaning is uncertain and ambiguous, parol evidence is admissible to show the situation of the parties, the surrounding circumstances when the writing was made, and the practical construction given to the contract by the parties themselves either contemporaneously or subsequently. *See* Syl. Pt. 1 *Leasetronics, Inc. v. Charleston Area Medical Center, Inc*., 271 S.E.2d 608 (W.Va. 1980). Prior or contemporaneous parol statements or extrinsic evidence may be admitted to explain uncertain, incomplete, or ambiguous contract terms. *See* Syl. *Holiday Plaza, Inc. v. First Federal Savings and Loan Association of Clarksburg,* 285 S.E.2d 131 (W.Va. 1981).

> If an inquiring court concludes that an ambiguity exists in a contract, the ultimate resolution of it typically will turn on the parties' intent. Exploring the intent of the contracting parties often, but not always, involves marshaling facts extrinsic to the language of the contract document. When this need arises, these facts together with reasonable inferences extractable therefrom are superimposed on the ambiguous words to reveal the parties' discerned intent.

*FOP, Lodge No. 69 v. City of Fairmont*, 468 S.E.2d 712, 716 n. 7 (W.Va. 1996).

In construing an ambiguous contract, well-recognized rules of construction require: (1) that the intentions of the parties to the agreement must control the obligations thereunder; (2) that in searching for the intentions of contracting parties, the court must examine the instrument in its entirety; and (3) that words are to be considered in the context in which they are employed. *See* Syl. Pt. 2 *Columbia Gas Transmission Corp.*, 217 S.E.2d 919. The intentions of the parties are of paramount importance and the Court may consider parol evidence in connection therewith with regard to conditions and objects relative to the matter involved. *See* Syl. Pt. 2 *Berkeley County Pub. Serv. Dist.,* 162 S.E.2d 189.     Even if the Court determines that the language of the MSA is ambiguous, the intentions of the parties in this case are clear.

Although the plaintiffs had previously and repeatedly mentioned the possibility of settlement, the defendants were not responsive until early 2010. This brief will outline the progression of the discussions through email and letter correspondence. The affidavit of one of the plaintiffs' lead negotiators Fred Thompson, concerning his understanding of the settlement discussions, is attached hereto as Exhibit D and further supports the plaintiffs' position.

Once discussions began in earnest, the PSC sent a preliminary Settlement proposal to Matthew Moriarty. *See* email from Fred Thompson to Matthew Moriarty, March 24, 2010, attached hereto as Exhibit E. This proposal was based on the Serzone settlement structure. The plaintiffs recognized that defendants would never accept the first proposal, regardless of the numbers, and left room for generous negotiations. This proposal included a separate section on the Common Fund

- Defendants shall pay a lump sum of 12,000,000 to PSC for payment of common fund fees. These common fund fees shall be allocated and paid in accordance with the order of the presiding Judge Goodwin.
- Defendants shall pay a lump sum of 3,000,000 to PSC for common expenses. These common expenses shall be allocated and paid in accordance with the order of presiding Judge Goodwin.

6

- Defendants shall pay the costs of the claims facility's work and class notice.

This proposal contemplates that the PSC would be compensated for fees and expenses in a fund separate and apart from the settlement amount.

On March 30th and April 14, Matthew Moriarty responded to the PSC's proposal. *See* March 30, 2010 and April 14, 2010 letters from Matthew Moriarty attached hereto as Exhibit F. Not surprisingly, he did not agree to the numbers proposed by the PSC and took the opportunity to argue his client's position. What is most important is his discussion of the Serzone settlement structure and the Propulsid settlement structure. Early in negotiations the parties agreed that the settlement would not be a class. However, the parties still looked to the Serzone settlement for structure and language to help with drafting the Master Settlement Agreement. Much of the language in the MSA was taken directly from the Serzone Settlement. The Serzone treatment of fees is as follows:

> 9.3 Class Counsel will make an application to the Court pursuant to Fed. R. Civ. P. 23(h) for an award of attorneys' fees and expenses. The motion shall be filed no later than the Fairness Hearing Date. Any objections to the motion shall be filed thirty (30) calendar days after the Fairness Hearing, and any response to objections shall be filed ten (10) calendar days thereafter. The attorneys' fees and expenses awarded to Class Counsel by the Court will be paid by BMS with monies not otherwise owed under the terms of this Agreement or with monies, if any, transferred to the BMS Product Liability Sub Account.

*In re Serzone Products Liability Litigation – Third Amended Settlement* Agreement, Case 2:02-md-01477, Document 182, Feb. 08, 2005, relevant portions attached hereto as Exhibit G. This language is very similar to the language in the MSA, as the plaintiffs' suggested that although the MSA was not a class settlement, the only organized way to submit a fee petition to the Court was to use the same procedure in Serzone as if the settlement was a class. The PSC understands that they are not class counsel, that the settlement is not a class and that counsel cannot

7

inherently recover based solely on Rule 23 procedure. However, the parties agreed to use Rule 23 procedure as a guide for submission and for the court to use in its discretion when it reviewed the plaintiffs' fee petition.

The Propulsid settlement structure was highlighted by defendants for its use of a medical panel. Although the Propulsid agreement included an assessment, it also included the same agreement as the MSA in that the PSC would apply for fees and expenses to the Court and the Court, using its equitable powers, would decide the "amount and propriety" to award. *See* Propulsid MDL-1355 Term Sheet (available at http://propulsid.laed.uscourts.gov/Orders/term.pdf), relevant portions of the Propulsid Settlement Terms attached hereto as Exhibit H. The Propsulid agreement specifically highlighted the Court's power to award the PSC fees and expenses.

> It is agreed that the PSC's work product and efforts to date have been responsible for developing and creating the Settlement Program, and that the PSC's future involvement in the administration of the Settlement Program will confer a substantial benefit on all of its participants. The parties recognize that *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939), *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 393 (1970) and other well established authority, permit the district court to grant such an award based upon its inherent powers of equity and that such award shall be paid separately and in addition to the assessment already authorized by the Court in PTO No. 16.

*Id.* The legal principle concerning the Court's inherent power is valid and applicable to this case. *See also Deming v. Kanawha City Co.*, 852 F.2d 565, 1988 WL 76202, *1 (4th Cir.) (unpublished opinion affirming West Virginia case that awarded fees based a settlement agreement that said "plaintiffs may apply to the Court for an award of legal fees and expenses incurred by Plaintiffs in connection with the Lawsuit. The corporate Defendants reserve the right to contest before the Court the entitlement of Plaintiffs to any award of legal fees and/or expenses.")

As discussions continued, Matthew Moriarty wrote an email to the plaintiffs' negotiators that asks "What is your estimate of your PSC's expenses, and the reasonable value of services you would claim (or that you think would be awarded) given the current demand and offer? Our client will want to know **the total expected payout** for those who opt in." *See* email from Matthew Moriarty dated July 07, 2010 attached hereto as Exhibit I (emphasis added). This email is the best example of the discussions that were underway between the parties. The plaintiffs had clearly expressed the requirement of payment for the PSC and the defendants understood that payment would be **expected.** Mr. Moriarty repeated this request for an estimate two additional times. *See* July 12, 2010 and July 15, 2010 emails from Matthew Moriarty attached as Exhibit J. The plaintiffs did not have an exact estimate of time and expenses as the PSC had many members and expenses were still being incurred. The lead negotiators also expressly indicated that the class action attorneys were resolute that their time and expenses be included in any agreement concerning payment. The defendants refused to pay any compensation to the class action attorneys for work done on what they considered to be an unsuccessful endeavor.

Given these constraints, it is understandable that defendants would not agree to a carte blanche on PSC fees and expenses. The parties agreed that the best way to handle this would be to use a Serzone style submission to the court, where the PSC would submit everything, including class counsel time and expenses. This process would allow defendants to contest the amounts of fees and expenses. This concession for Defendants is shown in the redline changes made on August 3, 2010 to the summary term sheet. The track changes are shown below.

> It is agreed by the parties that the Plaintiffs' Steering Committee shall have the right to submit to the Court time and expenses expended in the pursuit of this action. ~~and by agreement of the parties~~ <u>The Defendants have the right to contest any or all of such requests. T</u>~~t~~he Honorable Judge Joseph Goodwin shall award such fees and costs as he deems appropriate<u>,</u> <u>which amount shall be non-appealable by either party.</u>

*See* August 3, 2010 email from Matthew Moriarty attached hereto as Exhibit K. The term sheet was then emailed to the Court attached to Matthew Moriarty's Aug. 4, 2010 letter. *See* Exhibit B. Both versions of the terms stated the "Honorable Judge Joseph Goodwin **shall** award such fees and costs as he deems appropriate, which amount shall be non-appealable by either party." (emphasis added). It is clear by this language that the parties agreed that there would be an award paid by defendants but that the amount would be left up to Judge Goodwin. The language "shall" indicates that the award is mandatory. This language was repeated in the Aug. 12, 2010 letter to the court. *See* Exhibit C.

    The actual settlement agreement softened the language for two reasons. First, the parties did not want to presume to order the Court to act. One learns quickly in the practice of law that the Court may listen to the parties' machinations but will not let the parties usurp its decision making power. The "shall award" language left no room for the court's discretion. Second, the defendants wanted to include the possibility that their objections to the amounts would be so thorough and convincing that the Court would decide that the plaintiffs had not earned any fees or expenses. The authority of the Court to order fees and expenses was NEVER at issue.

    The plaintiffs' position never wavered. The only concessions made were to allow the defendants the ability to contest any amounts at issue, not to challenge the Court's authority.[1] If

---

[1] While plaintiffs currently have no intentions of claiming fraudulent inducement, the essential elements of a claim of fraudulent inducement are (1) intentional misrepresentation of an intent to honor the contract; (2) knowledge that the Defendants did not plan on honoring the contract; and (3) detrimental reliance on the misrepresentations. *See Bluestone Coal Corp. v. CNX Land Res., Inc.*, 2007 U.S.Dist. LEXIS 98528 (S.D.W.Va. 2007). The critical element of a fraudulent inducement claim is an oral promise that is used as an improper enticement to the consummation of another agreement. *See Traders Bank v. Dils*, 704 S.E.2d 691, 696 (W.Va. 2010). The fact that the agreement is later reduced to writing does not negate the occurrence of a precedent oral promise that was the motivating factor for the making of such agreement. *See id.*; *Cardinal State Bank v. Crook*, 399 S.E.2d 863, 868 (W.Va. 1990). Nor will an integration or merger clause in a written contract which seeks to limit one party's liability to the other prevail when the agreement was procured through fraud. *See Traders Bank*, 704 S.E.2d at 697; *Hitachi Credit America Corp. v. Signet Bank*, 166 F.3d 614, 630 (4th Cir. 1999) (recognizing that "buyer can show that a contract of sale was induced by the seller's fraud, even though the written contract contains covenants waiving warranties or disclaiming or limiting liabilities").

the Court would like additional information or to hear from the parties in person, the plaintiffs are at the Court's pleasure.

        On Behalf of the Plaintiffs' Steering Committee

        s/Fred Thompson, III Esq._____
        Fred Thompson, III, Esq.
        Motley Rice, LLC
        28 Bridgeside Blvd.
        Mt. Pleasant, SC 29464
        ***Co- Lead Counsel***

        Carl N. Frankovitch, Esq.
        Frankovitch, Anetakis, Colantonio & Simon
        337 Penco Road
        Weirton, WV 26062
        ***Co- Lead Counsel***

        Harry F. Bell, Jr., Esq.
        Bell Law Firm, PLLC
        P. O. Box 1723
        Charleston, WV 25326
        ***Co-Lead and Liaison Counsel***

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

In Re: DIGITEK                                            MDL NO. 1968
       PRODUCTS LIABILITY LITIGATION

**CERTIFICATE OF SERVICE**

I, Fred Thompson, hereby certify that on April 22, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to following CM/ECF participants.

                                                   s/Fred Thompson, III Esq._____
                                                   Fred Thompson, III, Esq.
                                                   Motley Rice, LLC
                                                   28 Bridgeside Blvd.
                                                   Mt. Pleasant, SC 29464
                                                   ***Co- Lead Counsel***