## Johnson Carter, Meghan

| | |
|---|---|
| **From:** | Faehner, Renette C. [renette.faehner@tuckerellis.com] |
| **Sent:** | Thursday, August 12, 2010 11:41 AM |
| **To:** | wvsdml_digitek_chambers@wvsd.uscourts.gov |
| **Cc:** | Thompson, Fred; carln@facslaw.com; Johnson Carter, Meghan; hfbell@belllaw.com; mmcdonough@shb.com; Rebecca Betts; Dean, Richard |
| **Subject:** | In re: Digitek Products Liability Litigation, MDL No. 1968 |
| **Attachments:** | RCF_73021-00031_20100812_113559.pdf |

Attached is correspondence from Matthew P. Moriarty.  Please contact us if you have any questions.  Thank you.

Renette C. Faehner
Secretary to Matthew Moriarty,
Michael C. Brink, Jane F. Warner,
Paula Liderbach, and Jeffrey Clark
Tucker Ellis & West LLP
925 Euclid Avenue
1150 Huntington Building
Cleveland, Ohio 44115
www.tuckerellis.com

Direct Dial: 216-696-4358
Facsimile: 216-592-5009
renette.faehner@tuckerellis.com

CONFIDENTIALITY NOTICE: The documents and/or information contained in this transmission contains confidential information belonging to the sender which is legally privileged.  The information is intended only for the use of the individual or entity named above.  If you are not the intended recipient, you are notified that any disclosure, copying, distribution or taking of any action in reliance on the contents of this transmission is strictly prohibited.  If you have received this transmission in error, please notify the sender immediately.



# TUCKER ELLIS & WEST LLP
### ATTORNEYS AT LAW

1150 Huntington Bldg. 925 Euclid Avenue Cleveland, Ohio 44115-1414
phone 216.592.5000 fax 216.592.5009 Web: www.tuckerellis.com

**CLEVELAND COLUMBUS DENVER LOS ANGELES SAN FRANCISCO**

August 12, 2010

**CONFIDENTIAL**

**VIA E-MAIL** (wvsdml_digitek_chambers@wvsd.uscourts.gov)

Honorable Joseph R. Goodwin, Chief Judge
United States District Court for the
  Southern District of West Virginia
7009 Robert C. Byrd United States Courthouse
300 Virginia Street East
Charleston, WV 25301

    Re:   *In re Digitek® Products Liability Litigation*, MDL No. 1968

Dear Judge Goodwin:

    As you directed in our conference call of August 11, 2010, this letter sets forth the basic terms of the Settlement Program that are being finalized, as well as proposed deadlines. We have also attached written confirmation from Peter Miller that he intends to enroll all of his Philadelphia state cases in this Program, three of which are scheduled for trial late this year.

## PROPOSED SCHEDULE

    The Plaintiffs' Steering Committee and Defense Counsel propose the following dates in light of the settlement discussed below:

1. August 15 – August 31, 2010 – Informational sessions for Plaintiffs' lawyers to learn about the terms of the proposed settlement.

2. September 1, 2010 – Court to enter PTO submitted by the parties setting forth opt-out dates and claims procedures. Plaintiffs would have 45 days in which to opt out of the agreement.

3. October 15, 2010 – Date by which Plaintiffs must opt out of the agreement.

4. October 26, 2010 – Conference with the court to enter appropriate orders in light of the opt-out results, including the possibility of reinstituting deadlines or entering appropriate new orders for the cases of non-settling Plaintiffs.

5. November 1, 2010 – Beginning of 90 day period for submission of claim form and supporting paperwork to Special Master.

6. February 1, 2011 – Date by which claim forms must be filed with Special Master.

The parties request that discovery, motion practice, and any scheduled hearings be stayed through October 26, 2010. The parties also request that you communicate with the state court judges to request the entry of similar orders.

## SETTLEMENT TERMS

Defendants, Actavis Totowa, LLC, Actavis, Inc., and Actavis Elizabeth, Inc. have agreed to establish a fund for the resolution of cases meeting the criteria set forth below. Many of the words and phrases will be defined in the settlement agreement. The parties continue to negotiate the terms and details of every aspect of the agreement.

Claims of participating claimants shall be submitted to an independent claim facility (Special Master) which shall accumulate the information to establish an evaluation of the claims. Claims shall be evaluated and assigned the point additions and deductions as set forth below. The total number of points for qualifying claimants shall determine the percentage of participation for each claimant in relation to the fund.

1. Entry Criteria. To be available to participate in the fund the Plaintiff must meet all of the below criteria.

   1. Plaintiff must have a timely filed or tolled case; and

   2. Participating plaintiff will be required to have proof by medical records and/or prescription of use of recalled Digitek manufactured during the period of March, 2006 to April, 2008; and

   3. A medically definable incident (ER visit, doctor's visit, healthcare intervention, etc.); and

   4. Plaintiff must have one of the following:

      I. A clinical diagnosis of digoxin toxicity in a contemporaneous medical record at the time of the medically definable incident as described in 3 above; and/or

      II. An elevated serum digoxin concentration of higher than 2.0 in reasonable proximity to the medically definable incident described in 3 above; and/or

      III.     A qualified physician's affidavit supported by contemporaneous medical records attesting to a probable digoxin related illness or injury at the time of the medically definable incident.

2. In those instances in which an affidavit is submitted without a contemporaneous clinical diagnosis of digoxin toxicity and/or elevated serum digoxin concentration higher than 2.0, the claim will be submitted to a medical consultant for review and be evaluated on an individual basis to confirm the validity of the medical opinion submitted.

3. The election to participate in the settlement program shall be non-revocable and not subject to any appeal.

## CONSIDERATION OF CLAIMS

The parties will work with the Special Master and establish a claim handling guideline to address at least the following considerations:

1. Product use and product identification can be established by pharmacy records, doctor records, hospital records or independent tablet verification by the defense.

2. Serum digoxin concentrations must be drawn in accordance with generally accepted standards and must be drawn no sooner than 6 hours after the last dose.

3. Proof of defect. Any claimant who can submit proof of defective tablets by certified measurements or reliable laboratory testing shall be entitled to enhanced payment.

4. Claims participating in the fund established by the Defendants will be assigned points to determine the extent of payment. Claimants who have met the initial criteria shall be assigned a basic point value of 100 points which shall be reduced or augmented by the followings:

Basic Entry Case = 100 points

| ADDITIONS (caused by Digitek related incident) | |
|---|---|
| 1. Death | TBD |
| 2. Patient Age<br>    Under the age of 50 | TBD |
| 3. Hospitalization more than 3 days | TBD |
| 4. Minor Children/ Dependants | TBD |
| 5. Lost wages | TBD |
| 6. Proof of Defect | TBD |
| 7. Pacemaker (caused by Digitek incident) | TBD |
| 8. Asystole (flat line/ no cardiac electrical activity) | TBD |
| 9. Mild Arrhythmia or heart block<br>    Slow heart rate from AV block or sinus<br>    Slow heart rate from sinus bradycardia<br>    Premature beats | TBD |

| | |
|---|---|
| Premature ventribular contractions<br>Sino atrial node conduction disturbances<br>Atrio-ventricular node conduction disturbances<br>EKG manifestations<br>Junctional or ventricular tachycardia | |
| 10. Serious Arrhythmia or advanced heart block<br>    Atrial ectopic arrhythmias<br>    ventricular ectopic arrhythmias<br>    Brady arrhythmias<br>    Tachyarrhythmias<br>    junctional or ventricular fibrillation | TBD |
| 11. Special Circumstances | TBD |

Additions not to exceed 260 points
excluding cases with proof of defect or death

| | |
|---|---|
| DEDUCTIONS (factors that may cause digoxin toxicity or elevate digoxin levels) | TBD |
| 1. Patient age (Neutral 50 - 60)<br>       60 – 69<br>       70 – 75<br>       76 + | TBD |
| 2. Underlying Heart Problems or Disease<br>    Excludes conditions treated with Digitek such as CHF or a-fib<br>    Includes myocardial ischemia, coronary artery disease, ischemic heart disease, acute coronary syndrome, structural problems etc | TBD |
| 3. Co-morbidities and/or contributing medical history<br>    Examples include diabetes, hypertension, pulmonary or vascular disease, thyroid disease | TBD |
| 4. Impaired Renal Status (pre-existing) | TBD |
| 5. Other acute conditions which may affect digoxin levels<br>    Includes dehydration, hypomagnesemia, hypercalcemia, hypokalemia and electrolyte disorders | TBD |
| 6. Other medications that may contribute to digoxin toxicity or increase serum digoxin concentration (exemplar list attached)<br>    Alprazolam (Xanax)<br>    Amiodarone (Cordarone)<br>    Clarithromycin (Biaxin)<br>    Diphenoxylate (with atropine; Lomotil)<br>    Erythromycin<br>    Indomethacin (Indocin)<br>    Propafenone (Rythmol)<br>    Propantheline (Pro-Banthine)<br>    Quinidine | TBD |

4

|  | Rifampin (Rifadin)<br>Tetracycline<br>Verapamil (Calan) |  |
|---|---|---|
| 7. | Post-mortem blood digoxin level | TBD |
| 8. | Elevated SDC drawn less than 6 hours from last dose | TBD |

Minimum base score is 30 points regardless of deductions

All administrative costs and expenses attendant to the administration of the claims facility shall be born by the defendants, up to a maximum to be agreed upon. It is agreed by the parties that the MDL Plaintiffs' Steering Committee shall have the right to submit to this Court time and expenses expended in the pursuit of this action. The Defendants have the right to contest any or all of such requests. This Court shall award such fees and costs as it deems appropriate, which amount shall be non-appealable by either party.

The defendants reserve the right to withdraw the proposed settlement in the event that less than 85% of the currently filed MDL cases and 90% of the tolled claims affirmatively decline to participate in the settlement.

Cases filed in state courts will have the option to participate in this agreement and program. If 85% of the state cases elect to participate, the settlement fund will be augmented. If 95% of *all* filed cases and tolled claims participate, the fund will be further augmented.

Thank you for your time and consideration. We look forward to speaking with you again soon.

Sincerely,

*[signature]*

Matthew P. Moriarty

MPM:rcf
cc (via e-mail):    Fred Thompson
Carl Frankovitch
Meghan Johnson Carter
Harry Bell
Madeline McDonough
Rebecca Betts
Richard Dean

----- Original Message -----
From: Pete Miller <PMiller@millerfirmllc.com>
To: Johnson Carter, Meghan
Cc: Thompson, Fred
Sent: Wed Aug 11 14:30:15 2010
Subject: RE: Digitek Settlement

Meghan

Thanks go to you and Fred for the time you have put into the settlement negotiations to date.
By way of this email, I agree to enter into the settlement agreement all Miller Firm digitek cases filed in Philadelphia.


Pete Miller
The Miller Firm, LLC
www.doctoratlaw.com

8/11/2010