IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

IN RE: DIGITEK PRODUCTS LIABILITY LITIGATION

MDL NO. 1968

THIS DOCUMENT RELATES TO ALL CASES

## AFFIDAVIT OF FRED THOMPSON, III

I, FRED THOMPSON, III, being duly sworn, depose and say:

1. My name is Fred Thompson. I am over the age of 21 and have personal knowledge of the facts contained herein.

2. I was appointed as Co-Lead Counsel by this Court's Pre-Trial Order on November 5, 2008, along with Carl N. Frankovitch and Harry F. Bell, Jr.

3. I was appointed by this Court along with Carl Frankovitch to act as a negotiating team on behalf of the Plaintiffs in efforts to effectuate a global resolution of MDL 1968.

4. I participated in the negotiation with the Defendants in order to achieve a Master Settlement Agreement. We met face to face, and had numerous telephone conversations and e-mail interactions.

5. The scrivener for the various drafts of the Master Settlement Agreement was Tucker Ellis, and physical changes to the various documents were made by Tucker Ellis.

6. From an early point in the negotiations, the payment of attorneys' fees and expenses for the common effort work that was performed on behalf of the plaintiffs was a necessary point of discussion between the parties.

1

7. Prior to the negotiations, during the negotiation, and after the negotiation, the Plaintiffs' Steering Committee had an opportunity to request the Court for an assessment order, which would have required a percentage of individual cases to be set aside for payment of attorneys' fees.

8. Because the issue of attorneys' fees and expenses were directly addressed and resolved by the contractual agreements reached in the Master Settlement Agreement, the Plaintiffs' Steering Committee forbore requesting an assessment of the individual case settlements.

9. All parties to the Master Settlement Agreement were aware of, and agreed to, the issue of fees and expenses being addressed by the provisions of the Master Settlement Agreement.

10. During early discussions, both sides reviewed the settlements of Propulsid and Serzone, both of which documents have been studied by both sides in anticipation of settlement.

11. The Serzone Agreement states as follows:

> 9.3 Class Counsel will make an application to the Court pursuant to Fed. R. Civ. P. 23(h) for an award of attorneys' fees and expenses. The motion shall be filed no later than the Fairness Hearing Date. Any objections to the motion shall be filed thirty (30) calendar days after the Fairness Hearing, and any response to objections shall be filed ten (10) calendar days thereafter. The attorneys' fees and expenses awarded to Class Counsel by the Court will be paid by BMS with monies not otherwise owed under the terms of this Agreement or with monies, if any, transferred to the BMS Product Liability Sub Account.

*In re Serzone Products Liability Litigation – Third Amended Settlement* Agreement, Case 2:02-md-01477, Document 182, Feb. 08, 2005, relevant portions attached to the brief as Exhibit G.

12. The Serzone attorneys' provision was substantially adopted and followed by the parties to the Master Settlement Agreement.

13. The initial settlement terms described the attorneys fees as:

> It is agreed by the parties that the Plaintiffs' Steering Committee shall have the right to submit to the Court time and expenses expended in the pursuit of this action. The Defendants have the right to contest any or all of such requests. The Honorable Judge Joseph Goodwin shall award such fees and costs as he deems appropriate, which amount shall be non-appealable by either party.

See August 5, 2010 transmittal of August 4, 2010 letter from Matthew Moriarty to Judge Joseph Goodwin that included the term sheet, attached to the brief as Exhibit B.

14. Because the Defendants desired the opportunity to make their case that attorneys' fees should be low, or because of the size of the settlement fund should be subject to no award, and that class common fund work did not benefit the PSC, the provision went through several iterations. Each iteration was negotiated to allow defendants the opportunity to make their argument on the merit or value of the work.

15. At no point in the discussion was there any position asserted that under the Master Settlement Agreement, the Court would lack the authority to award attorneys' fees and expenses. That Defendants would pay the attorneys' fees and expenses ordered was agreed to and relied upon.

16. The cover letters by which the settlement terms were transmitted to the Court most clearly shows the understanding of the parties:

17. As I read the Master Settlement Agreement, I do not see an ambiguity. The provision permits the Plaintiffs' Steering Committee, or any person who believes he has performed work, to apply for an award and for reimbursement of such expenses to be submitted to the court, who will

3

exercise its discretion and review based upon all circumstances, including input from the Defendants, and will make such a finding, which will be paid by the Defendants.

18. In looking at Article II of the Master Settlement Agreement, it is clear that the source of funds would be outside the settlement pool, and would be an additional leg of the settlement fund to be borne by the Defendants:

19. It is disheartening that Defendants argue an interpretation that was never raised or asserted during negotiation or agreement, and which was never a part of the discussion until six months after the execution of the Master Settlement Agreement.

FURTHER AFFIANT SAYETH NOT.

_____
Fred Thompson, III

STATE OF SOUTH CAROLINA     )
                            ) ss.
CITY AND COUNTY OF CHARLESTON )

The foregoing Affidavit of Fred Thompson, III, Esquire was sworn and subscribed to before me this ____ day of April _____ 2011, by Fred Thompson, III, Esquire

WITNESS MY HAND AND OFFICIAL SEAL.

_____
Notary Public

(seal)

My commission expires: 5/21/20__

4