# EXHIBIT 608.1

PLAINTIFFS' EXHIBITS 011548

**UNITED STATES DISTRICT COURT OF THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

Kathy McCornack, et al.

   Plaintiffs,

vs.

Actavis Totowa, LLC, et al.

   Defendants.

**THIS DOCUMENT RELATES TO:**

Case No.: 2:09-cv-0671

*Related MDL Case No.: 2:08-md-1968*

**NOTICE TO TAKE VIDEOTAPED ORAL DEPOSITION AND REQUEST FOR
PRODUCTION AND COPYING OF DOCUMENTS AT THE DEPOSITION**

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

  **PLEASE TAKE NOTICE** that, under Federal Rules of Civil Procedure 26(d), 30 and

45, Plaintiffs will take the deposition of **DR. C. ALAN BROWN** on **Wednesday, August 10,**

**2011 at 2:00 p.m.** at McDaniel Reporting and Video Conferencing, 206 E. Victoria Ave., Santa

Barbara, CA.

  The oral examination will continue from day to day until completed.  This deposition will

be recorded stenographically, may be recorded on videotape and will comply with any relevant

orders in this litigation, including Pretrial Order No. 22, attached hereto as Exhibit A.  This

deposition is noticed in the above-captioned matter for any and all purposes permitted by the

Federal Rules of Civil Procedure and any other federal, state, or local rules that apply to this

action and the deposition will be taken in accordance with these rules.  A copy of the subpoena

duces tecum to appear and testify at a hearing or trial in a civil case is attached hereto as Exhibit

1



PLAINTIFFS' EXHIBITS 011549

B and served herewith.  Pursuant to Federal Rule of Civil Procedure 30(b)(2) and 45(a),

Plaintiffs request that Dr. Brown produce for inspection at the time of deposition:

1. The witness' current curriculum vitae or resume.

2. All correspondence and communication between the witness or anyone acting on the witness' behalf, and attorneys representing defendants in this and the MDL Digitek® litigation.

3. All other documents prepared by the attorneys for the defendants and sent to the witness.

4. All documents, including documents and deposition transcripts which refer or relate to this and the MDL Digitek® litigation that the witness received from any source.

5. All retainer agreements or other agreements under which the witness has been or will be paid for work related to this and the related MDL Digitek® litigation.

6. All bills that the witness has rendered to attorneys and law firms in connection with this and the MDL Digitek® litigation.

7. A copy of the witness' entire file, including all electronic documents, and correspondence, in connection with this and the MDL Digitek® litigation.

8. All documents, including additional materials received or reviewed, tangible things, data, or writings that relied upon, examined, considered, or rejected in preparing the reports in this and the MDL Digitek® litigation, or subsequent to preparing his report.

9. Everything the witness reviewed that indicates any person may have ingested defective Digitek®.

PLAINTIFFS' EXHIBITS 011550 Ex. 1 - 2

10. All notes that the witness has taken in connection with review of this and the MDL Digitek® litigation matters.

11. All documents that the witness has prepared concerning the subject matter of this and the MDL Digitek® litigation.

12. All medical, scientific or other literature on which the witness relies in connection with the opinions expressed in his expert report.

13. All documents, tangible things, data, or writings concerning whether a Digitek® tablet that may have been adulterated may have ever been received by a pharmacist or consumer.  This request is not limited to just the Digitek® tablets recalled in 2008 by Defendant Actavis, but to all Digitek® tablets that may have ever been received by a pharmacist or consumer and suspected to be adulterated for any reason.

14. All documents the witness reviewed in preparation for this deposition.

Respectfully Submitted:

Dated: July 13, 2011                /s/  Terry Kilpatrick
                                    Terry Kilpatrick (Calif. Bar No. 163197)
                                    Attorneys for Plaintiffs
                                    Ernst Law Group
                                    1020 Palm Street
                                    San Luis Obispo, CA. 93401
                                    Tel: 805-541-0300
                                    Fax: 805-541-5168
                                    E-mail: tk@ernstlawgroup.com

PLAINTIFFS' EXHIBITS 011551   Ex. 1-3

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2011, I or an employee under my control electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: July 13, 2011            /s/  Terry Kilpatrick
                                  Terry Kilpatrick (Calif. Bar No. 163197)
                                  Attorneys for Plaintiffs
                                  Ernst Law Group
                                  1020 Palm Street
                                  San Luis Obispo, CA. 93401
                                  Tel:  805-541-0300
                                  Fax: 805-541-5168
                                  E-mail: tk@ernstlawgroup.com

PLAINTIFFS' EXHIBITS 011552

Ex. 1 - 4

# EXHIBIT A

Ex. 1-5

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON DIVISION

IN RE DIGITEK®
    PRODUCT LIABILITY LITIGATION              MDL NO. 1968

---

**THIS DOCUMENT RELATES TO ALL CASES**

### PRETRIAL ORDER #22
### (Conduct of Discovery)

## INTRODUCTION

A.    <u>Coordination with Other Litigation</u>

    1.    <u>Coordination to Extent Practicable</u>

Plaintiffs and Defendants in this litigation, and in particular the Plaintiffs' Liaison Counsel, PSC, Defendants' Liaison Counsel, and all other counsel designated by the Court in prior or subsequent Pretrial Orders, shall work to coordinate to the extent practicable the conduct of this litigation with other product liability or marketing or sales practices actions involving Digitek® pending in any State Court. Such coordination is intended to conserve scarce judicial resources, eliminate duplicative discovery, serve the convenience of the parties and witnesses, and promote the just and efficient conduct of this litigation. It is contemplated by the Court and the parties that all discovery conducted in these proceedings may be utilized in any related State Court action, in accordance with the State's law and rules of evidence, and vice versa, subject to an appropriate cost-sharing provision which will be the subject of a further order. All discovery obtained in these proceedings which is used in any State Court litigation is subject to this Order, any protective order(s) entered by this Court, and such future cost-sharing orders as may be entered.

PLAINTIFFS' EXHIBITS 011554    Ex. 1-6

2.      Intent to Coordinate with State Courts

In order to achieve the full benefits of this MDL proceeding, this Court intends to coordinate with State Courts presiding over related cases, to the extent that such State Courts so desire, such as through joint orders that will allow the parties in the State Court actions to fully utilize any discovery conducted in the MDL proceedings and vice versa.  As the Court indicated at the initial case management conference, this Court intends to work actively to reach out to any State Court that is interested in coordinating discovery activities.  The Court expects that counsel for parties in the MDL proceeding will help ensure that such coordination is achieved where it is practicable.

B.      Production of Documents

1.      Depository

The PSC shall bear the cost of and administer its own depository.  All documents produced by Defendants in this proceeding shall be produced to the PSC's designee.  The PSC shall make the documents produced by Defendants available to Plaintiffs in State Court litigation subject to an appropriate cost-sharing provision which will be the subject of a further order.  This production shall not preclude any party from asserting in any action that such documents are inadmissible at trial, nor shall this provision be construed to supersede or amend any State's law or State Court's rules pertaining to such documents.

2.      Use of On-Line Document Depositories

Counsel shall take all reasonable and necessary steps to assure the security of any confidential information produced pursuant to the Protective Order issued by this Court and will limit access to confidential information to those persons covered by the Protective Order. In particular, if counsel for any party makes documents available via the Internet, such counsel shall take all reasonable and necessary steps to ensure that the Internet site is secure and may not be

2

PLAINTIFFS' EXHIBITS 011555          Ex. 1-7

accessed by individuals who are not authorized to review confidential information.

> 3.     Effect on Document Production

This Order shall be read in conjunction with other Pre-trial Orders of this Court that reference production of documents, as well as the Federal Rules of Civil Procedure, and the Federal Rules of Evidence; nothing contained herein shall limit or abridge the parties rights or prerogatives under such orders and rules.

Upon request by any party supplying confidential information, any party using an Internet site must certify to the Court and the supplying party that the Internet site is secure and may only be accessed pursuant to the Protective Order entered by this Court. In the event the Internet site is made available to persons outside the MDL, they will be governed by appropriate further orders of this Court or appropriate state courts.

## DEPOSITION GUIDELINES

C.     Deposition Notices

> 1.     This Order applies to all depositions in MDL-1968, which will be noticed and conducted pursuant to Fed. R. Civ. P. 30 and this Order.

> 2.     This Order, in its entirety, shall be attached to any non-party subpoena or deposition notice.

> 3.     Each deposition notice shall include the name and, if known, the general occupational description of each deponent, and the date, time and place of the deposition.

> 4.     In order for counsel to make arrangements for adequate deposition space, whenever feasible, counsel who intend to attend a deposition noticed by MDL-1968 plaintiffs should provide notice to Plaintiffs' Liaison Counsel of their intention to attend. Counsel who intend to attend a deposition noticed by the MDL-1968 defendants should send notice of their

PLAINTIFFS' EXHIBITS 011556

Ex. 1-8

intention to Defendants' Liaison Counsel.  As to all parties, notice of intention to attend shall be provided within one week of the deposition date.

5.      Deposition notices shall state whether the deposition is to be videotaped and, if so, the name, firm and address of the videotape recorders.  All videotape depositions shall proceed pursuant to the provisions of section L, *infra*.

D.      Avoidance of Duplicative Depositions

As a general rule, absent good cause or the agreement of the parties, no witness should be deposed on the same subject more than once in these proceedings.  Defendants' Liaison Counsel shall advise the PSC of all depositions that have been taken by Plaintiffs in other litigation related to Digitek® and shall provide the transcripts of such depositions to the PSC.

E.      Cooperation

Witnesses, parties and counsel must conduct themselves at depositions in a temperate, dignified, and responsible manner.  Opposing counsel and the deponent must be treated with civility and respect.  There shall be no smoking or use of other tobacco products in any room in which a deposition is being conducted, including before, during or after a deposition, or in the deposition room during deposition recesses.

F.      Scheduling

Absent extraordinary circumstances, counsel shall consult in advance with opposing counsel and proposed deponents in an effort to schedule depositions at mutually convenient times and locations.   Counsel are expected to cooperate and coordinate the scheduling of depositions.  Only one deposition of a current or former employee of the defendants shall be taken per day until such time as there is a demonstrated need to multitrack depositions of the employees of the defendants.  At that time the parties shall meet and confer on the establishment of a reasonable schedule for the multi-tracking of depositions of employees of the defendants.

4

PLAINTIFFS' EXHIBITS 011557

Ex. 1-9

For depositions which are not case specific, each side shall be notified at least thirty (30) days in advance of a deposition, absent agreement by parties, time constraints due to PTO # 16 or by leave of Court. Given time limits contained in the Case Management and Scheduling Order, PTO # 16, Defendants agree to make deponents, such as employees or former employees, available for deposition at such times and places so as to permit compliance with deadlines contained in PTO # 16.

No depositions shall be scheduled on secular or religious holidays.

G.   Cross-Notices Between State Court Cases and These Proceedings

In order to avoid duplicative discovery and to prevent the unnecessary expenditure of judicial resources and the resources of the parties, steps should be taken to encourage counsel in related state court proceedings to coordinate their depositions with MDL-1968 depositions. Depositions originally noticed in this MDL may be cross-noticed in appropriate state court cases by Plaintiffs' counsel or Defendants' counsel. Depositions originally noticed in state court cases may be cross-noticed in this MDL by Plaintiffs' counsel or Defendants' counsel. Such cross-notices shall be issued at least fifteen (15) days in advance of the deposition or in accordance with local rules.

If counsel cannot agree on the order of questioning at a deposition, these rules shall apply: if the deposition was originally noticed in this MDL, whether or not later cross-noticed in state court proceedings, MDL counsel shall go first in the deposition.

Nothing in this provision shall be construed as an injunctive or equitable order affecting state court proceedings. Rather, this provision is intended to reflect this Court's desire for voluntary state-federal coordination.

H.   Postponements

Once a deposition has been scheduled, it shall not be taken off calendar, postponed,

PLAINTIFFS' EXHIBITS 011558

Ex. 1-10

rescheduled, or relocated less than five (5) calendar days in advance of the date it is scheduled to occur, except upon agreement of counsel or by leave of Court for good cause.

I.      Deposition Length and Day

A deposition day shall begin as early as practicable and shall terminate no later than 5:30 p.m. (except Friday when depositions shall end no later than 1:00 p.m.), local time.   All parties shall work together and in good faith to make reasonable exceptions to the length of the deposition day as necessary.

A deposition shall last no longer than fourteen (14) hours total examination time, except upon agreement of counsel or by leave of Court.  This time includes examinations performed by all parties and does not include regular and reasonable breaks taken during the deposition.

J.      Continuance of Deposition

If a deposition is not concluded during the time allotted in the deposition notice, and time still remains for the examining party under subsection I, then the deposition shall be continued on a newly-noticed date or an agreed date.  In such circumstances, a ten (10) day notice will be sufficient to notice a continued deposition.

K.      Locations for Taking Depositions

1.      The parties will work together to cooperate in the location and circumstances of all scheduled depositions.

2.      Unless otherwise agreed, depositions of plaintiffs will take place in each plaintiff's home district.

3.      Unless otherwise agreed by the parties prior to the noticing of an expert, treating physician and/or prescribing physician deposition, the deposition of such witness shall take place in the home district of the witness.

PLAINTIFFS' EXHIBITS 011559

Ex. 1-11

4.      The location of the deposition shall be as consistent as possible within each city, so that videotape equipment, if being used, can be left in place.

5.      To the extent reasonably possible, depositions of current and former employees of defendants will take place in the district of such employee's place of business.  Defense counsel will make reasonable efforts to obtain the agreement of former employees of defendants to appear at the same location as current employees of the same defendant.  Absent such agreement, that deposition will take place either within the federal district in which the former employee resides or at a location mutually agreeable to the former employee and parties.

6.      Unless otherwise provided by law or court order, attorneys attending and participating in a deposition are not required to be licensed to practice law in the state in which the deposition is being taken.

L.      <u>Attendance</u>

Unless otherwise agreed to by the parties, depositions may be attended only by the parties, the deponent, the deponent's attorney, the examining attorneys, attorneys of record in MDL-1968 or state cases, in-house counsel for the parties, court reporters, videographers, and any person who is assisting in the litigation and whose presence is reasonably required by counsel. Experts who have signed the Protective Order may attend expert depositions of the other parties' experts but may not participate in the depositions.  Upon application, and for good cause shown, the Court may permit attendance by a person who does not fall within any of the categories set forth in the previous sentence.  While a deponent is being examined about any document that the parties have agreed is confidential, or the Court has determined to be confidential, attendance at that portion of the deposition by persons to whom disclosure is not authorized by agreement of the parties or by order of the Court shall be prohibited. Any portion

PLAINTIFFS' EXHIBITS 011560

Ex-1-12

of the deposition transcript containing documents or information subject to the Protective Order entered in this case shall be sealed in accordance with the terms of the Protective Order.

Unnecessary attendance by counsel is discouraged and may not be compensated in any fee application to the Court.

Telephonic participation shall be addressed on a witness by witness basis.

M.    Conduct

Except by order of the Court, the following shall apply at all depositions:

1.    Examination

Each side should ordinarily designate no more than two attorneys for the MDL.  For state cases, one plaintiff attorney for each state case or state consolidation shall be designated to participate in the deposition and conduct non-duplicative questioning.

In some depositions, there may be sufficient divergence of positions among various parties such that additional examiners may be appropriate on non-redundant matters.  Therefore, other attorneys will be permitted to examine deponents on non-redundant matters.  Further, even if there is no divergence of position, if a state court attorney has non-redundant questioning he or she deems necessary or appropriate, further questioning by that state court lawyer may proceed, subject to overall time limits.

When a party believes that it may be necessary to examine the deponent on non-redundant matters due to a divergence of interest, such party shall designate one attorney to conduct such non-redundant examination after the initial examination has concluded.

Counsel should cooperate in the allocation of time in order to comply with the time limits set by the Court.

2.    Objections and Directions Not to Answer

Unless otherwise agreed by the parties, and noted on the record, the following

8

PLAINTIFFS' EXHIBITS 011561

Ex - 1 - 13

stipulations shall apply to all discovery depositions in this action;

  a)  Objections must be limited to (1) those that would be waived if not made pursuant to Fed. R. Civ. P. 32(d)(3); and (2) those necessary to assert a privilege, enforce a limitation on evidence directed by the Court or present a motion under Fed. R. Civ. P. 30(d)(3). No other objections can be raised during the course of the deposition. In the event privilege is claimed, examining counsel may make appropriate inquiry about the basis for asserting privilege.

  b)  Speaking objections that refer to the facts of the case or suggest an answer to the deponent are improper and must not be made in the presence of the deponent.

  c)  Asking redundant, repetitive, multiple asked-and-answered questions in an effort to alter or amend a deponent's testimony is improper and must not be done in the deponent's presence.

  3.  <u>Objections to Documents</u>

Objections as to the relevance of documents are not waived, and are reserved for later ruling by the Court or by the trial judge. No objections to the use of any document are necessary.

  4.  <u>Disputes During Depositions</u>

Disputes arising during depositions that cannot be resolved by agreement and that, if not immediately resolved, will significantly disrupt the discovery schedule or require rescheduling of the deposition, or might result in the need to conduct a supplemental deposition, shall be presented to Judge Goodwin or Magistrate Judge Stanley by telephone. In the event both Judge

9

Ex. 1- 14

Goodwin and Magistrate Judge Stanley are not available, the deposition shall continue with full reservation of rights of the interrogation for a ruling at the earliest possible time.

If the nature of the dispute would not stop the deposition from going forward, the parties may elect to either present the matter to Judge Goodwin or Magistrate Judge Stanley by telephone, or to present the dispute to the Court in writing.  If the parties elect to present the dispute to the Court in writing, each side must submit a one (1) page summary of its position and any authority relevant to the dispute. The Court will issue a prompt ruling, as its schedule permits.

In the event the Court is unavailable by telephone to resolve disputes arising during the course of a deposition, the deposition shall nevertheless continue to be taken as to matters not in dispute.

None of the provisions in this Section shall deny counsel the right to continue the deposition, file an appropriate motion with the Court at the conclusion of the deposition, and appear personally before the Court if counsel deems it necessary.

Disputes between the parties should be addressed to this Court rather than to the District Court in which the deposition is being conducted.

N.      Stenographic Recording

A certified court reporter shall stenographically record all deposition proceedings and testimony. The court reporter shall administer the oath or affirmation to the deponent. A written transcript by the court reporter shall constitute the official record of the deposition for purposes of Fed. R. Civ. P. 30(e) (submission to the witness) and 30(f) (filing, exhibits).  A copy of all deposition exhibits shall be included with the original deposition transcript.

Before commencement of the deposition, each witness, attorney, and any other person attending the deposition shall submit to the court reporter in writing his or her name, the name of

10

Ex-1-15

his or her firm, business address, and the name of the client he or she represents. The list of these people shall be included at the beginning of the deposition transcript.

O.    Videotaped Depositions

The provisions of this Order regarding examination of deponents apply to videotaped depositions. Any deposition may be videotaped at the request of any party pursuant to the following terms and conditions:

1.    Simultaneous Stenographic Recording

All videotaped depositions shall be simultaneously stenographically recorded in accordance with paragraph N, above.

2.    Cost of the Deposition

The party requesting videotaping of the deposition shall bear the expense of the videotaping. Requests for the taxation of these costs and expenses may be made at the conclusion of the litigation in accordance with applicable law.

3.    Videotape Operator

The operator(s) of the videotape recording equipment shall be subject to the provisions of Fed. R. Civ. P. 28(c). At the commencement of the deposition, the operator(s) shall swear or affirm to record the proceedings fairly and accurately.

4.    Attendance

At the commencement of the deposition, each witness, attorney and any other person attending the deposition shall be identified on camera

5.    Interruptions

No attorney or party shall direct instructions to the video operator as to the method of operating the equipment. The video camera operation will be suspended during the deposition only upon stipulation by counsel and "off the record" discussions. The video operator shall

11

PLAINTIFFS' EXHIBITS 011564

Ex - 1 - 16

record on camera the time of suspension and any subsequent reconvening of the deposition.

    6.    <u>Standards</u>

The deposition will be conducted in a manner to replicate, to the extent feasible, the presentation of evidence at trial. Unless physically incapacitated, the deponent shall be seated at a table except when reviewing or presenting demonstrative materials for which a change in position is needed. To the extent practicable, the deposition will be conducted in a neutral setting, against a solid background, with only such lighting as is required for accurate video recording. Lighting, camera angle, lens setting, and field of view will be changed only as necessary to record accurately the natural body movements of the deponent or to portray exhibits and materials used during the deposition.

The parties reserve the right to seek an Order from the Court that the examiner as well as the witness be recorded, and that if a second camera is necessary to accomplish such recording, such party agrees to bear such expense.

To the extent that technology permits, the parties reserve the right to format documents and other tangible materials so that a videotaped deponent who makes reference to such exhibits can be displayed contemporaneously with such exhibit.

    7.    <u>Index</u>

The videotape operator shall use a counter on the recording equipment and after completion of the deposition shall prepare a log, cross-referenced to counter numbers, that identifies the depositions on the tape at which examination by different counsel begins and ends, at which objections are made and examination resumes, at which exhibits are identified, and at which any interruption of continuous tape-recording occurs, whether for recesses, "off-the-record" discussions, mechanical failure, or otherwise.

PLAINTIFFS' EXHIBITS 011565

Ex. 1 - 17

8.    Filing

After the deposition is completed, the video operator shall certify on camera the correctness, completeness, and accuracy of the videotape recording in the same manner as a stenographic Court reporter, and file a true copy of the videotape, the transcript, and certificate with Liaison Counsel for Plaintiffs and Defendants.

9.    Technical Data

Technical data, such as recording speeds and other information needed to replay or copy the tape, shall be included on copies of the videotaped deposition.

P.    Obtaining Copies of Transcripts and Videotapes

Any party may at its own expense obtain a copy of the videotape and the stenographic transcript by contacting the Liaison Counsel for the party noticing the deposition or the court reporter.

Q.    Correction and Signing Depositions

A deponent will be given the opportunity to review their deposition and make corrections consistent with Federal Rule of Civil Procedure 30(e).


OTHER DISCOVERY

R.    Effect on Other Discovery

With regard to other forms of discovery, including Interrogatories, Requests to Produce Documents, Requests to Admit and Right to Entry and Inspection, nothing contained herein shall limit or abridge the parties rights or prerogatives under previously entered orders of this Court, the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

IT IS SO ORDERED.

13

PLAINTIFFS' EXHIBITS 011566

Ex. 1 - 18

The court **DIRECTS** the Clerk to file a copy of this order in 2-08-md-1968 which shall

apply to each member Digitek-related case previously transferred to, removed to, or filed in this

district, which includes counsel in all member cases up to and including civil action number

2-09-cv-0561.  In cases subsequently filed in this district, a copy of the most recent pretrial order

will be provided by the Clerk to counsel appearing in each new action at the time of filing of the

complaint.  In cases subsequently removed or transferred to this court, a copy of the most recent

pretrial order will be provided by the Clerk to counsel appearing in each new action upon

removal or transfer.  It shall be the responsibility of the parties to review and abide by all pretrial

orders previously entered by the court.  The orders may be accessed through the CM/ECF system

or the court's website at www.wvsd.uscourts.gov.

ENTER:  May 19, 2009

Joseph R. Goodwin, Chief Judge

14

PLAINTIFFS' EXHIBITS 011567

Ex. 1-19

STIPULATED AND AGREED TO BY:

FOR DEFENDANTS:                              FOR PLAINTIFFS:

___s/ Matthew P. Moriarty_____            ___s/ Carl Frankovitch_____
RICHARD A. DEAN                             CARL N. FRANKOVITCH (WVSB # 4746)
MATTHEW P. MORIARTY (WVSB #4571)            FRANKOVITCH, ANETAKIS, COLANTONIO &
TUCKER ELLIS & WEST LLP                     SIMON
925 Euclid Avenue, Suite 1150              337 Penco Road
Cleveland, Ohio 44115                       Weirton, West Virginia 26062
Tel: (216) 696-2137                         Tel: (304) 723-4400
Fax: (216) 592-5009                         Fax: (304) 723-5892
Richard.Dean@TuckerEllis.com                carln@facslaw.com
Matthew.Moriarty@TuckerEllis.com            Co-Lead Counsel for Plaintiffs
Co-Lead Counsel for Actavis Defendants

___s/ Harvey L. Kaplan_____              ___s/ Harry F. Bell, Jr._____
HARVEY L. KAPLAN                            HARRY F. BELL, JR. (WVSB #297)
MADELEINE M. McDONOUGH                      BELL & BANDS PLLC
SHOOK HARDY & BACON, L.L.P.                  300 Capitol Street
2555 Grand Boulevard                        P.O. Box 1723
Kansas City, Missouri 64108                 Charleston, West Virginia 25326-1723
Tel: (816) 559-2214                         Tel: (304) 345-1700
Fax: (816) 421-5547                         Fax: (304) 345-1715
hkaplan@shb.com                             hfbell@belllaw.com
mmcdonough@shb.com                          Co-Lead and Liaison Counsel for Plaintiffs
Co-Lead Counsel for Mylan Defendants

___s/ Rebecca A. Betts_____              ___s/ Fred Thompson, III_____
REBECCA A. BETTS (WVSB #329)                FRED THOMPSON, III
ALLEN GUTHRIE & THOMAS, PLLC                 MOTLEY RICE LLC
500 Lee Street, East, Suite 800            28 Bridgeside Blvd.
P.O. Box 3394                               P.O. Box 1792
Charleston, West Virginia 25333-3394        Mt. Pleasant, South Carolina 29465
Tel: (304) 345-7250                         Tel: (843) 216-9000
Fax: (304) 345-9941                         Fax: (843) 216-9450
rabetts@agmtlaw.com                         fthompson@motleyrice.com
Liaison Counsel for Defendants              Co-Lead and Liaison Counsel for Plaintiffs

PLAINTIFFS' EXHIBITS 011568

EX 1-20

# EXHIBIT B

PLAINTIFFS' EXHIBITS 011569

Ex- 1 - 21

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | | |
|---|---|---|
| Kathy McCornack, et al. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   2:09-cv-0671 |
| | ) | |
| Actavis Totowa, LLC, et al. | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | Southern District of West Virginia          ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:  Dr. C. Alan Brown, 2400 Bath St., Suite 201, Santa Barbara, CA 93105

☑ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization that is *not* a party in this case, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place:  McDaniel Reporting & Video Conferencing | Date and Time: |
|---|---|
|           206 E. Victoria Ave. |  |
|           Santa Barbara, CA (805) 544-3363 | 08/10/2011 2:00 pm |

The deposition will be recorded by this method:   Stenographically  and may be recorded by videotaped

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material:
The items listed as 1 - 14 at the end of the attached Notice of Deposition.

        The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:      07/13/2011

          *CLERK OF COURT*

                                            OR

_____                    _____
   *Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*       Plaintiffs, KATHY
McCORNACK, et al. _____ , who issues or requests this subpoena, are:
Christopher Edgington, ERNST LAW GROUP, 1020 Palm Street, San Luis Obispo, CA 93401, tk@ernstlawgroup.com,
(805) 541-0300

PLAINTIFFS' EXHIBITS 011570

Ex. 1 - 22

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   2:09-cv-0671

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)*   Dr. C. Alan Brown _____

was received by me on *(date)* _____

❒ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____41.20_____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____       _____
                                                        *Server's signature*

                                                _____
                                                        *Printed name and title*

                                                _____
                                                        *Server's address*

Additional information regarding attempted service, etc:

Ex. 1 – 23

AO 88A (Rev. 06/09) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

Ex 1-24

UNITED STATES DISTRICT COURT OF THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

Kathy McCornack, et al.

     Plaintiffs,

vs.

Actavis Totowa, LLC, et al.

     Defendants.

THIS DOCUMENT RELATES TO:

Case No.: 2:09-cv-0671

*Related MDL Case No.: 2:08-md-1968*

## NOTICE TO TAKE VIDEOTAPED ORAL DEPOSITION AND REQUEST FOR PRODUCTION AND COPYING OF DOCUMENTS AT THE DEPOSITION

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that, under Federal Rules of Civil Procedure 26(d), 30 and 45, Plaintiffs will take the deposition of **DR. C. ALAN BROWN** on **Wednesday, August 10, 2011 at 2:00 p.m.** at McDaniel Reporting and Video Conferencing, 206 E. Victoria Ave., Santa Barbara, CA.

The oral examination will continue from day to day until completed.  This deposition will be recorded stenographically, may be recorded on videotape and will comply with any relevant orders in this litigation, including Pretrial Order No. 22, attached hereto as Exhibit A.  This deposition is noticed in the above-captioned matter for any and all purposes permitted by the Federal Rules of Civil Procedure and any other federal, state, or local rules that apply to this action and the deposition will be taken in accordance with these rules.  A copy of the subpoena duces tecum to appear and testify at a hearing or trial in a civil case is attached hereto as Exhibit

1

PLAINTIFFS' EXHIBITS 011573 Ex. 1-25

B and served herewith.  Pursuant to Federal Rule of Civil Procedure 30(b)(2) and 45(a),

Plaintiffs request that Dr. Brown produce for inspection at the time of deposition:

1. The witness' current curriculum vitae or resume.

2. All correspondence and communication between the witness or anyone acting on the witness' behalf, and attorneys representing defendants in this and the MDL Digitek® litigation.

3. All other documents prepared by the attorneys for the defendants and sent to the witness.

4. All documents, including documents and deposition transcripts which refer or relate to this and the MDL Digitek® litigation that the witness received from any source.

5. All retainer agreements or other agreements under which the witness has been or will be paid for work related to this and the related MDL Digitek® litigation.

6. All bills that the witness has rendered to attorneys and law firms in connection with this and the MDL Digitek® litigation.

7. A copy of the witness' entire file, including all electronic documents, and correspondence, in connection with this and the MDL Digitek® litigation.

8. All documents, including additional materials received or reviewed, tangible things, data, or writings that relied upon, examined, considered, or rejected in preparing the reports in this and the MDL Digitek® litigation, or subsequent to preparing his report.

9. Everything the witness reviewed that indicates any person may have ingested defective Digitek®.

PLAINTIFFS' EXHIBITS 011574   Ex. 1-26

10. All notes that the witness has taken in connection with review of this and the MDL Digitek® litigation matters.

11. All documents that the witness has prepared concerning the subject matter of this and the MDL Digitek® litigation.

12. All medical, scientific or other literature on which the witness relies in connection with the opinions expressed in his expert report.

13. All documents, tangible things, data, or writings concerning whether a Digitek® tablet that may have been adulterated may have ever been received by a pharmacist or consumer.  This request is not limited to just the Digitek® tablets recalled in 2008 by Defendant Actavis, but to all Digitek® tablets that may have ever been received by a pharmacist or consumer and suspected to be adulterated for any reason.

14. All documents the witness reviewed in preparation for this deposition.


Respectfully Submitted:

Dated: July 13, 2011                    /s/  Terry Kilpatrick
                                        Terry Kilpatrick (Calif. Bar No. 163197)
                                        Attorneys for Plaintiffs
                                        Ernst Law Group
                                        1020 Palm Street
                                        San Luis Obispo, CA. 93401
                                        Tel:  805-541-0300
                                        Fax: 805-541-5168
                                        E-mail: tk@ernstlawgroup.com

3

PLAINTIFFS' EXHIBITS 011575           Ex. 1-27

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2011, I or an employee under my control electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: July 13, 2011        /s/ Terry Kilpatrick

Terry Kilpatrick (Calif. Bar No. 163197)
Attorneys for Plaintiffs
Ernst Law Group
1020 Palm Street
San Luis Obispo, CA. 93401
Tel: 805-541-0300
Fax: 805-541-5168
E-mail: tk@ernstlawgroup.com

4

PLAINTIFFS' EXHIBITS 011576 Ex. 1-28 of 28



# Santa Barbara Cardiovascular Medical Group, Inc.

David S. Gillon, M.D., F.A.C.C. • William J. Allon, M.D., F.A.C.C. • C. Alan Brown, M.D., F.A.C.C.
Thomas  D. Watson, M.D., F.A.C.C. • Sanjay Kumar, M.D., F.A.C.C.

2400 Bath St., Suite 201 • Santa Barbara, CA 93105 • (805) 682-7707 • FAX (805) 682-7710
2030 Viborg Rd., Suite 104 • Solvang, CA 93463 • (805) 688-5531 • FAX (805) 688-0456

May 23, 2011

Ms. Hunter Ahern
Shook, Hardy & Bacon
JP Morgan Chase Tower
600 Travis, Suite 1600
Houston, TX 77002

Re:   McCornack vs. Actavis Totowa, LLC

    I have been asked to conduct a records review and analysis in this matter.  As a clinical cardiologist in practice with the Santa Barbara Cardiovascular Medical Group, Inc. since 1983, I am familiar with the medical issues presented in this case.  Through my medical education, training, clinical practice, reading of medical literature, and continuing medical education, I am experienced in the use of digoxin in the treatment of patients with chronic atrial fibrillation.  I am also experienced in the clinical use of serum digoxin levels and the recognition and management of digoxin toxicity in patients with atrial fibrillation.  Please find my curriculum vitae, fee schedule and a list of testimony attached for reference.

    Records reviewed in this matter include:

    American Medical Response
    Cardiovascular Medicine (Winkle)
    Care Mark RX
    Central Coast Clinical
    Central Coast Pathology
    Coastal Cardiology
    CVS Records
    Dr. Christopher Hulburd
    Dr. Gordon Lemm
    Lubrizol Corp
    Health Design Plus
    Neurological Surgery
    Posada Sport and Spine
    Stanford Medical Center
    Templeton Endoscopy
    Templeton Imaging
    Twin Cities Community Hospital
    Wellpoint Health
    Bukachevsky, Roman MD
    Carr, James MD
    Central Coast Pathology Consultants
    Central Coast Clinical Lab
    Central Coast Gastroenterology



8-10-11  Brown
**DEPOSITION
EXHIBIT**
2

Page: 2
McCornack vs. Actavis Totowa, LLC
05-23-2011

      CVS Produced Records
      Documents produced at Plaintiff's Deposition
      Kissel
      Lemm MD
      Plaintiff Fact Sheet
      Stanford Hospital Billing
      Stanford Medical Center Records
      Stanford Physician Billing
      Target Pharmacy
      Templeton Imaging & Billing
      Twin Cities Billing
      Twin Cities Radiology
      Von Dollen, Coastal Cardiology
      Winkle Roger MD
      Yamagata, Nelson MD
      Proof of Service Terry Kilpatrick 5/26/2011
      Report Keith Gibson PharmD
      Report Robert Johnson
      Plaintiff's Summary of Non-retained Expert Opinions
Depositions
      Dr Von Dollen
      Dr Lemm
      Dr Mason
      Kathy McCornack
      Matthew McMullen
      Ejorn Nelson Pharm. D.
      Marc J. Semigran MD
Medical References
      Baselt Disposition of Toxic and Chemicals in Man
      Braithwaite and Cook
      Harrison's Principles of Internal Medicine
      Digitek Exhibit from Deposition Dr Mason
      Dart Medical Toxicology
      Circulation "Impact of Atrial Fibrillation on the Risk of Death: The
      Framingham Study"
      Johnson "The Practice of Cardiology"

Brief Summary of Medical Events:

      Mr. Daniel McCornack first experienced atrial fibrillation in the 1990's and was prescribed digoxin for control of his heart rate. His primary cardiology care was provided by Dr. Von Dollen. A 24 hour Holter monitor performed in 2001 by Dr. Von Dollen demonstrated chronic atrial fibrillation.

      In 2007, Mr. McCornack was evaluated by Dr. Roger Winkle for management of his atrial fibrillation. Medical therapy at that time included digoxin 0.25 mg twice daily and diltiazem 300 mg in the morning and 180 mg in the evening. Repeated cardiac event recordings were obtained using a portable heart monitor in June and July 2007 demonstrating chronic atrial fibrillation with variable ventricular response, ranging from slow to rapid heart rates. Isolated premature ventricular contractions were also recorded. A cardiac ablation procedure to restore sinus rhythm was discussed by Dr. Winkle but deferred by the patient.

PLAINTIFFS' EXHIBITS 011578

Ex. 2-2

Page: 3
McCornack vs. Actavis Totowa, LLC
05-23-2011

On March 23, 2008, while on a camping trip with his wife and sons, the patient died suddenly at night. The post-mortem examination and blood sampling were performed by Dr. Richard Mason, a forensic pathologist, on March 26, over 78 hours after Mr. McCornack's death. Autopsy findings included cardiomegaly (500 g) and left ventricular hypertrophy. Mild to moderate coronary artery arteriosclerosis and mild myocardial fibrosis were noted. The post-mortem blood digoxin level was 3.6 ng/ml and the diltiazem level 630 ng/ml. After review of available deposition testimony, it is unclear of the exact time when Mr. McCornack last took his medications or how much time had elapsed between ingestion of his medications and death.

Discussion:

The coroner's report prepared by Dr. Mason and finalized on March 27, 2008, listed the cause of death as: 1. Cardiac arrest; 2. Ventricular arrhythmia; 3. Atrial fibrillation; 4. Hypertensive and arteriosclerotic cardiovascular disease with contributory exogenous obesity.

Remarkably, Dr. Mason amended his report the day before his deposition in this case and after being retained as an expert by the plaintiff's attorney. The amended certificate, signed by Dr. Mason over eighteen months after completing the autopsy, reads: "Ventricular arrhythmia, digoxin toxicity, digoxin poisoning."

No reliable scientific evidence exists to support Dr. Mason's delayed amendment to the death certificate listing digoxin toxicity and digoxin poisoning as contributing factors to Mr. McCornack's death. While serum digoxin levels alone are not diagnostic of digoxin toxicity, it should be noted that over the years of Mr. McCornack's digoxin treatment, serum digoxin levels were repeatedly measured by his physicians to be within therapeutic range. The patient was apparently in his usual state of health on the day of his death and did not exhibit any complaints characteristic of patients with digoxin toxicity. The post-mortem digoxin blood level, drawn over 78 hours after death, is uninterpretable due to the known redistribution of digoxin between muscle tissue to blood that occurs after death. Clinical serum digoxin levels are drawn at least six to eight hours after dosing to allow for the medication to reach steady state blood levels. As noted above, it is unclear exactly when the patient took his last medications or how much time had elapsed between dosing and his death.

Dr. Mason reliance on one isolated lab test failed to account for diltiazem, a calcium channel blocker medication prescribed for Mr. McCornack with significant heart rate slowing and myocardial depressive effects. The post mortem diltiazem level of 630 ng/ml was over three times the therapeutic level and may have contributed to his risk of arrhythmia and sudden cardiac death. Diltiazem has been reported to increase serum digoxin concentrations in life with the potential for additive effects on cardiac conduction prolonging atrioventricular node conduction and further slowing heart rate. Additionally, while Mr. McCornack was not known to be ingesting quinine, trace amounts of quinine were found in his blood post-mortem. Quinine, like diltiazem, is also known to interact with digoxin.

The timing of Dr. Richard Mason's production of an amended death certificate is, at the least, very unusual. As noted, he issued his amended report the day before his deposition, months after completion of the post mortem examination and only after being retained as a medical expert by the plaintiff. For the reasons listed above, I strongly disagree with his assertion that the Mr. McCornack's death was the result of digoxin toxicity.

To a reasonable degree of medical probability, Mr. McCornack died of sudden death due to an acute cardiac arrhythmia. Typically, sudden cardiac death results from ventricular fibrillation, pulseless ventricular tachycardia or bradycardia progressing to asystole. Chronic atrial fibrillation, which Mr. McCornack manifested for over ten years, is a recognized risk factor

PLAINTIFFS' EXHIBITS 011579

Ex. 2-3

Page: 4
McCornack vs. Actavis Totowa, LLC
05-23-2011

for increased risk of death as demonstrated in the Framingham Heart Study. Additionally, the post mortem examination revealed significant structural cardiac abnormalities, including cardiomegaly (heart enlargement), left ventricular hypertrophy and myocardial fibrosis or scarring. These findings are also associated with increased risk of ventricular arrhythmias and sudden death as supported in the medical literature. Mr. McCornack's chronic atrial fibrillation and the structural heart abnormalities noted on autopsy combined to result in his sudden cardiac death due to ventricular arrhythmia.

C. Alan Brown, M.D.
CAB

PLAINTIFFS' EXHIBITS 011580

Ex. 2-4

23-May-11

# C. Alan Brown, M.D.

Santa Barbara Cardiovascular Medical Group, Inc.
2400 Bath St., Suite 201
Santa Barbara, CA 93105
Tel: 805-682-7707
Fax: 805-682-5949

| | | |
|---|---|---|
| **PERSONAL** | Birth Date:  May 20, 1949 | |
| | Birth Place:  Santa Monica, California | |
| | | |
| **EDUCATION** | A.B., Dartmouth College | |
| | Hanover, New Hampshire | 1970 |
| | | |
| | B. Medical Science, Dartmouth Medical School | |
| | Hanover, New Hampshire | 1972 |
| | | |
| | M.D., Harvard Medical School | |
| | Boston, Massachusetts | 1974 |
| | | |
| | Medical Intern, Massachusetts General Hospital | |
| | Boston, Massachusetts | 1974-1975 |
| | | |
| | Medical Resident, Massachusetts General Hospital | |
| | Boston, Massachusetts | 1975-1976 |
| | | |
| | Research Fellow, Immunology, Department of Medicine | |
| | Massachusetts General Hospital | |
| | Boston, Massachusetts | 1976-1977 |
| | | |
| | Clinical & Research Fellow, Cardiac Unit | |
| | Massachusetts General Hospital | |
| | Boston, Massachusetts | 1978-1981 |
| | | |
| **BOARD** | American Board of Internal Medicine, Internal Medicine | 1978 |
| **CERTIFICATIONS** | American Board of Internal Medicine, Cardiovascular Disease | 1981 |
| | American Board of Internal Medicine, Interventional Cardiology | 2000-2010 |

1

PLAINTIFFS' EXHIBITS 011581

Ex. 2-5

| PROFESSIONAL | Santa Barbara Medical Foundation Clinic<br>Practicing Cardiologist<br>Santa Barbara, California | 1981-1983 |
|---|---|---|
| | Clinical Associate Professor of Medicine<br>University of Southern California School of Medicine | 1983-Present |
| | Santa Barbara Cardiovascular Medical Group, Inc.<br>Clinical and Interventional Cardiologist<br>Santa Barbara, California | 1983-Present |
| | Director, St. Francis Hospital Coronary Care Unit<br>Santa Barbara, California | 1983-1988 |
| | Board of Directors, Santa Barbara Chapter<br>American Heart Association | 1983-2006 |
| | Board of Directors, California Preferred Providers<br>Santa Barbara, California | 1984-1992 |
| | President, Adult Continuing Education Council<br>Santa Barbara Community College<br>Santa Barbara, California | 1991-1993 |
| | Board of Directors, Monarch Health Systems<br>Santa Barbara, California | 1992-1999 |
| | Board of Directors, St. Francis Medical Center<br>Santa Barbara, California | 1994-1996 |
| | Public Policy Consumer Panel<br>Monarch Health Systems | 1995 |
| | President, Santa Barbara Chapter<br>American Heart Association | 1989-1990<br>1997-1998 |
| | Board of Directors, Santa Barbara Select IPA<br>Santa Barbara, California | 1997-1999 |
| | Board of Directors, California Affiliate,<br>American College of Cardiology | 1997-1999 |
| | Director, Santa Barbara Cottage Hospital Coronary Care Unit<br>Santa Barbara, California | 1998-Present |
| | Co-Director, Medical Advisory Panel to the<br>Board of Trustees, Santa Barbara Cottage Health System | 2002-2005 |
| | Medical Officer, United States Navy Reserve | 2002-Present |
| | Board of Directors, Navy League<br>Santa Barbara Chapter | 2003-2005 |
| | Battalion Surgeon, 4th MARDIV 2/23<br>Marine Corps Reserve Infantry Battalion | 2004-2009 |

2

PLAINTIFFS' EXHIBITS 011582

EX. 2-6

| | |
|---|---|
| MEMBERSHIPS<br>& AWARDS | Rufus Choate Scholar, A.B. Cum Laude<br>Dartmouth College 1970 |

Massachusetts Medical Society
Harvard Medical School Dean's Award 1974

Alpha Omega Alpha Medical Honor Society
Harvard Medical School 1974

National Kidney Foundation Fellowship Award 1975

National Institute of Health
Individual Fellowship Award in Cardiology 1976

Diplomate, American Board of Internal Medicine 1977

Paul Dudley White Fellowship in Cardiology
Massachusetts Heart Association 1978

Diplomate, American Board of Internal Medicine
Cardiovascular Subspecialty 1982

Fellow, American College of Cardiology                    1983

Interventional Cardiology Subspecialty Certification 2000

Teacher of the Year Award
Santa Barbara Cottage Hospital Medical Residency Program 2002

Excellence in Teaching Award
Santa Barbara Cottage Hospital Medical Residency Program 2003

Excellence in Teaching Award
Santa Barbara Cottage Hospital Medical Residency Program 2004

Excellence in Teaching Award
Santa Barbara Cottage Hospital Medical Residency Program 2005

Excellence in Teaching Award
Santa Barbara Cottage Hospital Medical Residency Program 2006

Excellence in Teaching Award
Santa Barbara Cottage Hospital Medical Residency Program 2007

Excellence in Teaching Award
Santa Barbara Cottage Hospital Medical Residency Program 2008

Excellence in Teaching Award
Santa Barbara Cottage Hospital Medical Residency Program2009

4

PLAINTIFFS' EXHIBITS 011583

Ex. 2-7

|  |  |
|---|---|
| Secretary, Medical Staff Executive Committee, Santa Barbara Cottage Hospital | 2005-2007 |
| Battalion Surgeon, 4th LAR, 1 MEF 4th MARDIV Light Armored Reconnaissance Battalion Operation Enduring Freedom, Afghanistan | 2009-2010 |
| Battalion Surgeon, 4th MARDIV 2/23 Marine Corps Reserve Infantry Battalion | 2010-Present |

**LICENSES**            California

3

Ex. 2-8

# C. Alan Brown, MD
## PUBLICATIONS

1. Brown, C.A., Hall, C.L., Long, J.C., et al: Circulating Immune Complexes in Hodgkin's Disease. AM. J. Med. 64:289-294, 1978.

2. Long, J.C., Hall, C.L., Brown, C.A., et al: Binding of Soluble Immune Complexes in Sera of Patients with Hodgkin's Disease to Tissue Cultures Derived From the Tumor. New Engl. J. Med. 297:2950299, 1977.

3. Brown, C.A., Zusman, R.M., and Haber, E.: Characterization of an Angiotensin Binding Site in Rabbit Renomedullary Interstitial Cells in Tissue Culture: Correlation with Prostaglandin Biosynthesis. Trans. Am. Assoc. Phys. 92:169-174, 1979.

4. Zusman, R.M. and Brown, C.A.: The Role of Phospholipase in the Regulation of Prostaglandin E2 Biosynthesis by Rabbit Renomedullary Interstitial Cells in Tissue Culture: Effects of Angiotensin II, Potassium, Hyperosmolality, Dexamethasone, and Protein Synthesis Inhibition. In, Advances in Prostaglandin and Thromboxane Research, Vol. 7 and 8, Proceedings of the International Prostaglandin Congress, Washington, D.C., May 27-31, 1979 6:243-248, 1980.

5. Brown, C.A., Carey, K., Colvin, R.B.: Inhibition of Autoimmune Interstitial Nephritis in Guinea Pigs by Heterologous Antisera Containing Anti-Idiotype Antibodies. J. Immunol. 123:2102-2113, 1979.

6. Abrass, C.K., Hall, C.L., Border, W.A., Brown, C.A., Glassock, R.J., Coggins, C.H. and the Collaborative Study of the Adult Idiopathic Nephrotic Syndrome: Circulating Immune Complexes in Adults with Idiopathic Nephrotic Syndrome: Relationship to Histologic Category and Clinical Course. Kidney Int. 4:545-553, 1980.

7. Brown, C.A., Zusman, R.M., Haber, E.: Identification of an Angiotensin Receptor in Rabbit Renomedullary Interstitial Cells in Tissue Culture: Correlation with Prostaglandin Biosynthesis. Circ. Res. 48:802-807, 1980.

8. Brown, C.A., Hutter, A.M. Jr., DeSanctis, R.W., et al: Prospective Study of Medical and Urgent Surgical Therapy in Radomizable Patients with Unstable Angina Pectoris: Results of In-Hospital and Chronic Mortality and Morbidity. Amer. Heart J. 102:959-964, 1981.

5

PLAINTIFFS' EXHIBITS 011585

Ex. 2-9

## C. Alan Brown MD
## ABSTRACTS

A1 Border, W., Abrass, C., Hall, C., Brown, C., Glassock, R., Coggins, C., and the Collaborative Study of AINS: Detection of Circulating Immune Complexes in Adult Idiopathic Nephrotic Syndrome. Kid. International 12:510, 1977.

A2 Zusman, R.M., Brown, C.A.: Role of Phospholipase in the Regulation of PGE2 Biosynthesis: Effects of Angiotensin II, Potassium, Dexamethasone, Hyperosmolality and Protein Synthesis Inhibition. Proc. Internatl. Conf. Prostaglandins, Washington, D.C., May 27-31, 1979.

A3 Brown, C.A., Zusman, R.M., and Haber, E.: Correlation of Prostaglandin Biosynthesis with Angiotensin Binding to Cultured Rabbit Renomedullary Inhibition. Proc. Intern. Conf. of Prostaglandins, Washington, D.C., May 27-31, 1979.

A4 Brown, C.A., Carey, K., and Colvin, R.B.: Inhibition of Autoimmune Interstitial Nephritis in Guinea Pigs by Heterologous Antisera Containing Anti-Idiotype Antibodies. Fed. Proc. 38:1020A, 1979.

A5 Brown, C.A., Zusman, R.M., and Haber, E.: Characterization of an Angiotensin Binding Site in Cultured Rabbit Renomedullary Interstitial Cells: Correlation of Binding with Prostaglandin Biosynthesis. Clin. Res. 27:501A, 1979.

A6 Pacella, B.L., Jr., Matsueda, G.R., Brown, C.A., and Haber, E.: Production of Fibrin Specific Antisera Using Synthetic Amino Terminal Peptides of Human Fibrin. Circulation 62:285A, 1980.

PLAINTIFFS' EXHIBITS 011586

Ex - 2 - 10

 **Santa Barbara Cardiovascular Medical Group, Inc.**

David S. Gillon, M.D., F.A.C.C.
William J. Alton, M.D., F.A.C.C.
C. Alan Brown, M.D., F.A.C.C.
Edmund M. Wroblewski, M.D., F.A.C.C.
Thomas D. Watson, M.D., F.A.C.C.

C. Alan Brown, M.D., FACC
EXPERT FEE SCHEDULE
Effective January 1, 2008

Attorney: _____

Case: _____

Hourly rate for case review and consultation (including preparation time
and review for consultations, hearings, and trials) _____ $400 per hour

Depositions:
- $500 per hour  (Deposit for two hours ($1000) required 72 hours prior to deposition; if deposition less than two hours, balance will be refunded at time of deposition).

Court and Arbitration Appearances:
- $6000 per day or $3000 per half day, plus travel time and per diem expenses
- Eight hour minimum charge for depositions and court or arbitration appearances outside Santa Barbara and Ventura counties

Ongoing Matters:
- Will be billed monthly and are payable 30 days from date of statement. Accounts not paid within 30 days shall bear a service fee of 1.5% per month from date of initial billing

_____        _____
Attorney Acceptance and Signature            C. Alan Brown MD, FACC

_____
Date

SANTA BARBARA                                              SANTA YNEZ

2400 Bath St., Suite 201                                  2030 Viborg Rd.
Santa Barbara, CA 93105                                  Solvang, CA  93463
805-682-7707                                              805-688-5531
FAX 805-682-7710                                          FAX 805-688-0456

PLAINTIFFS' EXHIBITS 011587

Ex. 2-11

C Alan Brown                          Page 1                              5/23/2011

| CASE | YEAR | ATTORNEY | DEPOSITION | TRIAL |
|------|------|----------|------------|-------|
| AGUSTIN V NAZARIAN | 2005 | CLARK | | Y |
| BESSEN V BETTENCOURT | 2005 | SILBERBERG | Y | Y |
| DEUNING V EMRANI | 2005 | IRWIN | Y | |
| MORRISON V GOLDBERY | 2005 | NEER | Y | |
| MILLER V PATEL | 2006 | FOGLEMAN | Y | Y |
| SCHNAPP V DEL RAY | 2006 | FORREST | Y | |
| SHAMAM V CEDAR-SINAI | 2006 | ZOHAR | Y | Y |
| WHITNEY V KLASHMAN | 2006 | DOBSON | Y | |
| ADAMS V KORKIGAN | 2007 | MEKLIR | Y | Y |
| BALL V CHALOUB | 2007 | GEORGE | Y | |
| GRIMES V FEENEY | 2007 | HAIGH | Y | |
| HASTING V CHALMETTE | 2007 | SMITH | Y | |
| HOSS V LYONS | 2007 | JORDAN | | Y |
| KOLESAR | 2007 | BROWN | Y | |
| PONVATTANA V HONSATHAVIJ | 2007 | WOOD | Y | |
| PULLOS V CAMP | 2007 | CLARK | Y | Y |
| SHULL V SMITH | 2007 | MARTIN | Y | Y |
| VOGEL V DAGOSTINO | 2007 | NAVRATIL | | Y |
| WELSH V NICOLAZZO | 2007 | HITE | Y | |
| WHARTON V BLODGETT | 2007 | TROTTER | | Y |
| WRIGHT V DANG | 2007 | SAGGESE | Y | |
| YASBECK V PROVIDENCE | 2007 | COTTON | | Y |
| ANTOUN V MT SINAI | 2008 | YASSO | Y | |
| BRESNICK V HONBO | 2008 | CLARK | Y | Y |
| DEANGELO V WEST HILLS | 2008 | LAMB | Y | |
| VUKOS V AHMAKPOUR | 2008 | NAVRATIL | | Y |
| BYRD V WHITE MEMORIAL | 2009 | JOHNSON | Y | Y |
| LEAHY V AJLUNI | 2009 | CUNNINGHAM | Y | |
| MARSHALL V VALLEY HOSPITAL | 2011 | DAENKHE | Y | |

PLAINTIFFS' EXHIBITS 011588

Ex. 2-12 of 12

# C. Alan Brown, M.D.
225 W. Pueblo St.
Santa Barbara, CA 93105
805/682-4555

**PERSONAL**

Birth Date:  May 20, 1949
Birth Place: Santa Monica, California

**EDUCATION**

A.B., Dartmouth College
Hanover, New Hampshire
1970

B. Medical Science, Dartmouth Medical School
Hanover, New Hampshire
1972

M.D., Harvard Medical School
Boston, Massachusetts
1974

Medical Intern, Massachusetts General Hospital
Boston, Massachusetts
1974-1975

Medical Resident, Massachusetts General Hospital
Boston, Massachusetts
1975-1976

Research Fellow, Immunology, Department of Medicine
Massachusetts General Hospital
Boston, Massachusetts
1976-1977

Clinical & Research Fellow, Cardiac Unit
Massachusetts General Hospital
Boston, Massachusetts
1978-1981

PLAINTIFFS' EXHIBITS 011589

8-10-11 Brown
DEPOSITION
EXHIBIT
3
PENGAD 1-800-631-6989

**PROFESSIONAL**

| | |
|---|---|
| Santa Barbara Medical Foundation Clinic<br>Practicing Cardiologist<br>Santa Barbara, California | 1981-1983 |
| Associate Clinical Professor<br>University of Southern California<br>School of Medicine | 1981-Present |
| Santa Barbara Cardiovascular Medical Group, Inc.<br>Practicing Cardiologist<br>Santa Barbara, California | 1983-Present |
| Director, St. Francis Hospital Coronary Care Unit<br>Santa Barbara, California | 1983-1988 |
| Board of Directors, Santa Barbara Chapter<br>American Heart Association | 1983-Present |
| Board of Directors, California Preferred Providers<br>Santa Barbara, California | 1984-1992 |
| President, Adult Continuing Education Council<br>Santa Barbara Community College<br>Santa Barbara, California | 1991-1993 |
| Board of Directors, Monarch Health Systems<br>Santa Barbara, California | 1992-1999 |
| Board of Directors, St. Francis Medical Center<br>Santa Barbara, California | 1994-1996 |
| Public Policy Consumer Panel<br>Monarch Health Systems | 1995 |
| President, Santa Barbara Chapter<br>American Heart Association | 1997-1998<br>1989-1990 |
| Board of Directors, Santa Barbara Select IPA<br>Santa Barbara, California | 1997-1999 |
| Board of Directors, California Affiliate<br>American College of Cardiology | 1997-1999 |
| Director, Santa Barbara Cottage Hospital Coronary Care Unit<br>Santa Barbara, California | 1998-Present |

PLAINTIFFS' EXHIBITS 011590

Ex. 3-2

| | | |
|---|---|---|
| MEMBERSHIPS & AWARDS | Rufus Choate Scholar, A.B. cum laude<br>Dartmouth College | 1970 |
| | Massachusetts Medical Society<br>Harvard Medical School Senior Student Award | 1974 |
| | Alpha Omega Alpha Medical Honor Society<br>Harvard Medical School | 1974 |
| | National Kidney Foundation Fellowship Award | 1975 |
| | National Institute of Health<br>Individual Fellowship Award in Cardiology | 1976 |
| | Diplomate, American Board of Medicine | 1977 |
| | Paul Dudley White Fellowship in Cardiology<br>Massachusetts Heart Association | 1978 |
| | Diplomate, American Board of Internal Medicine<br>Cardiovascular Subspecialty | 1982 |
| | Fellow, American College of Cardiology | 1982 |
| | Diplomate, American Board of Internal Medicine<br>Interventional Cardiology Subspecialty | 2001 |
| | Teacher of the Year Award, Santa Barbara Cottage<br>Hospital Medical Residency Program | 2002 |
| LICENSES | California | |

PLAINTIFFS' EXHIBITS 011591

Ex. 3-3

# C. Alan Brown, M.D.
## PUBLICATIONS

1. Brown, C.A., Hall, C.L., Long, J.C., et al: Circulating Immune Complexes in Hodgkin's Disease. AM. J. Med. 64:289-294, 1978.

2. Long, J.C., Hall, C.L., Brown, C.A., et al: Binding of Soluble Immune Complexes in Sera of Patients with Hodgkin's Disease to Tissue Cultures Derived From the Tumor. New Engl. J. Med. 297:2950299, 1977.

3. Brown, C.A., Zusman, R.M., and Haber, E.: Characterization of an Angiotensin Binding Site in Rabbit Renomedullary Interstitial Cells in Tissue Culture: Correlation with Prostaglandin Biosynthesis. Trans. Am. Assoc. Phys. 92:169-174, 1979.

4. Zusman, R.M. and Brown, C.A.: The Role of Phospholipase in the Regulation of Prostaglandin E2 Biosynthesis by Rabbit Renomedullary Interstitial Cells in Tissue Culture: Effects of Angiotensin II, Potassium, Hyperosmolality, Dexamethasone, and Protein Synthesis Inhibition. In, Advances in Prostaglandin and Thromboxane Research, Vol. 7 and 8, Proceedings of the International Prostaglandin Congress, Washington, .D.C., May 27-31, 1979 6:243-248, 1980.

5. Brown, C.A., Carey, K., Colvin, R.B.: Inhibition of Autoimmune Interstitial Nephritis in Guinea Pigs by Heterologous Antisera Containing Anti-Idiotype Antibodies. J. Immunol. 123:2102-2113, 1979.

6. Abrass, C.K., Hall, C.L., Border, W.A., Brown, C.A., Glassock, R.J., Coggins, C.H. and the Collaborative Study of the Adult Idiopathic Nephrotic Syndrome: Circulating Immune Complexes in Adults with Idiopathic Nephrotic Syndrome: Relationship to Histologic Category and Clinical Course. Kidney Int. 4:545-553, 1980.

7. Brown, C.A., Zusman, R.M., Haber, E.: Identification of an Angiotensin Receptor in Rabbit Renomedullary Interstitial Cells in Tissue Culture: Correlation with Prostaglandin Biosynthesis. Circ. Res. 48:802-807, 1980.

8. Brown, C.A., Hutter, A.M. Jr., DeSanctis, R.W., et al: Prospective Study of Medical and Urgent Surgical Therapy in Radomizable Patients with Unstable Angina Pectoris: Results of In-Hospital and Chronic Mortality and Morbidity. Amer. Heart J. 102:959-964, 1981.

PLAINTIFFS' EXHIBITS 011592    Ex. 3-4

# C. Alan Brown, M.D.
## ABSTRACTS

A1   Border, W., Abrass, C., Hall, C., Brown, C., Glassock, R., Coggins, C., and the
Collaborative Study of AINS: Detection of Circulating Immune Complexes in Adult
Idiopathic Nephrotic Syndrome. Kid. International 12:510, 1977.

A2   Zusman, R.M., Brown, C.A.: Role of Phospholipase in the Regulation of $PGE_2$
Biosynthesis: Effects of Angiotensin II, Potassium, Dexamethasone, Hyperosmolality
and Protein Synthesis Inhibition. Proc. Internatl. Conf. Prostaglandins, Washington,
D.C., May 27-31, 1979.

A3   Brown, C.A., Zusman, R.M., and Haber, E.: Correlation of Prostaglandin Biosynthesis
with Angiotensin Binding to Cultured Rabbit Renomedullary Inhibition. Proc. Intern.
Conf. of Prostaglandins, Washington, D.C., May 27-31, 1979.

A4   Brown, C.A., Carey, K., and Colvin, R.B.: Inhibition of Autoimmune Interstitial
Nephritis in Guinea Pigs by Heterologous Antisera Containing Anti-Idiotype
Antibodies. Fed. Proc. 38:1020A, 1979.

A5   Brown, C.A., Zusman, R.M., and Haber, E.: Characterization of an Angiotensin Binding
Site in Cultured Rabbit Renomedullary Interstitial Cells: Correlation of Binding with
Prostaglandin Biosynthesis. Clin. Res. 27:501A, 1979.

A6   Pacella, B.L., Jr., Matsueda, G.R., Brown, C.A., and Haber, E.: Production of Fibrin
Specific Antisera Using Synthetic Amino Terminal Peptides of Human Fibrin.
Circulation 62:285A, 1980.

PLAINTIFFS' EXHIBITS 011593

Ex. 3-5 of 5

10-Aug-11                     **C. Alan Brown, M.D.**

Santa Barbara Cardiovascular Medical Group, Inc.
2400 Bath St., Suite 201
Santa Barbara, CA 93105
Tel: 805-682-7707
Fax: 805-682-5949

PERSONAL                Birth Date:  May 20, 1949
                        Birth Place:  Santa Monica, California

EDUCATION               A.B., Dartmouth College
                        Hanover, New Hampshire                              1970

                        B. Medical Science, Dartmouth Medical School
                        Hanover, New Hampshire                              1972

                        M.D., Harvard Medical School
                        Boston, Massachusetts                               1974

                        Medical Intern, Massachusetts General Hospital
                        Boston, Massachusetts                          1974-1975

                        Medical Resident, Massachusetts General Hospital
                        Boston, Massachusetts                          1975-1976

                        Research Fellow, Immunology, Department of Medicine
                        Massachusetts General Hospital
                        Boston, Massachusetts                          1976-1977

                        Clinical & Research Fellow, Cardiac Unit
                        Massachusetts General Hospital
                        Boston, Massachusetts                          1978-1981

BOARD                   American Board of Internal Medicine, Internal Medicine          1978
CERTIFICATIONS          American Board of Internal Medicine, Cardiovascular Disease     1981
                        American Board of Internal Medicine, Interventional Cardiology  2000-2010



5-10-11 Brown
PENGAD 1-800-631-6989
**DEPOSITION
EXHIBIT**
4

1

PLAINTIFFS' EXHIBITS 011594

| | | |
|---|---|---|
| PROFESSIONAL | Santa Barbara Medical Foundation Clinic<br>Practicing Cardiologist<br>Santa Barbara, California | 1981-1983 |
| | Clinical Associate Professor of Medicine<br>University of Southern California School of Medicine | 1983-Present |
| | Santa Barbara Cardiovascular Medical Group, Inc.<br>Clinical and Interventional Cardiologist<br>Santa Barbara, California | 1983-Present |
| | Director, St. Francis Hospital Coronary Care Unit<br>Santa Barbara, California | 1983-1988 |
| | Board of Directors, Santa Barbara Chapter<br>American Heart Association | 1983-2006 |
| | Board of Directors, California Preferred Providers<br>Santa Barbara, California | 1984-1992 |
| | President, Adult Continuing Education Council<br>Santa Barbara Community College<br>Santa Barbara, California | 1991-1993 |
| | Board of Directors, Monarch Health Systems<br>Santa Barbara, California | 1992-1999 |
| | Board of Directors, St. Francis Medical Center<br>Santa Barbara, California | 1994-1996 |
| | Public Policy Consumer Panel<br>Monarch Health Systems | 1995 |
| | President, Santa Barbara Chapter<br>American Heart Association | 1989-1990<br>1997-1998 |
| | Board of Directors, Santa Barbara Select IPA<br>Santa Barbara, California | 1997-1999 |
| | Board of Directors, California Affiliate,<br>American College of Cardiology | 1997-1999 |
| | Director, Santa Barbara Cottage Hospital Coronary Care Unit<br>Santa Barbara, California | 1998-Present |
| | Co-Director, Medical Advisory Panel to the<br>Board of Trustees, Santa Barbara Cottage Health System | 2002-2005 |
| | Medical Officer, United States Navy Reserve | 2002-Present |
| | Board of Directors, Navy League<br>Santa Barbara Chapter | 2003-2005 |
| | Battalion Surgeon, 4th MARDIV 2/23<br>Marine Corps Reserve Infantry Battalion | 2004-2009 |

2

PLAINTIFFS' EXHIBITS 011595

Ex. 4-2

|  | Secretary, Medical Staff Executive Committee, Santa Barbara Cottage Hospital | 2005-2007 |

Secretary, Medical Staff Executive Committee,
Santa Barbara Cottage Hospital                                          2005-2007

Battalion Surgeon, 4th LAR, 1 MEF
4th MARDIV Light Armored Reconnaissance Battalion
Operation Enduring Freedom, Afghanistan                    2009-2010

Battalion Surgeon, 4th MARDIV 2/23
Marine Corps Reserve Infantry Battalion                       2010-Present

**LICENSES**                California

PLAINTIFFS' EXHIBITS 011596   Ex. 4-3

| | |
|---|---|
| MEMBERSHIPS<br>& AWARDS | Rufus Choate Scholar, A.B. Cum Laude<br>Dartmouth College 1970 |

Massachusetts Medical Society
Harvard Medical School Dean's Award 1974

Alpha Omega Alpha Medical Honor Society
Harvard Medical School 1974

National Kidney Foundation Fellowship Award 1975

National Institute of Health
Individual Fellowship Award in Cardiology 1976

Diplomate, American Board of Internal Medicine 1977

Paul Dudley White Fellowship in Cardiology
Massachusetts Heart Association 1978

Diplomate, American Board of Internal Medicine
Cardiovascular Subspecialty 1982

Fellow, American College of Cardiology 1983

Interventional Cardiology Subspecialty Certification 2000

Teacher of the Year Award
Santa Barbara Cottage Hospital Medical Residency Program 2002

Excellence in Teaching Award
Santa Barbara Cottage Hospital Medical Residency Program 2003

Excellence in Teaching Award
Santa Barbara Cottage Hospital Medical Residency Program 2004

Excellence in Teaching Award
Santa Barbara Cottage Hospital Medical Residency Program 2005

Excellence in Teaching Award
Santa Barbara Cottage Hospital Medical Residency Program 2006

Excellence in Teaching Award
Santa Barbara Cottage Hospital Medical Residency Program 2007

Excellence in Teaching Award
Santa Barbara Cottage Hospital Medical Residency Program 2008

Excellence in Teaching Award
Santa Barbara Cottage Hospital Medical Residency Program 2009

Bronze Star, Battalion Surgeon, 4th LAR
2nd Marine Expeditionary Force, Operation Enduring Freedom 2010

4

PLAINTIFFS' EXHIBITS 011597   Ex. 4-4

# C. Alan Brown, MD
# PUBLICATIONS

1. Brown, C.A., Hall, C.L., Long, J.C., et al: Circulating Immune Complexes in Hodgkin's Disease. AM. J. Med. 64:289-294, 1978.

2. Long, J.C., Hall, C.L., Brown, C.A., et al: Binding of Soluble Immune Complexes in Sera of Patients with Hodgkin's Disease to Tissue Cultures Derived From the Tumor. New Engl. J. Med. 297:2950299, 1977.

3. Brown, C.A., Zusman, R.M., and Haber, E.: Characterization of an Angiotensin Binding Site in Rabbit Renomedullary Interstitial Cells in Tissue Culture: Correlation with Prostaglandin Biosynthesis. Trans. Am. Assoc. Phys. 92:169-174, 1979.

4. Zusman, R.M. and Brown, C.A.: The Role of Phospholipase in the Regulation of Prostaglandin E2 Biosynthesis by Rabbit Renomedullary Interstitial Cells in Tissue Culture: Effects of Angiotensin II, Potassium, Hyperosmolality, Dexamethasone, and Protein Synthesis Inhibition. In, Advances in Prostaglandin and Thromboxane Research, Vol. 7 and 8, Proceedings of the International Prostaglandin Congress, Washington, D.C., May 27-31, 1979 6:243-248, 1980.

5. Brown, C.A., Carey, K., Colvin, R.B.: Inhibition of Autoimmune Interstitial Nephritis in Guinea Pigs by Heterologous Antisera Containing Anti-Idiotype Antibodies. J. Immunol. 123:2102-2113, 1979.

6. Abrass, C.K., Hall, C.L., Border, W.A., Brown, C.A., Glassock, R.J., Coggins, C.H. and the Collaborative Study of the Adult Idiopathic Nephrotic Syndrome: Circulating Immune Complexes in Adults with Idiopathic Nephrotic Syndrome: Relationship to Histologic Category and Clinical Course. Kidney Int. 4:545-553, 1980.

7. Brown, C.A., Zusman, R.M., Haber, E.: Identification of an Angiotensin Receptor in Rabbit Renomedullary Interstitial Cells in Tissue Culture: Correlation with Prostaglandin Biosynthesis. Circ. Res. 48:802-807, 1980.

8. Brown, C.A., Hutter, A.M. Jr., DeSanctis, R.W., et al: Prospective Study of Medical and Urgent Surgical Therapy in Radomizable Patients with Unstable Angina Pectoris: Results of In-Hospital and Chronic Mortality and Morbidity. Amer. Heart J. 102:959964, 1981.

PLAINTIFFS' EXHIBITS 011598 *Ex. 4-5*

# C. Alan Brown MD
## ABSTRACTS

A1  Border, W., Abrass, C., Hall, C., Brown, C., Glassock, R., Coggins, C., and the Collaborative Study of AINS: Detection of Circulating Immune Complexes in Adult Idiopathic Nephrotic Syndrome.  Kid. International 12:510, 1977.

A2  Zusman, R.M., Brown, C.A.: Role of Phospholipase in the Regulation of PGE2 Biosynthesis: Effects of Angiotensin II, Potassium, Dexamethasone, Hyperosmolality and Protein Synthesis Inhibition.  Proc. Internatl. Conf. Prostaglandins, Washington, D.C., May 27-31, 1979.

A3  Brown, C.A., Zusman, R.M., and Haber, E.: Correlation of Prostaglandin Biosynthesis with Angiotensin Binding to Cultured Rabbit Renomedullary Inhibition. Proc. Intern. Conf. of Prostaglandins, Washington, D.C., May 27-31, 1979.

A4  Brown, C.A., Carey, K., and Colvin, R.B.: Inhibition of Autoimmune Interstitial Nephritis in Guinea Pigs by Heterologous Antisera Containing Anti-Idiotype Antibodies. Fed. Proc. 38:1020A, 1979.

A5  Brown, C.A., Zusman, R.M., and Haber, E.: Characterization of an Angiotensin Binding Site in Cultured Rabbit Renomedullary Interstitial Cells: Correlation of Binding with Prostaglandin Biosynthesis.  Clin. Res. 27:501A, 1979.

A6  Pacella, B.L., Jr., Matsueda, G.R., Brown, C.A., and Haber, E.: Production of Fibrin Specific Antisera Using Synthetic Amino Terminal Peptides of Human Fibrin. Circulation 62:285A, 1980.