**UNITED STATES DISTRICT COURT OF THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: DIGITEK PRODUCT<br>      LIABILITY LITIGATION | MDL Case No.: 2:08-md-1968<br><br>**THIS DOCUMENT RELATES TO:**<br><br>*McCornack v. Actavis*, 09-cv-0671<br>*Vega v. Actavis*, 09-cv-0768 |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO FILE
SUPPLEMENTAL EVIDENCE AND MOTION TO STRIKE, AND MOTION FOR
PROTECTIVE ORDER AND EVIDENTIARY SANCTIONS.**

Plaintiffs object to Defendants' request to offer post-hearing evidence in support of their case dispositive motions. Pursuant to the Court's order (PACER Doc. No. 600), Plaintiffs submit this opposition to the motion to file supplemental evidence (and to the underlying motion to strike), and move for a protective order and evidentiary sanctions based on the following:

- Without providing any notice to Plaintiffs' counsel, Defendants deposed Plaintiffs' expert Dr. Bliesner on September 19, 2011 in another case and spent more than one-quarter of the deposition grilling Dr. Bliesner about his expert report and declaration in this case. This ex parte procedure constitutes improper discovery of Plaintiffs' retained expert in violation of this Court's scheduling orders, Rule 26(b)(4) of the Federal Rules of Civil Procedure, and West Virginia Rules of Professional Conduct, Rule 3.4(a) and (c).

- Defendants' proffered evidence is not relevant to the Daubert issue before the court because the deposition is neither critical of his qualifications or methodology used by Dr. Bliesner in reaching his opinions.

- Dr. Bliesner reiterates in the proffered deposition transcript that he stands by the opinions he offered in his expert report and declaration that there was a complete lack of quality control at the Actavis facilities.

Plaintiffs request that the Court: (a) deny Defendants' request to submit supplemental evidence; (b) deny Defendants' request to strike the declaration of Dr. Bliesner; (c) issue an evidentiary sanction prohibiting Defendants from referencing or relying on the September 19th

deposition and any of the supplemental evidence referenced in its Motion, including at trial, and precluding Defendants from offering evidence or cross-examining Dr. Bleisner on any issues addressed at said deposition; and (d) issue a protective order requiring Defendants to notify plaintiffs of all discovery directed to any of Plaintiffs' experts in any litigation or proceedings at the time any such discovery is propounded.

## POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' OPPOSITION

### A. Relevant Litigation Dates.

- January 31, 2011 – Court ordered discovery cutoff for completing depositions of Plaintiffs' General Liability Experts. (*Digitek MDL* PACER Docket No. 412; *McCornack* PACER Docket No. 58.)

- August 24, 2011 – Plaintiffs' file and serve Dr. Bliesner's declaration in response to Defendants' *Daubert* and summary judgment motions.

- September 6, 2011 – Defendants serve Dr. Bliesner with a Notice of Deposition in an Oklahoma state case with no notice to Plaintiffs' counsel in this case. (Pl. Ex. 1.)

- September 14, 2011 – *Daubert* and Summary Judgment Hearing in the *In re Digitek, McCornack,* and *Vega* matters.

- September 19, 2011 – Defendants' ex parte deposition of Dr. Bliesner. (Pl. Ex. 2.)

B. **Defense Counsel's Ex Parte Deposition of Plaintiffs' Expert Was Inappropriate.**

Defense counsel's ex parte deposition of Dr. Bliesner was inappropriate and violates Rule 26(b)(4) and the West Virginia Rules of Professional Conduct. While Plaintiffs do not contend that Defendants are precluded from deposing disclosed experts in other litigation, where (as here) it is clear that their intent was to develop evidence for use in this case, opposing counsel must *at a minimum* be given reasonable notice of the deposition.

Ex parte communications with an opposing party's retained expert is impermissible. Attorneys have an ethical duty to follow the rules and orders of the court which prohibit obtaining discovery from an opponent's retained expert in any manner not specifically permitted by the Court and Rule 26. *Erickson v. Newmar Corp.*, 87 F. 3d 298, 301-302 (1996); *Olson v. Snap Products, Inc.*, 183 F.R.D. 539, 542 (D.Minn. 1998); *Cramer v. Sabine Transportation Co.*, 141 F. Supp. 2d 727, 731 (S.D. Texas 2001); *Sewell v. Maryland Department of Transportation*, 206 F.R.D. 545, 547 (D. Maryland 2002). *See also*, ABA Committee on Ethics and Professional Responsibility, Formal Opinion 93-378 (1993) [Ex parte communications with a retained expert by opposing counsel circumvent Rule 26(b)(4)'s discovery rules and violate an attorney's ethical duty to obey the obligations of the tribunal.].

Here, there is no question that defense counsel sought to evade the Court's discovery orders and the Rule 26(b) limitations applicable to this case. The discovery cutoff for deposing Plaintiffs' General Liability Experts was January 31, 2011. (*Digitek MDL* PACER Docket No. 412; *McCornack* PACER Docket No. 58.) Yet, on September 19, 2011, defense counsel deposed Dr. Bliesner in a state court case and spent 71 deposition pages (25% of the entire deposition transcript) grilling Dr. Bliesner about his expert report and declaration from the pending *Digitek MDL*, *McCornack*, and *Vega* actions along with various exhibits submitted in

4

support of Plaintiffs' Opposition to Defendants' *Daubert* and Summary Judgment motions. (See Plaintiffs' Ex. 2 at deposition pages 10:19 to 15:21; 17:1 to 30:22; 58:20 to 59:18; 184:6 to 232:12; 270:15 to 271:23; and 280:9 to 281:6.) Defendants went well-beyond the confines of Dr. Bliesner's opinions in the Oklahoma case and were specifically cross-examining him on his expert report and declaration submitted in this federal action.

Defendants' circumnavigation of the Court's discovery limitations in the *Digitek MDL, McCornack,* and *Vega* cases violates West Virginia's prohibitions against "knowingly disobey[ing] an obligation under the rules of a tribunal" and "obstruct[ing] another party's access to evidence." West. Vir. Rules of Prof. Conduct, Rules 3.4(c) and (a).[1 and 2] *See, e.g.*, *Erickson*, 87 F. 3d at 301-302 [counsel's ex parte communication with opposing party's retained expert "circumvented the discovery rules" and "achieved unsupervised access to plaintiff's expert",

---

[1] **Rule 3.4(a) and (c)** of the West Virginia Rule of Professional Conduct provide:

> A lawyer shall not:
> (a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;
>
> …
>
> (c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists; …

[2] *See also*, West Virginia Rules of Professional Responsibility **Rule 5.1** ["(a) A partner in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that all lawyers in the firm conform to the Rules of Professional Conduct. (b) A lawyer having direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the Rules of Professional Conduct. (c) A lawyer shall be responsible for another lawyer's violation of the Rules of Professional Conduct…."] and **Rule 8.4** ["It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; . . . (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice…."]

disobeying their discovery obligations to the tribunal]; *Sanderson v. Boddie-Nell Enterprises, Inc*., 227 F.R.D. 448 (E.D. Va. 2005), [counsel's ex parte communication with opposing party's retained expert's firm violated Virginia's ethical rule against obstructing another party's access to evidence]; *and citations supra*.

Plaintiffs expect that defense counsel will argue that their interrogation of Dr. Bliesner was simply discovery necessary to the Oklahoma case. Be that as it may, it was also discovery relevant to this case, and indeed specifically targeted towards and used in connection with a pending motion before this Court, and should have been preceded by leave of this Court and notice to Plaintiffs' counsel.

Certainly the timing of the deposition is suspect. Notice of deposition was served on September 6, 2011, shortly after Defendants received Dr. Bliesner's declaration in this case. (Pl. Ex. 1.) Equally distressing is the fact that defense counsel said nothing about the upcoming deposition when the Court held the *Daubert* hearing on September 14, 2011. Notably, Defendants had the opportunity to cross-examine Dr. Bliesner at the *Daubert* hearing before Court and counsel, but did not do so. Further, regardless of whether the deposition examination was pertinent to the Oklahoma state court litigation, lead defense counsel ratified that inappropriate behavior by offering the deposition testimony after the close of argument and hearing on this very issue. This type of conduct is inappropriate and "the vast majority of attorneys are sufficiently cognizant of their professional responsibility to avoid such an error." *Sewell,* 206 F.R.D. at 547.

C.     **<u>Doctor Bliesner's Opinions Are Valid And There Is No Basis For Rejecting His Declaration.</u>**

Defendants draw a number of inaccurate conclusions from the ex parte deposition of Dr. Bliesner in an effort to persuade the Court that his declaration is inadmissible. None of Defendants' arguments are supported by facts that he is unqualified or that his methodology is unscientific.

First, Defendants' assertion that Dr. Bliesner's declaration is not "really the testimony of the witness" is misleading. Doctor Bliesner made it crystal clear in his deposition that his declaration was drafted by Plaintiffs' counsel after lengthy discussions with Plaintiffs' counsel, and that he reviewed and edited the declaration to ensure it reflected his opinions and input. Among other things Dr. Bliesner testified that "They sent me the motion [Defendants' *Daubert* motion]. . . had me read it and think about it and then we had a teleconference. … And they said, how would you address [this] point, whatever point, whatever point …." Afterwards, the declaration "was – with my input, a draft was created by either one of those two [attorneys] to put it in proper legal format. …And it was sent back to me once or twice, I think, and asked to review input, modify, review the depositions to make sure that it matched my input to fit this legal framework." (Pl. Ex. 2 at page 186:5 to 186:20.) It is unclear how, based on this testimony, Defendants conclude that much of the testimony did not come from Dr. Bliesner. That simply is not true and as Defendants concede, there is nothing wrong with an attorney drafting a declaration for an expert to review and sign. (Def. Motion at p. 2.)

Second, Defendants point to vague and misleading questions in the deposition asking Dr. Bliesner if certain Digitek tablets were produced out of specification. This exact issue was addressed during the *Daubert* hearing before the Court on September 14, 2011 and there is nothing new here. At the deposition, defense counsel described the USP assay range of Digitek

7

as being between 90 and 105 percent and Dr. Bliesner agreed that a certain Digitek assay was within that range. The point that Defendants are overlooking is that Actavis was unable to produce tablets within the separate Mylan assay specifications and Dr. Bliesner opined that this is evidence of Actavis's inability to manage its quality control. Defendants' questions would at most be impeachment material. It does not undermine his expertise or methodology and is therefore irrelevant to the *Daubert* issue before the Court.

The same is true of the other alleged inconsistencies suggested by the Defendants. For example, although Dr. Bliesner conceded in several instances that he had some typos in his report and declaration (Pl. Ex. 2 at page 208:23 and 209:21) he stated that his opinions remained the same. (Pl. Ex. 2 at page 229:21 to 231:8.) "I stand by the opinions that are in that report . . .." (Pl. Ex. 2 at page 18:2 to 18:3.)

Finally, Defendants' random comment that Dr. Bliesner did not "validate" his declaration is again vague and misleading. It is unclear what defense counsel even meant when he asked if Dr. Bliesner "was validating it." (Pl. Ex. 2 at page 224:15.) What is clear is that Dr. Bliesner repeatedly confirmed that his declaration accurately reflected his opinions. (Pl. Ex. 2 at page 224:10 to 224:17.)

Not surprisingly, the one thing that Defendants did not mention in their Motion was Dr. Bliesner's repeated comments affirming both his expert report and declaration that Actavis's quality control was a complete failure and that more likely than not defective Digitek made it out of the doors and into the chain of distribution to consumers like Mr. McCornack and Ms. Vega.

> "Each of these data points has nothing to do with the accuracy and the overall conclusion of the report. There's a lack of compliance across the board from the beginning. Products made it to the market, and there's been a continuous lack and

>failure of quality systems for many, many years.  The fact that I have individual errors within a report or a declaration doesn't change those facts at all. Not at all."

(Pl. Ex. 2 at page 229:21 to 230:4.)

D.     **Plaintiffs' Requested Relief.**

Defendants' ex parte deposition of Dr. Bliesner about his opinions in this case was inappropriate and Plaintiffs ask that the Court take several actions in response.

First, Plaintiffs ask that the Court deny Defendants' Motion to Strike Dr. Bliesner's declaration.  Dr. Bliesner's declaration accurately states his opinions and reiterates and clarifies the opinions set forth in his expert report.  At best, Defendants' objections opinions go to the weight of Dr. Bliesner's opinion, not its admissibility.  This was briefed and argued at the September 14, 2011 hearing and need not be repeated here.

Second, Plaintiffs ask that the Court deny Defendants' Motion to submit supplemental evidence in support of its pending Motions. None of the evidence is properly authenticated and is hearsay.  Fed.R.Evid. 802, 901, and 902.  The deposition transcript is neither signed nor certified.  More importantly, the supplemental evidence was improperly obtained at an ex parte discovery proceeding and Plaintiffs had no knowledge or ability to object, clarify, or augment the record.  The Court should not permit Defendants to benefit from its attorneys' transgressions.

Third, Plaintiffs ask that the Court issue an evidentiary sanction prohibiting Defendants from relying on the deposition and any of the documents attached to its Motion for any purpose in this case and further prohibit Defendants from referencing or questioning Dr. Bliesner about matters at this improper ex parte deposition and any of the documents for any purpose in this case. Where an attorney has engaged in such improper ex parte communications with the opposing party's retained expert, sanctions are appropriately considered. *See, e.g., Erickson*, 87

9

F. 3d 298 [holding district court abused its discretion in not considering an appropriate sanction commensurate with the impact of the misconduct]. If Defendants wish to quibble with Dr. Bliesner's typographical errors, or what it means for a Digitek tablet to be "out-of-specification," they will have an opportunity to do so through their own retained experts. But they should not be entitled to do so through information learned through an improper ex parte deposition. Courts have found that this type of evidentiary sanction is appropriate to "deny [the offending party] the fruits of its misconduct yet not interfere with [their] right to produce other relevant testimony." *Campbell Indus. V. M/V Gemini,* 619 F.2d 24, 27 (9th Cir. 1980).

Fourth, Plaintiffs ask that the Court issue a protective order requiring Defendants to: (a) provide immediate written notice to Plaintiffs of any pending discovery, in any case, directed to Plaintiffs' experts in this case; (b) provide notice to Plaintiffs of any future discovery, in any case, directed to Plaintiff's experts in this case, at the time it is propounded; (c) provide copies of all prior discovery, in any case, directed to Plaintiff's experts in this case, including copies of all subpoenas, deposition notices, deposition transcripts, and documents or things produced. Plaintiffs have no practical ability to determine how many of their experts have already been the subject of ex parte discovery in other cases (and on how many occasions), or to track any such future discovery contemplated by Defendants. A protective order to prevent further improper ex

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

parte communications with Plaintiffs' experts is necessary and appropriate. *See, e.g., Sewell*, 206. F.R.D. 545 [entering protective order precluding ex parte communications with opposing party's experts].[3]

Dated: September 30, 2011     /s/ Don A. Ernst

                                Don A. Ernst (CA State Bar No. 065726)
                                Attorneys for Plaintiffs
                                Ernst Law Group
                                1020 Palm Street
                                San Luis Obispo, CA 93401
                                Tel: 805-541-0300
                                Fax: 805-541-5168
                                E-mail: de@ernstlawgroup.com

---

[3] *See also*, *Crenshaw v. MONY Life Insurance Co.*, 318 F. Supp. 2d 1015 (S.D. Cal. 2004), and Cal. Bar Assoc. Comm. on Legal Ethics Op.1975–33. In analogous context, ex parte contact by defense counsel with a plaintiff's treating physician is only ethically permissible if there is prior notice to plaintiff. A protective order to ensure such notice is appropriate.

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 30, 2011, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: September 30, 2011          /s/  Don A. Ernst
                                         Don A. Ernst (CA State Bar No. 065726)
                                         Attorneys for Plaintiffs in 2:09-cv-0671
                                         Ernst Law Group
                                         1020 Palm Street
                                         San Luis Obispo, CA 93401
                                         Tel:  805-541-0300
                                         Fax: 805-541-5168
                                         E-mail: de@ernstlawgroup.com