# EXHIBIT 2

1      Q.    Dr. Bliesner, what is your opinion in
2   this case?
3      A.    With respect to?
4      Q.    Well, I mean you tell me.  I'm asking
5   you what your opinions are in this case.  You're
6   being offered as an expert witness on the issue of
7   product defect.
8      You understand that; right?
9      A.    Yes.
10     Q.    Okay.  And I am entitled -- we are
11  entitled to learn the opinions you intend to give
12  or testify about if you are permitted to do so at
13  trial.
14     You understand that; correct?
15     A.    Yes, I understand that.
16     Q.    Okay.  And that's what -- part of what
17  we're doing here today is learning about those
18  opinions.  So my question is, what are your
19  opinions in this case?
20     A.    As I state in the conclusion.
21     Q.    Now, I want to be clear.
22     A.    Yes.
23     Q.    When you say, when you state in the
24  conclusion, you're referring to the conclusion on
25  page 21 of the report you prepared initially in

1    the MDL?

2        A.    I am.

3        Q.    Okay.

4        A.    And everything that I have seen since
5    then actually has reinforced if not enhanced this
6    opinion.

7        Q.    So your opinions in this case are as
8    reflected in your report in the MDL; is that
9    correct?

10       A.    Yes, my opinions are reflected here.

11       Q.    Do you have any other opinions that you
12   intend to offer at trial about product defect?

13       A.    Offer at trial?

14       Q.    Yes, if you are called as a witness at
15   trial --

16       A.    Yes.

17       Q.    -- do you intend to testify to any other
18   opinions about product defect?

19       A.    Other opinions?  I'm not sure if I
20   understand what you're saying.

21       Q.    I'm merely trying to find out if there's
22   else out there, Dr. Bliesner.

23       A.    Well, there could potentially be a lot
24   out there I don't have or don't know about.

25       Q.    As we sit here right now, Dr. Bliesner.

```
 1     A.    As we sit here right now.
 2     Q.    Let me clarify it.
 3     A.    Uh-huh.
 4     Q.    You know -- or well, maybe you don't
 5   know.  I'll tell you.
 6     A.    Okay.
 7     Q.    If you develop new opinions after today
 8   --
 9     A.    Yes.
10     Q.    -- Mr. Miller and his team have an
11   obligation to notify us that you've developed new
12   opinions in some way or some aspect, we will
13   then -- we'll figure it out, but likely we'll have
14   the opportunity to come ask you questions about
15   those new opinions.
16           You have obligation essentially to supplement
17   and notify us of any supplemental opinions.  You
18   understand that; correct?
19     A.    Now.  I was not aware of that up until
20   that explanation.
21     Q.    Well, that's true.  Mr. Miller will
22   agree with that.
23     A.    Okay.
24     Q.    Just like we would if our experts did
25   the same thing.
```

Page 138

```
1      A.    Uh-huh.
2      Q.    Okay?
3      A.    Uh-huh.
4      Q.    I'm entitled to know the opinions you
5   hold as of right now.
6      A.    Uh-huh.
7      Q.    You've indicated that your opinions
8   about product defect are as set forth in the
9   report you initially prepared in the MDL that is
10  Defendant's Exhibit 92; right?
11     A.    Correct.
12     Q.    Are there any other opinions that you
13  intend to offer at trial -- if you testify --
14  about product defect in this case?
15     A.    I still don't know if I understand what
16  the division is here, the difference.  Any other
17  additional as opposed to what's here.
18     Q.    There may not be any.
19     A.    And that's --
20     Q.    I'm trying to find out --
21     A.    Right.
22     Q.    -- if there any others.
23     A.    Right.  Right.  Right now, as it stands
24  based on the additional depositions I've looked
25  at, it only enhances what my statements have been
```

1  in here in my mind, and that's the opinion I would
2  express.
3      Q.    Okay.  So your opinions at trial would
4  be that Actavis had deficient quality systems and
5  therefore it was in your opinion probable that
6  defective Digitek was produced and released to
7  market?
8      A.    It was not only the deficient quality
9  systems, it was the fact that they did
10 manufacture, you know, thick, thin, or whatever
11 tablets and made it in packaging and made it into
12 the market, yes.
13     Q.    Do you have an opinion about the
14 specific product in the batch at issue in this
15 case, the batch that produced the tablets taken by
16 Mrs. Johnson?
17     A.    The specific batch?
18     Q.    Yes.
19     A.    The specific batch was made under the
20 same conditions and with the same quality systems,
21 the same failures.  And it was one that they had
22 problems with respect of oversized tablets,
23 then -- I'm sorry.  No.  I got messed up answering
24 my own question there.  Could you say it again,
25 please?

Page 184

1  that.
2     Q.    Okay.
3     A.    I did see some bits and pieces of
4  methods and stuff, but on the grand scheme of
5  things, no.
6     Q.    Okay.  Dr. Bliesner, if we can pick up
7  the document marked as Exhibit 620.
8     A.    Yes.
9     Q.    That is the supplemental declaration
10 that we talked about several hours ago now.  Do
11 you remember --
12    A.    That is correct.
13    Q.    -- our initial conversation about that?
14    A.    I do.
15    Q.    Okay.  That contains sworn testimony
16 that you've given in the MDL; right?
17    A.    It does.
18    Q.    Does that document also reflect opinions
19 that you intend to testify about in this case?
20    A.    This document reflects opinions that
21 I've already expressed in the report.
22    Q.    So it's your opinion that that document
23 doesn't enhance or supplement the opinions you've
24 expressed in your report in any way?
25    A.    I haven't thought of it in those terms.